**IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

DSCC, *ET AL*.,

*Plaintiffs-Appellants,*

v.

DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, *ET AL*.,

*Defendants-Appellees.*

On Appeal from the
United States District Court for the District of Columbia
Case No. 1:26-cv-01114
Hon. Carl J. Nichols

**APPELLANTS' EMERGENCY MOTION TO EXPEDITE BRIEFING SCHEDULE**

Marc E. Elias (D.C. Cir. 43320)
Lalitha D. Madduri (D.C. Cir. 66802)
Jacob D. Shelly (D.C. Cir. 65676)
Christina Ford*
Max C. Accardi**
Kevin R. Kowalewski**

**ELIAS LAW GROUP LLP**

250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
Telephone: (202) 968-4490

Tyler L. Bishop (D.C. Cir. 64981)
**ELIAS LAW GROUP LLP**
1700 Seventh Ave., Suite 2100
Seattle, WA 98101
Telephone: (206) 656-0177

*\*Application for admission forthcoming*
*\*\* Application for admission pending*

*Counsel for Appellants DSCC, DCCC, Democratic National Committee,
Democratic Governors Association, Senate Minority Leader Schumer, and
House Minority Leader Jeffries*

# CERTIFICATES FOR PARTIES, RULINGS, AND RELATED CASES

As required by Circuit Rules 27(a)(4) and 28(a)(1), undersigned counsel for Appellants hereby provides the following information:

## I. Parties and Amici Appearing Below

Appellants:

- Democratic Senatorial Campaign Committee (DSCC)

- Democratic Congressional Campaign Committee (DCCC)

- Democratic National Committee (DNC)

- Democratic Governors Association (DGA)

- Senate Minority Leader Charles E. Schumer

- House Minority Leader Hakeem S. Jeffries

Appellants are Plaintiffs in the district court. No parent company or publicly held company holds a 10% or greater ownership interest in any Plaintiff-Appellant.

Appellees:

- Donald J. Trump, in his official capacity as President of the United States

- Executive Office of the President

- United States Department of Justice

- United States Postal Service

- United States Department of Homeland Security

- United States Citizenship and Immigration Services

- Social Security Administration

- United States Department of Commerce

- Todd Blanche, in his official capacity as Acting United States Attorney General

- David Steiner, in his official capacity as United States Postmaster General

- Markwayne Mullin, in his official capacity as Secretary of Homeland Security

- Joseph B. Edlow, in his official capacity as Director of the United States Citizenship and Immigration Service

- Frank J. Bisignano, in his official capacity as Commissioner of the Social Security Administration

- Howard Lutnick, in his official capacity as Secretary of the Department of Commerce

Appellees are Defendants in the district court.

Intervenor-Defendants:

- State of Missouri
- State of Montana

- State of Alabama
- State of Nebraska

- State of Florida
- State of Oklahoma

- State of Indiana
- State of South Carolina

- State of Kansas
- State of South Dakota

- State of Louisiana
- State of Texas

Additional Plaintiffs:

- League of United Latin American Citizens

- Secure Families Initiative

- Arizona Students' Association

- National Association for the Advancement of Colored People (NAACP)

- Common Cause

- Common Cause Education Fund

- Black Voters Matter Fund, Inc.

- BVM Capacity Building Institute, Inc.

Additional Defendants

- Amber F. McReynolds, in her official capacity as Chair of the Board of Governors of the United States Postal Service

- Board of Governors of the United States Postal Service

- Daniel M. Tangherlini, in his official capacity as Member of the Board of Governors of the United States Postal Service

- Derek Kan, in his official capacity as Vice Chairman of the Board of Governors of the United States Postal Service

- Ronald A. Stroman, in his official capacity as Member of the Board of Governors of the United States Postal Service

Amici:

- Society for the Rule of Law
- Wisconsin Democracy Campaign
- Expo of Wisconsin, Inc.
- Jaleyce Oraedu
- Jasmine Oraedu

- Aharon Shelef
- America's Future
- Citizens United
- Federation for American Immigration Reform

## II. Ruling Under Review

The ruling under review in this case is the May 28, 2026 order of United States District Court Judge Carl J. Nichols denying Plaintiffs-Appellants' motion to preliminarily enjoin Appellees from implementing Sections 2(a) and 3(b) of Executive Order 14399, *Ensuring Citizenship Verification and Integrity in Federal Elections*, 91 Fed. Reg. 17125 (Mar. 31, 2026).

## III. Related Cases

This case has not previously been before this Court or any other court. Counsel is aware of the following cases qualifying as related under Circuit Rule 28(a)(1)(C), both of which were consolidated with Plaintiffs-Appellants' case below: *League of United Latin American Citizens v. Executive Office of the President*, No. 26-cv-01132-CJN (D.D.C.), and *National Association for the Advancement of Colored People v. Trump*, No. 26-cv-01151-CJN (D.D.C.).

*/s/ Lalitha D. Madduri*

Lalitha D. Madduri

**INTRODUCTION**

Plaintiffs-Appellants DSCC, DCCC, DNC, DGA, Senate Minority Leader Schumer, and House Minority Leader Jeffries (collectively, the "Democratic Party Appellants") respectfully move the Court for expedited briefing and oral argument under 28 U.S.C. § 1657(a), Federal Rule of Appellate Procedure 27, and this Court's Rule 27.[1]

This case presents the type of extraordinary circumstances that justify abbreviated briefing and expedited consideration. This spring, President Trump issued his second Executive Order purporting to regulate American elections—this time ordering the federal government to create lists of adult citizens residing in each state to share with state election officials before federal elections, and ordering the United States Postal Service (USPS) to (1) develop a list of voters who are eligible to receive a mail ballot and (2) not transmit such ballots from any voter who does not satisfy USPS's criteria.

The E.O. is patently unlawful on its face. It is "black letter law" that the President's power to issue an edict like the Order "must stem either from an act of Congress or from the Constitution itself," *Minnesota v. Mille Lacs Band of*

---

[1] Appellants were prepared to file this motion on June 3, the day after the notice of appeal was transmitted to this Court, but an appellate docket was not yet available at that point. Appellants filed this motion as soon as a docket became available. Appellants have also informed Appellees' counsel of this filing and will promptly provide a copy to counsel via email.

*Chippewa Indians*, 526 U.S. 172, 188-89 (1999) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952)), and the President has *no* power to regulate American elections. The Constitution expressly vests in the States the authority to regulate elections in the first instance, which only Congress may supersede for federal elections. *See* U.S. Const. art. I, § 4, cl. 1; *id.* art. II, § 1, cl. 2; *Ex parte Siebold*, 100 U.S. 371, 384 (1879). The President may not evade that explicit and purposeful constitutional structure by fiat.

The first time that President Trump attempted this kind of constitutional runaround, the Democratic Party Appellants immediately sued and quickly obtained a preliminary injunction—and then a permanent injunction—of his 2025 E.O., which similarly purported to regulate American elections. The injunction was based on the fundamental and elementary principle that the President plays no role in regulating American elections. *See League of United Latin Am. Citizens v. Exec. Off. of the President* ("*LULAC I*"), 780 F. Supp. 3d 135 (D.D.C. 2025), *appeal docketed*, No. 25-5476 (D.C. Cir. Dec. 31, 2025); *League of United Latin Am. Citizens v. Exec. Off. of the President* ("*LULAC II*"), 808 F. Supp. 3d 29 (D.D.C. 2025); *League of United Latin Am. Citizens v. Exec. Off. of the President* ("*LULAC III*"), No. 1:25-cv-0946, 2026 WL 252420 (D.D.C. Jan. 30, 2026), *appeal docketed*, No. 26-5102 (D.C. Cir. Apr. 2, 2026).

President Trump's second E.O. purporting to regulate elections is similarly

2

plainly beyond the executive power. The Order requires government agencies to amass and share voters' sensitive personal information and introduces changes to mail voting that are *ultra vires*, contravene the separation of powers, and conflict with numerous statutes governing election administration, mail service, and privacy. Once again, the Democratic Party Appellants moved to challenge this illegal effort. But the district court declined to issue an injunction, holding that the President has the authority to order his subordinates to take action—*whether or not that action is lawful*—and that the court could not provide relief until it was fully clear how agencies would implement the E.O.—which is likely to be the end of July for Section 3 of the E.O., and as late as early September for Section 2. By that time, voters will have already begun casting ballots for the 2026 general elections, and the irreparable harm to the Democratic Party Appellants will be well underway.

The Democratic Party Appellants are *currently* making decisions about how to allocate limited resources to compete in this year's elections. Having to compete in an illegal electoral environment, and having to mitigate the harms imposed by the E.O.'s illegal directives directly and irreparably interferes with the Democratic Party Plaintiffs' ongoing voter education and voter turnout programs and threatens severe electoral harm—harm that will accrue before they can seek relief again in the district court under that court's reasoning and that will not be reversible. Moreover, the district court's reasoning raises a significant risk that Defendants will attempt to

invoke *Purcell v. Gonzalez*, 549 U.S. 1 (2006), to avoid any intervention by the federal courts at a later date, arguing that once voting is imminent or has already begun, any injunction would amount to impermissible interference with the election by the judiciary.

Neither Article III nor this Court's precedent requires the Democratic Party Appellants and their candidate and voter members to wait to endure such harm before seeking relief. "Damocles's sword does not have to actually fall . . . before the court will issue an injunction." *League of Women Voters v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016). Indeed, earlier this term, the U.S. Supreme Court was explicit that candidates have standing to challenge election rules regardless of whether the challenged rule will "help, hurt, or have no effect on a candidate's electoral prospects," because candidates "have an interest in a fair process," and "suffer [cognizable harm] when the process departs from the law." *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 77 (2026); *see also Colo. Republican Fed. Campaign Comm. v. FEC*, 518 U.S. 604, 630 (1996) (Kennedy, J., concurring in part) (recognizing that "during an election," political parties and their candidates share "a practical identity of interests"). The E.O. imposes exactly such harm. There is no serious question as to whether the E.O.'s directives are lawful. They are not. The only thing that remains to be determined is just *how much* damage they will ultimately inflict—but that is not a question that should preclude a court from granting preliminary relief. To the

contrary, unless relief is issued now, the Democratic Party Plaintiffs will suffer irreparable harm preparing to compete in an illegal electoral environment. That is all that is required for an injunction to issue. And each day that passes with this illegal directive unchecked exacerbates that harm.

The Court should expedite review of this case to provide certainty to candidates, voters, and the public in advance of the 2026 elections, to re-affirm the bedrock principle that the President has no role in regulating American elections, and to prevent imminent harm to the Democratic Party Appellants. To that end, the Democratic Party Appellants respectfully propose the following schedule:

- **Appellants' Opening Brief:** June 10, 2026

- *Amicus* **Briefs Supporting Appellants:** June 12, 2026

- **Appellees' Brief:** June 22, 2026

- *Amicus* **Briefs Supporting Appellees:** June 24, 2026

- **Appellants' Reply Brief:** June 29, 2026

- **Oral Argument:** As soon as feasible after the close of briefing

**BACKGROUND**

On March 31, 2026, President Trump issued Executive Order 14399, titled *Ensuring Citizenship Verification and Integrity in Federal Elections* (the "E.O." or "Order"), which attempts to regulate American elections by executive fiat. *See* Exec. Order 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026). It does so through two

unprecedented and sweeping edicts. First, Section 2(a) requires the Secretary of Homeland Security to prepare a list of every adult American citizen residing in each state and share those lists (hereinafter the "State Citizenship Lists") with state election officials in advance of federal elections. E.O. § 2(a). Second, Section 3(b) orders USPS to develop a list of every voter "enrolled" to vote by mail, *id.* § 3(b)(iv), and prohibits USPS from delivering a ballot from any voter who is not "enrolled" on that list, *id.* § 3(b)(iii).

E.O. 14399 was the latest in a series of attempts by this Administration to regulate American elections by executive order—attempts that courts have repeatedly enjoined as beyond the power of the President. *See LULAC I*, 780 F. Supp. 3d 135; *LULAC II*, 808 F. Supp. 3d 29; *LULAC III*, 2026 WL 252420 (D.D.C. Jan. 30, 2026); *Washington v. Trump*, 814 F. Supp. 3d 1173 (W.D. Wash. 2026); *California v. Trump*, 786 F. Supp. 3d 359 (D. Mass. 2025), *appeal docketed*, No. 25-1726 (1st Cir. Aug. 1, 2025); *California v. Trump*, 805 F. Supp. 3d 387 (D. Mass. 2025).

On April 1, 2026—the day after President Trump signed the E.O. at issue here—the Democratic Party Appellants, whose members include candidates for office and voters nationwide, filed a seven-count Complaint challenging the E.O.'s

illegal directives. *See* Doc. 1.[2] Shortly thereafter, Appellants filed a motion for preliminary injunction on their claims that the E.O. is *ultra vires* (Count I), antithetical to the separation of powers and federalism (Counts II and III), contrary to USPS's statutory powers (Count IV), and irreconcilable with the Privacy Act (Count V). *See* Docs. 34, 55. In support, Appellants filed declarations from each of the party organizations, detailing how the E.O.'s illegal changes to the voting process would harm them, their candidates, and voter members and explaining the need to enjoin the E.O. quickly to avoid such harm. *See* Docs. 55-3 to -8. As those declarations show, the Democratic Party Appellants must finalize their voter education and turnout programs this summer—programs that will be impaired by the E.O. *See, e.g.*, Doc. 55-3. These resource-intensive programs take months to develop, and the Democratic Party Appellants cannot wait to finalize them: voters will begin casting mail ballots in the 2026 midterm elections in early September 2026, just three months from now. *See* Doc. 55-3.

Although the government opposed Appellants' motion for a preliminary injunction, it largely did not defend the E.O. on its substantive legality. *See* Doc. 117-1. Instead, the government's opposition was premised on the argument that it

---

[2] Cites to "Doc." are to the district court docket in *DSCC* v. *Trump*, No. 1:26-cv-01114 (D.D.C.).

was too early to know precisely how or if the E.O. would be implemented, and thus too soon for any court to offer relief. *See* Doc. 117-1.

On May 14, the Honorable Judge Carl Nichols held a hearing on Appellants' motion for a preliminary injunction. At the hearing, the district court offered the government an opportunity to defend the E.O. on the merits—to explain, for example, how Section 3 of the E.O. might be lawful. *See* Ex. 1, Hearing Tr. 82:15-83:15 ("Hr'g Tr."). The government had no answer. *See* Hr'g Tr. 83:3-15. Instead, the government's attorney responded that he was "very hesitant to just sort of canvas the U.S. Code for how [] the Postal Service [could] do such a thing." Hr'g Tr. 83:9-10.

Notably, the district court itself raised the prospect that the prudential principles of *Purcell* would later prevent it from issuing an injunction. The court noted that waiting until even the "end of July" to resolve the claims would put the matter on "the cusp of election season, and we are starting to really bump up against *Purcell* and other prudential concerns." Hr'g Tr. 80:2-4. But when the district court offered the federal government a chance to renounce any *Purcell*-related arguments in this case, the government did not take it. *See* Hr'g Tr. 79:25-82:2. Although the government suggested there was no "guarantee" that it would raise *Purcell*, it argued *Purcell* would in fact be relevant to this litigation, *see* Hr'g Tr. 80:21-81:17.

8

On May 28, the district court issued a memorandum opinion and order denying Appellants' motion for a preliminary injunction, along with the motions of the plaintiffs in the consolidated case below. *See* Docs. 143, 144. At a high level, the court held that the Democratic Party Appellants likely lacked standing to challenge the E.O. at this stage of implementation (and might never have standing to challenge portions of it), that the case was likely not ripe for review, and that Appellants failed to show a likelihood of success on the substance of some of their claims, including their *ultra vires* claim. *See generally* Doc. 143. On Appellants' *ultra vires* claims, the court held that the President has "the authority to supervise and direct the actions of executive branch agencies," Doc. 143 at 22-23, neglecting to analyze whether the President has any authority at all to order federal agencies to interfere with American elections, the regulation of which the Constitution reserves only to the States and to Congress. *See* U.S. Const. art. I, § 4, cl. 1; *id.* art. II, § 1, cl. 2. The district court did not analyze many of Appellants' other merits claims.

The district court invited Plaintiffs to "renew" their preliminary injunction motions once it was clear how federal agencies would implement the E.O. *See* Doc. 143 at 3. Specifically, the court suggested that Appellants could again seek preliminary relief concerning Section 3 at the end of July—the same time at which the court itself had suggested would raise *Purcell* concerns—when USPS had a final rule implementing Section 3. *See* Doc. 143 at 3; *see also* E.O. § 3 (requiring final

9

rule to be issued within 120 days of E.O.). Indeed, the day after the court denied Appellants' motion for a preliminary injunction, USPS issued a notice of proposed rulemaking implementing the E.O.'s direction to develop a "Mail-In and Absentee Participation List," *see* Doc. 145, which requires States to enroll its voters in a new "Postal Service Federal Ballot Mail Portal" and to provide unique tracking codes for each voter's ballot before those voters are eligible to receive a ballot via USPS. Under the proposed rule, USPS will refuse to deliver the ballot of any voter who does not appear on that list.[3]

In its order denying the motion, the court also stated that Appellants could renew their preliminary injunction motions once the State Citizenship Lists had been created and Appellants could show those lists "omit specific individuals due to particularized flaws," Doc. 143 at 3, a timeline that would require such lists to already be in use. But under that timeline, the Democratic Party Appellants likely could not return to the district court to obtain relief from Section 2 of the E.O. until late August or even September, after voting in the 2026 general election has begun. *See* E.O. § 2(a) (requiring the State Citizenship Lists to be "transmitted to State election officials no fewer than 60 days before each regularly scheduled Federal election").

---

[3] *See Ballot Mail for Federal Elections*, 91 Fed. Reg. 32915 (proposed June 2, 2026) (to be codified at 39 C.F.R. pt. 111), available at https://perma.cc/Y87M-JB8Q.

The Democratic Party Appellants filed their notice of appeal in the district court on June 1. Appellants now move to expedite this appeal and abbreviate the briefing to ensure timely resolution of their preliminary injunction motion.

**ARGUMENT**

Even without the special circumstances presented here, the Democratic Party Appellants' appeal is entitled to expedited consideration because it concerns the denial of their request for a preliminary injunction. *See* 28 U.S.C. § 1657(a) ("[E]ach court of the United States . . . shall expedite the consideration of any action . . . for temporary or preliminary injunctive relief."); D.C. Cir. R. 47.2(a) (directing that the clerk "promptly open the appeal and enter an appropriate schedule" for cases arising under 28 U.S.C. § 1657); *see also Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 n.8 (D.C. Cir. 2001) ("[U]nder 28 U.S.C. § 1657(a), the granting or denying of a preliminary injunction is the basis for an expedited appeal.").

Here, moreover, a particularly expedited schedule is critical. Although "Election Day" is not until November 3, 2026, voters will begin voting in that election in early September, when mail ballots will be sent by multiple states. *See* Doc. 55-3. That is just three months from today. In the interim, the Democratic Party Appellants and their candidate members are finalizing and implementing their voter education and turnout plans—plans that require that rules of the election be settled. *See* Doc. 55-3.

Waiting to seek relief until the timeframe that the district court has indicated—*i.e.*, once agencies have completely finalized plans for implementing the E.O. or have *already* implemented the E.O., *see* Doc. 143 at 3—will force the Democratic Party Appellants to compete in an illegal electoral environment, endanger Appellants' ability to fully and successfully compete in the 2026 elections, including by interfering with their existing programs, and likely harm the voting and privacy rights of their voters. These harms are irreparable and cannot be fully ameliorated even if later relief issues.

For example, by the time Appellants can show the State Citizenship Lists "omit specific individuals due to particularized flaws," Doc. 143 at 3, the State Citizenship Lists will have already been created and disseminated, the very actions that Appellants contend violate the Privacy Act—the merits of which the district court did not address in its order. Similarly, by the time USPS has complete finality on how States may use mail ballots and which voters will be eligible to receive those ballots, mail ballots will be just four weeks away from going out to voters across the country. And by that time, Democratic Party Appellants will have had to remake their voter education and turnout plans to mitigate the harms the E.O. inflicts on themselves and their voters—plans the parties and their candidate members have been making for months. *See* Doc. 55-3.

Neither Article III nor this Court's precedents require such harm to befall Appellants before this Court can offer them relief. "Damocles's sword does not have to actually fall . . . before the court will issue an injunction." *Newby*, 838 F.3d at 9. No doctrine requires Appellants to wait to obtain relief until private data is disseminated, mail ballots go undelivered, and elections have come and gone—when it will be too late to remedy their injuries. Quite to the contrary: these are irreparable harms that are precisely the type that can and regularly are addressed with preliminary injunctive relief—to avoid them entirely. And here, where the injury arises in the electoral context, the irreparable harm is all the more acute because once the election occurs, "there can be no do over and no redress." *Newby*, 838 F.3d at 9 (citation omitted).

Extremely recent U.S. Supreme Court precedent further refutes the district court's conclusion that the Democratic Party Appellants must wait until they have actually incurred harm to challenge unlawful election rules. *See Bost*, 607 U.S. at 77 (recognizing candidate standing regardless of whether the challenged rule will "help, hurt, or have no effect on a candidate's electoral prospects," because candidates "have an interest in a fair process," and "suffer [cognizable harm] when the process departs from the law"). Indeed, in *Bost*, the Supreme Court emphasized the need to finalize election rules and resolve disputes early as possible—part of what motivated *Bost* in the first place. *See id.* at 80 (noting an alternative approach, such as premising

candidate standing on harm to their election prospects, would "channel many election disputes to shortly before election day—or worse, after").

Under *Bost*, the Democratic Party Appellants are entitled to a lawful election process, and Appellees have offered no serious argument that the E.O. is lawful. Nor could they. The E.O. on its face mandates specific, unlawful actions. It is telling that below, the federal government all but declined to defend the E.O. on the merits, instead hiding exclusively behind ripeness and justiciability doctrines. *See* Doc. 117-1. And the reason why is clear: the President has no authority to trample the prerogatives of the States and Congress by commandeering election administration, and his commands to do so collide directly with federal privacy, postal service, and election-related statutes.

Moreover, the longer this Court (or any court) waits to resolve this dispute, the more likely it is that the federal government will argue that *Purcell v. Gonzalez* requires a federal court to stay its hand and avoid issuing an injunction in time to provide relief for the 2026 elections. Such an argument would turn the principles underlying *Purcell* on its head, which is meant to *prohibit* federal interference in state administration of elections (the exact behavior the E.O. mandates). But in light of the government's refusal to renounce any such arguments and the district court's own suggestion that *Purcell* might preclude relief as soon as the end of July, Appellants cannot afford to wait to seek relief, and this Court should accordingly

hear this appeal on an expedited basis.

To that end, Appellants respectfully request the following schedule:

- **Appellants' Opening Brief:** June 10, 2026

- *Amicus* **Briefs Supporting Appellants:** June 12, 2026

- **Appellees' Brief:** June 22, 2026

- *Amicus* **Briefs Supporting Appellees:** June 24, 2026

- **Appellants' Reply Brief:** June 29, 2026

- **Oral Argument:** As soon as feasible after the close of briefing

**CONCLUSION**

For the foregoing reasons, Appellants respectfully request that consideration of this matter be expedited, that the Court issue an order setting the above briefing schedule, and that the Court direct the Clerk to schedule oral argument on the earliest available date following the completion of briefing.

Dated: June 4, 2026

**ELIAS LAW GROUP LLP**

By: /s/ *Lalitha D. Madduri*

Marc E. Elias (D.C. Cir. 43320)
Lalitha D. Madduri (D.C. Cir. 66802)
Jacob D. Shelly (D.C. Cir. 65676)
Christina Ford*
Max C. Accardi**
Kevin R. Kowalewski**
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
Telephone: (202) 968-4490

Tyler L. Bishop (D.C. Cir. 64981)
**ELIAS LAW GROUP LLP**
1700 Seventh Ave. Suite 2100
Seattle, WA 98101
Telephone: (206) 656-0177
tbishop@elias.law

*Application for admission forthcoming*
**Application for admission pending*

**CERTIFICATE OF COMPLIANCE**

1.      This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,504 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2605) in 14 pt Times New Roman Font.

By: /s/ *Lalitha D. Madduri*

Lalitha D. Madduri

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2026, I filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: /s/ *Lalitha D. Madduri*

Lalitha D. Madduri