# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DEMOCRATIC CONGRESSIONAL CAMPAIGN
COMMITTEE, et al.,
         Plaintiffs,

    vs.

DONALD. F. TRUMP, et al,

        Defendants.

Civil Action
No. 1:26-1114


Washington, DC
May 14, 2026


2:10 p.m.

_____ /


TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING PROCEEDINGS
**BEFORE THE HONORABLE CARL J. NICHOLS**
UNITED STATES DISTRICT JUDGE

APPEARANCES:

**For the Plaintiffs:**    Lalitha Madduri
**(DSCC, DCCC, DNC, DGA,**  Jacob D. Shelly
**Charles Schumer &**     Kevin R. Kowalewski
**Hakeem Jeffries)**      Max Accardi
        ELIAS LAW GROUP LLP
        250 Massachusetts Ave NW, Ste. 400
        Washington, DC 20001
        Emails:  lmadduri@elias.law
               kkowalewski@elias.law
               jshelly@elias.law
               maccardi@elias.law


**For the Plaintiffs:**    Danielle M. Lang
**(LULAC, Secure**      Anna Marks Baldwin
**Families Initiative**    CAMPAIGN LEGAL CENTER
**AZ Students' Assoc.)**   1101 14th St. NW, Suite 400
        Washington, DC 20005
      Emails: dlang@campaignlegalcenter.org
           abaldwin@campaignlegalcenter.org

APPEARANCES CONT'D.:

**For the Plaintiffs:**      Orion de Nevers
**(NAACP, Common Cause,**    John Freedman
**CC Education Fund,**        ARNOLD & PORTER KAYE SCHOLER LLP
**BMV Fund, Inc.,**          601 Massachusetts Ave., NW
**BVM Capacity, Bldg.**      Washington, DC 20001
**Institute, Inc.)**      Emails: orion.denevers@arnoldporter.com
                                 john.freedman@arnoldporter.com


**For Defendants:**          Stephen M. Pezzi
**(Donald J. Trump,**        Esam Al-Shareffi
**Executive Office of**        DoJ - CIV- Federal Programs
**the President,**            1100 L Street, NW
**U.S. DoJ, USPS,**           Washington, DC 20530
**U.S. DHS, USCIS,**          Email: stephen.pezzi@usdoj.gov
**SSA, U.S. DoC,**                   esam.k.al-shareffi@usdoj.gov
**et al.)**


**For the Movants:**         Louis J. Capozzi, III
(States of MO, AL,           Missouri Attorney General's Office
FL, LA, MO, OK,              815 Olive Street, Suite 200
SC, SD and TX)               St Louis, Missouri 63101
                             Email: Louis.Capozzi@ago.mo.gov


**Reported By:**             **LORRAINE T. HERMAN, RPR, CRC**
                             Official Court Reporter
                             U.S. District & Bankruptcy Courts
                             333 Constitution Avenue NW
                             Washington, DC 20001
                             lorraine_herman@dcd.uscourts.gov


*** Proceedings recorded by stenotype shorthand.
*** Transcript produced by computer-aided transcription.

**P R O C E E D I N G S**

**DEPUTY CLERK:** Good afternoon, Your Honor. This is civil case year 2026-1114, *DSCC, et al. vs. President Donald J. Trump, et al.; Movant, State of Missouri, et al.*

Counsel, please come forward and introduce yourselves for the record, beginning with the plaintiffs.

**MS. MADDURI:** Good afternoon. May it please the Court. My name is Lali Madduri, and I represent the Democratic Party plaintiffs.

**THE COURT:** Ms. Madduri, good afternoon.

**MS. LANG:** Good afternoon, Your Honor. I'm Danielle Lang, and I'm representing the LULAC plaintiffs, and I'm joined at counsel table with Anna Baldwin, my colleague.

**THE COURT:** Good afternoon.

**MS. LANG:** Good afternoon.

**MR. de NEVERS:** Good afternoon, Your Honor. Orion de Nevers on behalf of the NAACP plaintiffs. I'm joined at counsel table by John Freedman.

**THE COURT:** Good afternoon as well.

**MR. PEZZI:** Good afternoon, Your Honor. Stephen Pezzi from the Department of Justice on behalf of the United States. With me at counsel's table are Joey Borson and Esam Al-Shareffi, also of the Department of

Justice.

THE COURT: Counsel, good afternoon.

MR. CAPOZZI: Good afternoon, Your Honor. Louis Capozzi on behalf of the State defendants.

THE COURT: Also, good afternoon.

We're obviously here on a hearing and argument on the preliminary injunction motions filed in each of the three consolidated cases.

I intend to proceed as follows, which is to hear first from the plaintiffs and then, of course, from the defendants. Obviously, we have the federal defendants and then the State defendants and then go back to the plaintiffs for a short rebuttal as warranted.

I obviously don't have lights or other timers in the courtroom. I don't have a set amount of time specifically that I intend to hold anyone to.

I should say I have read everything. I think I have a pretty good handle on the facts, the state of play and certainly a good amount of the law. As you can imagine, I will have some questions as you go.

I think it's fair to say that both sides should do everything they can, to the extent there is going to be a division of argument, to avoid repetition. I don't want to trod on already-trodden ground, or whatever the saying is.

And again, I don't have a hard and fast either

time for either side or a hard and fast end point, but it seems to me that something in the nature of 45 minutes per side for the opening and response, with something very short, five or ten minutes, for rebuttal should work. I'll leave it to you-all to decide how you'd like to divide the respective 45 minutes and the like.

And then sometimes I come into hearings and I say, this is what I really think you should focus on or I want the argument to be structured in the following way, but I don't think that's necessary here. I think we can have counsel sort of direct the arguments they would like to address, but obviously reacting, I think, to some extent to my questions.

With that, why don't we start with whichever counsel for plaintiffs is going to lead us off.

Ms. Madduri.

**MS. MADDURI:** Good afternoon. Again, I am Lali Madduri on behalf of the Democratic Party plaintiffs. And I should have said, I'm joined by my colleagues Jacob Shelly, Max Accardi and Kevin Kowalewski for the Democratic Party plaintiffs.

**THE COURT:** Very well.

**MS. MADDURI:** The very founding of this country was premised on the rejection of an all-powerful executive. We do not have a head of state who enjoins plenary power to

proclaim their preferences into law. Instead, we have a President who is tasked with enforcing the statutes enacted by Congress and exercising powers reserved to him by the Constitution.

This case is pretty straightforward on the merits. There is no statute that authorizes the commands in the Executive Order we are challenging. Specifically, no statute authorizes the President to compile state citizenship lists by attempting to match data across various federal agencies, and no statute authorizes the President to prohibit the transmission of ballots.

Nor is this the --

THE COURT: Would anyone be injured if a list was compiled by the federal government consistent with the Executive Order and then not transmitted to any state?

MS. MADDURI: Yes. And that would violate the Privacy Act.

THE COURT: How is that?

MS. MADDURI: That would violate the Privacy Act, Your Honor.

THE COURT: What's the injury?

MS. MADDURI: The injury arises upon the disclosure of that information among agencies.

THE COURT: Who is injured? Surely, the parties are not.

**MS. MADDURI:** Our individual members.

**THE COURT:** Your individual members would be injured if a list is compiled, but that wouldn't injure them in connection with voting. That would be an injury that is about the sharing of information among federal agencies.

**MS. MADDURI:** That's right. That's a privacy harm that arises when the matching occurs, as --

**THE COURT:** That has nothing to do with voting. That could be a list compiled for any purpose.

**MS. MADDURI:** It would depend on exactly how but, yes, under the dictates of the E.O., where we're matching data from various federal sources --

**THE COURT:** That assumes that that compilation is done in a matter that is inconsistent with the Privacy Act --

**MS. MADDURI:** Yes.

**THE COURT:** -- or other legal issues.

**MS. MADDURI:** Sorry?

**THE COURT:** It seems to me that there clearly are procedural requirements under the Privacy Act that may or may not be complied with here. We just don't know yet. Right?

**MS. MADDURI:** There could also be procedural harms; and that would be a separate issue. Our Privacy Act claim is actually pretty simple. The Privacy Act does not

allow the, sort of, matching and exchanging of computer records that the E.O. requires. So the injury arises at that point. And there is nothing left to figure out about that.

It's already stated in the E.O. that they're going to take SSA data, naturalization records, citizenship records and at least SSA data and match those across federal databases and --

**THE COURT:** And if that happened and nothing more, that would be irreparable harm sufficient to get a PI?

**MS. MADDURI:** Yes, I think it would be.

**THE COURT:** Again, that has nothing to do with voting. It has nothing to do with transmission of the list to the States. It has nothing to do with the State doing anything with the information.

**MS. MADDURI:** Even before --

**THE COURT:** That would just be like, the compilation of a list, without more, injures our members because they have a Privacy Act interest in not having this compilation be put together, even if nothing happens with that list.

**MS. MADDURI:** Yeah, that's right.

At the instant that that private data, that the Privacy Act -- Congress has identified as information that should not be exchanged, and specifically should not be

exchanged to create this sort of citizenship list or master database that the Privacy Act makes very clear is prohibited, the disclosure of that very highly sensitive information and the matching between the computer programs, right then and there, there is irreparable injury to the people whose records are disclosed and used in that way.

**THE COURT:** What if DHS decides that it cannot compile a list in a way that would be consistent with the Privacy Act, and it says, well, the E.O. says to the extent feasible and consistent with applicable law, including but not limited to the Privacy Act. We can't do that and, therefore, we are not going to compile the list. Would anyone be hurt then?

**MS. MADDURI:** [No response]

**THE COURT:** Would there be a Privacy Act injury, even if the list isn't compiled, because DHS concludes it can't do so because of the Privacy Act?

**MS. MADDURI:** The issue right now is whether that injury is certainly impending or not or is likely to occur. And that is likely to occur because courts have explained time and time again that those clauses, those savings clauses, and the feasibility clause Your Honor referenced, cannot authorize commands that themselves are unambiguously lawful. And the President can't command subordinates to lawfully -- like, for example, he can't, say, lawfully

engage in racial discrimination.

THE COURT: Do you agree that a list could be compiled where at least some procedural protections required by the Privacy Act are complied with? Maybe the timing doesn't work out but one could do a sworn notice, and maybe the dates don't work, but the Privacy Act does have requirements. Do you think that there is no world in which a list could be compiled that complied with the Privacy Act?

MS. MADDURI: Yes, I think that's exactly right.

The gist of our Privacy Act claim, that's at issue in the PI, is that it's simple. The Privacy Act prohibits the federal agencies from disclosing any records containing personal information and then using a computer program to match that. And that's exactly what it dictates.

It can't be read to defeat itself through the savings clause; that's pretty clear. And that's for a good reason. Right?

"Inconsistent with law" precluded this court from examining whether the E.O. is, in fact, consistent with law, judicial review at that point would be meaningless.

THE COURT: Well, wait. Why isn't it the case that I could say, the list hasn't been compiled yet. We don't know how it's going to be compiled. The government, while this case is pending, has an obligation to inform me every step along the way.

And when it decides how it's going to compile this list, when it's going to compile it, how it's going to compile it and how it's going to do the data analytics matching, it has to notify me first. And at that point, I can decide whether there's a Privacy Act violation.

Because right now we have a direction from the President to engage in this analysis and then to go do the list, but we don't know how DHS is actually going to compile the list.

**MS. MADDURI:** The problem is that there is no lawful way to compile it. So it doesn't actually matter how they do it, whether they put it in Excel, whether they keep the states separate.

**THE COURT:** Your view is that DHS will, because of the Executive Order, violate the Privacy Act, even though the Executive Order says, don't violate the Privacy Act.

**MS. MADDURI:** Yeah, and that's because we argue here that the challenge provisions are invalid in all possible applications. So the savings clause doesn't preclude review at this point because there is actually no way to lawfully implement it.

The feasibility reference, too, I think it operates the same way as the legality provision here, in that it can't destroy the unlawful command because it actually faces no barrier. Feasibility is explained in

*Trump v. New York* and *Common Cause v. Trump*, in this district and goes to technical feasibility requirements.

So it would be relevant if, you know, there's not the software that needs to exist to create it or whether there's new infrastructure that might be required. But there are no technical barriers here that would prevent implementation and the government hasn't identified any.

Actually, the E.O. itself overcomes any conceivable barrier because another unequivocal provision of the E.O., that's 4(c), that's unconstrained by a feasibility qualifier, orders the Secretary of Home--

**COURT REPORTER:** Excuse me. Please slow down.

**MS. MADDURI:** Sorry.

So Section 4(c) orders, the Secretary of Homeland Security shall, within 90 days, establish the infrastructure necessary to compile, maintain and transmit the citizenship list described in Section 2(a).

So if there was any doubt about that feasibility piece, the unequivocal command of the E.O. itself renders it meaningless. That boilerplate feasibility language just doesn't function to actually do anything here.

And so that's the issue here. The commands are fundamentally unsavable, regardless of how they go about implementation. If they do anything to effectuate the order, it's illegal. There's just no way to do it lawfully.

**THE COURT:** In your view, it is both a right dispute and illegal for the executive branch to compile a list consistent with Section 2, even if that list is never transmitted to the states?

**MS. MADDURI:** That's right.

**THE COURT:** Even if a state never uses the list, or even if the list is used in a way that is perfectly consistent with each state's law about voter registration?

**MS. MADDURI:** Yeah, that's right.

**THE COURT:** This injury has nothing to do with voting.

**MS. MADDURI:** It's privacy.

**THE COURT:** I know. I'm talking about this particular injury we are talking about. This particular injury has nothing to do with voting. It has nothing to do with elections. Certainly, not directly. It's an injury about the sharing of information internal to the executive branch.

**MS. MADDURI:** I think that is the technical injury that arises from disclosures within the federal government. And then there would be another injury, of course, when you actually disclose to states, regardless of the use that they actually implement it for.

I think it's also really difficult to consider the Executive Order as a whole, which is very, very clear that

it regulates elections. It's intended to make sure there's no non-citizens on the rolls. It just needs to be --

THE COURT: Let's talk about the list first.

As I understand it, we have been talking about the compilation of the list. The Executive Order requires the list to be put together in a way that is consistent with Section 4.

Then each state version of the list -- again, assuming this is all determined to be, at least by the terms of the Executive Order, appropriate, lawful, whatever, but each list gets transmitted to a state. Each state's version of the list. And then each state then does something with the list. Right?

How is that regulating any state's election or any state's decision about who is going to be a registered voter in that state?

MS. MADDURI: I think the election regulation aspect of the list is -- it's sort of inherent from the start. Right? These lists are being compiled to identify voters who are eligible, both in their citizenship, their age and their residency. So I think there is an aspect of it that is inherently tied to elections.

THE COURT: Does the State of Massachusetts have to do anything under this E.O.? Can the State of Massachusetts -- even if it receives the list, would the

State of Massachusetts be free to ignore the list it receives from DHS?

MS. MADDURI: I think yes, the state could ignore it. But I think here, we actually have a bunch of states who are in the litigation.

THE COURT: Okay. But would a voter in Massachusetts, nevertheless, have standing, in your view, to sue to challenge the E.O.?

MS. MADDURI: Yes, for the privacy harms that exist.

THE COURT: No, no. On the voting harm. I get your privacy part. I am now moving on to the fact that this list might be provided to states and states might decide to do something or not with the list.

So now I'm hypothesizing that the State of Massachusetts receives this list from DHS. If Massachusetts decides to do nothing with the list -- we don't know right now whether that's going to happen or not -- would a voter in Massachusetts have standing to challenge the E.O., because of registration, voting in Massachusetts or any other effect on the vote in Massachusetts this year?

MS. MADDURI: I think the issue there is what we're looking at right now is the likely injuries that could flow from this order. So I don't want to say --

THE COURT: What is likely to happen to a voter in

Massachusetts?

MS. MADDURI: In a state that definitively says they will not look at this list, they will not touch it, they will never do anything with it, it's harder. I think it's harder to establish that that voter has standing to challenge it.

THE COURT: If a state does use the list -- again, I am now hypothesizing a world where the list is compiled. It's transmitted to each of the 50 states. I know there is more than just 50 states in the sense that there's districts and territories, but just for simplicity. Right? Those are the 50 states. And a state -- pick one. I don't mean to be...

California says, we want to look at the list and we're going to check our voter registration list against the list that we've just received from the federal government.

And let's say California removes some people from the list at that point that it shouldn't have from its voter registration list. Why couldn't a California voter effected sue California for having violated its California law or federal law in how it uses this information?

MS. MADDURI: I think a voter could definitely also sue California, but here --

THE COURT: But why isn't that intervening act by a third party enough to break the causal change between this

E.O. and how a voter in California is affected, since at least now we don't know whether California would or wouldn't do that?

**MS. MADDURI:** I think that it's the natural consequence of the E.O. that states are going to use it that way.

**THE COURT:** Is it the natural consequence of the E.O. that Massachusetts will rely on the list in its voter registration analysis?

**MS. MADDURI:** I think it's very possible that there are some states who don't use it. But I think what we know here from the states who have intervened in the case, they have already told us they want to use these lists to examine --

**THE COURT:** Don't they have to use it in a way that's unlawful also?

**MS. MADDURI:** I'm sorry. What?

**THE COURT:** To have a claim against a state, a state would have to not just employ the list. It would have to do so in a way that is unlawful somehow. It's not enough to just look at a list. You have to look at a list and do something with it that is inappropriate or unlawful.

So we have to hypothesize not just that some states will use the list, but that those states will use the list in a way that is itself unlawful.

So you have to assume the list is unlawfully inadequate as formulated as a federal list. You then have to hypothesize that it's disseminated to each of the 50 states. You have to assume that some states will use the list. Then you have to assume that the list is used in a way that harms some of that state's voters, perhaps by having them inappropriately removed from the registration list or whatever; and that that was a violation of some legal obligation of the state.

We don't know, sitting here today, whether any or all of those steps are going to happen.

**MS. MADDURI:** So I think we actually do know that some of them are going to happen.

**THE COURT:** Okay.

**MS. MADDURI:** We already know exactly how the lists are going to be compiled and the databases that they are going to use, which includes the SAVE database and Social Security information.

We know, and it's uncontested in the record, that those databases and those records are rife with errors, and there is probably literally no way to include appropriate residency information on those, which the E.O. commands that it happen. So voters are either going to be misidentified, wrongly identified or omitted from these lists.

We also know that the E.O. commands that they go

to the states. So that is also something that is ordered by the E.O.

We also know that there are at least 10 states who are here today saying we are going to use those error-prone, defective lists to check our voting records.

**THE COURT:** What if they don't remove a single person from their voting lists because of the federal list? What if they say: We have our voter registration lists. We think ours is more robust. It's good. We've double checked it, but we've decided that we're not going to remove anyone from our list because of this federal list.

**MS. MADDURI:** I think voters are also injured along the way. Right? Even if they are subject to these investigations, that they are wrongly accused of not being citizens, that they have to go and prove other identity, even if they are not actually ultimately removed, there is an injury from that that is redressable.

**THE COURT:** What is that injury if they are not removed?

So I get that a voter would be injured if, for example, as a result of this process, a voter can't vote in -- again, to use my example, in California. The voter who should be registered in California is not registered as a result of this list being received and used by California. I totally get it.

Do you argue in your brief that the voter who has to expend effort between now and the vote would be injured, sort of like in an organizational standing -- I know it's not organizational standing, but would be injured by having to take steps to ensure that that voter is properly registered?

**MS. MADDURI:** Yes.

**THE COURT:** Okay.

**MS. MADDURI:** When you add barriers to voting or extra steps that are imposed on some voters to access the franchise, that is a redressable injury and that --

**THE COURT:** I get one could argue that. Do you argue that in your brief?

**MS. MADDURI:** Yes.

**THE COURT:** Okay. Where is that? I'm not suggesting that you didn't. I just don't recall that.

**MS. MADDURI:** I will get you the citation, Your Honor.

**THE COURT:** Okay.

**MS. MADDURI:** But, yes, we absolutely argue that you don't need to be disenfranchised to be injured by these lists. If there are additional hurdles that you have to overcome, other burdens that you have to overcome, that is a cognizable injury, and *Crawford*, from the U.S. Supreme Court, tells us that. Right?

You don't have to be disenfranchised even -- that case was about voter ID and even voters who had access to ID still had standing to bring those claims. They are still injured by adding an extra step or an extra burden in the process of casting their ballots. So absolutely, you do not need to be disenfranchised to be injured for purposes --

THE COURT: Can we just go back to the privacy harm for a second? I realize I kind of took you off of that. But imagine that the list was compiled in the way that you say violates the Privacy Act. Imagine, hypothetically, I, for whatever reason, didn't enjoin the compilation of the list. I asked the government to make sure that it tells me what's up and it provides me regular updates.

And then the government says: This is our plan. We're going to compile the list. We are doing so now.

I have related questions, which are, one, why couldn't I then, with a concrete, specific plan developed by DHS about the list, take up the question of whether to enjoin its -- sort of the turning on of the list. Right? This is how we're going to do it. But I say stop.

Or, if they do it, why couldn't I order something thereafter that would either make the list unusable -- I mean, preclude the government from using it -- or preclude it from being maintained?

Both of those go to the question of why is there irreparable harm now or why would the harm be irreparable for that interim period between -- let's imagine, again, the list is now a thing and I hold, after a week or two and we know what the thing is, that it's unlawfully compiled. Right? Reverse it.

**MS. MADDURI:** I think two things:

One is that there isn't a way to lawfully compile it. So waiting for those details or waiting to see how they --

**THE COURT:** I know that's your position.

**MS. MADDURI:** -- and what's the harm?

**THE COURT:** Let's assume that I'm not so sure about that.

**MS. MADDURI:** Okay.

**THE COURT:** But let's just assume that you're right about that even, but what's the harm, or how really irreparable is a harm to someone if their information is put -- their information, which the federal government already has, is put into another database for a period of time where nothing else has happened with that information, and maybe even after some period of time I can unwind it?

**MS. MADDURI:** So I guess I would say that, one, it's not unwindable once the disclosure is made. And Congress has already made a judgment about --

**THE COURT:** I'm saying, before there is a disclosure -- right now we have an Executive Order. That list has not been compiled yet. Right?

You want an injunction to prevent the compilation of the list. My question is, let's imagine that the compilation occurs. I've learned that the compilation has occurred. I decide that that list is unlawfully compiled and I say, don't disseminate it, or if it was, pull it back and dismantle the list.

What is the irreparable harm in this interregnum period between now and that that warrants a PI?

**MS. MADDURI:** Congress has made a judgment in the Privacy Act that that disclosure that you're talking about in the beginning, the compilation itself of highly-sensitive data, things like Social Security numbers, going between agencies in the federal government is unlawful and an irreparable harm. And so that is a harm in itself that is irreparable. Once that data is disseminated, it's disseminated.

**THE COURT:** Do you think the view that they are standing there is consistent with the Supreme Court's decision in *Trans Union*?

What action or kind of case around the framing or the founding would look most like that kind of Article III injury?

Because what you are saying is, a plaintiff can sue now, is injured now, if information is shared between parts of the federal government. Congress has said that's important enough to allow Privacy Act cause of action. I'm not quibbling with that point.

But in *Trans Union*, the Supreme Court says, well, just because you have a cause of action, you have to ask if there is an analog at the founding for the kind of case or the kind of injury that courts would typically be looking at.

And so my question is: What's the best case from 1789 era where plaintiffs were permitted to bring claims like that?

Again, I'm focused just on this Privacy Act period now. I get the voting stuff. That's pretty clear to me that that would be injury.

**MS. MADDURI:** Okay. I think -- I don't have a case from the 1700s, but the analog torts from before both breach of confidence and intrusion upon seclusion and the -- and courts have consistently recognized that those are analogous harms to what the Privacy Act is addressing. So there is a cause of action that's been recognized for a long time that is very analogous to exactly what we're talking about here.

**THE COURT:** Okay. So that would mean there is

Article III standing. But, then, I take it the corollary, in your view, is that that's harm. It's injury for Article III purposes. It's harm for purposes of the PI standard. And it's irreparable because even if it happens in this three- to four-week period and is reversed or stopped or discontinued or whatever, that four-week period, that harm is still irreparable.

**MS. MADDURI:** Yes. Because the harm occurs upon the disclosure. It's very, very clear that the federal government cannot disclose records this way, and the Privacy Act is extremely clear that the purpose -- part of the big purpose of that was to prevent the sort of creation of this federalized database of citizens. That is foundational to the Privacy Act. So Congress has made a judgment that that is a very serious harm that is redressable.

**THE COURT:** Is there a damages cause of action for someone whose information is shared, say, from the SSA to DHS in a way that they say is unlawful?

**MS. MADDURI:** There is a retroactive --

**THE COURT:** So then why is the harm irreparable? Congress has said you can get damages for unlawful sharing. It seems like Congress has said that that harm is reparable through a damages action.

**MS. MADDURI:** Monetary damages are available for Privacy Act, but they're not adequate alternatives to the

injunctive relief to prevent the harm in the first place. So damages and injunctions just belong to two different genres. Several courts from this District have recognized that.

As Judge Bates observed in AFL-CIO, the Supreme Court has all but said that in dicta. As Judge Kollar-Kotelly observed in LULAC III, that conclusion also purports with the Supreme Court's more recent holding that the Privacy Act's remedial scheme does not preclude parallel remedies under the Fair Credit Reporting Act.

**THE COURT:** But you still have to establish that the irreparable harm is substantial, both that the harm is irreparable, of course -- that there's harm, that it's irreparable, and that it warrants injunctive relief here.

So why is the harm, which, perhaps, can be remedied in part by a damages action, why is it so irreparable that an injunction now is warranted?

**MS. MADDURI:** I think because Congress has made that judgment that these sorts of disclosures are highly offensive. And we also have declarations attached to our brief where various voters have attested to the fact that they would find these disclosures highly offensive and, therefore, irreparable to them.

So I think it's a judgment that Congress has made, and there's also factual evidence in the record supporting

that finding.

THE COURT: Okay.

MS. MADDURI: That's exactly the sort of evidence that courts rely upon in granting a preliminary injunction in this context.

THE COURT: Okay. Are you Section 2 person only? Are you going to do Section 3 as well?

MS. MADDURI: I was going to also do Section 3, but I want to be mindful of the time.

THE COURT: I, of course, want to talk about Section 3, but I also want to give your co-counsel an opportunity to speak, and I don't want to get in the middle of that. I am at least ready to talk about the Postal Service angle here.

MS. MADDURI: I would be happy to take a few of your questions, Your Honor, and then I will turn it over.

THE COURT: It seems to me that the state of play in the Postal Service is different but shares some characteristics with the list, which is Executive Order says to the Postal Service: You must, you shall go to a notice of proposed rulemaking that includes the following things, covers the following topics and shall do certain things, and then the final rule has to be issued 120 days from now -- or from the Executive Order.

So right now, I think it's fair to say no one

knows exactly what's going to be in the NPRM or the final rule.  You agree with that?

MS. MADDURI:  I think it is very clear from the E.O. that we know exactly what is being mandated here.  It's some of the things Your Honor said.  The rule shall include specific ballots assigned.  The rule shall include USPS creating a list for voters to enroll on to be able to get their mail ballots.  And it requires USPS not to deliver ballots to those people.  Those are clear, detailed commands and not merely some sort of suggestion.

THE COURT:  What if the Postal Service says, we are independent.  Everyone knows that we have an independence of sorts.  We have to go through our normal NPRM process.  We have to look at the legality of these things.  We think some of these are not legal.  We don't think we have the authority to engage in some of the things the Executive Order requires us to do.

So the NPRM has some components of the E.O. and it doesn't have others, and if they pick a third rail or a third way for other parts.

And then there are comments that say, what are you talking about?  All of this is unlawful or whatever.  And then the final rule looks different than the NPRM, which looks different than the E.O.

How does the E.O. -- before the Postal Service

gets to the final rule, how does the E.O. affect anyone, as it relates to mail?

MS. MADDURI: So the E.O. is unequivocal in its terms. Right? So it's very clear what they have to do. And for --

THE COURT: No. Very specific question. How does the E.O., before those other things have happened, affect anyone?

MS. MADDURI: For my clients, it effects them --

THE COURT: Let's put it this way. No mail is being transmitted as required by the E.O. unless and until the final rule passes. You agree with that?

MS. MADDURI: I'm sorry. Can you say that one more time?

THE COURT: No mail is going to be transmitted as required by the E.O. unless and until the final rule comes out.

MS. MADDURI: Yes. No mail would actually be done. But I think the issue here is that for our standing and for our irreparable harm, that harm doesn't actually need to befall us for us to be able to get --

THE COURT: Who is "us" and what's the harm you're talking about?

MS. LANG: The Democratic Party plaintiffs.

THE COURT: We have -- there are at least four

different theories of standing here on harm. So you need to be specific.

**MS. MADDURI:** Okay.

**THE COURT:** You are talking about the committee itself?

**MS. MADDURI:** All of the committees, yes, and candidates who we represent.

**THE COURT:** Okay. And how are they harmed or injured in the Article III sense right now by the order without the rule?

**MS. MADDURI:** Because the order is unequivocal in what it requires, well in advance of it actually being implemented, the Democratic Party plaintiffs are being forced to compete on an unlawful playing field.

We are actively right now planning and preparing for hundreds of elections, and because of the E.O. we are going to have to divert resources now from other electoral efforts, like persuasion mobilization, to counteract the provision's effects on our voters' ability to stay on the rolls.

So that's a here-and-now issue that we are experiencing, and the election context is just so critical here. This is not a situation where we can wait and see before preparing to mitigate those harms.

**THE COURT:** So you want me to enjoin what exactly?

You want me to preclude the U.S. Postal Service from even issuing a notice of a proposed rulemaking in light of the E.O. or enjoining the E.O. insofar as it requires that even if it's possible that the rulemaking will result in a perfectly lawful regulation?

MS. MADDURI:  Our view would be that there is no way for the rule to turn out to be perfectly lawful.

THE COURT:  That assumes that the Postal Service will, as a result of this process, engage in an unlawful rulemaking.

MS. MADDURI:  The rule that's mandated is unlawful from the getgo.

THE COURT:  I know.  It assumes that the Postal Service will not follow the law.

MS. MADDURI:  Yes.  And that is because, on the face of the E.O., the only thing that's there is a savings clause --

THE COURT:  Your view is that the Postal Service is independent.  So why wouldn't I have to assume that the Postal Service, perhaps different from other agencies, would exercise an independence and say, Whoa, this order asks us to think about things that actually aren't lawful and we're not going to do that and we're not going to propose that as part of the rulemaking.

MS. MADDURI:  I think this E.O. actually looks a

lot like the prior E.O. command in the last presidential order that required EAC to adopt a documentary proof of citizenship requirement for the federal form.

Again, EAC was an independent agency with its own rule-adoption process, just like USPS, but the order ordered that they shall adopt this documentary proof of citizenship. And like here, the government adamantly argued that the outcome of the order was not preordained, including because the E.O. said that the EAC should carry out the order through appropriate action. And it has a similar savings clause just like here.

And again, like here, the government said that the Court should read Section 2 as little more than a suggestion that the EAC require that documentary proof of citizenship. A suggestion that they said the EAC was free to ignore and reject in the ordinary course of its rulemaking. Again, just like it implies for Section 3 here.

Despite those claims, Judge Kollar-Kotelly reached the same conclusion we believe the Court should reach here, because the plain text of the E.O. requires an unlawful rulemaking.

And it's not -- it's not actually just this wide-open situation. The White House's statements confirm that this is not a mere suggestion. It says that the USPS shall not deliver ballots for people who are not on this

list. That's the White House fact sheet, that statement.

And despite USPS's -- sorry, despite the government's representations, USPS is actively working to implement the order. Even just today, there was reporting that the head of USPS has been meeting with both the President, DHS, to effectuate the order. So those are all facts that indicate that the process is under way to effectuate exactly what the order says.

That outcome also makes sense here because no factual development is necessary before the issues are sufficiently crystalized for this Court to evaluate, because there is no lawful way for USPS to implement the order.

**THE COURT:** Could I -- and I understand that point.

So it seems to me that the E.O. requires a rulemaking. And I get your point that there can be no rulemaking consistent with the E.O. that's lawful. But if the rule that -- and I think you've agreed with me that the Postal Service isn't going to be transmitting any letters consistent with the E.O. until the -- or do anything until the rulemaking is done.

When we have a rule from the Postal Service, why couldn't I take up then whether to enjoin the rule?

**MS. MADDURI:** I mean, so at this point we need to prove that the likely harm is impending. For us, we just

can't wait until the end of that period to figure out these programs. Every day right now is an opportunity to persuade voters and galvanize supporters that we can't get back. Every minute and every penny that we're spending counteracting the harms of this E.O. now that requires really clear and specific outcomes --

THE COURT: Aren't some of those harms inconsistent with what the Supreme Court said in *Alliance* was required for standing?

MS. MADDURI: No. Absolutely not, Your Honor. The core of our clients' business is elections, is voter turnout, is voter education, is voter mobilization and persuasion. So this is a very direct harm and we are actively diverting -- we are about to actively divert resources to address that harm.

THE COURT: So while you may advocate against this rule and against this E.O., which might itself not be enough under *Alliance*, what you're having to do is, I guess, alternative get-out-the-vote efforts to get people registered in a way that would ensure that if this list happens, they wouldn't be foreclosed by it. And then on the mailing, what are you doing as to the Postal Service rules?

MS. MADDURI: Exactly the same thing. We have to develop programs now to educate voters about the sea change in elections.

The USPS has never had a role in dictating who gets a mail ballot. They've never administered any aspect of elections. Voters have never done that and never been used to it. They need to be educated. They need to be told what they need to do. They need help processing all of that and actually complying with the results, including checking things like the citizenship list.

So there's the injury under *Alliance* and the diversion of resources that affects our core mission. And then there is also irreparable harm that is going on right now because we have to take those steps now to be able to prepare for the election.

The election context here is really critical and unique, and we cannot wait. It's not something that can be recovered later. The election goes. Our campaigns go. And there is no way to compensate for that harm retroactively.

I will turn it over so my co-plaintiffs have some time.

**THE COURT:** Thank you.

If everyone could -- especially for Madam Court Reporter, but also for my benefit, remind us of your name before you start speaking. Thank you.

**MS. LANG:** Of course, Your Honor. Danielle Lang.

**THE COURT:** Ms. Lang.

**MS. LANG:** I'm here with the LULAC plaintiffs. I

will dive right in to some of the questions about injury that Your Honor had that I think get to the heart of this case, because I think the defendants don't really offer much on the way of merits and are entirely focused on injury.

And I think my colleague, you know, was correct on all of the points about injury, but I want to kind of underscore a few things.

When it comes to the privacy harm, you were asking about the kind of connection to elections. And the context here is important. That this is done in an elections context is really important. We have evidence in the record, for example, from the head of LULAC about the chill that this is creating for voters, especially voters in mixed-use families.

The federal government has been engaged for the past year or so in an effort to try to compile citizenship information and to tell states to use its current systems for citizenship information, to clean their voter rolls and find alleged non-citizens in the rolls.

And what that has already led to and what voters already know is that naturalized citizens are getting kicked off the rolls. Texas, in its papers, has argued that it's improbable or implausible that states will take these lists and then kick voters off the rolls.

I don't know how Texas can make that argument

because Texas ran its entire voter registration list already against the USCIS SAVE system.

Approximately 2700 voters came out as being potential non-citizens and the Secretary of State, sight unseen, without looking at any other records or doing any investigation, sent that information to the counties and said that that's a reason to believe these are ineligible voters and start the process of removing them.

And as a result, many naturalized citizens have already been removed, have had to come forward and prove their citizenship in a way that their peers that are natural-born citizens did not have to do so.

So in that context, the kind of chill that the head of LULAC talks about in knowing that the federal government is about to kind of send out these massive lists of who they claim are alleged citizens and who is not included --

**THE COURT:** What is it chilling?

**MS. LANG:** Participation, quite frankly, Your Honor.

**THE COURT:** So I totally get and don't even mean -- I hope no one suggests these questions quibble at all with someone being removed from a voter list who shouldn't be. That is harm. But walk me through at each stage what the chill is.

What I was trying to do with your counterpart was to say, okay, there is this period where the list is being compiled, and we can call it whatever we want to call it, but let's just call it the intra-federal government compilation. Before it's been sent to any state.

That may violate the Privacy Act. I get it. Privacy Act cause of action, injury. Those are the conversations I had with your colleague.

But until the list is shared or up until the point before it's sharing, what is the injury exactly now?

MS. LANG: So I think this is -- my colleague mentioned the kind of intrusion upon seclusion, and that is exactly what was held in the original Executive Order.

THE COURT: That's about the sharing within the government. Right?

MS. LANG: That is.

THE COURT: Is it your argument that people are presently being chilled in their voting participation or their future voting participation because they know the information is going to be shared within the government? Just without more.

MS. LANG: A couple of points, Your Honor. One, I think there is -- put aside the question of chill. There is an irreparable harm when your private information is being shared when it's not supposed to; that is intrusion upon

seclusion. That is *Alliance for Retired Americans vs. Bessent*. That's the other LULAC case.

THE COURT: I recognize that. That's true if you're not even going to vote.

MS. LANG: Of course.

THE COURT: But that is not a voting chill. You were talking about chill on voters.

MS. LANG: Yes.

THE COURT: And their participation. What I'm trying to understand is what is your theory for why voters or potential voters are presently chilled in the event that what we're talking about is the compilation of the list at the federal government before it's shared.

MS. LANG: The federal government has been engaged in a project for the last year of compiling data and then looking for alleged non-citizens and then seeking to investigate those folks, with an incredibly high error rate, such that naturalized citizens are being targeted regularly, and that information is being shared with law enforcement.

And that is the current environment, is an environment where there is an Executive Order that is telling voters that if you're going to try to be on the voter registration rolls, if you're going to try to send in a mail ballot, the federal government is going to be looking into your information and whether or not it matches their

data.  That, undoubtedly, has an impact on voters.

I also wanted to kind of take a step back and put this case and the questions about injury in the frame of elections because the Supreme Court has talked about standing in elections in a different way.

I think it's really important for this Court to read the standing jurisprudence developed in the new *Bost* case.  Or I'm told it's actually pronounced "boast."  So I'm going to correct myself.

In the *Bost* case, the Court recognized that sometimes it's not that complicated when it comes to injury.  That if you have folks who are deeply engaged in the electoral process -- and that's what they said.  They said sometimes courts overcomplicate this analysis.

That if you have a candidate who is deeply involved in the electoral process, they are invested in a fair and lawful process.  And they are harmed by the lack of a fair or lawful process, and that's the end of the analysis.

And that can't just be about candidates.  Right?  There are lots of other folks who have deep investments in a fair electoral process, more than just the average voter.  And that's our clients.  Right?  League of United Latin American Citizens, one of their core missions is engaging their electorate in participation.  They certainly have a

deep investment in a lawful and fair playing field for our elections. And the *Bost* case protects those types of injuries.

Then you have to look at what *Bost* said about why it's so important to decide these cases early.

In a standing case, the Supreme Court went out of its way to talk about why it's important to decide election law cases early; that you can't wait; that you can't make them wait -- candidates wait to prove that this is going to, you know, sway the outcome or be determinative but, instead, they should be able to get into court early and settle the rules because that's crucial.

In fact, if plaintiffs don't do that, if they don't get in early, the Supreme Court has repeatedly stepped in and stayed injunctions and said that issuing court injunctions in the midst of an electoral process is simply not appropriate for a federal court.

And I think that answers your question about why can't you wait until July 29th, when this final roll has to be decided? There's a lot of reasons, but one of them is that by July 29th, I can guarantee you that defendants will be arguing that it's too late for you to issue an injunction; that we are in the middle of an electoral process; that these lists have already been created; that they need to be in the implementation mode and it's simply

too late for a federal court --

**THE COURT:** I think we're mixing and matching some doctrines here, though. Because there are Article III limits of standing and ripeness that are non-negotiable and there are prudential concerns about issuing injunctions too close to elections that are disfavored.

I get that. But you don't really get to have the prudential conversation until you've satisfied yourself you have jurisdiction.

**MS. LANG:** I agree, Your Honor. But I do point to *Bost*, which was a standing case that did raise the *Purcell* prudential concerns, and I think it's the combination of those two.

So *Bost* speaks to injury and we meet the typical injury requirements that I'm happy to discuss further, but on the prudential piece, I agree, *Bost* was reminding courts that we need to decide these cases; we need to decide them early; and waiting will erode public confidence in elections. And that's exactly where we sit now.

If we wait until the defendants send out lists of millions of American voters out to states and say, you should use this to vet your voter registration lists, the harm to individual voters, the harm to those who are deeply invested in the electoral process, much of that just cannot be unrung.

You know, quite frankly, it would put election officials in a really difficult spot because you can't unring the bell. Once an election official has seen a list and seen a comparison and has a list of voters that they now have question marks about, a lot of election officials are going to feel like they can't ignore that; that they would be abdicating their duty if they ignored that.

You know, I think you had a case recently, the *Heinz Immigration Law* case, that has some relevance here because the concern at that point was about redressability. Right? That there had already been these kind of downstream consequences of the policy that led to a bunch of individual immigration judge decisions that the Court didn't have the ability to redress.

If we wait, we are going to run into similar redressability concerns here, as state and local election officials make decisions, and that's one of the reasons why we can't wait.

As long as we're talking about the *Heinz* case, I would also point to that on the causation piece. You asked earlier about why isn't the kind of intervening actions of state actors going to be a breaking in the causation for Section 2(a)?

And I think your analysis in *Heinz* is right on there; that, you know, this was a nature of consequence that

would flow from the federal government compiling a list, sending it to a state, saying, these are your eligible voters and, oh, by the way I prioritized prosecution --

THE COURT: One of the plaintiffs here is Senator Schumer. For Senator Schumer to be harmed by the provision of the list to New York, one would have to assume that New York -- I mean, in a very -- to be harmed in a very concrete way, one has to assume that the State of New York takes the list from the federal government, accepts it, uses it, culls their voter rolls and does so in a way that harms Senator Schumer.

Why are those plausible assumptions? He's a plaintiff. The theory has to be that an election that is happening in New York -- because that's where we are; we're in an off-cycle -- that that election is going to be affected, right, by New York's use of the list.

MS. LANG: A couple of responses, Your Honor. I don't represent Senator Schumer.

THE COURT: I know.

MS. LANG: We represent organizations that have individual members in all 50 states. They are harmed --

THE COURT: Different states may use the list differently.

MS. LANG: Absolutely. But I would point out that also --

**THE COURT:** Isn't that the problem? If we don't know how each of the 50 states will use the list, then there are going to be some states where maybe the list doesn't get used at all. Hypothetically, New York. Hypothetically, no harm to the people in New York, or at least to the candidates like Senator Schumer.

Other states may use it some but in a lawful way. Again, assuming it's provided in a way that -- I mean, just assume it goes and then other states may not. Why should I assume that if you've just conceded that the 50 states may treat it differently, that it is either unlawful across the board or why is it -- why do I have to assume it's plausible to assume the worst outcome in at least a good number of states?

**MS. LANG:** A couple of responses, Your Honor.

I think I want to kind of separate the merits and the injury here. So the order is unlawful because the President has no authority to issue this order. That's true regardless of what the states do with the list. That is a merits question about *Youngstown*...

**THE COURT:** I get that is an argument you make.

**MS. LANG:** Yeah.

**THE COURT:** But you also have to have standing and your harm has to be irreparable.

**MS. LANG:** I completely agree.

THE COURT: For present purposes.

MS. LANG: I completely agree, Your Honor, and a couple of responses on that.

It is undoubtedly the case that some states are going to use this. We have examples of how states have already done precisely the same thing, even when they're getting less pressure from the federal government. When the federal government is not sending a list but instead just offering up a service, states are doing that. Texas did that.

So it is not about, kind of, some implausible assumption. It is the facts on the ground and also 10 states that have intervened to say, We want to use this list.

So it doesn't have to be that the irreparable harm is going to happen in all 50 states. It is going to happen in many states, undoubtedly.

The other piece of this it assumes that there is going to be statewide uniformity, when that is not true. County and local officials are going to -- in many states, county and local election officials have a lot of autonomy, and they can choose to use this list to remove voters, even if their state isn't telling them to do so.

This is not a top-down system when it comes to states. This is a highly local enterprise. So even in

New York, I would bet top dollar that there will be election officials that look at that threat, saying -- the next sentences in the Executive Order say, "Prioritize any official that allows people who are not eligible to vote." We gave you a list of eligible voters and we are going to prioritize the criminal prosecution of election officials that allow ineligible voters to vote.

I will bet top dollar there will be local election officials in every state in the United States. But that's not the requirement under the injury. You could have one state and that injury is going to be irreparable to our clients in that state. That is undeniable.

THE COURT: But that then runs into -- I mean, the Supreme Court has been pretty clear that the injunction has to be tailored to the people who are hurt. How can a nationwide injunction, in effect, work here when by hypothesis there won't be any voting-related effect in at least some counties or some states?

MS. LANG: I think, you know, nothing in that decision suggests that you have to have perfect knowledge. The idea was just that you need to tailor a remedy to give complete relief to the plaintiff. So an individual plaintiff can't seek nationwide relief; that's just plainly, on its face, overbroad.

But where you have information being sent to all

50 states and you have an organization with -- you know, organizations that collectively have over a million members in all 50 states, facing those dangers and facing serious risk in all of those states, that's going to be sufficient for irreparable harm.

And the sword of Damocles, the Court has, on numerous occasions, cited to the *Newby* case for the proposition that the sword of Damocles doesn't actually have to fall here. That's the *TikTok* case. Yes, this Executive Order has not been enforced yet but, as the *TikTok* case says, you know, as soon as it does get enforced, it's going to have injury. And that's the case here.

That's also the *Friends of the Earth* case, saying, we didn't know exactly when the injury is going to befall the plaintiffs, but it's going to befall them and it's going to befall them before we can get to final judgment in this case. That is absolutely certain.

And I think that what the elections context tells us is there is no harm more irreparable than harms to elections. There is no money you can provide to plaintiffs. There is no re-dos. There is no kind of going back and unwinding election administration.

This is an incredibly intricate exercise with thousands of election officials affected, and once that information flows down with an indication that it should be

used to administer elections, the damage will be done at that point.

And, quite frankly, this Executive Order appears to be drafted in a way to cause the maximum amount of chaos and confusion. Right? It's all set up to have a timeline that's happening while elections are happening.

You know, I'm a Pennsylvanian. I'm going to be voting next week in my primary. I won't be affected because, you know, the deadline for these lists falls a little bit later. But very soon these deadlines are going to roll around while primaries are happening. It's right in the middle, while we're preparing to send out UOCAVA ballots 45 days before an election.

You know, there's this idea that they're going to send out these state citizenship lists 60 days before an election but they are going to be stale the very next day. People move. People turn 18.

You know, residency is a qualification that's defined by state law. Even if the federal government had address information for people, which it does not, that would not tell the federal government how to define who is a resident for purposes of voting in any of those states.

And so the maximum amount of confusion. You know these lists are going to land on local election officials' desks and they are going to be told, Up to you what to do

with it. I work with local election officials every day. That is their nightmare. They need clear direction. So the irreparable harm, I think, is made.

Then the question is, is there any prudential reason why the Court should hold off? And I think the prudential reasons cut all in the opposite direction. *Purcell*. The need for clarity. The need to resolve confusion for voters.

The safeguarding of Americans' understanding that their democracy is going to be governed by the rules of the road and by the rule of law and not by the whims of a president that's asserting power he does not have. Those are crucial prudential questions that go towards resolving this case now.

That doesn't, you know, answer the injury question. That's a separate question. But I think we plainly address that here. We're not in a circumstance where, for example, defendants are saying they are not going to enforce this Executive Order. They are saying, Oh, we don't know.

But the declarations are actually very opaque. There's been more news today in various news articles --

**THE COURT:** I saw the supplemental filing.

**MS. LANG:** There's two news articles that came out last night and today about moves that the White House has

been making to actually implement this. None of that information, of course, is in the declarations. It seems as though the declarations are actually from folks who are not even involved in the deliberations.

So this could come down on plaintiffs, the sword of Damocles, any day. It could come out the day after a PI is denied here on the basis that there's no irreparable harm. And by the time we get back here, we re-argue this, so much of that damage will already be done. And I think that's why it's really important that the Court act now.

**THE COURT:** Thank you very much, Counsel.

**MS. LANG:** Thank you.

**MR. de NEVERS:** Good afternoon, Your Honor.

**THE COURT:** Good afternoon.

**MR. de NEVERS:** Orion de Nevers for the NAACP, Common Cause and Black Voters Matter.

The text of this Executive Order requires USPS to propose a rule under which it would decline to deliver the mail ballots of voters it has determined are ineligible to vote by mail and federal elections. That is an unequivocal directive to USPS to become a national mail voting registrar.

Defendants have identified no constitutional or statutory authorization permitting the president to issue this directive. So it is *ultra vires* and violates the

separation of powers.

The order also requires DHS to compile and transmit to states purported list of U.S. citizens, adults in those states, which State intervenor say at Page 11 of their intervention brief, will allow them to verify the accuracy of their own voter registration list and to modify their lists as needed.

DHS has no authorization to play that role and no constitutional or statutory provision authorizes this directive either.

My clients are voter-enablement organizations that are assisting voters on the ground every day in the middle of an election cycle. They have attested across nine detailed declarations that this order has forced them into overdrive to overhaul their voter assistance and protections programs to counteract the effects of this order in the middle of the primary season and with the general election less than six months away.

These declarations detail immediate, ongoing and irreparable harms that directly interfere with each of their core missions. With over 40 primary elections scheduled to take place between now and September 4th, the day on which these lists will be released, and the general election looming two months later, this injury is happening now.

Plaintiffs' declarations make clear that they are

already mobilizing to retool their operations in response to the order, efforts that divert resources from their ordinary work registering and turning out voters.

Time is the most precious resource in an election, and these organizations do not have the luxury of waiting until USPS's proposed rule is released or until DHS's lists are unveiled, to build the infrastructure necessary to respond to these impediments.

Our declarations are very detailed about what these organizations are doing and the harms it is causing them now. They are currently right now developing infrastructure to educate voters on how to obtain the kind of evidence that they would use to correct any wrongful exclusions from these lists. That's the Sterling declaration, Paragraph 16; the Albright declaration, Paragraphs 18 and 20.

They are currently right now retraining volunteers. That is the Albright declarations at Paragraphs 18 and 20.

They are currently educating their partners, their members, members of the public and voters on what they need to do in response to these orders. That's the Sterling declaration in Paragraph 16; the Nunez declaration at Paragraph 16; and the Albright declaration in Paragraphs 19 and 20.

They are currently right now overhauling their online and written materials and developing new materials in response to these orders. That's the Sterling declaration at Paragraph 16 and the Albright declaration at Paragraph 20.

And they are already having to counteract the chill that these orders, coupled with threats of enforcement, are inflicting on their members and their volunteers. That's the Nunez declaration at 20 and the Albright declaration at 18 and Paragraphs 21 and 22.

Your Honor, I think the Giddings declaration is particularly stark on this point. Paragraph 16 of the Giddings declaration, and Mr. Giddings is a volunteer for Common Cause.

He attests: "This order intimidates me and impedes my work, even though I only support eligible voters. I have seen election workers and volunteers falsely accused of abetting election fraud, and I believe I will be targeted for helping voters in the criminal/legal field system in light of these accusations and the order. I have already had long conversations with wife and family about how I could be targeted. These are real harms that are occurring right now to real people that are diverting the resources of these organizations as they try to counteract these harms."

There are, of course, more imminent harms to come,

and what *Newby* teaches us is that these harms to voter registration organizations cannot be repaired after the fact.

At Page 9 of *Newby*, "New obstacles that make it more difficult for civic organizations to accomplish their primary mission of registering voters impose injury for purposes of both standing and irreparable harm."

That's precisely the harm that's being inflicted on my clients here.

I don't want to reprise too much of what my colleagues have already said. If the Court has specific questions about our clients or anything else, the Court would have --

**THE COURT:** No. I appreciate it, Counsel. Thank you very much for your time.

Who is going to take the lead for the government?

**MR. PEZZI:** Good afternoon, Your Honor. Stephen Pezzi from the Department of Justice, on behalf of the United States.

These lawsuits -- the first of these lawsuits, at least, was filed literally the day after the Executive Order was issued. And that very much informs the reason why plaintiffs' claims here are premature, certainly for purposes of a motion for preliminary injunction, in which they need to show not only standing, ripeness, et cetera,

but also irreparable harm, but why we think the lawsuit should be dismissed without prejudice in its entirety.

I'm happy to go through each provisions of the Executive Order, some of which Your Honor has already addressed today.

So to start with the proposed rulemaking from the Postal Service, which is discussed in Section 3(b) of the Executive Order, there's a lot of talk about the President's directive and what sort of authority the Postal Service might have.

To be absolutely clear, what is called for by that section of the Executive Order is for the Postal Service to initiate a proposed rulemaking. That is a very important distinction for purposes of judicial review.

The proposed rule on its own does not cause any Article III harm to anyone. It's not a final agency action for purposes of the APA or any of the other statutes that are referenced in these filings, and it's just generally not subject to judicial review.

*In re: Murray Energy*, a D.C. Circuit case authored by then Judge Kavanaugh, it says courts do not have the authority to review proposed agency rules. Several other cases say this. We don't even have a proposed rule here, of course. We are before the proposed rule.

So while I understand at least some of plaintiffs'

concerns and their speculation about why they expect to dislike the ultimate outcome, if any, of that rulemaking, the way that that sort of thing is challenged, certainly in the D.C. Circuit but not just in the D.C. Circuit, is the proposed rule will be issued.

Plaintiffs and anyone can offer comments on the proposed rule, comments about the legality of the rule, comments about the policy considerations underlying the rule.

The agency will consider those comments, and if the agency does finalize a rule -- which, to be clear, the Executive Order itself directs a proposed rule.  Does not direct either the publication of a final rule nor the contents of any final rule.

But if the agency does finalize a rule and plaintiffs remain dissatisfied with its contents, nothing will stop them from bringing that challenge at that time. And the parties can then, you know, litigate whatever issues remain, whether it's threshold issues, the merits or both.

**THE COURT:**  Would that be in this case or in a new case, in the government's view?

**MR. PEZZI:**  I think that depends a little bit on what happens procedurally.  We have asked for dismissal for lack of subject matter jurisdiction; that would be a dismissal without prejudice.

If plaintiffs remained dissatisfied, you can imagine a world where they filed a new complaint, you can imagine a world where there is an amended complaint. So I think that could proceed in a few different directions, depending on what relief Your Honor ordered. But the relief requested by our motion to dismiss -- and I recognize we're here today on --

**THE COURT:** It's not fully briefed, but I get it. It may get decided.

Mr. de Nevers just walked through all of the ways in which the declarations reflect that people working for these organizations are presently having to do different additional and extra work than they would have otherwise, but for the Executive Order, because it's reasonable to assume that the world of elections is going to be different --

Perhaps not. We don't know exactly how. And I think the plaintiffs quibble with that, but let's just assume it, but it will be different. So they are doing all sorts of work, changing their websites, educating people and the like.

Why isn't that injury, in fact, right now from the E.O.?

**MR. PEZZI:** Sure. I think I'd answer that in two ways, Your Honor. For one thing, I think a lot of that

argument and certainly a lot of plaintiffs' filings and declarations, I think, sound like they are drafted in a pre-*Alliance* world, where there's a lot of diversion of resources, case law based on an old case called *Havens Realty* about an organization expending resources to respond to the government's action.

The original *Havens Realty* case itself was about a much narrower set of circumstances.

**THE COURT:** I've written about *Havens* and *Alliance* and D.C. Circuit, *PETA*, and the like. This isn't expending resources to advocate against the rule. This is expending resources because of the rule.

It's saying the rule is going to -- not the rule but the regime is going to mean that people who otherwise would have been registered to vote, aren't. And we are responding to that.

That is not advocating against this. This is a response to the change to elections that's going to result quite naturally from the E.O. and what it puts in motion.

**MR. PEZZI:** Yes, Your Honor.

So I think to that, if we are interpreting plaintiffs' allegations of injury that way, I think there is a factual response and then a doctrinal response.

The factual response is, I don't think it would be prudent to be advising anyone on that basis at this time

because what the government or what the agencies reference in this order are going to do to implement this order is not only not clear to plaintiffs, it has not even been decided within the government. And I think the declarations are clear about there being ongoing deliberations to that effect as we speak.

THE COURT: I mean, it is possible, from the government's perspective, that the agencies won't do, either in the NPRM or in the list context, what the E.O. requires or might do something that's directionally different.

But why is it unreasonable for the plaintiffs to plan for a world in which the E.O. is fully implemented in its full-throatedness?

MR. PEZZI: Fully implementing the E.O. would mean implementing all of the provisions of the E.O.

THE COURT: Correct.

MR. PEZZI: Some of which make very clear that agencies are supposed to be considering not just the legality of the actions contemplated by the E.O., but as well as some of the very feasibility issues that plaintiffs were referencing today. So, I mean, plaintiffs have a lot of concerns about is this possible, is the data good enough --

THE COURT: In light of the fact that these elections -- well, primary is before then, but elections are

six months or less from now. Why isn't it reasonable, prudent and, frankly, common sense that plaintiffs would be planning for elections that are -- that end up following this or affected by the strongest version of the E.O.?

MR. PEZZI: Certainly, if plaintiffs want to prepare for the worst --

THE COURT: You told me that it would be unreasonable to advise a client to do anything until the federal government has taken steps here, and I'm saying that seems crazy. It would be reasonable and prudent to advise your clients to plan for the strong version.

MR. PEZZI: Certainly, Your Honor. I didn't mean to suggest that. Just what I'm trying to get at is, I think if plaintiffs want to prepare for the worst possible interpretation of what this E.O. could be implemented in their darkest fears, that is their right. But I guess to get to the doctrinal answer --

THE COURT: That's not standing.

MR. PEZZI: That's not standing and that's certainly not irreparable harm. Under Article III, they need to show either actual injury or imminent injury. The sort of speculation that maybe they are prudent to think about, you know, what the world might look like in six months, but federal court, under Article III, can't base any ruling and certainly not a preliminary injunction ruling

based on that sort of speculation.

Certainly not speculation that assumes the worst about government actors, rather than presuming regularity in government actors, as the Supreme Court and the D.C. Circuit has said.

And especially here, with an E.O. that itself goes out of the way not just to say this shall be implemented consistent with applicable law, which is the sort of language that, to be clear, both the Supreme Court and the D.C. Circuit have looked to in judicial review of executive orders.

**THE COURT:** Right. There is a 2002 opinion where Judge Ginsburg relies on a provision like that in a way that was favorable to the government.

But let's perhaps try to set out the different components of alleged injury and just take the government's view on all of them, or at least as it relates to the list because, at least the way I think about it, is there is a period of time where the government is going to be involved in what I would call federal-government-only effort.

It's intra-federal government sharing of information. If anything happens, it would be intra-federal government. It would be the compilation of the list.

And as I understand it, plaintiffs' principal argument there is that sharing of information could be a

violation of the Privacy Act. Right?

**MR. PEZZI:** Yes, Your Honor.

**THE COURT:** If the government does start to compile a list that is -- however it compiles it, but takes lists and it is -- information is shared as to databases, I get the government's position may be that that was totally lawful in context because it complied with the various legal prohibitions or obligations.

But if the plaintiffs have a different view, don't plaintiffs have standing to articulate their Privacy Act argument about why that sharing, that intra-federal government sharing, was unlawful?

**MR. PEZZI:** Respectfully, no, Your Honor. We do not think they even have standing to make that sort of a claim. Certainly, no irreparable harm, which I will get to in a minute. I would love to talk a little bit about the merits, too, because that came up a little bit today in a way that I don't think was addressed in much detail in the briefs.

Even on standing, *Trans Union* makes very clear that your name appearing on the wrong list or in the wrong file in some cabinet somewhere by itself is not Article III injury.

So what plaintiffs need to show is something more, and part of that something more is something traditionally

recognized as the basis for a lawsuit in U.S. courts.

I heard today analogies to the tort of intrusion upon seclusion and breach of confidence. And those analogies to those common law torts have appeared in a good bit of other litigation in this courthouse and elsewhere in the last 18 months or so, and have certainly generated some opinions, some of which the government agrees with and some of which the government disagrees with.

Even the opinions that the government disagrees with, I mean, we're talking usually in those opinions about sharing of generally sensitive private information, sometimes medical information from the Social Security Administration, sometimes tax return data from Department of Treasury, sometimes Social Security numbers. I think I heard Social Security numbers referenced today. This Executive Order does not say anything about Social Security numbers. It certainly doesn't say anything about sharing private medical data, tax return information.

The sort of information we are talking about here, I think, is one's citizenship status, yes or no; maybe whether or not someone is over the age of 18, yes or no. I have never heard of a case premised on a privacy violation, that satisfied Article III or otherwise, on the theory that someone has a privacy right to keep it a secret from one government agency to another government agency as to whether

or not they are a U.S. citizen, and I think I would give the same answer about whether or not someone is over the age of 18.

But I don't even think we get there even accepting as true all of the mostly District Court case law on that issue in the last year or two. Again, I think some courts have got that right, some courts have got that wrong in the government's view. But I don't think this case even gets to that point.

Even in the cases in which this is litigated, there's actually several cases from this courthouse in which the government has ultimately lost on the Article III standing version of that question but has successfully defeated a preliminary injunction on the theory that, even if it's enough to show Article III standing, it's certainly not certain imminent, irreparable harm to share information within the government.

Now, if there's a disclosure, that obviously could potentially raise some different questions, but I think what we're talking about here, we're still just talking about sharing within the government.

THE COURT: Right. I was at least trying to break up the causal chain set out by the E.O. as to the list, which seems to me to require first -- I mean, there is work that has to go into defining how the list will be compiled

and the like, but the result of that, if it happens, will be a list is compiled within the federal government.

And, you know, thereafter, the E.O. contemplates it being shared, but that would have to go after the list is compiled. So I'm just trying to understand both what the standing and irreparable harm is in that interim period or whatever we want to call it.

But, frankly, also -- and this is a question to your side, which is, if the case is still pending and it turns out that even if hypothetically I were to deny the PI on the present record but the case is still pending, I assume, but I would like a commitment from the government, that in the event material steps are taken that effect where we are in that causal chain, that I will be aware of it.

**MR. PEZZI:** Yes, Your Honor. Understood completely. Obviously, the request we've requested in our Motion to Dismiss would be dismissal of the litigation.

**THE COURT:** I understand. But that motion to dismiss is not yet fully briefed. What I have before me is a PI. If I decide only the PI and I were to deny it, that would mean the case was still pending. And that means, at least hypothetically, that the facts would change as to the basis for the PI denial.

I assume that the government would tell me, for example, if it came up with a concrete plan for how the list

would be compiled, even if that was just as to the internal intra government part.

MR. PEZZI: Fair enough, Your Honor.

I mean, if the case --

THE COURT: I didn't hear a commitment.

MR. PEZZI: If Your Honor needs a commitment, I'm happy to -- I think it might make sense to confer with plaintiffs about a schedule for that sort of commitment and exactly what the contours of that commitment might be.

THE COURT: Sure. It only is relevant if I deny the PI.

MR. PEZZI: Yes, Your Honor.

THE COURT: So I get that it's a contingent commitment, in any event.

MR. PEZZI: Yes, Your Honor.

Look, if the case remains pending, we understand Your Honor will remain interested in the developments to the extent they bear on standing, and I'm confident we could work something out to ensure that there are no major surprises to the Court.

THE COURT: Right. The government may not want discovery, but it might be willing to agree with the plaintiffs on updates or something like that.

MR. PEZZI: I'm sure there is something we could work out to that effect were the mission to dismiss to

remain pending or if it were denied.

THE COURT: Right.

MR. PEZZI: On the irreparable harm question, I mean, unless Your Honor has other questions on the lists, I just want to make clear on the merits. I mean, maybe this is not something we need to get into today. I didn't expect to be talking a lot about the Privacy Act today, but there were some pretty strong statements about categorical prohibitions on sharing information --

THE COURT: No, I would like the government's view on how the relevant agencies, or at least DHS, would be able to compile a list of the kind generally contemplated by the E.O. consistent with the Privacy Act.

MR. PEZZI: Yes, Your Honor.

So, I mean, if we were to get past, you know, the feasibility constraint, which is explicitly in the text of the order, about compile these lists to the extent feasible.

Then, if and when decisions would be made about what databases would be used to generate these lists -- which contrary to what I think I heard from plaintiffs is not answered by the text of the E.O. itself, and as the declaration makes clear, has not yet been decided.

If and when those sorts of decisions are made, I do not think it is correct to say that it is impossible to share information like this within the government and still

complying with the Privacy Act.

There are certainly some procedural requirements that might be implicated. So, for example, typically, there needs to be a routine use identified for even intra government disclosures of information protected by the Privacy Act. Routine uses are enacted and amended with some frequency. Usually there is a 30-day notice and comment process.

DHS and SSA actually went through this relatively recently in another case in this district. We have some quotations from Footnote 7 from the *League of Women Voters vs. DHS*.

THE COURT: Right.

MR. PEZZI: So the disclosure issue, I think, could potentially be resolved by amendments to the systems of record notices that govern sharing of information like this, if that were to be necessary.

I heard some discussion of matching, computer matching. I mean, there is also language in the Privacy Act about computer-matching agreements.

I'm not sure that would be implemented here. Again, it's not really possible to really answer the question before we know exactly what data would be sharing, in what databases, with who and how, but there is certainly no categorical prohibition on matching government

information from one database to another.

I have seen plaintiffs argue that a document called a computer-matching agreement is required to be published in those circumstances. I think the government's view on that sometimes differs with private litigants.

Again, these are all the sorts of things that, by the text of the E.O. itself, DHS and to the extent it's relevant, the other agencies here, are being asked to consider. And they will and are considered these very topics.

If they ultimately reach a conclusion that plaintiffs dislike, I don't really see why they couldn't bring that claim in the normal course. We might, again, have more threshold arguments. I mean, there are some questions, some of which were previewed here, about, is there a Privacy Act cause of action for this sort of injunctive relief on behalf of an organization instead of an individual?

So there would be plenty of things still to litigate. We would at least know what we would be litigating, rather than this sort of shadowboxing over a hypothetical list that certainly hasn't been created yet and might not be created, at least in the form that plaintiffs are assuming or on the timeline the plaintiffs are assuming and so on.

THE COURT: All right.

So that's sort of this early period, for lack of a better word, that's through compilation, assuming it happens then. But let's just assume hypothetically a list is compiled. And, you know, the government's position at the time is it was compiled consistent with its obligations and the plaintiffs say, No.

I have sort of two different questions. The first is -- but I think you just said it -- which is we could litigate then or at some point between now and then, once we have more concreteness, whether that manner of compiling the list is consistent with the Privacy Act.

MR. PEZZI: Generally, yes, Your Honor. It wouldn't surprise me if we, again, still raised some threshold arguments, but the timing question, I agree completely.

THE COURT: Right. I mean, look, I'm not suggesting that the government might not have other arguments later that perhaps don't present themselves now, but it's not as if we would lose the opportunity to litigate the compilation of a list at some later time, perhaps when there's more concreteness.

So you have the list that is compiled. But then the next step contemplated by the E.O. is its dissemination, assuming it exists, to the states. What's the government's

argument for why that's lawful? If it were to happen.

MR. PEZZI: So I think it would be plaintiffs' burden to explain, first of all, why it is unlawful. I think this --

THE COURT: Usually, when the plaintiff comes in and says, this is why we have a likelihood of success on the merits, the government says, No, you don't. I know you don't know what the list looks like exactly yet, so you're shadowboxing, to use your word. But what's your best argument for why dissemination of the list would be lawful?

MR. PEZZI: Certainly, Your Honor. I don't mean to be cute with that answer. I just say, one of the biggest reasons that plaintiffs offer, for example, is because they think this would be an unlawful disclosure under the Privacy Act.

So some of the very matters we were just discussing about with respect to the Privacy Act might be very relevant to that question of whether that sort of transmission of the list is lawful or unlawful.

I mean, there might be other questions raised. We acknowledge that. You could certainly imagine a list like that being used for many lawful purposes or just not being used at all and, thus, not being a final agency action subject to judicial review.

You can also imagine it being used for

post-election law enforcement activity. We've heard a lot about the time between now and the upcoming elections. Nothing in the Executive Order says that this list shall only be used for voter registration or the upcoming election cycle, et cetera.

So, I mean, it's a little hard to address these questions in the abstract, obviously, because we don't have any sort of details yet about what any such list would look like, how and when it is being transmitted, to whom, for what purpose.

THE COURT: Right. It doesn't -- it seems to me that -- and obviously, I asked plaintiffs' counsel this. The list doesn't purport -- I'm sorry. The Executive Order provisions about the list doesn't purport to require any particular state to use the list in any particular way.

But the Executive Order does -- and this may not be feasible and it may not be lawful for reasons that the government will, from the government's perspective presently, like, think about in the future.

But the E.O. by its terms requires the list to be communicated to state election officials no fewer than 60 days before each regularly-scheduled federal election, one of which is this fall.

MR. PEZZI: Yes, Your Honor.

THE COURT: So the E.O. -- put aside what it might

be used for. The E.O. contemplates/requires the list to go to the states something like no later than early September.

**MR. PEZZI:** Yes, Your Honor.

So, I mean, if those deadlines hold and a list is generated and a list is sent on that timeline -- I think it's important to remember what sort of list we are even talking about here.

So the text of the E.O. itself, the list is described as, quote, a list of individuals confirmed to be United States citizens who will be above the age of 18 at the time of the upcoming election who maintain a residence in the subject state.

I mean, it's not a list of, you know, individuals to be targeted. It's not a list of non-citizens. It's a list of individuals who are confirmed to be citizens in the view of the federal agencies compiling the list.

And so you can imagine a whole host of lawful and even uncontroversial uses of such a list. I think the intervenor state defendants even make a reference in some of their filings to how such a list could be used.

Now, I also heard a lot about, for example, plaintiffs are concerned about Texas, for example. They raised examples in their view of Texas being overzealous in its list maintenance or how they manage their voter rolls.

We don't, in the federal government, have a

position on that issue today for the very important reason that that is an argument about Texas, not an argument about the federal government.

So, I think, if and when a list is created and if that list is ultimately sent to the states, whether the states do the things with those lists that plaintiffs are concerned about, for the most part it's not a concern of the federal government and not something that this Court in this lawsuit will be managing.

Now, obviously, if the federal government violates the law on the way to creating or sending those lists in a way that causes someone an Article III injury, that's something that they can seek judicial review over.

But a lot of the story that we heard from plaintiffs' presentation today was far downstream of anything the federal government has done or will do. Instead, it's about how individual states might manage their voter rolls. So I think even setting aside the sort of speculation inherent in some of those concerns.

THE COURT: If the government -- again, we are downstream now. The government sends California a list that is 10,000 people short. And LULAC says, well, we have to deal with this. We have to tell California why this is off. We need to assist people getting their names back on the voter -- or ensuring they don't get taken off of

California's lists or whatever.

It's now gone to California. We care about making sure that people are properly registered and not de-registered to vote in California.

Does LULAC have standing at that point? Put aside who it sues.

MR. PEZZI: So I think the mere transmission of a list --

THE COURT: What if the list is provably under-inclusive?

MR. PEZZI: Again, it's --

THE COURT: Yeah.

MR. PEZZI: It's entirely hypothetical now. But if we're just talking about the mere transmission of a list, no requirement and not even a suggestion that the state should do something with that list, I don't think there's going to be standing to sue the federal government for sending someone a list.

Again, if I could just bracket some of the Privacy Act questions for a moment. I mean, if that was a flagrant violation of the Privacy Act or something, then maybe we would have some privacy question. But, I mean, the --

THE COURT: I'm talking about the organization itself taking steps to deal with the fact that this list,

which hasn't previously existed, and, again, by hypothesis is wrong or under-inclusive or whatever, and they -- as part of their core mission, we want to make sure that all registered, you know, voters are registered and don't get de-registered. So we're now having to take all sort of steps. Not advocating against this policy. We're actually taking concrete steps to get people or to ensure that people stay registered.

**MR. PEZZI:** Yes. I mean, certainly someone would have standing to sue a state if what a state did with that list was something improper with respect to its voter rules. Whether it also had standing to sue the federal government merely for sending an imperfect list, I think, is a harder question.

Here, again, I think the list can be a useful tool in saying, okay, if you appear on this list, there is no further inquiry really needed to confirm that this person -- or there is less further inquiry needed. To be clear, there actually will still be further inquiry needed under state law, which is referenced in the order itself.

For example, you could end up with a felon on that list who is a 35-year-old U.S. citizen not eligible to vote as a matter of state law.

**THE COURT:** Someone who actually doesn't reside in the state notwithstanding the federal list.

**MR. PEZZI:** Certainly. I'm sure no list is ever going to be perfect. So I think -- I mean, maybe you'll hear more from the states about this. But certainly a responsible state would not take that list and then immediately or automatically throw off every single person on their voter rolls who does not per appear on that list.

If they were to do such a thing, it would, A, not be something the federal government told them to do in this Executive Order, and, B, there might be other state or federal law, even constitutional law backstops, that vented at least some of that.

We are now very far downstream, of course, in terms of speculating about what states might do with a possible future list. And I think, as of today, I mean, the Executive Order itself, of course, doesn't do any of this. And I think that's all that Your Honor needs to decide today.

**THE COURT:** All right. So now let's go to the Postal Service.

I mean, obviously, the list has -- there are some calendar-related parts of the E.O. as to the list, but it's sort of backing up from or away from the election.

On the rulemaking, it's forward looking. Right? It's 60 days NPRM, 120 days final rule.

I get the government's position is we want you to

dismiss this case on Article III and other grounds, and that would surely, in the government's view, happen before that 120-day period ends.

But if it didn't, I assume the government would agree with the fact that if that rule dropped on whatever the day is now, 120 days out, plaintiffs would have a much more concrete target to litigate the lawfulness of whatever the Postal Service has decided it wants to do.

**MR. PEZZI:** Yes, Your Honor.

**THE COURT:** Or can do.

**MR. PEZZI:** Yes, Your Honor.

I mean, absolutely. We litigate, you know, the legality of final rules all the time.

**THE COURT:** Yes, I remember.

**MR. PEZZI:** I'm sure, Your Honor.

So, you know, I'm sure we would maybe have some remaining threshold arguments, although most of the threshold arguments in the briefings before Your Honor right now would be gone at that point with respect to the Postal Service.

We might have some other small issues to fight over with respect to jurisdiction and justiciability, but at that point, there would be a concrete rule before Your Honor that I'm sure the parties could and would --

**THE COURT:** The problem is, from -- at least from

a prudential perspective, that is end of July. Right? Yeah. And that's -- now we are on the cusp of election season, and we are starting to really bump up against *Purcell* and other prudential concerns that --

I mean, hypothetically, the Postal Service says, yes, we think the following things should be done as to mail-in and absentee ballots, and people start planning for that new world, hypothetically, and then I come in and have to decide whether to enjoin it or not. And the government says, Well, you shouldn't do that; we are on the eve of elections. So why shouldn't I take it up now?

**MR. PEZZI:** It's a fair question, Your Honor. I'd answer it in two ways. Plaintiffs' counsel has said -- I think said that she can guarantee that the government would raise a *Purcell* argument at that stage. I think that is overstating things significantly.

I, of course, can't and won't take an argument off the table about what the world will look like in August from the lectern today, but it's far from clear to me that that sort of consideration would apply here.

I think part of our argument in this case on the merits is likely to resist the suggestion from some of the plaintiffs' filings here that what's happening here is election administration at all. So there may be a world in which that principle is relevant to this litigation,

depending on what it looks like at that time. I definitely don't think it is a guarantee.

The more important answer, though, is that although I to some extent sympathize with plaintiffs' concerns about wanting to plan for an upcoming election, and I share plaintiffs' views about the importance of elections, there is no Article III elections exception.

So ultimately, the arguments we have raised here apply in an election context like they would in any other context. I don't think plaintiffs can get judicial review of a proposed rule or a possible future list that may or may not ever leave the federal government just because they are worried about how it might interact with an election.

I mean, that's ultimately the doctrinal answer to that question, that I don't think it is relevant to the consideration before Your Honor today about, you know, whether plaintiffs have shown jurisdiction.

One small point of clarification to offer, I think the premise of one of Your Honor's questions and some of plaintiffs' arguments perhaps suggested or perhaps I misheard Your Honor about the way the two -- that these lists might interact.

To be absolutely clear, I don't read the Executive Order -- the state citizenship lists that are described in Section 2(a) of the Executive Order, I don't think that's

necessarily the same list as the lists that are referenced to the Postal Service.

THE COURT: Oh, to the extent that I asked a question that suggested that, that is not my assumption.

MR. PEZZI: I just wanted to clarify that for the record. I think there is more than one list, I guess, referenced in this order, and just wanted that to be clear.

THE COURT: Obviously, for PI purposes, you have irreparable harm, and I get that there's a relationship between irreparable harm and injury, obviously. And then on likelihood of success, the plaintiffs have to establish that it's likely that I have jurisdiction and that they're likely to prevail.

I realize that a lot of paper was devoted to the jurisdictional-like arguments. But what's the best argument that the Postal Service could issue a rule that says that it will not transmit mail-in or absentee ballots from an individual unless an individual has been enrolled on a state-specific list of a kind identified under Section 3?

MR. PEZZI: Sure, Your Honor. I don't think I have --

THE COURT: I know your position is, well, they might not do it. Who knows whether the NPRM is going to include that? They have an independent obligation. All that stuff.

But what is the best argument as to why a rule to that effect is within the U.S. Postal Service's authority?

MR. PEZZI: I think the answer to that question would depend on exactly what the Postal Service is doing, what statutory authority they invoke to take that action, and it's just not the kind of thing that we can address in the abstract.

I know that's a somewhat unsatisfying answer, but I am very hesitant to just sort of canvas the U.S. Code for how could the Postal Service do such a thing.

I mean, obviously, as the declarations show and as plaintiffs' notice today seems to confirm fully consistently with the declarations, by the way, in the government's view, these very questions are under consideration within the government right now.

THE COURT: I think that notice cuts multiple ways.

MR. PEZZI: Candidly, I think it cuts in favor of the government.

THE COURT: I figured you would.

MR. PEZZI: It confirms that the declarations -- assuming what is in that article is accurate, it is fully consistent with the story told by the declarations, which is that there are ongoing deliberations in the government and no final decisions have been made.

**THE COURT:** Right. Okay. Anything else you would like to add, Counsel, before I give the states a chance?

**MR. PEZZI:** Just one small thing on the merits I just wanted to point to because it was heavily featured in plaintiffs' reply briefs.

Obviously, a lot of our arguments in this case point to not just the sort of what the plaintiffs call the savings clause in the Executive Order about applicable law, but also some of the other language about feasibility constraints.

They cite to a 2018 Ninth Circuit case that says a savings clause shouldn't be read to destroy the Executive Order. They cite to a three-judge District Court and opinion authored by Judge Katz as the common cause case, which quotes in a footnote that language.

I mean, the most important thing about that is, all that language predates the Supreme Court's *Trump v. New York* opinion. That is the most important authority for this argument that we raise in the brief.

So we think, notwithstanding what the Ninth Circuit thought in 2018, the Supreme Court in 2020 very clearly thought it was very important that the presidential memorandum at issue about the census in that case had feasibility and legality constraints, and so we think that's important to our argument here.

Actually, that common cause opinion, that three-judge District Court opinion, was in some respects vindicated by that Supreme Court opinion. That was reviewing the same presidential memorandum. So there is some language in a footnote that plaintiffs like, but I think the thrust of that opinion is fully consistent with the government's argument here, as well as the D.C. Circuit's prior decision in *Albaugh*.

THE COURT: Which is the opinion I mentioned earlier.

MR. PEZZI: Yes, Your Honor.

So unless Your Honor has any other questions, that's all I have to say.

If and when the time comes where if this litigation remains on Your Honor's docket, like I said, I'm sure we can work out something --

THE COURT: You will take my request for an update under advisement.

MR. PEZZI: I think it would be prudent to confer both within the government and with plaintiffs before I --

THE COURT: I agree with that.

MR. PEZZI: But I'm sure we could work something out.

THE COURT: Thank you, Counsel.

MR. PEZZI: Thank you, Your Honor.

**MR. CAPOZZI:** Good afternoon, Your Honor. Louis Capozzi on behalf of the State defendants.

**THE COURT:** Mr. Capozzi.

**MR. CAPOZZI:** I know we've been going for a long time. I'll try not to repeat my colleague's points as to why the Court should deny a preliminary injunction. The State defendants have made some additional arguments, and I want to focus on those.

First, I would like to go through some of the standings theories and just offer some comments there. On resource diversion standing, our position is that the Supreme Court abolished resource diversion standing in *Alliance for Hippocratic Medicine*. We would point the Court to the Second Circuit's decision. That's 167 F.4th at 6 to 18.

You know, in our brief we talk about how, really, the injuries alleged here are indistinguishable from those in *Alliance for Hippocratic Medicine*. Today my friends on the plaintiffs' side talk about educating volunteers, educating voters, lots of educating and lots of training.

The Alliance for Hippocratic Medicine made the same allegations. They talked about needing to educate the public in response to the challenged policies as well, but that is not the type of injury the Supreme Court credited; that's not --

What the Supreme Court talked about was a direct impairment, and the analogy that the Court used was a manufacturer supplying defective goods directly to a retailer. That's very different than, you know, government enacts a policy and, in response, we have to train people, you know, to take some vague actions in response. I mean, that's just a self-inflicted injury under *Clapper*. That's what the U.S. Supreme Court said in *Alliance for Hippocratic Medicine*.

We would submit that under that decision there is no resource diversion standing here.

Now, the Court asked if it's unreasonable to plan. Is it unreasonable for the plaintiffs to plan for what the federal government could do following the E.O., following the proposed rule, following the final rule?

I don't think it's crazy, but I don't think it was crazy what the plaintiffs in *Clapper v. Amnesty International* did. They also took steps to plan, and they tried to point to that as a basis for standing, and the Supreme Court said that's a causation problem. That's a self-inflicted injury. You can plan. We are not going to say that you can't plan. But that's a self-inflected that can't confer standing.

Another theory of standing is that unidentified voters could be removed from the voter registration rolls.

There is a lot of layers of speculation that the Court has already talked about with different counsel. The one I would like to focus on is the states, where the states come into this.

My friends suggest that the states are just going to get these lists and then start throwing voters off the list. You know, on Page 13 of their reply brief, the DNC says that the states will reflexively, quote, pull voters from the registration rolls, end quote, but that just doesn't seem plausible.

Within each state -- I mean, first of all, some states won't use the lists. I think that seems pretty clear. Even among the states that want to consider looking at the lists, every state has different laws on removing voters from the voter registration list. There's also lots of federal case law limiting the ability of states to remove voters from the registration list. This is going to vary state by state, and in a lot of states it's going to vary county by county as well.

In Texas, for example, which my friends on the other side talked about, voter registration is done at the county level. So we are speculating not just about what the 50 states are going to do with the lists but what tens of thousands of county election officials around the country might do. So that's just way too much speculation to be a

concrete injury or for it to be fairly traceable under *Allen v. Wright*.

I want to talk about candidate standing briefly. My friend from LULAC suggested that in *Bost*, that *Bost* stands for the proposition that you can basically always challenge an election-related rule if you're a candidate. But I think *Bost* is more limited and more careful than that.

*Bost* talked about candidates having standing to challenge rules that affect the counting of votes. That's not what this case is about. This is about, maybe, voter registration lists being effected, maybe. That's not at issue in *Bost*.

But even if we can understand *Bost* to reach rules that are maybe related to voter registration, there's just way too much speculation required to conclude that voter registration rolls will be changed, let alone in a way that would actually disadvantage plaintiffs' candidates. So this is a pretty far cry from *Bost*.

The Supreme Court has warned about boundless theories of standing. We would encourage the Court to reject this kind of boundless understanding of candidate standing. It doesn't reach any rule tangentially related to elections.

In terms of privacy violations, I don't want to dwell on this too much. I think *Trans Union* makes clear

that plaintiffs' asserted privacy violations are not cognizable injuries. Plaintiffs have not met their burden to show a common-law analog.

They talk about the tort of interference with private affairs. But another judge in this court talked about that tort in *Alliance for Retired Americans v. Bessent*. I would suggest that case supports the state.

The element of that tort is it has to be an interference with private affairs that would be highly offensive to a reasonable person; that's the element of that tort. It's just hard to see how citizenship information and your age, you know, yes/no citizen, yes/no over 18, that that would be highly offensive to a reasonable person.

A lot of the cases plaintiffs cite are about things like Social Security information, private medical information, banking information. In the *Venetian* case, which the DNC cites a lot, that's about internal trade secrets and hiring strategies that they didn't want turned over to the union for leverage in collective bargaining negotiations.

So just the fact that you're a citizen, when, in order to register to vote, you already have to say that you're a citizen, I don't see how the element of that tort can be satisfied here.

Finally, the NAACP talks about a fear of

prosecution injury. You heard a lot about chill and people being scared. The Supreme Court has a pretty demanding standard defined that a fear of prosecution or a chill injury is imminent. *Clapper v. Amnesty International*, again, is the standard.

My friend cited *Susan B. Anthony List v. Driehaus*. That is not apt. That is a First Amendment chill injury. Supreme Court has recognized a different imminent standard, especially for First Amendment claims. There is no First Amendment claims here.

But in any event, the evidence of prosecution in *Susan B. Anthony List* was a lot stronger, including the fact that the plaintiff had recently been prosecuted under the challenged statute.

Here, all we have are vague allegations of chill. There is no allegation of an intent to violate any of the challenged federal laws. There is no evidence of investigations. There is no past prosecutions. There is really nothing.

I will turn now to the merits. Section 2(a) --

**THE COURT:** Briefly.

**MR. CAPOZZI:** Briefly.

First, nothing said about Section 2(b) today. So I understand plaintiffs to not be pressing their challenge to Section 2(b).

On 2(a), I would just refer the Court to the arguments made in our brief that I think the plaintiffs have sort of misframed this case. They say that the Executive needs to point to affirmative statutory authorization to compile information within the executive branch.

We would say under the *Youngstown* Justice Jackson concurrence, the Executive has some inherent authority to manage information already in its possession.

Of course, the backup information is the Privacy Act. All kinds of questions there. Whether it's a routine use. Whether there's a cause of action at all. Whether the order can be implemented in a way consistent with the Privacy Act, as the order instructs. You know, I don't need to repeat all of that.

Finally, on Section 3 of the E.O., you know, we don't have a final rule. We don't even have a proposed rule. I also think that there is a very serious constitutional problem with the remedy that plaintiffs are asking for.

They are asking for an order barring the President from asking an agency to engage in rulemaking. That's a pretty radical remedy. There's really -- certainly no binding precedent that supports an injunction like that.

I think they would have to satisfy a clear statement rule, as suggested in the Supreme Court's

*Braidwood* case, to show that Congress could bar the President from supervising USPS. I don't think they've even tried to meet that burden.

They respond to the state's constitutional argument by saying, well, USPS is like the Federal Reserve. The Federal Reserve is allowed to be independent. But these agencies are really nothing alike. As the U.S. Supreme Court's landmark decision in *Myers* -- and even *Humphrey's Executor* makes clear. *Humphrey's Executor* distinguished the Postal Service.

So just because Congress, in 1970, purported to make it independent does not mean that USPS is like the Federal Reserve, which has a historical lineage tracing back to the first bank of the United States.

So, with respect, if the Court enjoined the President from trying to supervise USPS from trying to ask them to consider rulemaking, that would violate Article II of the Constitution.

Unless the Court has any questions, we would ask the Court to deny the PI.

**THE COURT:** Thank you very much, Counsel.

I am going to allow plaintiffs 10 minutes for rebuttal, to be divided however -- yeah, use that clock at your own peril.

**MS. LANG:** Fair enough, Your Honor.

THE COURT: It actually seems right today, which is, I guess, the old adage. A stopped clock; that's the joke.

MS. LANG: Fair enough.

I'll try to move through things quickly, Your Honor.

On the last question about remedy, I think that the states are just wrong about what the remedy has been asked for. We are not asking for an injunction against the President. The President can write down on a piece of paper an Executive Order.

The question -- the remedy is to enjoin the implementation of the unlawful sections of the order. *Youngstown* is very clear that the President needs to have authority to issue the order.

I went back and reread *Youngstown* today. It's not about the authority of the folks to follow through and whatnot, although that's relevant too. But the question here today is: Did the President have the power to issue this order?

And I didn't hear anything from the other side explaining how he would have the power, given the structure of our Constitution, the electors clause, the qualifications clause, as well as the places where Congress has spoken on this issue, how possibly, under a *Youngstown* framework, the

President has the authority, not just to perhaps issue an order to USPS -- generally, I don't think it can -- but to issue this order. And there's been no argument about that.

I think that all of these arguments about why you shouldn't step in today are setting up Goldilocks strategies that would actually prevent this Court from answering that straightforward and incredibly important question: Can the President issue orders trying to change our election laws?

And the answer to that is, No. But if you look at the defendants' brief, for example, they say, well, maybe you can challenge 3(b) if that rule goes into effect and USPS did it solely because of the Executive Order.

I think that's plainly setting up an impossible standard for plaintiffs down the line to prove that USPS didn't, notwithstanding this Executive Order, just decide on its own judgment to do this.

That's just one more reason why it's important that we not be deprived of the opportunity of addressing the merits of this question about the ultra vires acts of the President.

And those ultra vires acts of the President are having present-day effects. Throughout an election year, our clients are talking to voters. They're not going to get a second chance to talk to that voter. If they're out at the grocery store talking to a voter today, they are meant

to tell them how to register, how to stay registered, how to vote absentee.

They can't do that in the way they normally do with this amount of uncertainty. So the harm is happening today. This is a preliminary injunction that's not mandatory. It's meant to maintain the status quo.

And prudential considerations like *Purcell* all weigh in favor of keeping the status quo, especially when the defendants don't even put forward any argument that this could actually happen in a lawful manner.

The final thing I want to say is, I think all of the cases that defendants cite focusing on other cases where courts have declined to intervene pre-enforcement or pre-implementation of rules, they actually cut against the state -- or against the Department of Justice.

For example, if you were to look at the Executive Order from Trump -- the census case -- and you were to put that next to this Executive Order, you'll know why you should come to a different outcome.

That Executive Order said the Department of Commerce should give the President some information, and then the President, within his discretion, later would decide what to do with that information to promote a policy goal.

That's not this order. This order does not come

back to the President to decide what to do later.  This isn't an order that says here's what's going to happen and here's what's going to happen on a very specific timeline that runs directly into ongoing mid-term elections.

And every one of the other cases that they cite has the same exact problem.  Whether it's *Center for Democracy and Tech* or *Defendants of Wildlife*, those are cases where there was maybe no -- you know, *Defendants of Wildlife*, it was just that they were going to issue a regulation.  There was no information about what the regulation would contain.

Likewise, the E.O. in *Center for Democracy and Tech* directed an agency to clarify the law and consider various things.  It did not have directions about what would be in the order.

And so they cut completely against them here.

The plaintiffs have established an irreparable injury, and under those circumstances, the Court should not credit various delay strategies that would deny plaintiffs an adequate remedy.

**THE COURT:**  Thank you, Counsel.

**MS. LANG:**  Thank you, Your Honor.

**MR. de NEVERS:**  Orion de Nevers for the NAACP plaintiffs, Your Honor.

Just three quick points.  On the USPS point,

Your Honor, the government was hardly willing to commit to the proposal you came up with today. They certainly have not committed to USPS implementing this order in a lawful way.

There is no lawful way for USPS to implement the order. That's why this is a facial challenge that needs no further factual development. The President of the United States has no authority to direct the USPS to propose a rule that violates its own statutes.

The Court doesn't need to reach this question about the President's authority to direct USPS in the abstract. This rule would violate the requirement that the Postal Service provide only necessary postal services, its universal service, and non-discrimination mandates and all the statutes on non-mailable matter.

The brief identifies no constitutional or statutory authority for the President to do this. None has been identified here today.

On the state lists, again, the President has no authority to direct DHS to undertake actions that it has no statutory authority to carry out. This all goes back to *Youngstown*. Executive orders must come either from a constitutional provision or a statutory authority. We have heard none here today.

Then, there was a suggestion that some of these

cases we rely on are outdated. *LULAC* is from 2025. *NPR* is from 2026. Those both talk about executive orders not being able to destroy themselves through savings clauses. I will also just point out that the USPS provision has no savings clause, Your Honor.

And then, finally, on standing, there's a suggestion that some of these actions that plaintiffs are undertaking might be voluntary, and that was kind of cabined to some sort of abstract educational purpose.

Plaintiffs are doing far more than just educating the public in the abstract. They are working with individual voters every day. They are developing infrastructure to prepare for August 5th, when they will have to help -- when they will have to implement procedures for their clients to obtain the documentation necessary to cure deficiencies.

We know there will be deficiencies. That is not a hypothetical. The McDonald declaration states unequivocally that the federal government has no set of data that can enable it to implement these lists accurately. My friend admitted that the lists would not be perfect. So my clients have to prepare for this eventuality.

It's a mandatory command that these lists be issued, that they contain cure procedures, and it is the core mission of our clients to help voters navigate those

procedures.

They cannot wait until days and weeks before primaries and the general election. As *Newby* said, we do not have to wait for the sword of Damocles to drop. Sixty days before an election is not enough time to cure an inaccurate inclusion on one of these lists.

The Brags declaration makes this very clear in concrete and stark detail that there is no feasible way for him to correct his name-change issues within 60 days. He's tried to correct his information with SSA multiple times and been unsuccessful. That's all laid out in his declaration.

Your Honor, preliminary injunctions are reserved for extraordinary circumstances. And when the President of the United States issues an Executive Order and the federal government is unable to come up with any authority for that order, it is an extraordinary circumstance, and it is harming our clients every single day in the middle of an election season.

With great respect, we urge the Court to enjoin implementation of this order.

**THE COURT:** Thank you, Counsel.

I was going to give you an opportunity. You started. You can close.

**MS. MADDURI:** Thank you, Your Honor.

I just want to underscore a couple of points, and

I will try not to repeat anything my colleagues said.

You just asked the government to identify any argument that USPS could conceivably implement the mandates in this order in a lawful way, and they couldn't give you an answer. All they said is they don't know what it would look like, but they did not say that there is any legal authority for USPS to carry out the mandates in that order or for the President to have issued them.

I just want to clarify, we are not saying that the President can never ask an agency for rulemaking, but he cannot ask for unlawful rulemaking, and that's what this E.O. does.

Counsel for LULAC, I think, very well described the differences in the E.O.s and the executive memorandums that defendants rely on. I just wanted to highlight *Albaugh*, the case that Your Honor referenced.

That involved an Executive Order that set a general policy that agencies should not, to the extent permitted by law, require or prohibit project labor agreements.

And that -- the issue there was that that mandate could be implemented both lawfully and unlawfully. So the savings clause actually had a function there, and there you do assume that they'll do it lawfully. But here, the savings clause can't operate that way because there is no

conceivable way to implement either of the challenged provisions in a lawful way.

*Albaugh* has been repeatedly distinguished on that basis, including in this District and, of course, in *LULAC* last year, where the order contains a clear dictate to take unlawful action.

The one other thing I wanted to highlight about *New York v. Trump* and *Common Cause v. Trump*, that Executive Order arose in the context of a domain where the President and the Commerce Secretary actually enjoy a lot of authority.  The case involved apportion in the census, a demain Congress has explicitly assigned broad authority and discretion to the President and the Commerce Secretary.

Here, neither the agencies nor the President have any comparable role in elections.  The power to regulate elections has been clearly assigned to the states in Congress.  So the illegality of the E.O. exists at the outset at the moment the E.O. was issued.

So it's just completely different, and it's also different in all of the terms that my colleague highlighted.

The last thing I just want to clarify in the Privacy Act claim, because we had a lot of talk about we don't know how it's going to go, we don't know what's going to happen, and that's going to affect its legality.

I just want to clarify that our claim about the

Privacy Act is that disclosing records for use in the computer-matching program is unlawful without a separate legal authority authorizing that matching, and there's no legal authority for doing that matching.

Defendants have completely failed to identify any such authority, and the issuance of a SORN, that can't cure that because SORNs are only for routine uses. So that can't rescue that sort of conduct.

The routine-use exception requires that the use of the record is compatible with the purpose it was originally collected for. Here, none of the records at issue were collected for the purpose of reviewing citizenship and residency for purposes of voting.

So there is just absolutely no way that it can be conceivably implemented lawfully, and none of the procedural sorts of mechanisms that the government might undertake rescue that issue.

THE COURT: Thank you, Counsel.

MS. MADDURI: Thank you.

THE COURT: So thank you-all for the excellent arguments and the excellent briefs.

I don't have much to say other than to say I'm going to take the PI under advisement, or technically, I guess, the PI motions, but I get that all plaintiffs are seeking similar relief.

I guess there are two specific things to say about next steps. The first is that very likely you will hear from me -- I understand the time pressure here -- through a memorandum opinion and order that resolves the preliminary injunctions -- the motions for preliminary injunction. That, I think, is probably the most salient piece of this.

The second is, though, that in the event that before that opinion comes out, that if there is anything even approaching a material change in the factual scenario on the government side, that the government would so notify me.

I get the government's position that can't commit to particular undertakings in the future, and if the case gets dismissed, one has to figure out what to do with it.

But while I have under advisement the PI, I think -- well, put it this way. I expect that the government would be, quote/unquote, conservative in thinking through the kinds of things that it would notify me about, action it takes either as to the USPS part of the E.O. or the list portion.

So with that, thank you-all again for the excellent arguments.

Counsel.

**MS. LANG:** I would just like to make one request, Your Honor, if at all possible.

**THE COURT:** Okay.

**MS. LANG:** Which is, the LULAC plaintiffs would request, if at all possible, that there be actually an order with respect to the notification.

**THE COURT:** No. I thought that through. I understand your point.

**MS. LANG:** Thank you, Your Honor.

**THE COURT:** I've landed where I'm going to land. I understand the issue.

The government understands my view, and it would not be good for the government if it took anything other than capacious interpretation of what my expectations are. And I expect the government will comply with that.

So, again, thank you-all for the excellent arguments, the excellent briefs. The matter is under advisement. You will hear from me in an opinion.

I guess, the only thing I would say is if for some unlikely reason I need something additional, that is to say facts or briefing on some other supplemental point, you will hear from me in a Minute Order or whatever, but I am not presently anticipating that.

Okay. Thank you-all.

(Proceedings concluded at 4:23 p.m.)

**C E R T I F I C A T E**

I, Lorraine T. Herman, Official Court Reporter,

certify that the foregoing is a true and correct transcript

of the record of proceedings in the above-entitled matter.

May 15, 2026                    /s/ Lorraine Herman
        DATE                              REPORTED BY

**COURT REPORTER: [1]** 12/12
**DEPUTY CLERK: [1]** 3/2
**MR. CAPOZZI: [4]** 4/3 86/1 86/4 91/22
**MR. de NEVERS: [4]** 3/18 51/13 51/15 97/23
**MR. PEZZI: [45]** 3/22 55/17 57/22 58/24 59/20 60/14 60/17 61/5 61/12 61/19 63/2 63/13 66/15 67/3 67/6 67/12 67/15 67/24 68/3 68/14 69/14 71/13 72/2 72/11 73/24 74/3 76/7 76/11 76/13 77/9 78/1 79/9 79/11 79/15 80/12 82/5 82/20 83/3 83/18 83/21 84/3 85/11 85/19 85/22 85/25
**MS. LANG: [29]** 3/12 3/17 29/24 35/23 35/25 37/19 38/11 38/16 38/22 39/5 39/8 39/14 42/10 44/17 44/20 44/24 45/15 45/22 45/25 46/2 47/19 50/24 51/12 93/25 94/4 97/22 104/24 105/2 105/7
**MS. MADDURI: [72]** 3/8 5/17 5/23 6/16 6/19 6/22 7/1 7/6 7/10 7/16 7/18 7/23 8/11 8/16 8/22 9/14 9/18 10/9 11/10 11/17 12/13 13/5 13/9 13/12 13/19 14/17 15/3 15/9 15/22 16/2 16/22 17/4 17/10 17/17 18/12 18/15 19/12 20/7 20/9 20/14 20/17 20/20 22/7 22/12 22/15 22/23 23/12 24/17 25/8 25/19 25/24 26/18 27/3 27/8 27/15 28/3 29/3 29/9 29/13 29/18 30/3 30/6 30/11 31/6 31/11 31/15 31/25 33/24 34/10 34/23 100/24 103/19
**THE COURT: [149]**

**/**
**/s [1]** 106/11

**1**
**10 [2]** 19/3 46/12
**10 minutes [1]** 93/22
**10,000 [1]** 75/22
**11 [1]** 52/4
**1100 [1]** 2/9
**1101 [1]** 1/20
**1114 [2]** 1/3 3/3
**120 days [3]** 27/23 78/24 79/6
**120-day [1]** 79/3
**13 [1]** 88/7
**14 [1]** 1/5
**14th [1]** 1/20
**15 [1]** 106/11
**16 [5]** 53/15 53/23 53/24 54/4 54/12
**167 [1]** 86/14
**1700s [1]** 24/18
**1789 [1]** 24/12
**18 [9]** 49/17 53/16 53/19 54/10 64/21 65/3 74/10 86/15 90/12
**18 months [1]** 64/6
**19 [1]** 53/24
**1970 [1]** 93/11
**1:26-1114 [1]** 1/3

**2**
**20 [5]** 53/16 53/19 53/25 54/5 54/9
**200 [1]** 2/14
**20001 [3]** 1/15 2/5 2/22
**20005 [1]** 1/21
**2002 [1]** 62/12
**2018 [2]** 84/11 84/21
**2020 [1]** 84/21
**2025 [1]** 99/1
**2026 [3]** 1/5 99/2 106/11
**2026-1114 [1]** 3/3
**20530 [1]** 2/10
**21 [1]** 54/10
**22 [1]** 54/10
**250 [1]** 1/14
**2700 [1]** 37/3
**29th [2]** 41/19 41/21
**2:10 [1]** 1/6

**3**
**30-day [1]** 69/7
**333 [1]** 2/21
**35-year-old [1]** 77/22

**4**
**40 primary [1]** 52/21
**400 [2]** 1/14 1/20
**45 days [1]** 49/13
**45 minutes [2]** 5/2 5/6
**4:23 p.m [1]** 105/23
**4th [1]** 52/22

**5**
**50 [11]** 16/9 16/10 16/12 18/3 44/21 45/2 45/10 46/16 48/1 48/3 88/23
**5th [1]** 99/13

**6**
**60 days [4]** 49/15 73/22 78/24 100/9
**601 [1]** 2/4
**63101 [1]** 2/14

**8**
**815 [1]** 2/14

**9**
**90 days [1]** 12/15

**A**
**abaldwin [1]** 1/22
**abdicating [1]** 43/7
**abetting [1]** 54/18
**ability [3]** 30/19 43/14 88/16
**able [6]** 28/7 29/21 35/11 41/11 68/11 99/3
**abolished [1]** 86/12
**about [141]**
**above [2]** 74/10 106/5
**above-entitled [1]** 106/5
**absentee [3]** 80/7 82/17 96/2
**absolutely [9]** 20/20 21/5 34/10 44/24 48/17 56/11 79/12 81/23 103/14
**abstract [5]** 73/7 83/7 98/12 99/9 99/11
**Accardi [2]** 1/13 5/20
**accepting [1]** 65/4
**accepts [1]** 44/9
**access [2]** 20/10 21/2
**accomplish [1]** 55/5
**accuracy [1]** 52/6

**accurate [1]** 83/23
**accurately [1]** 99/20
**accusations [1]** 54/20
**accused [2]** 19/14 54/17
**acknowledge [1]** 72/21
**across [4]** 6/9 8/7 45/11 52/13
**act [51]** 6/17 6/19 7/15 7/20 7/24 7/25 8/19 8/24 9/2 9/9 9/11 9/15 9/17 10/4 10/6 10/8 10/10 10/11 11/5 11/15 11/16 16/24 21/10 23/13 24/4 24/14 24/21 25/11 25/14 25/25 26/10 38/6 38/7 51/10 63/1 63/10 68/7 68/13 69/1 69/6 69/19 70/16 71/12 72/15 72/17 76/20 76/21 92/10 92/13 102/22 103/1
**Act's [1]** 26/9
**action [18]** 1/2 23/23 24/4 24/7 24/22 25/16 25/23 26/16 32/10 38/7 56/16 59/6 70/16 72/23 83/5 92/11 102/6 104/19
**actions [5]** 43/21 60/19 87/6 98/20 99/7
**actively [4]** 30/15 33/3 34/14 34/14
**activity [1]** 73/1
**actors [3]** 43/22 62/3 62/4
**acts [2]** 95/19 95/21
**actual [1]** 61/21
**actually [38]** 7/25 11/8 11/11 11/20 11/25 12/8 12/21 13/22 13/23 15/4 18/12 19/16 29/18 29/20 30/12 31/22 31/25 32/22 35/6 40/8 48/8 50/21 51/1 51/3 65/11 69/9 77/6 77/19 77/24 85/1 89/17 94/1 95/6 96/10 96/14 101/23 102/10 105/3
**adage [1]** 94/2
**adamantly [1]** 32/7
**add [2]** 20/9 84/2
**adding [1]** 21/4

## A

**additional [4]** 20/22 58/13 86/7 105/18
**address [6]** 5/12 34/15 49/20 50/17 73/6 83/6
**addressed [2]** 56/5 63/18
**addressing [2]** 24/21 95/18
**adequate [2]** 25/25 97/20
**administer [1]** 49/1
**administered [1]** 35/2
**administration [3]** 48/22 64/13 80/24
**admitted [1]** 99/21
**adopt [2]** 32/2 32/6
**adoption [1]** 32/5
**adults [1]** 52/3
**advance [1]** 30/12
**advise [2]** 61/8 61/10
**advisement [4]** 85/18 103/23 104/15 105/16
**advising [1]** 59/25
**advocate [2]** 34/16 59/11
**advocating [2]** 59/17 77/6
**affairs [2]** 90/5 90/9
**affect [4]** 29/1 29/7 89/9 102/24
**affected [5]** 17/1 44/16 48/24 49/8 61/4
**affects [1]** 35/9
**affirmative [1]** 92/4
**AFL [1]** 26/5
**AFL-CIO [1]** 26/5
**after [6]** 22/4 22/22 51/6 55/2 55/21 66/4
**afternoon [17]** 3/2 3/8 3/11 3/12 3/16 3/17 3/18 3/21 3/22 4/2 4/3 4/5 5/17 51/13 51/14 55/17 86/1
**again [27]** 4/25 5/17 8/12 9/21 14/8 16/7 19/22 22/3 24/14 32/4 32/12 32/16 45/8 65/6 69/22 70/6 70/13 71/14 75/20 76/11 76/19 77/1 77/15 91/5 98/19 104/21 105/14
**against [13]** 16/15

17/18 34/16 34/17 37/2 59/11 59/17 77/6 80/3 94/9 96/14 96/15 97/16
**age [5]** 14/21 64/21 65/2 74/10 90/12
**agencies [15]** 6/10 6/23 7/5 10/12 23/16 31/20 60/1 60/8 60/18 68/11 70/8 74/16 93/7 101/18 102/14
**agency [12]** 32/4 56/16 56/22 57/10 57/11 57/15 64/25 64/25 72/23 92/21 97/13 101/10
**ago.mo.gov [1]** 2/15
**agree [11]** 10/2 28/2 29/12 42/10 42/16 45/25 46/2 67/22 71/15 79/5 85/21
**agreed [1]** 33/18
**agreement [1]** 70/3
**agreements [2]** 69/20 101/20
**agrees [1]** 64/7
**aided [1]** 2/25
**al [9]** 1/3 1/5 2/8 2/11 2/13 3/3 3/4 3/5 3/25
**Al-Shareffi [2]** 2/8 3/25
**Albaugh [3]** 85/8 101/16 102/3
**Albright [5]** 53/15 53/18 53/24 54/4 54/10
**alike [1]** 93/7
**all [58]** 5/5 5/24 11/18 14/9 18/11 26/6 28/22 30/6 33/6 35/5 36/6 37/23 44/21 45/4 46/16 47/25 48/3 48/4 49/5 50/6 58/10 58/19 60/15 62/17 65/5 70/6 71/1 72/3 72/23 77/3 77/5 78/16 78/18 79/13 80/24 82/24 84/17 85/13 88/11 91/15 92/10 92/11 92/14 95/4 96/7 96/11 98/14 98/21 100/11 101/5 102/20 103/20 103/24 104/21 104/25 105/3 105/14 105/22
**all-powerful [1]** 5/24
**allegation [1]** 91/16
**allegations [3]** 59/22

86/22 91/15
**alleged [5]** 36/19 37/16 39/16 62/16 86/17
**Allen [1]** 89/2
**Allen v. Wright [1]** 89/2
**Alliance [11]** 34/8 34/18 35/8 39/1 59/3 59/9 86/13 86/18 86/21 87/8 90/6
**allow [5]** 8/1 24/4 47/7 52/5 93/22
**allowed [1]** 93/6
**allows [1]** 47/4
**alone [1]** 89/16
**along [2]** 10/25 19/13
**already [22]** 4/24 8/5 17/13 18/15 22/20 22/25 36/20 36/21 37/1 37/10 41/24 43/11 46/6 51/9 53/1 54/6 54/20 55/11 56/4 88/2 90/22 92/8
**already-trodden [1]** 4/24
**also [37]** 3/25 4/5 7/23 13/24 16/23 17/16 18/25 19/1 19/3 19/12 26/7 26/20 26/25 27/8 27/11 33/9 35/10 35/21 40/2 43/20 44/25 45/23 46/12 48/13 52/2 56/1 66/8 69/19 72/25 74/21 77/12 84/9 87/18 88/15 92/17 99/4 102/19
**also -- and [1]** 66/8
**alternative [1]** 34/19
**alternatives [1]** 25/25
**although [3]** 79/17 81/4 94/18
**always [1]** 89/5
**am [7]** 5/17 15/12 16/8 27/13 83/9 93/22 105/20
**amended [2]** 58/3 69/6
**Amendment [3]** 91/7 91/9 91/10
**amendments [1]** 69/15
**American [2]** 40/24 42/21
**Americans [2]** 39/1 90/6
**Americans' [1]** 50/9

**Amnesty [2]** 87/17 91/4
**among [3]** 6/23 7/5 88/13
**amount [5]** 4/15 4/19 49/4 49/23 96/4
**analog [3]** 24/8 24/18 90/3
**analogies [2]** 64/2 64/4
**analogous [2]** 24/21 24/23
**analogy [1]** 87/2
**analysis [5]** 11/7 17/9 40/14 40/19 43/24
**analytics [1]** 11/3
**angle [1]** 27/14
**Anna [2]** 1/19 3/14
**Anna Baldwin [1]** 3/14
**another [8]** 12/9 13/21 22/20 64/25 69/10 70/1 87/24 90/5
**answer [13]** 50/15 58/24 61/17 65/2 69/22 72/12 80/13 81/3 81/14 83/3 83/8 95/9 101/5
**answered [1]** 68/21
**answering [1]** 95/6
**answers [1]** 41/18
**Anthony [2]** 91/6 91/12
**anticipating [1]** 105/21
**any [44]** 6/15 7/9 10/12 12/7 12/8 12/18 14/14 14/14 15/20 18/10 33/19 35/2 37/5 37/5 38/5 47/3 47/17 49/22 50/4 51/6 53/13 56/15 56/17 57/2 57/14 61/25 67/14 73/8 73/8 73/14 73/15 78/15 81/9 85/12 89/22 91/11 91/16 93/19 96/9 100/15 101/2 101/6 102/15 103/5
**anyone [9]** 4/16 6/13 9/13 19/10 29/1 29/8 56/16 57/6 59/25
**anything [17]** 8/15 12/21 12/24 14/24 16/4 33/20 55/12 61/8 62/22 64/16 64/17 75/16 84/1 94/21 101/1 104/8

## A

anything... [1] 105/11
APA [1] 56/17
appear [2] 77/16 78/6
APPEARANCES [2] 1/11 2/2
appeared [1] 64/4
appearing [1] 63/21
appears [1] 49/3
applicable [3] 9/10 62/8 84/8
applications [1] 11/19
apply [2] 80/20 81/9
apportion [1] 102/11
appreciate [1] 55/14
approaching [1] 104/9
appropriate [4] 14/10 18/21 32/10 41/17
Approximately [1] 37/3
apt [1] 91/7
are [199]
are -- that [1] 61/3
aren't [3] 31/22 34/7 59/15
argue [7] 11/17 20/1 20/12 20/13 20/20 51/8 70/2
argued [2] 32/7 36/22
arguing [1] 41/22
argument [25] 4/6 4/23 5/9 36/25 38/17 45/21 59/1 62/25 63/11 72/1 72/10 75/2 75/2 80/15 80/17 80/21 82/15 83/1 84/19 84/25 85/7 93/5 95/3 96/9 101/3
arguments [16] 5/11 70/14 71/15 71/19 79/17 79/18 81/8 81/20 82/15 84/6 86/7 92/2 95/4 103/21 104/22 105/15
arises [4] 6/22 7/7 8/2 13/20
ARNOLD [1] 2/4
arnoldporter.com [2] 2/5 2/6
arose [1] 102/9
around [3] 23/23 49/11 88/24
article [17] 23/24 25/1

25/3 30/9 42/3 56/16 61/20 61/24 63/22 64/23 65/12 65/15 75/12 79/1 81/7 83/22 93/17
Article II [1] 93/17
Article III [15] 23/24 25/1 25/3 30/9 42/3 56/16 61/20 61/24 63/22 64/23 65/12 65/15 75/12 79/1 81/7
articles [2] 50/22 50/24
articulate [1] 63/10
as [75] 3/21 4/9 4/13 4/19 4/20 7/7 8/24 11/23 13/25 14/4 18/2 18/2 19/21 19/23 26/5 26/6 27/7 29/1 29/11 29/15 31/3 31/9 31/23 32/13 34/22 37/3 37/9 43/16 43/19 43/19 48/10 48/11 48/11 51/2 52/7 54/24 60/6 60/19 60/20 62/4 62/17 62/24 63/5 64/1 64/25 65/5 65/23 66/22 67/1 68/21 71/20 74/9 77/2 77/23 78/14 78/21 80/6 82/1 83/1 83/11 83/11 84/14 85/7 85/7 86/5 86/23 87/19 88/19 92/13 92/25 93/7 94/24 94/24 100/3 104/19
aside [4] 38/23 73/25 75/18 76/5
ask [5] 24/7 93/16 93/19 101/10 101/11
asked [9] 21/12 43/20 57/23 70/8 73/12 82/3 87/12 94/9 101/2
asking [5] 36/8 92/19 92/20 92/21 94/9
asks [1] 31/21
aspect [3] 14/18 14/21 35/2
asserted [1] 90/1
asserting [1] 50/12
assigned [3] 28/6 102/12 102/16
assist [1] 75/24
assistance [1] 52/15
assisting [1] 52/12
Assoc [1] 1/20

assume [19] 18/1 18/4 18/5 22/13 22/16 31/19 44/6 44/8 45/9 45/10 45/12 45/13 58/15 58/19 66/12 66/24 71/4 79/4 101/24
assumes [5] 7/13 31/8 31/13 46/18 62/2
assuming [7] 14/9 45/8 70/24 70/24 71/3 71/25 83/22
assumption [2] 46/12 82/4
assumptions [1] 44/12
attached [1] 26/20
attempting [1] 6/9
attested [2] 26/21 52/13
attests [1] 54/15
Attorney [1] 2/13
August [2] 80/18 99/13
August 5th [1] 99/13
authored [2] 56/20 84/14
authority [24] 28/16 45/18 56/9 56/22 83/2 83/5 84/18 92/7 94/15 94/17 95/1 98/8 98/11 98/17 98/20 98/21 98/23 100/15 101/6 102/11 102/12 103/3 103/4 103/6
authorization [3] 51/24 52/8 92/4
authorize [1] 9/23
authorizes [4] 6/6 6/8 6/10 52/9
authorizing [1] 103/3
automatically [1] 78/5
autonomy [1] 46/21
available [1] 25/24
Ave [2] 1/14 2/4
Avenue [1] 2/21
average [1] 40/22
avoid [1] 4/23
aware [1] 66/14
away [2] 52/18 78/22
AZ [1] 1/20

## B

back [12] 4/12 21/7 23/8 34/3 40/2 48/21 51/8 75/24 93/13 94/16

97/1 98/21
backing [1] 78/22
backstops [1] 78/10
backup [1] 92/9
Baldwin [2] 1/19 3/14
ballot [2] 35/2 39/24
ballots [10] 6/11 21/5 28/6 28/8 28/9 32/25 49/12 51/19 80/7 82/17
bank [1] 93/14
banking [1] 90/16
Bankruptcy [1] 2/21
bar [1] 93/1
bargaining [1] 90/19
barrier [2] 11/25 12/9
barriers [2] 12/6 20/9
barring [1] 92/20
base [1] 61/24
based [2] 59/4 62/1
basically [1] 89/5
basis [6] 51/7 59/25 64/1 66/23 87/19 102/4
Bates [1] 26/5
be [205]
bear [1] 67/18
because [52] 8/19 9/16 9/17 9/20 11/6 11/14 11/17 11/20 11/24 12/9 15/20 19/7 19/11 24/1 24/7 25/4 25/8 26/18 30/11 30/16 31/15 32/8 32/20 33/9 33/11 35/11 36/3 37/1 38/19 40/4 41/12 42/3 43/2 43/10 44/14 45/17 49/9 58/14 59/12 60/1 62/18 63/7 63/17 72/13 73/7 81/12 84/4 93/11 95/12 101/25 102/22 103/7
become [1] 51/21
been [30] 10/22 14/4 23/3 24/22 33/5 35/3 36/15 37/10 38/5 39/14 41/24 43/11 47/14 48/10 50/22 51/1 59/15 60/3 68/22 70/22 82/18 83/25 86/4 91/13 94/8 95/3 98/18 100/11 102/3 102/16
befall [4] 29/21 48/14 48/15 48/16
before [29] 1/9 8/16 23/1 24/18 28/25 29/7

## B

**before... [23]** 30/24 33/10 35/22 38/5 38/10 39/13 48/16 49/13 49/15 56/24 60/25 66/19 69/23 73/22 79/2 79/18 79/23 81/16 84/2 85/20 100/2 100/5 104/8
**beginning [2]** 3/7 23/14
**behalf [7]** 3/19 3/23 4/4 5/18 55/18 70/17 86/2
**being [29]** 14/19 19/14 19/24 21/25 28/4 29/11 30/12 30/13 37/3 37/23 38/2 38/18 38/24 39/18 39/19 47/25 55/8 60/5 66/4 70/8 72/22 72/22 72/23 72/25 73/9 74/23 89/11 91/2 99/2
**believe [3]** 32/19 37/7 54/18
**bell [1]** 43/3
**belong [1]** 26/2
**benefit [1]** 35/21
**Bessent [2]** 39/2 90/7
**best [4]** 24/11 72/9 82/15 83/1
**bet [2]** 47/1 47/8
**better [1]** 71/3
**between [11]** 9/4 16/25 20/2 22/3 23/11 23/15 24/2 52/22 71/10 73/2 82/10
**big [1]** 25/11
**biggest [1]** 72/12
**binding [1]** 92/23
**bit [5]** 49/10 57/22 63/16 63/17 64/5
**Black [1]** 51/16
**Bldg [1]** 2/5
**BMV [1]** 2/4
**board [1]** 45/12
**boast [1]** 40/8
**boilerplate [1]** 12/20
**born [1]** 37/12
**Borson [1]** 3/25
**Bost [14]** 40/7 40/10 41/2 41/4 42/11 42/14 42/16 89/4 89/4 89/7 89/8 89/12 89/13 89/18

**both [14]** 4/21 13/1 14/20 22/1 24/18 26/12 33/5 55/7 57/19 62/9 66/5 85/20 99/2 101/22
**boundless [2]** 89/19 89/21
**bracket [1]** 76/19
**Brags [1]** 100/7
**Braidwood [1]** 93/1
**branch [3]** 13/2 13/18 92/5
**breach [2]** 24/19 64/3
**break [2]** 16/25 65/22
**breaking [1]** 43/22
**brief [10]** 20/1 20/13 26/21 52/5 84/19 86/16 88/7 92/2 95/10 98/16
**briefed [2]** 58/8 66/19
**briefing [1]** 105/19
**briefings [1]** 79/18
**briefly [3]** 89/3 91/21 91/22
**briefs [4]** 63/19 84/5 103/21 105/15
**bring [3]** 21/3 24/12 70/13
**bringing [1]** 57/17
**broad [1]** 102/12
**build [1]** 53/7
**bump [1]** 80/3
**bunch [2]** 15/4 43/12
**burden [4]** 21/4 72/3 90/2 93/3
**burdens [1]** 20/23
**business [1]** 34/11
**BVM [1]** 2/5

## C

**cabined [1]** 99/8
**cabinet [1]** 63/22
**calendar [1]** 78/21
**calendar-related [1]** 78/21
**California [15]** 16/14 16/17 16/19 16/20 16/20 16/23 17/1 17/2 19/22 19/23 19/24 75/21 75/23 76/2 76/4
**California's [1]** 76/1
**call [6]** 38/3 38/3 38/4 62/20 66/7 84/7
**called [3]** 56/11 59/4 70/3
**came [5]** 37/3 50/24

63/17 66/25 98/2
**CAMPAIGN [2]** 1/2 1/20
**campaignlegalcenter. org [2]** 1/21 1/22
**campaigns [1]** 35/15
**can [47]** 4/19 4/22 5/10 11/5 14/24 21/7 22/22 24/1 25/21 26/15 29/13 30/23 33/16 35/14 36/25 38/3 41/21 46/22 47/15 48/16 48/20 57/6 57/18 58/1 58/2 72/25 74/17 75/13 77/15 79/10 80/14 81/10 83/6 85/16 87/21 89/5 89/13 90/24 92/12 94/10 95/2 95/7 95/11 99/19 100/23 101/10 103/14
**can't [26]** 9/11 9/17 9/24 9/25 10/15 11/24 19/21 34/1 34/3 40/20 41/8 41/8 41/19 43/2 43/6 43/18 47/23 61/24 80/17 87/22 87/23 96/3 101/25 103/6 103/7 104/12
**candidate [4]** 40/15 89/3 89/6 89/21
**candidates [6]** 30/7 40/20 41/9 45/6 89/8 89/17
**Candidly [1]** 83/18
**cannot [8]** 9/7 9/23 25/10 35/14 42/24 55/2 100/2 101/11
**canvas [1]** 83/9
**capacious [1]** 105/12
**Capacity [1]** 2/5
**Capozzi [4]** 2/13 4/4 86/2 86/3
**care [1]** 76/2
**careful [1]** 89/7
**CARL [1]** 1/9
**carry [3]** 32/9 98/21 101/7
**case [60]** 3/3 6/5 10/21 10/24 17/12 21/2 23/23 24/8 24/11 24/18 36/3 39/2 40/3 40/8 40/10 41/2 41/6 42/11 43/8 43/9 43/19 46/4 48/7 48/9 48/10 48/12 48/13 48/17 50/14 56/20

57/20 57/21 59/4 59/4 59/7 64/22 65/5 65/8 66/9 66/11 66/21 67/4 67/16 69/10 79/1 80/21 84/6 84/11 84/14 84/23 88/16 89/10 90/7 90/16 92/3 93/1 96/17 101/16 102/11 104/13
**case -- and [1]** 96/17
**cases [13]** 4/8 41/5 41/8 42/17 56/23 65/10 65/11 90/14 96/12 96/12 97/5 97/8 99/1
**casting [1]** 21/5
**categorical [2]** 68/8 69/25
**causal [3]** 16/25 65/23 66/14
**causation [3]** 43/20 43/22 87/20
**cause [16]** 2/3 12/1 24/4 24/7 24/22 25/16 38/7 49/4 51/16 54/14 56/15 70/16 84/14 85/1 92/11 102/8
**causes [1]** 75/12
**causing [1]** 53/10
**CC [1]** 2/4
**census [3]** 84/23 96/17 102/11
**CENTER [3]** 1/20 97/6 97/12
**certain [3]** 27/22 48/17 65/16
**certainly [26]** 4/19 9/19 13/16 40/25 55/23 57/3 59/1 61/5 61/12 61/20 61/25 62/2 63/15 64/6 64/17 65/15 69/2 69/24 70/22 72/11 72/21 77/9 78/1 78/3 92/22 98/2
**certify [1]** 106/4
**cetera [2]** 55/25 73/5
**chain [2]** 65/23 66/14
**challenge [10]** 11/18 15/8 15/19 16/6 57/17 89/6 89/9 91/24 95/11 98/6
**challenged [5]** 57/3 86/23 91/14 91/17 102/1
**challenging [1]** 6/7
**chance [2]** 84/2 95/24

## C

change [7] 16/25 34/24 59/18 66/22 95/8 100/9 104/9
changed [1] 89/16
changing [1] 58/20
chaos [1] 49/4
characteristics [1] 27/19
Charles [1] 1/13
check [2] 16/15 19/5
checked [1] 19/9
checking [1] 35/6
chill [11] 36/12 37/13 37/25 38/23 39/6 39/7 54/7 91/1 91/3 91/7 91/15
chilled [2] 38/18 39/11
chilling [1] 37/18
choose [1] 46/22
CIO [1] 26/5
Circuit [8] 56/20 57/4 57/4 59/10 62/4 62/10 84/11 84/21
Circuit's [2] 85/8 86/14
circumstance [2] 50/17 100/16
circumstances [4] 59/8 70/4 97/18 100/13
citation [1] 20/17
cite [5] 84/11 84/13 90/14 96/12 97/5
cited [2] 48/7 91/6
cites [1] 90/17
citizen [5] 65/1 77/22 90/12 90/21 90/23
citizens [16] 14/2 19/15 25/13 36/19 36/21 37/4 37/9 37/12 37/16 39/16 39/18 40/24 52/3 74/10 74/14 74/15
citizenship [17] 6/9 8/6 9/1 12/16 14/20 32/3 32/6 32/14 35/7 36/16 36/18 37/11 49/15 64/20 81/24 90/11 103/12
CIV [1] 2/9
civic [1] 55/5
civil [2] 1/2 3/3
claim [8] 7/25 10/10

17/18 37/16 63/15 70/13 102/22 102/25
claims [6] 21/3 24/12 32/18 55/23 91/9 91/10
Clapper [3] 87/7 87/17 91/4
clarification [1] 81/18
clarify [5] 82/5 97/13 101/9 102/21 102/25
clarity [1] 50/7
clause [12] 9/22 10/16 11/19 31/17 32/11 84/8 84/12 94/23 94/24 99/5 101/23 101/25
clauses [3] 9/21 9/22 99/3
clean [1] 36/18
clear [33] 9/2 10/16 13/25 24/15 25/9 25/11 28/3 28/9 29/4 34/6 47/14 50/2 52/25 56/11 57/11 60/3 60/5 60/17 62/9 63/20 68/5 68/22 77/18 80/19 81/23 82/7 88/13 89/25 92/24 93/9 94/14 100/7 102/5
clearly [3] 7/19 84/22 102/16
client [1] 61/8
clients [12] 29/9 40/23 47/12 52/11 55/9 55/12 61/11 95/23 99/15 99/21 99/25 100/17
clients' [1] 34/11
clock [2] 93/23 94/2
close [2] 42/6 100/23
co [2] 27/11 35/17
co-counsel [1] 27/11
co-plaintiffs [1] 35/17
Code [1] 83/9
cognizable [2] 20/24 90/2
colleague [5] 3/15 36/5 38/8 38/11 102/20
colleague's [1] 86/5
colleagues [3] 5/19 55/11 101/1
collected [2] 103/11 103/12
collective [1] 90/19
collectively [1] 48/2
COLUMBIA [1] 1/1
combination [1] 42/12
come [12] 3/6 5/7

37/10 51/5 51/6 54/25 80/8 88/3 96/19 96/25 98/22 100/15
comes [7] 29/16 36/8 40/11 46/24 72/5 85/14 104/8
command [5] 9/24 11/24 12/19 32/1 99/23
commands [6] 6/6 9/23 12/22 18/22 18/25 28/9
comment [1] 69/7
comments [6] 28/21 57/6 57/7 57/8 57/10 86/10
Commerce [3] 96/21 102/10 102/13
commit [2] 98/1 104/12
commitment [6] 66/12 67/5 67/6 67/8 67/9 67/14
committed [1] 98/3
committee [2] 1/3 30/4
committees [1] 30/6
common [10] 2/3 12/1 51/16 54/14 61/2 64/4 84/14 85/1 90/3 102/8
common-law [1] 90/3
communicated [1] 73/21
comparable [1] 102/15
comparison [1] 43/4
compatible [1] 103/10
compensate [1] 35/16
compete [1] 30/14
compilation [14] 7/13 8/18 8/20 14/5 21/12 23/4 23/6 23/6 23/14 38/5 39/12 62/23 71/3 71/21
compile [18] 6/8 9/8 9/12 11/1 11/2 11/3 11/8 11/11 12/16 13/2 21/16 22/8 36/16 52/2 63/4 68/12 68/17 92/5
compiled [23] 6/14 7/3 7/9 9/16 10/3 10/8 10/22 10/23 14/19 16/8 18/16 21/9 22/5 23/3 23/7 38/3 65/25 66/2 66/5 67/1 71/5 71/6 71/23
compiles [1] 63/4

compiling [4] 39/15 44/1 71/11 74/16
complaint [2] 58/2 58/3
complete [1] 47/22
completely [7] 45/25 46/2 66/16 71/16 97/16 102/19 103/5
complicated [1] 40/11
complied [4] 7/21 10/4 10/8 63/7
comply [1] 105/13
complying [2] 35/6 69/1
components [2] 28/18 62/16
computer [8] 2/25 8/1 9/4 10/13 69/18 69/20 70/3 103/2
computer-aided [1] 2/25
computer-matching [3] 69/20 70/3 103/2
conceded [1] 45/10
conceivable [2] 12/9 102/1
conceivably [2] 101/3 103/15
concern [2] 43/10 75/7
concerned [2] 74/22 75/7
concerns [8] 42/5 42/12 43/16 57/1 60/22 75/19 80/4 81/5
conclude [1] 89/15
concluded [1] 105/23
concludes [1] 9/16
conclusion [3] 26/7 32/19 70/11
concrete [8] 21/18 44/8 66/25 77/7 79/7 79/23 89/1 100/8
concreteness [2] 71/11 71/22
concurrence [1] 92/7
conduct [1] 103/8
confer [3] 67/7 85/19 87/23
confidence [3] 24/19 42/18 64/3
confident [1] 67/18
confirm [3] 32/23 77/17 83/12
confirmed [2] 74/9

**C**

**confirmed... [1]** 74/15
**confirms [1]** 83/21
**confusion [3]** 49/5
49/23 50/8
**Congress [15]** 6/3
8/24 22/25 23/12 24/3
25/14 25/21 25/22
26/18 26/24 93/1 93/11
94/24 102/12 102/17
**CONGRESSIONAL [1]**
1/2
**connection [2]** 7/4
36/9
**consequence [3]** 17/5
17/7 43/25
**consequences [1]**
43/12
**conservative [1]**
104/17
**consider [6]** 13/24
57/10 70/9 88/13 93/17
97/13
**consideration [3]**
80/20 81/16 83/14
**considerations [2]**
57/8 96/7
**considered [1]** 70/9
**considering [1]** 60/18
**consistent [17]** 6/14
9/8 9/10 10/19 13/3
13/8 14/6 23/21 33/17
33/20 62/8 68/13 71/6
71/12 83/23 85/6 92/12
**consistently [2]** 24/20
83/12
**consolidated [1]** 4/8
**Constitution [4]** 2/21
6/4 93/18 94/23
**constitutional [7]**
51/23 52/9 78/10 92/18
93/4 98/16 98/23
**constraint [1]** 68/16
**constraints [2]** 84/10
84/24
**CONT'D [1]** 2/2
**contain [2]** 97/11
99/24
**containing [1]** 10/12
**contains [1]** 102/5
**contemplated [3]**
60/19 68/12 71/24
**contemplates [2]** 66/3

74/1
**contemplates/requires**
**[1]** 74/1
**contents [2]** 57/14
57/16
**context [12]** 27/5
30/22 35/13 36/9 36/11
37/13 48/18 60/9 63/7
81/9 81/10 102/9
**contingent [1]** 67/13
**contours [1]** 67/9
**contrary [1]** 68/20
**conversation [1]** 42/8
**conversations [2]**
38/8 54/21
**core [6]** 34/11 35/9
40/24 52/21 77/3 99/25
**corollary [1]** 25/1
**correct [8]** 36/5 40/9
53/13 60/16 68/24
100/9 100/10 106/4
**could [38]** 7/9 7/23
10/2 10/5 10/8 10/22
15/3 15/23 16/22 20/12
33/13 35/20 47/10 51/5
51/6 54/22 58/4 61/15
62/25 65/18 67/18
67/24 69/15 71/9 72/21
74/20 76/19 77/21
79/24 82/16 83/10
85/22 87/14 87/25 93/1
96/10 101/3 101/22
**could -- especially [1]**
35/20
**couldn't [6]** 16/19
21/18 21/22 33/23
70/12 101/4
**counsel [20]** 3/6 3/14
3/20 4/2 5/11 5/15
27/11 51/11 55/14
73/12 80/13 84/2 85/24
88/2 93/21 97/21
100/21 101/13 103/18
104/23
**counsel's [1]** 3/24
**counteract [4]** 30/18
52/16 54/6 54/24
**counteracting [1]** 34/5
**counterpart [1]** 38/1
**counties [2]** 37/6
47/18
**counting [1]** 89/9
**country [2]** 5/23 88/24
**county [6]** 46/20 46/21

88/19 88/19 88/22
88/24
**couple [5]** 38/22 44/17
45/15 46/3 100/25
**coupled [1]** 54/7
**course [16]** 4/10 13/21
26/13 27/10 32/16
35/23 39/5 51/2 54/25
56/24 70/13 78/12
78/15 80/17 92/9 102/4
**court [62]** 1/1 2/20 3/9
10/18 20/25 24/6 26/6
32/13 32/19 33/11 34/8
35/20 40/4 40/6 40/10
41/6 41/11 41/14 41/15
41/17 42/1 43/13 47/14
48/6 50/5 51/10 55/11
55/12 61/24 62/4 62/9
65/5 67/20 75/8 84/13
84/21 85/2 85/3 86/6
86/12 86/13 86/24 87/1
87/2 87/8 87/12 87/20
88/1 89/19 89/20 90/5
91/2 91/8 92/1 93/15
93/19 93/20 95/6 97/18
98/10 100/19 106/3
**Court's [5]** 23/21 26/8
84/17 92/25 93/8
**courthouse [2]** 64/5
65/11
**courtroom [1]** 4/15
**courts [13]** 2/21 9/20
24/9 24/20 26/3 27/4
40/14 42/16 56/21 64/1
65/6 65/7 96/13
**covers [1]** 27/22
**Crawford [1]** 20/24
**crazy [3]** 61/10 87/16
87/17
**CRC [1]** 2/20
**create [2]** 9/1 12/4
**created [4]** 41/24
70/22 70/23 75/4
**creating [3]** 28/7 36/13
75/11
**creation [1]** 25/12
**credit [2]** 26/10 97/19
**credited [1]** 86/24
**criminal [2]** 47/6 54/19
**criminal/legal [1]**
54/19
**critical [2]** 30/22 35/13
**crucial [2]** 41/12 50/13
**cry [1]** 89/18

**crystalized [1]** 33/11
**culls [1]** 44/10
**cure [4]** 99/16 99/24
100/5 103/6
**current [2]** 36/17
39/20
**currently [4]** 53/11
53/17 53/20 54/1
**cusp [1]** 80/2
**cut [3]** 50/6 96/14
97/16
**cute [1]** 72/12
**cuts [2]** 83/16 83/18
**cycle [3]** 44/15 52/13
73/5

**D**

**D.C [2]** 59/10 62/4
**D.C. [5]** 56/20 57/4
57/4 62/10 85/8
**D.C. Circuit [4]** 56/20
57/4 57/4 62/10
**D.C. Circuit's [1]** 85/8
**damage [2]** 49/1 51/9
**damages [6]** 25/16
25/21 25/23 25/24 26/2
26/16
**Damocles [4]** 48/6
48/8 51/6 100/4
**dangers [1]** 48/3
**Danielle [3]** 1/19 3/13
35/23
**darkest [1]** 61/16
**data [15]** 6/9 7/12 8/6
8/7 8/23 11/3 23/15
23/18 39/15 40/1 60/22
64/13 64/18 69/23
99/19
**database [5]** 9/2 18/17
22/20 25/13 70/1
**databases [6]** 8/8
18/16 18/20 63/5 68/19
69/24
**DATE [1]** 106/11
**dates [1]** 10/6
**day [14]** 34/2 49/16
50/1 51/6 51/6 52/12
52/22 55/21 69/7 79/3
79/6 95/22 99/12
100/17
**days [11]** 12/15 27/23
49/13 49/15 73/22
78/24 78/24 79/6 100/2
100/5 100/9

## D

**DC [6]** 1/4 1/15 1/21 2/5 2/10 2/22
**DCCC [1]** 1/12
**dcd.uscourts.gov [1]** 2/22
**de [7]** 2/3 3/19 51/15 58/10 76/4 77/5 97/23
**de-registered [2]** 76/4 77/5
**deadline [1]** 49/9
**deadlines [2]** 49/10 74/4
**deal [2]** 75/23 76/25
**decide [14]** 5/5 11/5 15/13 23/7 41/5 41/7 42/17 42/17 66/20 78/16 80/9 95/15 96/23 97/1
**decided [6]** 19/10 41/20 58/9 60/3 68/22 79/8
**decides [3]** 9/7 11/1 15/17
**decision [7]** 14/15 23/22 47/20 85/8 86/14 87/10 93/8
**decisions [5]** 43/13 43/17 68/18 68/23 83/25
**declaration [15]** 53/15 53/15 53/23 53/23 53/24 54/3 54/4 54/9 54/10 54/11 54/13 68/22 99/18 100/7 100/11
**declarations [16]** 26/20 50/21 51/2 51/3 52/14 52/19 52/25 53/9 53/18 58/11 59/2 60/4 83/11 83/13 83/22 83/24
**declarations -- assuming [1]** 83/22
**decline [1]** 51/18
**declined [1]** 96/13
**deep [2]** 40/21 41/1
**deeply [3]** 40/12 40/15 42/23
**defeat [1]** 10/15
**defeated [1]** 65/14
**defective [2]** 19/5 87/3
**defendants [20]** 1/6

2/8 4/4 4/11 4/11 4/12 36/3 41/21 42/20 50/18 51/23 74/19 86/2 86/7 96/9 96/12 97/7 97/8 101/15 103/5
**defendants' [1]** 95/10
**deficiencies [2]** 99/16 99/17
**define [1]** 49/21
**defined [2]** 49/19 91/3
**defining [1]** 65/25
**definitely [2]** 16/22 81/1
**definitively [1]** 16/2
**delay [1]** 97/19
**deliberations [3]** 51/4 60/5 83/24
**deliver [3]** 28/8 32/25 51/18
**demain [1]** 102/12
**demanding [1]** 91/2
**democracy [3]** 50/10 97/7 97/12
**DEMOCRATIC [6]** 1/2 3/10 5/18 5/20 29/24 30/13
**denial [1]** 66/23
**denied [2]** 51/7 68/1
**deny [6]** 66/10 66/20 67/10 86/6 93/20 97/19
**Department [6]** 3/23 3/25 55/18 64/13 96/15 96/20
**depend [2]** 7/10 83/4
**depending [2]** 58/5 81/1
**depends [1]** 57/22
**deprived [1]** 95/18
**described [4]** 12/17 74/9 81/24 101/13
**desks [1]** 49/25
**despite [3]** 32/18 33/2 33/2
**destroy [3]** 11/24 84/12 99/3
**detail [3]** 52/19 63/18 100/8
**detailed [3]** 28/9 52/14 53/9
**details [2]** 22/9 73/8
**determinative [1]** 41/10
**determined [2]** 14/9 51/19

**develop [1]** 34/24
**developed [2]** 21/18 40/7
**developing [3]** 53/11 54/2 99/12
**development [2]** 33/10 98/7
**developments [1]** 67/17
**devoted [1]** 82/14
**DGA [1]** 1/12
**DHS [17]** 2/10 9/7 9/16 11/8 11/14 15/2 15/16 21/19 25/18 33/6 52/2 52/8 68/11 69/9 69/12 70/7 98/20
**DHS's [1]** 53/6
**dicta [1]** 26/6
**dictate [1]** 102/5
**dictates [2]** 7/11 10/14
**dictating [1]** 35/1
**did [9]** 37/12 42/11 46/9 77/10 87/18 94/19 95/12 97/14 101/6
**didn't [11]** 20/16 21/11 43/13 48/14 61/12 67/5 68/6 79/4 90/18 94/21 95/15
**differences [1]** 101/14
**different [24]** 26/2 27/18 28/23 28/24 30/1 31/20 40/5 44/22 58/4 58/12 58/16 58/19 60/10 62/15 63/9 65/19 71/8 87/4 88/2 88/14 91/8 96/19 102/19 102/20
**differently [2]** 44/23 45/11
**differs [1]** 70/5
**difficult [3]** 13/24 43/2 55/5
**direct [7]** 5/11 34/13 57/13 87/1 98/8 98/11 98/20
**directed [1]** 97/13
**direction [3]** 11/6 50/2 50/6
**directionally [1]** 60/10
**directions [2]** 58/4 97/14
**directive [4]** 51/21 51/25 52/10 56/9
**directly [4]** 13/16

52/20 87/3 97/4
**directs [1]** 57/12
**disadvantage [1]** 89/17
**disagrees [2]** 64/8 64/9
**disclose [2]** 13/22 25/10
**disclosed [1]** 9/6
**disclosing [2]** 10/12 103/1
**disclosure [9]** 6/23 9/3 22/24 23/2 23/13 25/9 65/18 69/14 72/14
**disclosure -- right [1]** 23/2
**disclosures [4]** 13/20 26/19 26/22 69/5
**discontinued [1]** 25/6
**discovery [1]** 67/22
**discretion [2]** 96/22 102/13
**discrimination [2]** 10/1 98/14
**discuss [1]** 42/15
**discussed [1]** 56/7
**discussing [1]** 72/17
**discussion [1]** 69/18
**disenfranchised [3]** 20/21 21/1 21/6
**disfavored [1]** 42/6
**dislike [2]** 57/2 70/12
**dismantle [1]** 23/9
**dismiss [5]** 58/6 66/17 66/19 67/25 79/1
**dismissal [3]** 57/23 57/25 66/17
**dismissed [2]** 56/2 104/14
**dispute [1]** 13/2
**dissatisfied [2]** 57/16 58/1
**disseminate [1]** 23/8
**disseminated [3]** 18/3 23/18 23/19
**dissemination [2]** 71/24 72/10
**distinction [1]** 56/14
**distinguished [2]** 93/9 102/3
**district [11]** 1/1 1/1 1/9 2/21 12/2 26/3 65/5 69/10 84/13 85/2 102/4
**districts [1]** 16/10

## D

dive [1] 36/1
diversion [5] 35/9 59/3 86/11 86/12 87/11
divert [3] 30/17 34/14 53/2
diverting [2] 34/14 54/23
divide [1] 5/5
divided [1] 93/23
division [1] 4/23
dlang [1] 1/21
DNC [3] 1/12 88/7 90/17
do [86] 4/21 5/25 7/8 8/12 8/13 8/14 9/11 9/17 10/2 10/5 10/7 11/3 11/7 11/12 12/21 12/24 12/25 13/10 13/15 13/15 14/24 15/14 15/17 16/4 17/3 17/20 17/21 18/12 20/1 20/12 21/5 21/21 21/22 23/20 27/7 27/8 27/22 28/17 29/4 31/23 33/20 34/18 35/5 37/12 38/1 41/13 42/10 45/12 45/19 46/23 49/25 53/5 53/22 56/21 58/12 60/2 60/8 60/10 61/8 63/13 68/24 75/6 75/16 76/16 78/7 78/8 78/13 78/15 79/8 79/10 80/10 82/23 83/10 87/14 88/23 88/25 95/16 96/3 96/3 96/23 97/1 98/17 100/3 101/24 101/24 104/14
DoC [1] 2/11
docket [1] 85/15
doctrinal [3] 59/23 61/17 81/14
doctrines [1] 42/3
document [1] 70/2
documentary [3] 32/2 32/6 32/14
documentation [1] 99/15
does [25] 7/25 10/6 14/12 14/23 16/7 26/9 28/25 29/1 29/6 44/10 48/11 49/20 50/12 56/15 57/11 57/12 57/15 63/3 64/16 73/16

76/5 78/6 93/12 96/25 101/12
does -- and [1] 73/16
doesn't [19] 10/5 11/11 11/19 12/21 28/19 29/20 45/3 46/15 48/8 50/15 64/17 73/11 73/13 73/14 77/24 78/15 88/10 89/22 98/10
doesn't -- it [1] 73/11
doing [10] 8/14 21/16 34/22 37/5 46/9 53/10 58/19 83/4 99/10 103/4
DoJ [2] 2/9 2/10
dollar [2] 47/1 47/8
domain [1] 102/9
don't [73] 4/14 4/15 4/23 4/25 5/10 5/14 7/21 10/6 10/23 11/8 11/16 15/17 15/24 16/12 17/2 17/11 17/15 18/10 19/6 20/16 20/21 21/1 23/8 24/17 27/12 28/15 36/3 36/25 37/21 41/13 41/14 42/7 44/18 45/1 50/20 55/10 56/23 58/17 59/24 63/9 63/18 65/4 65/8 70/12 71/19 72/7 72/8 72/11 73/7 74/25 75/25 76/16 77/4 81/2 81/10 81/15 81/23 81/25 82/20 87/16 87/16 89/24 90/23 92/14 92/16 92/16 93/2 95/2 96/9 101/5 102/23 102/23 103/22
DONALD [3] 1/5 2/8 3/4
done [11] 7/14 29/19 33/21 35/3 36/10 46/6 49/1 51/9 75/16 80/6 88/21
dos [1] 48/21
double [1] 19/9
doubt [1] 12/18
down [6] 12/12 46/24 48/25 51/5 94/10 95/14
downstream [4] 43/11 75/15 75/21 78/12
drafted [2] 49/4 59/2
Driehaus [1] 91/6
drop [1] 100/4
dropped [1] 79/5

DSCC [2] 1/12 3/3
duty [1] 43/7
dwell [1] 89/25

## E

E.O [67] 7/11 8/2 8/5 9/9 10/19 12/8 12/10 12/19 14/24 15/8 15/19 17/1 17/5 17/8 18/22 18/25 19/2 28/4 28/18 28/24 28/25 29/1 29/3 29/7 29/11 29/16 30/16 31/3 31/3 31/16 31/25 32/1 32/9 32/20 33/15 33/17 33/20 34/5 34/17 58/23 59/19 60/9 60/12 60/14 60/15 60/19 61/4 61/15 62/6 65/23 66/3 68/13 68/21 70/7 71/24 73/20 73/25 74/1 74/8 78/21 87/14 92/15 97/12 101/12 102/17 102/18 104/19
E.O.s [1] 101/14
EAC [5] 32/2 32/4 32/9 32/14 32/15
each [14] 4/7 13/8 14/8 14/11 14/11 14/12 16/9 18/3 37/24 45/2 52/20 56/3 73/22 88/11
earlier [2] 43/21 85/10
early [7] 41/5 41/8 41/11 41/14 42/18 71/2 74/2
Earth [1] 48/13
educate [3] 34/24 53/12 86/22
educated [1] 35/4
educating [6] 53/20 58/20 86/19 86/20 86/20 99/10
education [2] 2/4 34/12
educational [1] 99/9
effect [8] 15/21 47/16 47/17 60/5 66/13 67/25 83/2 95/11
effected [2] 16/19 89/11
effects [4] 29/9 30/19 52/16 95/22
effectuate [3] 12/24 33/6 33/8
effort [3] 20/2 36/16

62/20
efforts [3] 30/18 34/19 53/2
either [12] 4/25 5/1 18/23 21/23 45/11 52/10 57/13 60/8 61/21 98/22 102/1 104/19
election [47] 14/14 14/17 30/22 35/12 35/13 35/15 41/7 43/1 43/3 43/5 43/16 44/13 44/15 46/21 47/1 47/6 47/8 48/22 48/24 49/13 49/16 49/24 50/1 52/13 52/17 52/23 53/4 54/17 54/18 73/1 73/4 73/21 73/22 74/11 78/22 80/2 80/24 81/5 81/9 81/13 88/24 89/6 95/8 95/22 100/3 100/5 100/18
election-related [1] 89/6
elections [33] 13/16 14/1 14/22 30/16 34/11 34/25 35/3 36/9 36/10 40/4 40/5 41/2 42/6 42/19 48/18 48/20 49/1 49/6 51/20 52/21 58/15 59/18 60/25 60/25 61/3 73/2 80/11 81/6 81/7 89/23 97/4 102/15 102/16
elections -- well [1] 60/25
electoral [7] 30/17 40/13 40/16 40/22 41/16 41/23 42/24
electorate [1] 40/25
electors [1] 94/23
element [3] 90/8 90/10 90/23
ELIAS [1] 1/14
elias.law [4] 1/15 1/16 1/16 1/17
eligible [6] 14/20 44/2 47/4 47/5 54/16 77/22
else [3] 22/21 55/12 84/1
elsewhere [1] 64/5
Email [2] 2/10 2/15
Emails [3] 1/15 1/21 2/5
employ [1] 17/19
enable [1] 99/20

**E**

**enablement [1]** 52/11
**enacted [2]** 6/2 69/6
**enacts [1]** 87/5
**encourage [1]** 89/20
**end [7]** 5/1 34/1 40/18 61/3 77/21 80/1 88/9
**ends [1]** 79/3
**Energy [1]** 56/20
**enforce [1]** 50/19
**enforced [2]** 48/10 48/11
**enforcement [4]** 39/19 54/8 73/1 96/13
**enforcing [1]** 6/2
**engage [5]** 10/1 11/7 28/16 31/9 92/21
**engaged [3]** 36/15 39/14 40/12
**engaging [1]** 40/24
**enjoin [7]** 21/11 21/20 30/25 33/23 80/9 94/12 100/19
**enjoined [1]** 93/15
**enjoining [1]** 31/3
**enjoins [1]** 5/25
**enjoy [1]** 102/10
**enough [10]** 16/25 17/20 24/4 34/17 60/23 65/15 67/3 93/25 94/4 100/5
**enroll [1]** 28/7
**enrolled [1]** 82/18
**ensure [4]** 20/5 34/20 67/19 77/7
**ensuring [1]** 75/25
**enterprise [1]** 46/25
**entire [1]** 37/1
**entirely [2]** 36/4 76/13
**entirety [1]** 56/2
**entitled [1]** 106/5
**environment [2]** 39/20 39/21
**era [1]** 24/12
**erode [1]** 42/18
**error [2]** 19/4 39/17
**error-prone [1]** 19/4
**errors [1]** 18/20
**Esam [2]** 2/8 3/25
**esam.k.al [1]** 2/11
**esam.k.al-shareffi [1]** 2/11
**especially [5]** 35/20

36/13 62/6 91/9 96/8
**establish [4]** 12/15 16/5 26/11 82/11
**established [1]** 97/17
**et [8]** 1/3 1/5 2/11 3/3 3/4 3/5 55/25 73/5
**et cetera [2]** 55/25 73/5
**evaluate [1]** 33/11
**eve [1]** 80/10
**even [52]** 8/16 8/20 9/16 11/15 13/3 13/6 13/7 14/25 19/13 19/16 21/1 21/2 22/17 22/22 25/4 31/1 31/3 33/4 37/21 39/4 46/6 46/22 46/25 49/19 51/4 54/16 56/23 60/3 63/14 63/20 64/9 65/4 65/4 65/8 65/10 65/14 66/10 67/1 69/4 74/6 74/18 74/19 75/18 76/15 78/10 88/13 89/13 92/16 93/2 93/8 96/9 104/9
**even -- that [1]** 21/1
**event [5]** 39/11 66/13 67/14 91/11 104/7
**eventuality [1]** 99/22
**ever [2]** 78/1 81/12
**every [12]** 10/25 34/2 34/4 34/4 47/9 50/1 52/12 78/5 88/14 97/5 99/12 100/17
**everyone [2]** 28/12 35/20
**everything [2]** 4/17 4/22
**evidence [6]** 26/25 27/3 36/11 53/13 91/11 91/17
**exact [1]** 97/6
**exactly [20]** 7/10 10/9 10/14 18/15 24/23 27/3 28/1 28/4 30/25 33/8 34/23 38/10 38/13 42/19 48/14 58/17 67/9 69/23 72/8 83/4
**examine [1]** 17/14
**examining [1]** 10/19
**example [14]** 9/25 19/21 19/22 36/12 50/18 66/25 69/3 72/13 74/21 74/22 77/21 88/20 95/10 96/16

**examples [2]** 46/5 74/23
**Excel [1]** 11/12
**excellent [5]** 103/20 103/21 104/22 105/14 105/15
**exception [2]** 81/7 103/9
**exchanged [2]** 8/25 9/1
**exchanging [1]** 8/1
**exclusions [1]** 53/14
**Excuse [1]** 12/12
**executive [54]** 2/9 5/24 6/7 6/15 11/15 11/16 13/2 13/17 13/25 14/5 14/10 23/2 27/19 27/24 28/17 38/13 39/21 47/3 48/9 49/3 50/19 51/17 55/21 56/4 56/8 56/12 57/12 58/14 62/10 64/16 73/3 73/13 73/16 78/9 78/15 81/23 81/25 84/8 84/12 92/3 92/5 92/7 94/11 95/12 95/15 96/16 96/18 96/20 98/22 99/2 100/14 101/14 101/17 102/8
**Executor [2]** 93/9 93/9
**exercise [2]** 31/21 48/23
**exercising [1]** 6/3
**exist [2]** 12/4 15/10
**existed [1]** 77/1
**exists [2]** 71/25 102/17
**expect [4]** 57/1 68/6 104/16 105/13
**expectations [1]** 105/12
**expend [1]** 20/2
**expending [3]** 59/5 59/10 59/11
**experiencing [1]** 30/22
**explain [1]** 72/3
**explained [2]** 9/20 11/25
**explaining [1]** 94/22
**explicitly [2]** 68/16 102/12
**extent [9]** 4/22 5/12 9/9 67/18 68/17 70/7 81/4 82/3 101/18
**extra [4]** 20/10 21/4

21/4 58/13
**extraordinary [2]** 100/13 100/16
**extremely [1]** 25/11

**F**

**F.4th [1]** 86/14
**face [2]** 31/16 47/24
**faces [1]** 11/25
**facial [1]** 98/6
**facing [2]** 48/3 48/3
**fact [12]** 10/19 15/12 26/21 33/1 41/13 55/3 58/22 60/24 76/25 79/5 90/21 91/12
**facts [5]** 4/18 33/7 46/12 66/22 105/19
**factual [6]** 26/25 33/10 59/23 59/24 98/7 104/9
**failed [1]** 103/5
**fair [11]** 4/21 26/10 27/25 40/17 40/18 40/22 41/1 67/3 80/12 93/25 94/4
**fairly [1]** 89/1
**fall [2]** 48/9 73/23
**falls [1]** 49/9
**falsely [1]** 54/17
**families [2]** 1/20 36/14
**family [1]** 54/21
**far [5]** 75/15 78/12 80/19 89/18 99/10
**fast [2]** 4/25 5/1
**favor [2]** 83/18 96/8
**favorable [1]** 62/14
**fear [2]** 90/25 91/3
**fears [1]** 61/16
**feasibility [11]** 9/22 11/22 11/25 12/2 12/10 12/18 12/20 60/20 68/16 84/9 84/24
**feasible [4]** 9/10 68/17 73/17 100/8
**featured [1]** 84/4
**federal [62]** 2/9 4/11 6/10 6/14 7/5 7/12 8/7 10/12 13/20 16/16 16/21 18/2 19/7 19/11 22/19 23/16 24/3 25/9 32/3 36/15 37/14 38/4 39/13 39/14 39/24 41/17 42/1 44/1 44/9 46/7 46/8 49/19 49/21 51/20 61/9 61/24 62/20

116

## F

**federal... [25]**  62/21 62/22 63/11 66/2 73/22 74/16 74/25 75/3 75/8 75/10 75/16 76/17 77/12 77/25 78/8 78/10 81/12 87/14 88/16 91/17 93/5 93/6 93/13 99/19 100/14
**federal-government-only [1]**  62/20
**federalized [1]**  25/13
**feel [1]**  43/6
**felon [1]**  77/21
**few [3]**  27/15 36/7 58/4
**fewer [1]**  73/21
**field [3]**  30/14 41/1 54/19
**fight [1]**  79/21
**figure [3]**  8/3 34/1 104/14
**figured [1]**  83/20
**file [1]**  63/22
**filed [3]**  4/7 55/21 58/2
**filing [1]**  50/23
**filings [4]**  56/18 59/1 74/20 80/23
**final [18]**  27/23 28/1 28/23 29/1 29/12 29/16 41/19 48/16 56/16 57/13 57/14 72/23 78/24 79/13 83/25 87/15 92/16 96/11
**finalize [2]**  57/11 57/15
**finally [3]**  90/25 92/15 99/6
**find [2]**  26/22 36/19
**finding [1]**  27/1
**first [16]**  4/10 11/4 14/3 26/1 55/20 65/24 71/8 72/3 86/9 88/11 91/7 91/9 91/9 91/23 93/14 104/2
**first -- I [1]**  65/24
**five [1]**  5/4
**FL [1]**  2/14
**flagrant [1]**  76/21
**flow [2]**  15/24 44/1
**flows [1]**  48/25
**focus [3]**  5/8 86/8 88/3
**focused [2]**  24/14 36/4
**focusing [1]**  96/12
**folks [5]**  39/17 40/12
40/21 51/3 94/17
**follow [2]**  31/14 94/17
**following [8]**  5/9 27/21 27/22 61/3 80/6 87/14 87/14 87/15
**follows [1]**  4/9
**footnote [3]**  69/11 84/15 85/5
**Footnote 7 [1]**  69/11
**forced [2]**  30/14 52/14
**foreclosed [1]**  34/21
**foregoing [1]**  106/4
**form [2]**  32/3 70/23
**formulated [1]**  18/2
**forward [4]**  3/6 37/10 78/23 96/9
**foundational [1]**  25/13
**founding [3]**  5/23 23/24 24/8
**four [3]**  25/5 25/6 29/25
**four-week [2]**  25/5 25/6
**frame [1]**  40/3
**framework [1]**  94/25
**framing [1]**  23/23
**franchise [1]**  20/11
**frankly [5]**  37/19 43/1 49/3 61/2 66/8
**fraud [1]**  54/18
**free [2]**  15/1 32/15
**Freedman [2]**  2/3 3/20
**frequency [1]**  69/7
**friend [3]**  89/4 91/6 99/20
**friends [4]**  48/13 86/18 88/5 88/20
**full [1]**  60/13
**full-throatedness [1]**  60/13
**fully [7]**  58/8 60/12 60/14 66/19 83/12 83/23 85/6
**function [2]**  12/21 101/23
**Fund [2]**  2/4 2/4
**fundamentally [1]**  12/23
**further [5]**  42/15 77/17 77/18 77/19 98/7
**future [5]**  38/19 73/19 78/14 81/11 104/13

## G

**galvanize [1]**  34/3
**gave [1]**  47/5
**general [4]**  52/17 52/23 100/3 101/18
**General's [1]**  2/13
**generally [5]**  56/18 64/11 68/12 71/13 95/2
**generate [1]**  68/19
**generated [2]**  64/6 74/5
**genres [1]**  26/3
**get [47]**  8/10 15/11 19/20 19/25 20/12 20/17 24/15 25/21 27/12 28/7 29/21 33/16 34/3 34/19 34/19 36/2 37/21 38/6 41/11 41/14 42/7 42/7 45/3 45/21 48/11 48/16 51/8 58/8 58/9 61/13 61/17 63/6 63/15 65/4 67/13 68/6 68/15 75/25 77/4 77/7 78/25 81/10 82/9 88/6 95/23 103/24 104/12
**getgo [1]**  31/12
**gets [5]**  14/11 29/1 35/2 65/8 104/14
**getting [3]**  36/21 46/7 75/24
**Giddings [3]**  54/11 54/13 54/13
**Ginsburg [1]**  62/13
**gist [1]**  10/10
**give [7]**  27/11 47/21 65/1 84/2 96/21 100/22 101/4
**given [1]**  94/22
**go [19]**  4/12 4/20 11/7 12/23 18/25 19/15 21/7 22/1 27/20 28/13 35/15 50/13 56/3 65/25 66/4 74/1 78/18 86/9 102/23
**goal [1]**  96/24
**goes [6]**  12/2 35/15 45/9 62/6 95/11 98/21
**going [93]**  4/22 5/15 8/5 9/12 10/23 11/1 11/2 11/2 11/3 11/8 14/15 15/18 16/15 17/5 18/11 18/13 18/16 18/17 18/23 19/4 19/10 21/16 21/21 23/15 27/7
27/8 28/1 29/15 30/17 31/23 31/23 33/19 35/10 38/20 39/4 39/22 39/23 39/24 40/9 41/9 43/6 43/15 43/22 44/15 45/3 46/5 46/16 46/16 46/19 46/20 47/5 47/11 48/4 48/11 48/14 48/15 48/15 48/21 49/7 49/10 49/14 49/16 49/24 49/25 50/10 50/18 55/16 58/15 59/13 59/14 59/18 60/2 62/19 76/17 78/2 82/23 86/4 87/21 88/5 88/17 88/18 88/23 93/22 95/23 97/2 97/3 97/9 100/22 102/23 102/23 102/24 103/23 105/8
**Goldilocks [1]**  95/5
**gone [2]**  76/2 79/19
**good [25]**  3/2 3/8 3/11 3/12 3/16 3/17 3/18 3/21 3/22 4/2 4/3 4/5 4/18 4/19 5/17 10/16 19/9 45/13 51/13 51/14 55/17 60/22 64/4 86/1 105/11
**goods [1]**  87/3
**got [2]**  65/7 65/7
**govern [1]**  69/16
**governed [1]**  50/10
**government [91]**  6/14 10/23 12/7 13/20 16/16 21/12 21/15 21/24 22/19 23/16 24/3 25/10 32/7 32/12 36/15 37/15 38/4 38/15 38/20 39/13 39/14 39/24 44/1 44/9 46/7 46/8 49/19 49/21 55/16 60/1 60/4 61/9 62/3 62/4 62/14 62/19 62/20 62/21 62/23 63/3 63/12 64/7 64/8 64/9 64/25 64/25 65/12 65/17 65/21 66/2 66/12 66/24 67/2 67/21 68/25 69/5 69/25 71/18 72/7 73/18 74/25 75/3 75/8 75/10 75/16 75/20 75/21 76/17 77/12 78/8 79/4 80/9 80/14 81/12 83/15 83/19 83/25 85/20 87/4 87/14 98/1

## G

**government... [10]** 99/19 100/15 101/2 103/16 104/10 104/10 104/17 105/10 105/11 105/13

**government -- again [1]** 75/20

**government's [17]** 33/3 57/21 59/6 60/8 62/16 63/6 65/8 68/10 70/4 71/5 71/25 73/18 78/25 79/2 83/13 85/7 104/12

**granting [1]** 27/4

**great [1]** 100/19

**grocery [1]** 95/25

**ground [3]** 4/24 46/12 52/12

**grounds [1]** 79/1

**GROUP [1]** 1/14

**guarantee [3]** 41/21 80/14 81/2

**guess [8]** 22/23 34/18 61/16 82/6 94/2 103/24 104/1 105/17

## H

**had [15]** 21/2 21/3 35/1 36/2 37/10 38/8 43/8 43/11 49/19 54/21 77/12 84/23 91/13 101/23 102/22

**Hakeem [1]** 1/13

**handle [1]** 4/18

**happen [13]** 15/18 15/25 18/11 18/13 18/23 46/16 46/16 72/1 79/2 96/10 97/2 97/3 102/24

**happened [3]** 8/9 22/21 29/7

**happening [7]** 44/14 49/6 49/6 49/11 52/24 80/23 96/4

**happens [7]** 8/20 25/4 34/21 57/23 62/22 66/1 71/3

**happy [4]** 27/15 42/15 56/3 67/7

**hard [4]** 4/25 5/1 73/6 90/11

**harder [3]** 16/4 16/5 77/13

**hardly [1]** 98/1

**harm [57]** 7/6 8/10 15/11 21/8 22/2 22/2 22/12 22/17 22/18 23/10 23/17 23/17 25/2 25/3 25/7 25/8 25/15 25/20 25/22 26/1 26/12 26/12 26/13 26/15 29/20 29/20 29/22 30/1 33/25 34/13 34/15 35/10 35/16 36/8 37/24 38/24 42/23 42/23 45/5 45/24 46/15 48/5 48/19 50/3 51/8 55/7 55/8 56/1 56/16 61/20 63/15 65/16 66/6 68/3 82/9 82/10 96/4

**harmed [5]** 30/8 40/17 44/5 44/7 44/21

**harming [1]** 100/17

**harms [15]** 7/24 15/9 18/6 24/21 30/24 34/5 34/7 44/10 48/19 52/20 53/10 54/22 54/24 54/25 55/1

**has [93]** 7/8 8/12 8/13 8/14 8/24 10/24 11/4 13/10 13/15 13/15 16/5 20/1 22/20 22/21 22/25 23/3 23/6 23/12 24/3 25/14 25/21 25/22 26/6 26/18 26/24 27/23 28/18 32/10 33/5 35/1 36/15 36/20 36/22 39/14 40/1 40/4 41/14 41/19 43/3 43/4 43/9 44/8 44/13 45/18 45/24 47/14 47/14 48/6 48/10 50/25 51/19 52/8 52/14 55/11 56/4 60/3 61/9 62/5 64/24 65/12 65/13 65/25 68/4 68/22 75/16 78/20 79/8 80/13 82/18 85/12 88/1 88/14 89/19 90/8 91/2 91/8 92/7 93/13 93/19 94/8 94/24 95/1 97/6 98/8 98/17 98/19 98/20 99/4 99/19 102/3 102/12 102/16 104/14

**has -- there [1]** 78/20

**hasn't [4]** 10/22 12/7 70/22 77/1

**have [176]**

**have -- there [1]** 29/25

**Havens [3]** 59/4 59/7 59/9

**having [10]** 8/19 16/20 18/7 20/4 34/18 54/6 58/12 77/5 89/8 95/22

**he [5]** 9/25 50/12 54/15 94/22 101/10

**He's [2]** 44/12 100/9

**head [4]** 5/25 33/5 36/12 37/14

**hear [7]** 4/9 67/5 78/3 94/21 104/2 105/16 105/20

**heard [10]** 64/2 64/15 64/22 68/20 69/18 73/1 74/21 75/14 91/1 98/24

**hearing [2]** 1/8 4/6

**hearings [1]** 5/7

**heart [1]** 36/2

**heavily [1]** 84/4

**Heinz [3]** 43/9 43/19 43/24

**held [1]** 38/13

**help [3]** 35/5 99/14 99/25

**help -- when [1]** 99/14

**helping [1]** 54/19

**here [73]** 4/6 5/10 7/21 11/18 11/23 12/6 12/21 12/22 15/4 16/23 17/12 18/10 19/4 24/24 26/14 27/14 28/4 29/19 30/1 30/21 30/23 32/7 32/11 32/12 32/17 32/19 33/9 35/13 35/25 36/10 42/3 43/9 43/16 44/4 45/17 47/16 48/9 48/12 50/17 51/7 51/8 55/9 55/23 56/23 58/7 61/9 62/6 64/19 65/20 69/21 70/8 70/15 74/7 77/15 80/20 80/23 80/23 81/8 84/25 85/7 86/17 87/11 90/24 91/10 91/15 94/19 97/16 98/18 98/24 101/24 102/14 103/11 104/3

**here's [2]** 97/2 97/3

**herman [4]** 2/20 2/22 106/3 106/11

**hesitant [1]** 83/9

**high [1]** 39/17

**highlight [2]** 101/15

**102/7**

**highlighted [1]** 102/20

**highly [7]** 9/3 23/14 26/19 26/22 46/25 90/9 90/13

**highly-sensitive [1]** 23/14

**him [2]** 6/3 100/9

**Hippocratic [4]** 86/13 86/18 86/21 87/8

**hiring [1]** 90/18

**his [4]** 96/22 100/9 100/10 100/11

**historical [1]** 93/13

**hold [4]** 4/16 22/4 50/5 74/4

**holding [1]** 26/8

**Home [1]** 12/11

**Homeland [1]** 12/14

**Honor [66]** 3/2 3/12 3/18 3/22 4/3 6/20 9/22 20/18 27/16 28/5 34/10 35/23 36/2 37/20 38/22 42/10 44/17 45/15 46/2 51/13 54/11 55/17 56/4 58/5 58/25 59/20 61/12 63/2 63/13 66/15 67/3 67/6 67/12 67/15 67/17 68/4 68/14 71/13 72/11 73/24 74/3 78/16 79/9 79/11 79/15 79/18 79/23 80/12 81/16 81/21 82/20 85/11 85/12 85/25 86/1 93/25 94/6 97/22 97/24 98/1 99/5 100/12 100/24 101/16 104/25 105/7

**Honor's [2]** 81/19 85/15

**HONORABLE [1]** 1/9

**hope [1]** 37/22

**host [1]** 74/17

**House [2]** 33/1 50/25

**House's [1]** 32/23

**how [48]** 5/5 6/18 7/10 10/23 11/1 11/2 11/3 11/8 11/11 12/23 14/14 16/21 17/1 18/15 21/21 22/9 22/17 28/25 29/1 29/6 30/8 36/25 45/2 46/5 47/15 49/21 53/12 54/21 58/17 65/25 66/25 68/11 69/24 73/9 74/20 74/24 75/17

**H**

**how... [11]** 81/13 83/10 86/16 90/11 90/23 94/22 94/25 96/1 96/1 96/1 102/23
**however [2]** 63/4 93/23
**however -- yeah [1]** 93/23
**Humphrey's [2]** 93/8 93/9
**hundreds [1]** 30/16
**hurdles [1]** 20/22
**hurt [2]** 9/13 47/15
**hypothesis [2]** 47/17 77/1
**hypothesize [2]** 17/23 18/3
**hypothesizing [2]** 15/15 16/8
**hypothetical [3]** 70/22 76/13 99/18
**hypothetically [8]** 21/11 45/4 45/4 66/10 66/22 71/4 80/5 80/8

**I**

**I -- and [1]** 33/13
**I'd [2]** 58/24 80/12
**I'll [3]** 5/4 86/5 94/5
**I'm [40]** 3/12 3/13 3/14 3/19 5/19 13/13 15/15 17/17 20/15 22/13 23/1 24/4 24/14 29/13 35/25 39/9 40/8 40/8 42/15 49/7 49/7 56/3 61/9 61/13 66/5 67/6 67/18 67/24 69/21 71/17 73/13 76/24 78/1 79/15 79/16 79/24 85/15 85/22 103/22 105/8
**I've [3]** 23/6 59/9 105/8
**ID [2]** 21/2 21/2
**idea [2]** 47/21 49/14
**identified [7]** 8/24 12/7 18/24 51/23 69/4 82/19 98/18
**identifies [1]** 98/16
**identify [3]** 14/19 101/2 103/5
**identity [1]** 19/15
**ignore [4]** 15/1 15/3 32/15 43/6
**ignored [1]** 43/7

**II [1]** 93/17
**III [17]** 2/13 23/24 25/1 25/3 26/7 30/9 42/3 56/16 61/20 61/24 63/22 64/23 65/12 65/15 75/12 79/1 81/7
**illegal [2]** 12/25 13/2
**illegality [1]** 102/17
**imagine [10]** 4/19 21/9 21/10 22/3 23/5 58/2 58/3 72/21 72/25 74/17
**immediate [1]** 52/19
**immediately [1]** 78/5
**immigration [2]** 43/9 43/13
**imminent [5]** 54/25 61/21 65/16 91/4 91/8
**impact [1]** 40/1
**impairment [1]** 87/2
**impedes [1]** 54/16
**impediments [1]** 53/8
**impending [2]** 9/19 33/25
**imperfect [1]** 77/13
**implausible [2]** 36/23 46/11
**implement [11]** 11/21 13/23 33/4 33/12 51/1 60/2 98/5 99/14 99/20 101/3 102/1
**implementation [6]** 12/7 12/24 41/25 94/13 96/14 100/20
**implemented [8]** 30/13 60/12 61/15 62/7 69/21 92/12 101/22 103/15
**implementing [3]** 60/14 60/15 98/3
**implicated [1]** 69/3
**implies [1]** 32/17
**importance [1]** 81/6
**important [17]** 24/4 36/10 36/11 40/6 41/5 41/7 51/10 56/13 74/6 75/1 81/3 84/16 84/18 84/22 84/25 95/7 95/17
**impose [1]** 55/6
**imposed [1]** 20/10
**impossible [2]** 68/24 95/13
**improbable [1]** 36/23
**improper [1]** 77/11
**inaccurate [1]** 100/6
**inadequate [1]** 18/2

**inappropriate [1]** 17/22
**inappropriately [1]** 18/7
**Inc [2]** 2/4 2/5
**include [4]** 18/21 28/5 28/6 82/24
**included [1]** 37/17
**includes [2]** 18/17 27/21
**including [5]** 9/10 32/8 35/6 91/12 102/4
**inclusion [1]** 100/6
**inclusive [2]** 76/10 77/2
**inconsistent [3]** 7/14 10/18 34/8
**incredibly [3]** 39/17 48/23 95/7
**independence [2]** 28/13 31/21
**independent [6]** 28/12 31/19 32/4 82/24 93/6 93/12
**indicate [1]** 33/7
**indication [1]** 48/25
**indistinguishable [1]** 86/17
**individual [11]** 7/1 7/2 42/23 43/12 44/21 47/22 70/18 75/17 82/18 82/18 99/12
**individuals [3]** 74/9 74/13 74/15
**ineligible [3]** 37/7 47/7 51/19
**inflected [1]** 87/22
**inflicted [3]** 55/8 87/7 87/21
**inflicting [1]** 54/8
**inform [1]** 10/24
**information [50]** 6/23 7/5 8/15 8/24 9/4 10/13 13/17 16/21 18/18 18/22 22/18 22/19 22/21 24/2 25/17 36/17 36/18 37/6 38/20 38/24 39/19 39/25 47/25 48/25 49/20 51/2 62/22 62/25 63/5 64/11 64/12 64/18 64/19 65/16 68/9 68/25 69/5 69/16 70/1 90/11 90/15 90/16 90/16 92/5 92/8 92/9

96/21 96/23 97/10 100/10
**informs [1]** 55/22
**infrastructure [5]** 12/5 12/15 53/7 53/12 99/13
**inherent [3]** 14/18 75/19 92/7
**inherently [1]** 14/22
**initiate [1]** 56/13
**Initiative [1]** 1/20
**injunction [16]** 1/8 4/7 23/4 26/17 27/4 41/23 47/14 47/16 55/24 61/25 65/14 86/6 92/23 94/9 96/5 104/5
**injunctions [6]** 26/2 41/15 41/16 42/5 100/12 104/5
**injunctive [3]** 26/1 26/14 70/17
**injure [1]** 7/3
**injured [12]** 6/13 6/24 7/3 19/12 19/20 20/2 20/4 20/21 21/4 21/6 24/2 30/9
**injures [1]** 8/18
**injuries [4]** 15/23 41/3 86/17 90/2
**injury [55]** 6/21 6/22 7/4 8/2 9/5 9/15 9/19 13/10 13/14 13/15 13/16 13/19 13/21 19/17 19/18 20/11 20/24 23/25 24/9 24/16 25/2 35/8 36/1 36/4 36/6 38/7 38/10 40/3 40/11 42/14 42/15 45/17 47/10 47/11 48/12 48/14 50/15 52/24 55/6 58/22 59/22 61/21 61/21 62/16 63/23 75/12 82/10 86/24 87/7 87/21 89/1 91/1 91/4 91/7 97/18
**inquiry [3]** 77/17 77/18 77/19
**insofar [1]** 31/3
**instant [1]** 8/23
**instead [5]** 6/1 41/10 46/8 70/17 75/17
**Institute [1]** 2/5
**instructs [1]** 92/13
**intend [2]** 4/9 4/16
**intended [1]** 14/1

## I

**intent [1]** 91/16
**interact [2]** 81/13 81/22
**interest [1]** 8/19
**interested [1]** 67/17
**interfere [1]** 52/20
**interference [2]** 90/4 90/9
**interim [2]** 22/3 66/6
**internal [3]** 13/17 67/1 90/17
**International [2]** 87/18 91/4
**interpretation [2]** 61/15 105/12
**interpreting [1]** 59/21
**interregnum [1]** 23/10
**intervene [1]** 96/13
**intervened [2]** 17/12 46/13
**intervening [2]** 16/24 43/21
**intervenor [2]** 52/4 74/19
**intervention [1]** 52/5
**intimidates [1]** 54/15
**intra [6]** 38/4 62/21 62/22 63/11 67/2 69/4
**intra-federal [4]** 38/4 62/21 62/22 63/11
**intricate [1]** 48/23
**introduce [1]** 3/6
**intrusion [4]** 24/19 38/12 38/25 64/2
**invalid [1]** 11/18
**invested [2]** 40/16 42/24
**investigate [1]** 39/17
**investigation [1]** 37/6
**investigations [2]** 19/14 91/18
**investment [1]** 41/1
**investments [1]** 40/21
**invoke [1]** 83/5
**involved [5]** 40/16 51/4 62/19 101/17 102/11
**irreparable [37]** 8/10 9/5 22/2 22/2 22/18 23/10 23/17 23/18 25/4 25/7 25/20 26/12 26/13 26/14 26/17 26/23

29/20 35/10 38/24 45/24 46/15 47/11 48/5 48/19 50/3 51/7 52/20 55/7 56/1 61/20 63/15 65/16 66/6 68/3 82/9 82/10 97/17
**is [425]**
**is -- however [1]** 63/4
**is -- it's [1]** 14/18
**is -- my [1]** 38/11
**is -- put [1]** 38/23
**isn't [12]** 9/16 10/21 16/24 22/8 33/19 43/21 45/1 46/23 58/22 59/10 61/1 97/2
**issuance [1]** 103/6
**issue [27]** 7/24 9/18 10/10 12/22 15/22 29/19 30/21 41/22 45/18 51/24 65/6 69/14 75/1 82/16 84/23 89/12 94/15 94/19 94/25 95/1 95/3 95/8 97/9 101/21 103/11 103/17 105/9
**issued [6]** 27/23 55/22 57/5 99/24 101/8 102/18
**issues [8]** 7/17 33/10 57/18 57/19 60/20 79/21 100/9 100/14
**issuing [3]** 31/2 41/15 42/5
**it [224]**
**it -- which [1]** 71/9
**it -- why [1]** 45/12
**it's [104]** 4/21 8/5 10/11 10/23 11/1 11/2 11/2 11/3 12/25 13/12 13/16 13/24 14/1 14/18 16/4 16/5 16/9 17/4 17/10 17/20 18/3 18/19 19/9 20/3 22/5 22/24 23/18 25/2 25/3 25/4 25/9 26/13 26/24 27/25 28/4 29/4 31/4 32/22 32/22 35/14 36/22 38/5 38/10 38/25 39/13 40/6 40/8 40/11 41/5 41/7 41/22 41/25 42/12 45/8 45/12 48/11 48/15 48/15 49/5 49/11 51/10 56/16 56/18 57/19 58/8 58/14 59/13 62/21 65/15 65/15 67/13

69/22 70/7 71/20 73/6 74/6 74/13 74/14 74/14 75/7 75/17 76/2 76/11 76/13 78/21 78/23 78/24 80/12 80/19 82/12 83/6 87/12 87/16 88/18 90/11 92/10 94/16 95/17 96/6 97/6 99/23 102/19 102/19 102/23
**its [26]** 16/18 16/20 17/8 21/20 29/3 32/4 32/16 36/17 36/22 37/1 41/7 47/24 56/2 56/15 57/16 60/13 71/6 71/24 73/20 74/24 77/11 92/8 95/16 98/9 98/13 102/24
**itself [18]** 10/15 12/8 12/19 17/25 23/14 23/17 30/5 34/17 57/12 59/7 62/6 63/22 68/21 70/7 74/8 76/25 77/20 78/15

## J

**Jackson [1]** 92/6
**Jacob [2]** 1/12 5/19
**Jeffries [1]** 1/13
**Joey [1]** 3/24
**John [2]** 2/3 3/20
**john.freedman [1]** 2/6
**joined [3]** 3/14 3/19 5/19
**joke [1]** 94/3
**jshelly [1]** 1/16
**judge [11]** 1/9 26/5 26/6 32/18 43/13 56/21 62/13 84/13 84/14 85/2 90/5
**judgment [7]** 22/25 23/12 25/14 26/19 26/24 48/16 95/16
**judicial [7]** 10/20 56/14 56/19 62/10 72/24 75/13 81/10
**July [3]** 41/19 41/21 80/1
**July 29th [1]** 41/19
**jurisdiction [5]** 42/9 57/24 79/22 81/17 82/12
**jurisdictional [1]** 82/15

**jurisdictional-like [1]** 82/15
**jurisprudence [1]** 40/7
**just [89]** 7/21 8/17 12/20 12/25 14/2 16/10 16/11 16/16 17/19 17/21 17/23 20/16 21/7 22/16 24/7 24/14 26/2 30/22 32/5 32/11 32/17 32/22 33/4 33/25 38/4 38/21 40/20 40/22 42/24 45/8 45/10 46/8 47/21 47/23 56/18 57/4 58/10 58/18 60/18 61/13 62/7 62/16 65/20 66/5 67/1 68/5 71/4 71/9 72/12 72/16 72/22 76/14 76/19 81/12 82/5 82/7 83/6 83/9 84/3 84/4 84/7 86/10 87/7 88/5 88/9 88/22 88/25 89/14 90/11 90/21 92/1 93/11 94/8 95/1 95/15 95/17 97/9 97/25 99/4 99/10 100/25 101/2 101/9 101/15 102/19 102/21 102/25 103/14 104/24
**Justice [5]** 3/23 4/1 55/18 92/6 96/15
**justiciability [1]** 79/22

## K

**Katz [1]** 84/14
**Kavanaugh [1]** 56/21
**KAYE [1]** 2/4
**keep [2]** 11/12 64/24
**keeping [1]** 96/8
**Kevin [2]** 1/13 5/20
**kick [1]** 36/24
**kicked [1]** 36/21
**kind [22]** 21/8 23/23 23/24 24/8 24/9 36/6 36/9 37/13 37/15 38/12 40/2 43/11 43/21 45/16 46/11 48/21 53/12 68/12 82/19 83/6 89/21 99/8
**kinds [2]** 92/10 104/18
**kkowalewski [1]** 1/16
**know [72]** 7/21 10/23 11/8 12/3 13/13 15/17 16/9 17/2 17/12 18/10 18/12 18/15 18/19

## K

**know... [59]** 18/25 19/3 20/3 22/5 22/11 28/4 31/13 36/5 36/21 36/25 38/19 41/10 43/1 43/8 43/25 44/19 45/2 47/19 48/1 48/11 48/14 49/7 49/9 49/14 49/18 49/23 50/15 50/20 57/18 58/17 61/23 66/3 68/15 69/23 70/20 71/5 72/7 72/8 74/13 77/4 79/12 79/16 81/16 82/22 83/8 86/4 86/16 87/4 87/6 88/7 90/12 92/13 92/15 96/18 97/8 99/17 101/5 102/23 102/23
**knowing [1]** 37/14
**knowledge [1]** 47/20
**knows [3]** 28/1 28/12 82/23
**Kollar [2]** 26/7 32/18
**Kollar-Kotelly [2]** 26/7 32/18
**Kotelly [2]** 26/7 32/18
**Kowalewski [2]** 1/13 5/20

## L

**LA [1]** 2/14
**labor [1]** 101/19
**lack [3]** 40/17 57/24 71/2
**laid [1]** 100/11
**Lali [2]** 3/9 5/17
**Lali Madduri [1]** 3/9
**Lalitha [1]** 1/12
**land [2]** 49/24 105/8
**landed [1]** 105/8
**landmark [1]** 93/8
**Lang [4]** 1/19 3/13 35/23 35/24
**language [7]** 12/20 62/9 69/19 84/9 84/15 84/17 85/5
**last [8]** 32/1 39/15 50/25 64/6 65/6 94/7 102/5 102/21
**late [2]** 41/22 42/1
**later [8]** 35/15 49/10 52/24 71/19 71/21 74/2 96/22 97/1
**Latin [1]** 40/23

**law [30]** 1/14 4/19 6/1 9/10 10/18 10/19 13/8 16/20 16/21 31/14 39/19 41/8 43/9 49/19 50/11 59/4 62/8 64/4 65/5 73/1 75/11 77/20 77/23 78/10 78/10 84/8 88/16 90/3 97/13 101/19
**lawful [24]** 9/24 11/11 14/10 31/5 31/7 31/22 33/12 33/17 40/17 40/18 41/1 45/7 63/7 72/1 72/10 72/19 72/22 73/17 74/17 96/10 98/3 98/5 101/4 102/2
**lawfully [8]** 9/25 9/25 11/21 12/25 22/8 101/22 101/24 103/15
**lawfulness [1]** 79/7
**laws [3]** 88/14 91/17 95/8
**lawsuit [3]** 56/1 64/1 75/9
**lawsuits [2]** 55/20 55/20
**layers [1]** 88/1
**lead [2]** 5/15 55/16
**League [2]** 40/23 69/11
**learned [1]** 23/6
**least [21]** 8/7 10/3 14/9 17/2 19/3 27/13 29/25 45/5 45/13 47/18 55/21 56/25 62/17 62/18 65/22 66/22 68/11 70/20 70/23 78/11 79/25
**leave [2]** 5/5 81/12
**lectern [1]** 80/19
**led [2]** 36/20 43/12
**left [1]** 8/3
**legal [9]** 1/20 7/17 18/9 28/15 54/19 63/7 101/6 103/3 103/4
**legality [7]** 11/23 28/14 57/7 60/19 79/13 84/24 102/24
**less [4]** 46/7 52/18 61/1 77/18
**let [1]** 89/16
**let's [12]** 14/3 16/17 22/3 22/13 22/16 23/5 29/10 38/4 58/18 62/15

71/4 78/18
**letters [1]** 33/19
**level [1]** 88/22
**leverage [1]** 90/19
**light [3]** 31/2 54/20 60/24
**lights [1]** 4/14
**like [52]** 5/5 5/6 5/11 8/17 9/25 20/3 23/15 23/24 24/13 25/22 30/18 32/1 32/5 32/7 32/11 32/12 32/17 35/7 43/6 45/6 58/21 59/2 59/10 61/23 62/13 66/1 66/12 67/23 68/10 68/25 69/16 72/8 72/21 73/9 73/19 74/2 80/18 81/1 81/9 82/15 84/2 85/5 85/15 86/9 88/3 90/15 92/23 93/5 93/12 96/7 101/6 104/24
**likelihood [2]** 72/6 82/11
**likely [9]** 9/19 9/20 15/23 15/25 33/25 80/22 82/12 82/12 104/2
**Likewise [1]** 97/12
**limited [2]** 9/11 89/7
**limiting [1]** 88/16
**limits [1]** 42/4
**line [1]** 95/14
**lineage [1]** 93/13
**list [165]**
**lists [41]** 6/9 14/19 17/13 18/16 18/24 19/5 19/7 19/8 20/22 36/23 37/15 41/24 42/20 42/22 49/9 49/15 49/24 52/7 52/23 53/6 53/14 63/5 68/4 68/17 68/19 75/6 75/11 76/1 81/22 81/24 82/1 88/6 88/12 88/14 88/23 89/11 98/19 99/20 99/21 99/23 100/6
**literally [2]** 18/21 55/21
**litigants [1]** 70/5
**litigate [6]** 57/18 70/20 71/10 71/20 79/7 79/12
**litigated [1]** 65/10
**litigating [1]** 70/21
**litigation [5]** 15/5 64/5

66/17 80/25 85/15
**little [6]** 32/13 49/10 57/22 63/16 63/17 73/6
**LLP [2]** 1/14 2/4
**lmadduri [1]** 1/15
**local [7]** 43/16 46/20 46/21 46/25 47/8 49/24 50/1
**long [4]** 24/22 43/19 54/21 86/4
**look [16]** 16/3 16/14 17/21 17/21 23/24 28/14 41/4 47/2 61/23 67/16 71/17 73/8 80/18 95/9 96/16 101/5
**looked [1]** 62/10
**looking [7]** 15/23 24/9 37/5 39/16 39/24 78/23 88/13
**looks [5]** 28/23 28/24 31/25 72/8 81/1
**looming [1]** 52/24
**lorraine [4]** 2/20 2/22 106/3 106/11
**lose [1]** 71/20
**lost [1]** 65/12
**lot [23]** 32/1 41/20 43/5 46/21 56/8 58/25 59/1 59/3 60/21 68/7 73/1 74/21 75/14 82/14 84/6 88/1 88/18 90/14 90/17 91/1 91/12 102/10 102/22
**lots [4]** 40/21 86/20 86/20 88/15
**Louis [4]** 2/13 2/14 4/3 86/2
**Louis Capozzi [1]** 86/2
**Louis.Capozzi [1]** 2/15
**love [1]** 63/16
**LULAC [14]** 1/19 3/13 26/7 35/25 36/12 37/14 39/2 75/22 76/5 89/4 99/1 101/13 102/4 105/2
**luxury [1]** 53/5

## M

**maccardi [1]** 1/17
**Madam [1]** 35/20
**Madduri [5]** 1/12 3/9 3/11 5/16 5/18

## M

**made [13]** 22/24 22/25 23/12 25/14 26/18 26/24 50/3 68/18 68/23 83/25 86/7 86/21 92/2
**mail [12]** 28/8 29/2 29/10 29/15 29/18 35/2 39/24 51/19 51/20 51/21 80/7 82/17
**mail-in [2]** 80/7 82/17
**mailable [1]** 98/15
**mailing [1]** 34/22
**maintain [3]** 12/16 74/11 96/6
**maintained [1]** 21/25
**maintenance [1]** 74/24
**major [1]** 67/19
**make [17]** 14/1 21/12 21/23 36/25 41/8 43/17 45/21 52/25 55/4 60/17 63/14 67/7 68/5 74/19 77/3 93/12 104/24
**makes [7]** 9/2 33/9 63/20 68/22 89/25 93/9 100/7
**making [2]** 51/1 76/2
**manage [3]** 74/24 75/17 92/8
**managing [1]** 75/9
**mandate [1]** 101/21
**mandated [2]** 28/4 31/11
**mandates [3]** 98/14 101/3 101/7
**mandatory [2]** 96/6 99/23
**manner [2]** 71/11 96/10
**manufacturer [1]** 87/3
**many [4]** 37/9 46/17 46/20 72/22
**marks [2]** 1/19 43/5
**Massachusetts [13]** 1/14 2/4 14/23 14/25 15/1 15/7 15/16 15/16 15/19 15/20 15/21 16/1 17/8
**massive [1]** 37/15
**master [1]** 9/1
**match [3]** 6/9 8/7 10/14
**matches [1]** 39/25
**matching [14]** 7/7 7/11

8/1 9/4 11/4 42/2 69/18 69/19 69/20 69/25 70/3 103/2 103/3 103/4
**material [2]** 66/13 104/9
**materials [2]** 54/2 54/2
**matter [8]** 7/14 11/11 51/16 57/24 77/23 98/15 105/15 106/5
**matters [1]** 72/16
**Max [2]** 1/13 5/20
**maximum [2]** 49/4 49/23
**may [19]** 1/5 3/8 7/20 7/21 34/16 38/6 44/22 45/7 45/9 45/10 58/9 63/6 67/21 73/16 73/17 80/24 81/11 81/11 106/11
**maybe [15]** 10/4 10/5 22/22 45/3 61/22 64/20 68/5 76/22 78/2 79/16 89/10 89/11 89/14 95/10 97/8
**McDonald [1]** 99/18
**me [28]** 3/24 5/2 7/19 10/24 11/4 12/12 21/13 21/13 24/15 27/17 30/25 31/1 33/15 33/18 37/24 54/15 61/7 65/24 66/19 66/24 71/14 73/11 80/19 104/3 104/11 104/18 105/16 105/20
**mean [42]** 16/12 21/24 24/25 33/24 37/22 44/7 45/8 47/13 59/14 60/7 60/14 60/21 61/12 64/10 65/24 66/21 67/4 68/4 68/5 68/15 69/19 70/14 71/17 72/11 72/20 73/6 74/4 74/13 76/20 76/22 77/9 78/2 78/14 78/20 79/12 80/5 81/14 83/11 84/16 87/6 88/11 93/12
**mean -- I [1]** 37/22
**meaningless [2]** 10/20 12/20
**means [1]** 66/21
**meant [2]** 95/25 96/6
**mechanisms [1]** 103/16
**medical [3]** 64/12

64/18 90/15
**Medicine [4]** 86/13 86/18 86/21 87/9
**meet [2]** 42/14 93/3
**meeting [1]** 33/5
**members [8]** 7/1 7/2 8/18 44/21 48/2 53/21 53/21 54/8
**memorandum [3]** 84/23 85/4 104/4
**memorandums [1]** 101/14
**mentioned [2]** 38/12 85/9
**mere [3]** 32/24 76/7 76/14
**merely [2]** 28/10 77/13
**merits [12]** 6/5 36/4 45/16 45/20 57/19 63/17 68/5 72/7 80/22 84/3 91/20 95/19
**met [1]** 90/2
**mid [1]** 97/4
**mid-term [1]** 97/4
**middle [6]** 27/12 41/23 49/12 52/12 52/17 100/17
**midst [1]** 41/16
**might [27]** 12/5 15/13 15/13 34/17 56/10 60/10 61/23 67/7 67/9 67/22 69/3 70/13 70/23 71/18 72/17 72/20 73/25 75/17 78/9 78/13 79/21 81/13 81/22 82/23 88/25 99/8 103/16
**million [1]** 48/2
**millions [1]** 42/21
**mindful [1]** 27/9
**minute [3]** 34/4 63/16 105/20
**minutes [4]** 5/2 5/4 5/6 93/22
**misframed [1]** 92/3
**misheard [1]** 81/21
**misidentified [1]** 18/23
**mission [5]** 35/9 55/6 67/25 77/3 99/25
**missions [2]** 40/24 52/21
**Missouri [3]** 2/13 2/14 3/5

**mitigate [1]** 30/24
**mixed [1]** 36/14
**mixed-use [1]** 36/14
**mixing [1]** 42/2
**MO [2]** 2/13 2/14
**mobilization [2]** 30/18 34/12
**mobilizing [1]** 53/1
**mode [1]** 41/25
**modify [1]** 52/6
**moment [2]** 76/20 102/18
**Monetary [1]** 25/24
**money [1]** 48/20
**months [5]** 52/18 52/24 61/1 61/24 64/6
**more [26]** 8/9 8/18 16/10 19/9 26/8 29/14 32/13 38/21 40/22 48/19 50/22 54/25 55/5 63/24 63/25 70/14 71/11 71/22 78/3 79/7 81/3 82/6 89/7 89/7 95/17 99/10
**most [7]** 23/24 53/4 75/7 79/17 84/16 84/18 104/6
**mostly [1]** 65/5
**motion [5]** 55/24 58/6 59/19 66/17 66/18
**motions [3]** 4/7 103/24 104/5
**Movant [1]** 3/4
**Movants [1]** 2/13
**move [2]** 49/17 94/5
**moves [1]** 50/25
**moving [1]** 15/12
**Mr. [3]** 54/13 58/10 86/3
**Mr. Capozzi [1]** 86/3
**Mr. de [1]** 58/10
**Mr. Giddings [1]** 54/13
**Ms [1]** 35/24
**Ms. [2]** 3/11 5/16
**Ms. Madduri [2]** 3/11 5/16
**much [15]** 36/3 42/24 51/9 51/11 55/10 55/15 55/22 59/8 63/18 79/6 88/25 89/15 89/25 93/21 103/22
**multiple [2]** 83/16 100/10
**Murray [1]** 56/20

## M

**must [2]** 27/20 98/22
**my [31]** 3/9 3/14 5/13 5/19 19/22 23/5 24/11 29/9 35/17 35/21 36/5 38/11 49/8 52/11 54/16 55/9 55/10 82/4 85/17 86/5 86/18 88/5 88/20 89/4 91/6 99/20 99/21 101/1 102/20 105/10 105/12
**Myers [1]** 93/8
**myself [1]** 40/9

## N

**NAACP [5]** 2/3 3/19 51/15 90/25 97/23
**name [4]** 3/9 35/21 63/21 100/9
**name-change [1]** 100/9
**names [1]** 75/24
**narrower [1]** 59/8
**national [1]** 51/21
**nationwide [2]** 47/16 47/23
**natural [3]** 17/4 17/7 37/12
**natural-born [1]** 37/12
**naturalization [1]** 8/6
**naturalized [3]** 36/21 37/9 39/18
**naturally [1]** 59/19
**nature [2]** 5/2 43/25
**navigate [1]** 99/25
**necessarily [1]** 82/1
**necessary [7]** 5/10 12/16 33/10 53/7 69/17 98/13 99/15
**need [25]** 20/21 21/6 29/21 30/1 33/24 35/4 35/4 35/5 35/5 41/25 42/17 42/17 47/21 50/2 50/7 50/7 53/21 55/25 61/21 63/24 68/6 75/24 92/14 98/10 105/18
**needed [4]** 52/7 77/17 77/18 77/19
**needing [1]** 86/22
**needs [8]** 12/4 14/2 67/6 69/4 78/16 92/4 94/14 98/6
**negotiable [1]** 42/4
**negotiations [1]** 90/20

**neither [1]** 102/14
**never [9]** 13/3 13/6 16/4 35/1 35/2 35/3 35/3 64/22 101/10
**Nevers [5]** 2/3 3/19 51/15 58/10 97/23
**nevertheless [1]** 15/7
**new [18]** 12/1 12/5 40/7 44/6 44/7 44/8 44/14 44/16 45/4 45/5 47/1 54/2 55/4 57/20 58/2 80/8 84/18 102/8
**New York [7]** 12/1 44/6 44/8 44/14 45/4 45/5 47/1
**New York -- I [1]** 44/7
**New York's [1]** 44/16
**Newby [4]** 48/7 55/1 55/4 100/3
**news [3]** 50/22 50/22 50/24
**next [6]** 47/2 49/8 49/16 71/24 96/18 104/2
**NICHOLS [1]** 1/9
**night [1]** 50/25
**nightmare [1]** 50/2
**nine [1]** 52/13
**Ninth [2]** 84/11 84/20
**no [79]** 1/3 6/6 6/7 6/10 9/14 10/7 11/10 11/20 11/25 12/6 12/25 14/2 15/11 15/11 18/21 27/25 29/6 29/10 29/15 29/18 31/6 33/9 33/12 33/16 34/10 35/16 37/22 45/4 45/18 48/19 48/20 48/21 48/21 51/7 51/23 52/8 52/8 55/14 63/13 63/15 64/20 64/21 67/19 68/10 69/25 71/7 72/7 73/21 74/2 76/15 77/16 78/1 81/7 83/25 87/11 90/12 90/12 91/9 91/16 91/17 91/18 92/22 95/3 95/9 97/8 97/10 98/5 98/6 98/8 98/16 98/19 98/20 99/4 99/19 100/8 101/25 103/3 103/14 105/5
**non [8]** 14/2 36/19 37/4 39/16 42/4 74/14 98/14 98/15

**non-citizens [5]** 14/2 36/19 37/4 39/16 74/14
**non-discrimination [1]** 98/14
**non-mailable [1]** 98/15
**non-negotiable [1]** 42/4
**none [5]** 51/1 98/17 98/24 103/11 103/15
**normal [2]** 28/13 70/13
**normally [1]** 96/3
**not [171]**
**not -- it's [1]** 32/22
**nothing [18]** 7/8 8/3 8/9 8/12 8/13 8/14 8/20 13/10 13/15 13/15 15/17 22/21 47/19 57/16 73/3 91/19 91/23 93/7
**notice [6]** 10/5 27/20 31/2 69/7 83/12 83/16
**notices [1]** 69/16
**notification [1]** 105/4
**notify [3]** 11/4 104/10 104/18
**notwithstanding [3]** 77/25 84/20 95/15
**now [62]** 9/18 11/6 15/12 15/15 15/18 15/23 16/8 17/2 20/2 21/16 22/2 22/4 23/2 23/11 24/2 24/2 24/15 26/17 27/23 27/25 30/9 30/15 30/17 30/21 34/2 34/5 34/24 35/11 35/11 38/10 42/19 43/4 50/14 51/10 52/22 52/24 53/11 53/11 53/17 54/1 54/23 58/22 61/1 65/18 71/10 71/19 73/2 74/21 75/10 75/21 76/2 76/13 77/5 78/12 78/18 79/6 79/19 80/2 80/11 83/15 87/12 91/20
**NPR [1]** 99/1
**NPRM [7]** 28/1 28/14 28/18 28/23 60/9 78/24 82/23
**number [1]** 45/13
**numbers [4]** 23/15 64/14 64/15 64/17
**numerous [1]** 48/7
**Nunez [2]** 53/23 54/9

**NW [5]** 1/14 1/20 2/4 2/9 2/21

## O

**obligation [3]** 10/24 18/9 82/24
**obligations [2]** 63/8 71/6
**observed [2]** 26/5 26/7
**obstacles [1]** 55/4
**obtain [2]** 53/12 99/15
**obviously [14]** 4/6 4/11 4/14 5/12 65/18 66/16 73/7 73/12 75/10 78/20 82/8 82/10 83/11 84/6
**occasions [1]** 48/7
**occur [2]** 9/19 9/20
**occurred [1]** 23/7
**occurring [1]** 54/22
**occurs [3]** 7/7 23/6 25/8
**off [11]** 5/15 21/8 36/22 36/24 44/15 50/5 75/23 75/25 78/5 80/17 88/6
**off-cycle [1]** 44/15
**offensive [4]** 26/20 26/22 90/10 90/13
**offer [5]** 36/3 57/6 72/13 81/18 86/10
**offering [1]** 46/9
**Office [2]** 2/9 2/13
**official [4]** 2/20 43/3 47/4 106/3
**officials [12]** 43/2 43/5 43/17 46/20 46/21 47/2 47/6 47/9 48/24 50/1 73/21 88/24
**officials' [1]** 49/24
**oh [3]** 44/3 50/19 82/3
**OK [1]** 2/14
**okay [17]** 15/6 18/14 20/8 20/15 20/19 22/15 24/17 24/25 27/2 27/6 30/3 30/8 38/2 77/16 84/1 105/1 105/22
**old [3]** 59/4 77/22 94/2
**Olive [1]** 2/14
**omitted [1]** 18/24
**once [5]** 22/24 23/18 43/3 48/24 71/10
**one [33]** 10/5 16/12 20/12 21/17 22/8 22/23

**O**

**one... [27]** 27/25 29/13 37/22 38/22 40/24 41/20 43/17 44/4 44/6 44/8 47/10 58/25 64/24 70/1 72/12 73/23 81/18 81/19 82/6 84/3 88/2 95/17 97/5 100/6 102/7 104/14 104/24
**one's [1]** 64/20
**ongoing [4]** 52/19 60/5 83/24 97/4
**online [1]** 54/2
**only [12]** 27/6 31/16 54/16 55/25 60/3 62/20 66/20 67/10 73/4 98/13 103/7 105/17
**opaque [1]** 50/21
**open [1]** 32/23
**opening [1]** 5/3
**operate [1]** 101/25
**operates [1]** 11/23
**operations [1]** 53/1
**opinion [11]** 62/12 84/14 84/18 85/1 85/2 85/3 85/6 85/9 104/4 104/8 105/16
**opinions [3]** 64/7 64/9 64/10
**opportunity [5]** 27/12 34/2 71/20 95/18 100/22
**opposite [1]** 50/6
**order [93]** 6/7 6/15 11/15 11/16 12/25 13/25 14/5 14/10 15/24 21/22 23/2 27/19 27/24 28/17 30/9 30/11 31/21 32/2 32/5 32/8 32/9 33/4 33/6 33/8 33/12 38/13 39/21 45/17 45/18 47/3 48/10 49/3 50/19 51/17 52/2 52/14 52/16 53/2 54/15 54/20 55/21 56/4 56/8 56/12 57/12 58/14 60/2 60/2 64/16 68/17 73/3 73/13 73/16 77/20 78/9 78/15 81/24 81/25 82/7 84/8 84/13 90/22 92/12 92/13 92/20 94/11 94/13 94/15 94/20 95/2 95/3 95/12 95/15 96/17

96/18 96/20 96/25 96/25 97/2 97/15 98/3 98/6 100/14 100/16 100/20 101/4 101/7 101/17 102/5 102/9 104/4 105/3 105/20
**ordered [3]** 19/1 32/5 58/5
**orders [9]** 12/11 12/14 53/22 54/3 54/7 62/11 95/8 98/22 99/2
**ordinary [2]** 32/16 53/2
**organization [4]** 48/1 59/5 70/17 76/24
**organizational [2]** 20/3 20/4
**organizations [9]** 44/20 48/2 52/11 53/5 53/10 54/24 55/2 55/5 58/12
**original [2]** 38/13 59/7
**originally [1]** 103/10
**Orion [4]** 2/3 3/18 51/15 97/23
**Orion de [1]** 97/23
**orion.denevers [1]** 2/5
**other [37]** 4/14 7/17 15/21 19/15 20/23 28/20 29/7 30/17 31/20 37/5 39/2 40/21 45/7 45/9 46/18 56/17 56/22 64/5 68/4 70/8 71/18 72/20 78/9 79/1 79/21 80/4 81/9 84/9 85/12 88/21 94/21 96/12 97/5 102/7 103/22 105/11 105/19
**others [1]** 28/19
**otherwise [3]** 58/13 59/14 64/23
**our [37]** 7/1 7/24 8/18 10/10 16/15 19/5 19/8 19/11 21/15 26/20 28/13 29/19 29/20 30/19 31/6 34/11 35/9 35/15 40/23 41/1 47/11 53/9 55/12 58/6 66/16 80/21 84/6 84/25 86/11 86/16 92/2 94/23 95/8 95/23 99/25 100/17 102/25
**ours [1]** 19/9
**out [34]** 8/3 10/5 29/17

31/7 32/9 34/1 34/19 37/3 37/15 41/6 42/20 42/21 44/24 49/12 49/15 50/24 51/6 53/3 62/7 62/15 65/23 66/10 67/19 67/25 79/6 85/16 85/23 95/24 98/21 99/4 100/11 101/7 104/8 104/14
**outcome [6]** 32/8 33/9 41/10 45/13 57/2 96/19
**outcomes [1]** 34/6
**outdated [1]** 99/1
**outset [1]** 102/18
**over [11]** 27/16 35/17 48/2 52/21 64/21 65/2 70/21 75/13 79/22 90/12 90/19
**overbroad [1]** 47/24
**overcome [2]** 20/23 20/23
**overcomes [1]** 12/8
**overcomplicate [1]** 40/14
**overdrive [1]** 52/15
**overhaul [1]** 52/15
**overhauling [1]** 54/1
**overstating [1]** 80/16
**overzealous [1]** 74/23
**own [6]** 32/4 52/6 56/15 93/24 95/16 98/9

**P**

**p.m [2]** 1/6 105/23
**Page [3]** 52/4 55/4 88/7
**Page 11 [1]** 52/4
**Page 13 [1]** 88/7
**Page 9 [1]** 55/4
**paper [2]** 82/14 94/10
**papers [1]** 36/22
**Paragraph [6]** 53/15 53/23 53/24 54/4 54/5 54/12
**Paragraph 16 [5]** 53/15 53/23 53/24 54/4 54/12
**Paragraph 20 [1]** 54/5
**Paragraphs [4]** 53/16 53/19 53/24 54/10
**Paragraphs 18 [2]** 53/16 53/19
**Paragraphs 19 [1]** 53/24

**Paragraphs 21 [1]** 54/10
**parallel [1]** 26/9
**part [10]** 15/12 25/11 26/16 31/24 63/25 67/2 75/7 77/2 80/21 104/19
**participation [5]** 37/19 38/18 38/19 39/9 40/25
**particular [5]** 13/14 13/14 73/15 73/15 104/13
**particularly [1]** 54/12
**parties [3]** 6/24 57/18 79/24
**partners [1]** 53/20
**parts [3]** 24/3 28/20 78/21
**party [6]** 3/10 5/18 5/20 16/25 29/24 30/13
**passes [1]** 29/12
**past [3]** 36/16 68/15 91/18
**peers [1]** 37/11
**pending [6]** 10/24 66/9 66/11 66/21 67/16 68/1
**Pennsylvanian [1]** 49/7
**penny [1]** 34/4
**people [24]** 9/6 16/17 28/9 32/25 34/19 38/17 45/5 47/4 47/15 49/17 49/17 49/20 54/23 58/11 58/20 59/14 75/22 75/24 76/3 77/7 77/7 80/7 87/5 91/1
**per [2]** 5/2 78/6
**perfect [3]** 47/20 78/2 99/21
**perfectly [3]** 13/7 31/5 31/7
**perhaps [10]** 18/6 26/15 31/20 58/17 62/15 71/19 71/21 81/20 81/20 95/1
**peril [1]** 93/24
**period [13]** 22/3 22/20 22/22 23/11 24/14 25/5 25/6 34/1 38/2 62/19 66/6 71/2 79/3
**permitted [2]** 24/12 101/19
**permitting [1]** 51/24
**person [6]** 19/7 27/6 77/17 78/5 90/10 90/13

**P**

**personal [1]** 10/13
**perspective [3]** 60/8 73/18 80/1
**persuade [1]** 34/2
**persuasion [2]** 30/18 34/13
**PETA [1]** 59/10
**Pezzi [3]** 2/8 3/23 55/18
**PI [15]** 8/10 10/11 23/11 25/3 51/6 66/10 66/20 66/20 66/23 67/11 82/8 93/20 103/23 103/24 104/15
**pick [2]** 16/12 28/19
**piece [6]** 12/19 42/16 43/20 46/18 94/10 104/6
**place [2]** 26/1 52/22
**places [1]** 94/24
**plain [1]** 32/20
**plainly [3]** 47/23 50/17 95/13
**plaintiff [6]** 24/1 44/13 47/22 47/23 72/5 91/13
**plaintiffs [71]** 1/3 1/12 1/19 2/3 3/7 3/10 3/13 3/19 4/10 4/12 5/15 5/18 5/21 24/12 29/24 30/13 35/17 35/25 41/13 44/4 48/15 48/20 51/5 57/6 57/16 58/1 58/18 60/3 60/11 60/20 60/21 61/2 61/5 61/14 63/9 63/10 63/24 67/8 67/23 68/20 70/2 70/12 70/23 70/24 71/7 72/13 74/22 75/6 79/6 81/10 81/17 82/11 84/7 85/5 85/20 87/13 87/17 90/2 90/14 91/24 92/2 92/18 93/22 95/14 97/17 97/19 97/24 99/7 99/10 103/24 105/2
**plaintiffs' [19]** 52/25 55/23 56/25 59/1 59/22 62/24 72/2 73/12 75/15 80/13 80/23 81/4 81/6 81/20 83/12 84/5 86/19 89/17 90/1
**plan [11]** 21/15 21/18 60/12 61/11 66/25 81/5

87/12 87/13 87/18 87/21 87/22
**planning [3]** 30/15 61/3 80/7
**plausible [3]** 44/12 45/12 88/10
**play [3]** 4/18 27/17 52/8
**playing [2]** 30/14 41/1
**please [3]** 3/6 3/8 12/12
**plenary [1]** 5/25
**plenty [1]** 70/19
**point [32]** 5/1 8/3 10/20 11/4 11/20 16/18 24/5 33/14 33/16 33/24 38/9 42/10 43/10 43/20 44/24 49/2 54/12 65/9 71/10 76/5 79/19 79/23 81/18 84/4 84/7 86/13 87/19 92/4 97/25 99/4 105/6 105/19
**points [5]** 36/6 38/22 86/5 97/25 100/25
**policies [1]** 86/23
**policy [6]** 43/12 57/8 77/6 87/5 96/23 101/18
**PORTER [1]** 2/4
**portion [1]** 104/20
**position [8]** 22/11 63/6 71/5 75/1 78/25 82/22 86/11 104/12
**possession [1]** 92/8
**possible [11]** 11/19 17/10 31/4 60/7 60/22 61/14 69/22 78/14 81/11 104/25 105/3
**possibly [1]** 94/25
**post [1]** 73/1
**post-election [1]** 73/1
**postal [28]** 27/13 27/18 27/20 28/11 28/25 31/1 31/8 31/13 31/18 31/20 33/19 33/22 34/22 56/7 56/9 56/12 78/19 79/8 79/19 80/5 82/2 82/16 83/2 83/4 83/10 93/10 98/13 98/13
**potential [2]** 37/4 39/11
**potentially [2]** 65/19 69/15
**power [5]** 5/25 50/12

94/19 94/22 102/15
**powerful [1]** 5/24
**powers [2]** 6/3 52/1
**pre [3]** 59/3 96/13 96/14
**pre-Alliance [1]** 59/3
**pre-enforcement [1]** 96/13
**pre-implementation [1]** 96/14
**precedent [1]** 92/23
**precious [1]** 53/4
**precisely [2]** 46/6 55/8
**preclude [5]** 11/20 21/24 21/24 26/9 31/1
**precluded [1]** 10/18
**predates [1]** 84/17
**preferences [1]** 6/1
**prejudice [2]** 56/2 57/25
**preliminary [11]** 1/8 4/7 27/4 55/24 61/25 65/14 86/6 96/5 100/12 104/4 104/5
**premature [1]** 55/23
**premise [1]** 81/19
**premised [2]** 5/24 64/22
**preordained [1]** 32/8
**prepare [5]** 35/12 61/6 61/14 99/13 99/22
**preparing [3]** 30/15 30/24 49/12
**present [4]** 46/1 66/11 71/19 95/22
**present-day [1]** 95/22
**presentation [1]** 75/15
**presently [5]** 38/18 39/11 58/12 73/19 105/21
**president [34]** 2/9 3/4 6/2 6/8 6/10 9/24 11/7 33/6 45/18 50/12 51/24 92/20 93/2 93/16 94/10 94/10 94/14 94/19 95/1 95/8 95/20 95/21 96/21 96/22 97/1 98/7 98/17 98/19 100/13 101/8 101/10 102/9 102/13 102/14
**President Donald [1]** 3/4
**President's [2]** 56/8 98/11

**presidential [3]** 32/1 84/22 85/4
**pressing [1]** 91/24
**pressure [2]** 46/7 104/3
**presuming [1]** 62/3
**pretty [11]** 4/18 6/5 7/25 10/16 24/15 47/14 68/8 88/12 89/18 91/2 92/22
**prevail [1]** 82/13
**prevent [5]** 12/6 23/4 25/12 26/1 95/6
**previewed [1]** 70/15
**previously [1]** 77/1
**primaries [2]** 49/11 100/3
**primary [5]** 49/8 52/17 52/21 55/6 60/25
**principal [1]** 62/24
**principle [1]** 80/25
**prior [2]** 32/1 85/8
**prioritize [2]** 47/3 47/6
**prioritized [1]** 44/3
**privacy [60]** 6/17 6/19 7/6 7/15 7/20 7/24 7/25 8/19 8/24 9/2 9/9 9/11 9/15 9/17 10/4 10/6 10/8 10/10 10/11 11/5 11/15 11/16 13/12 15/9 15/12 21/7 21/10 23/13 24/4 24/14 24/21 25/10 25/14 25/25 26/9 36/8 38/6 38/7 63/1 63/10 64/22 64/24 68/7 68/13 69/1 69/6 69/19 70/16 71/12 72/15 72/17 76/20 76/21 76/22 89/24 90/1 92/10 92/13 102/22 103/1
**Privacy Act [36]** 6/17 6/19 7/15 7/20 7/24 8/19 9/2 9/9 9/11 9/17 10/8 11/5 11/15 11/16 24/14 24/21 25/14 25/25 38/6 63/1 63/10 68/7 68/13 69/1 69/6 69/19 70/16 71/12 72/15 72/17 76/20 76/21 92/10 92/13 102/22 103/1
**private [8]** 8/23 38/24 64/11 64/18 70/5 90/5 90/9 90/15

## P

probably [2]  18/21 104/6
problem [6]  11/10 45/1 79/25 87/20 92/18 97/6
procedural [5]  7/20 7/23 10/3 69/2 103/15
procedurally [1]  57/23
procedures [3]  99/14 99/24 100/1
proceed [2]  4/9 58/4
proceedings [4]  1/8 2/24 105/23 106/5
process [16]  19/21 21/5 28/14 31/9 32/5 33/7 37/8 40/13 40/16 40/17 40/18 40/22 41/16 41/24 42/24 69/8
processing [1]  35/5
proclaim [1]  6/1
produced [1]  2/25
program [2]  10/13 103/2
programs [5]  2/9 9/4 34/2 34/24 52/16
prohibit [2]  6/11 101/19
prohibited [1]  9/3
prohibition [1]  69/25
prohibitions [2]  63/8 68/9
prohibits [1]  10/11
project [2]  39/15 101/19
promote [1]  96/23
prone [1]  19/4
pronounced [1]  40/8
proof [3]  32/2 32/6 32/14
properly [2]  20/5 76/3
proposal [1]  98/2
propose [3]  31/23 51/18 98/8
proposed [15]  27/21 31/2 53/6 56/6 56/13 56/15 56/22 56/23 56/24 57/5 57/7 57/12 81/11 87/15 92/16
proposition [2]  48/8 89/5
prosecuted [1]  91/13
prosecution [5]  44/3 47/6 91/1 91/3 91/11

prosecutions [1] 91/18
protected [1]  69/5
protections [2]  10/3 52/15
protects [1]  41/2
provably [1]  76/9
prove [5]  19/15 33/25 37/10 41/9 95/14
provide [2]  48/20 98/13
provided [2]  15/13 45/8
provides [1]  21/13
provision [7]  11/23 12/9 44/5 52/9 62/13 98/23 99/4
provision's [1]  30/19
provisions [5]  11/18 56/3 60/15 73/14 102/2
prudent [5]  59/25 61/2 61/10 61/22 85/19
prudential [10]  42/5 42/8 42/12 42/16 50/4 50/6 50/13 80/1 80/4 96/7
public [4]  42/18 53/21 86/23 99/11
publication [1]  57/13
published [1]  70/4
pull [2]  23/8 88/8
Purcell [5]  42/11 50/7 80/4 80/15 96/7
purport [2]  73/13 73/14
purport -- I'm [1] 73/13
purported [2]  52/3 93/11
purports [1]  26/8
purpose [7]  7/9 25/11 25/12 73/10 99/9 103/10 103/12
purposes [12]  21/6 25/3 25/3 46/1 49/22 55/7 55/24 56/14 56/17 72/22 82/8 103/13
put [14]  8/20 11/12 14/6 22/19 22/20 29/10 38/23 40/2 43/1 73/25 76/5 96/9 96/17 104/16
put -- their [1]  22/19
puts [1]  59/19

## Q

qualification [1]  49/18
qualifications [1] 94/23
qualifier [1]  12/11
question [30]  21/19 22/1 23/5 24/11 29/6 38/23 41/18 43/5 45/20 50/4 50/16 50/16 65/13 66/8 68/3 69/23 71/15 72/18 76/22 77/14 80/12 81/15 82/4 83/3 94/7 94/12 94/18 95/7 95/19 98/10
questions [21]  4/20 5/13 21/17 27/16 36/1 37/22 40/3 50/13 55/12 65/19 68/4 70/15 71/8 72/20 73/7 76/20 81/19 83/14 85/12 92/10 93/19
quibble [2]  37/22 58/18
quibbling [1]  24/5
quick [1]  97/25
quickly [1]  94/5
quite [4]  37/19 43/1 49/3 59/19
quo [2]  96/6 96/8
quotations [1]  69/11
quote [4]  74/9 88/8 88/9 104/17
quote/unquote [1] 104/17
quotes [1]  84/15

## R

racial [1]  10/1
radical [1]  92/22
rail [1]  28/19
raise [4]  42/11 65/19 80/15 84/19
raised [4]  71/14 72/20 74/23 81/8
ran [1]  37/1
rate [1]  39/17
rather [2]  62/3 70/21
re [3]  48/21 51/8 56/20
re-argue [1]  51/8
re-dos [1]  48/21
reach [5]  32/19 70/11 89/13 89/22 98/10
reached [1]  32/18
reacting [1]  5/12

read [6]  4/17 10/15 32/13 40/7 81/23 84/12
ready [1]  27/13
real [2]  54/22 54/23
realize [2]  21/8 82/14
really [20]  5/8 13/24 22/17 34/6 35/13 36/3 36/11 40/6 42/7 43/2 51/10 69/22 69/22 70/12 77/17 80/3 86/16 91/19 92/22 93/7
really -- certainly [1] 92/22
Realty [2]  59/5 59/7
reason [8]  10/17 21/11 37/7 50/5 55/22 75/1 95/17 105/18
reasonable [5]  58/14 61/1 61/10 90/10 90/13
reasons [5]  41/20 43/17 50/6 72/13 73/17
rebuttal [3]  4/13 5/4 93/23
recall [1]  20/16
received [2]  16/16 19/24
receives [3]  14/25 15/2 15/16
recent [1]  26/8
recently [3]  43/8 69/10 91/13
recognize [2]  39/3 58/6
recognized [6]  24/20 24/22 26/3 40/10 64/1 91/8
record [9]  3/7 18/19 26/25 36/12 66/11 69/16 82/6 103/10 106/5
recorded [1]  2/24
records [11]  8/2 8/6 8/7 9/6 10/12 18/20 19/5 25/10 37/5 103/1 103/11
recovered [1]  35/15
redress [1]  43/14
redressability [2] 43/10 43/16
redressable [3]  19/17 20/11 25/15
refer [1]  92/1
reference [3]  11/22 60/1 74/19

# R

**referenced [7]** 9/22 56/18 64/15 77/20 82/1 82/7 101/16
**referencing [1]** 60/21
**reflect [1]** 58/11
**reflexively [1]** 88/8
**regardless [3]** 12/23 13/22 45/19
**regime [1]** 59/14
**register [2]** 90/22 96/1
**registered [13]** 14/15 19/23 19/23 20/6 34/20 59/15 76/3 76/4 77/4 77/4 77/5 77/8 96/1
**registering [2]** 53/3 55/6
**registrar [1]** 51/22
**registration [21]** 13/8 15/20 16/15 16/19 17/9 18/7 19/8 37/1 39/23 42/22 52/6 55/2 73/4 87/25 88/9 88/15 88/17 88/21 89/11 89/14 89/16
**regular [1]** 21/13
**regularity [1]** 62/3
**regularly [2]** 39/18 73/22
**regularly-scheduled [1]** 73/22
**regulate [1]** 102/15
**regulates [1]** 14/1
**regulating [1]** 14/14
**regulation [4]** 14/17 31/5 97/10 97/11
**reject [2]** 32/16 89/21
**rejection [1]** 5/24
**related [6]** 21/17 47/17 78/21 89/6 89/14 89/22
**relates [2]** 29/2 62/17
**relationship [1]** 82/9
**relatively [1]** 69/9
**released [2]** 52/23 53/6
**relevance [1]** 43/9
**relevant [8]** 12/3 67/10 68/11 70/8 72/18 80/25 81/15 94/18
**relief [8]** 26/1 26/14 47/22 47/23 58/5 58/5 70/17 103/25
**relies [1]** 62/13

**rely [4]** 17/8 27/4 99/1 101/15
**remain [4]** 57/16 57/19 67/17 68/1
**remained [1]** 58/1
**remaining [1]** 79/17
**remains [2]** 67/16 85/15
**remedial [1]** 26/9
**remedied [1]** 26/16
**remedies [1]** 26/10
**remedy [7]** 47/21 92/18 92/22 94/7 94/8 94/12 97/20
**remember [2]** 74/6 79/14
**remind [1]** 35/21
**reminding [1]** 42/16
**remove [4]** 19/6 19/10 46/22 88/16
**removed [6]** 18/7 19/16 19/19 37/10 37/23 87/25
**removes [1]** 16/17
**removing [2]** 37/8 88/14
**renders [1]** 12/19
**repaired [1]** 55/2
**reparable [1]** 25/22
**repeat [3]** 86/5 92/14 101/1
**repeatedly [2]** 41/14 102/3
**repetition [1]** 4/23
**reply [2]** 84/5 88/7
**Reported [2]** 2/20 106/11
**Reporter [3]** 2/20 35/21 106/3
**reporting [2]** 26/10 33/4
**represent [4]** 3/9 30/7 44/18 44/20
**representations [1]** 33/3
**representing [1]** 3/13
**reprise [1]** 55/10
**request [4]** 66/16 85/17 104/24 105/3
**requested [2]** 58/6 66/16
**require [4]** 32/14 65/24 73/14 101/19
**required [8]** 10/3 12/5

29/11 29/16 32/2 34/9 70/3 89/15
**requirement [4]** 32/3 47/10 76/15 98/12
**requirements [5]** 7/20 10/7 12/2 42/15 69/2
**requires [15]** 8/2 14/5 28/8 28/17 30/12 31/3 32/20 33/15 34/5 51/17 52/2 60/9 73/20 74/1 103/9
**reread [1]** 94/16
**rescue [2]** 103/8 103/17
**Reserve [3]** 93/5 93/6 93/13
**reserved [2]** 6/3 100/12
**reside [1]** 77/24
**residence [1]** 74/11
**residency [4]** 14/21 18/22 49/18 103/13
**resident [1]** 49/22
**resist [1]** 80/22
**resolve [1]** 50/7
**resolved [1]** 69/15
**resolves [1]** 104/4
**resolving [1]** 50/13
**resource [4]** 53/4 86/11 86/12 87/11
**resources [9]** 30/17 34/15 35/9 53/2 54/23 59/4 59/5 59/11 59/12
**respect [7]** 72/17 77/11 79/19 79/22 93/15 100/19 105/4
**Respectfully [1]** 63/13
**respective [1]** 5/6
**respects [1]** 85/2
**respond [3]** 53/8 59/5 93/4
**responding [1]** 59/16
**response [12]** 5/3 9/14 53/1 53/22 54/3 59/18 59/23 59/23 59/24 86/23 87/5 87/6
**responses [3]** 44/17 45/15 46/3
**responsible [1]** 78/4
**result [7]** 19/21 19/24 31/4 31/9 37/9 59/18 66/1
**results [1]** 35/6
**retailer [1]** 87/4

**Retired [2]** 39/1 90/6
**retool [1]** 53/1
**retraining [1]** 53/17
**retroactive [1]** 25/19
**retroactively [1]** 35/16
**return [2]** 64/13 64/18
**Reverse [1]** 22/6
**reversed [1]** 25/5
**review [9]** 10/20 11/20 56/14 56/19 56/22 62/10 72/24 75/13 81/10
**reviewing [2]** 85/4 103/12
**rife [1]** 18/20
**right [62]** 7/6 7/22 8/22 9/5 9/18 10/9 10/17 11/6 13/1 13/5 13/9 14/13 14/19 15/17 15/23 16/11 19/13 20/25 21/20 22/6 22/17 23/2 23/3 27/25 29/4 30/9 30/15 34/2 35/10 36/1 38/15 40/20 40/23 43/11 43/24 44/16 49/5 49/11 53/11 53/17 54/1 54/23 58/22 61/16 62/12 63/1 64/24 65/7 65/22 67/21 68/2 69/13 71/1 71/17 73/11 78/18 78/23 79/18 80/1 83/15 84/1 94/1
**ripeness [2]** 42/4 55/25
**risk [1]** 48/4
**road [1]** 50/11
**robust [1]** 19/9
**role [3]** 35/1 52/8 102/15
**roll [2]** 41/19 49/11
**rolls [14]** 14/2 30/20 36/18 36/19 36/22 36/24 39/23 44/10 74/24 75/18 78/6 87/25 88/9 89/16
**routine [5]** 69/4 69/6 92/11 103/7 103/9
**routine-use [1]** 103/9
**RPR [1]** 2/20
**rule [51]** 27/23 28/2 28/5 28/6 28/23 29/1 29/12 29/16 30/10 31/7 31/11 32/5 33/18 33/22 33/23 34/17 50/11

## R

**rule... [34]** 51/18 53/6 56/15 56/23 56/24 57/5 57/7 57/7 57/9 57/11 57/12 57/13 57/14 57/15 59/11 59/12 59/13 59/13 78/24 79/5 79/23 81/11 82/16 83/1 87/15 87/15 89/6 89/22 92/16 92/17 92/25 95/11 98/9 98/12
**rule-adoption [1]** 32/5
**rulemaking [18]** 27/21 31/2 31/4 31/10 31/24 32/16 32/21 33/16 33/17 33/21 56/6 56/13 57/2 78/23 92/21 93/17 101/10 101/11
**rules [9]** 34/22 41/12 50/10 56/22 77/11 79/13 89/9 89/13 96/14
**ruling [2]** 61/25 61/25
**run [1]** 43/15
**runs [2]** 47/13 97/4

## S

**safeguarding [1]** 50/9
**said [28]** 5/19 24/3 25/21 25/22 26/6 28/5 32/9 32/12 32/15 34/8 37/7 40/13 40/13 41/4 41/15 55/11 62/5 71/9 80/13 80/14 85/15 87/8 87/20 91/23 96/20 100/3 101/1 101/5
**salient [1]** 104/6
**same [9]** 11/23 32/19 34/23 46/6 65/2 82/1 85/4 86/22 97/6
**satisfied [3]** 42/8 64/23 90/24
**satisfy [1]** 92/24
**SAVE [2]** 18/17 37/2
**savings [11]** 9/21 10/16 11/19 31/16 32/10 84/8 84/12 99/3 99/4 101/23 101/25
**saw [1]** 50/23
**say [43]** 4/17 4/21 5/7 9/25 10/22 15/24 16/17 19/8 21/10 21/21 22/23 23/8 25/17 25/18 27/25 28/21 29/13 31/21 38/2 42/21 46/13 47/3 52/4

56/23 62/7 64/16 64/17 68/24 71/7 72/12 85/13 87/22 90/22 92/3 92/6 95/10 96/11 101/6 103/22 103/22 104/1 105/17 105/18
**saying [14]** 4/24 19/4 23/1 24/1 44/2 47/2 48/13 50/18 50/19 59/13 61/9 77/16 93/5 101/9
**says [23]** 9/9 9/9 11/16 16/2 16/14 21/15 24/6 27/19 28/11 32/24 33/8 48/11 56/21 72/6 72/7 73/3 75/22 80/5 80/10 82/16 84/11 88/8 97/2
**SC [1]** 2/14
**scared [1]** 91/2
**scenario [1]** 104/9
**schedule [1]** 67/8
**scheduled [2]** 52/21 73/22
**scheme [1]** 26/9
**SCHOLER [1]** 2/4
**Schumer [6]** 1/13 44/5 44/5 44/11 44/18 45/6
**SD [1]** 2/14
**sea [1]** 34/24
**season [3]** 52/17 80/3 100/18
**seclusion [4]** 24/19 38/12 39/1 64/3
**second [4]** 21/8 86/14 95/24 104/7
**secret [1]** 64/24
**Secretary [5]** 12/11 12/14 37/4 102/10 102/13
**secrets [1]** 90/18
**section [19]** 12/14 12/17 13/3 14/7 27/6 27/7 27/8 27/11 32/13 32/17 43/23 56/7 56/12 81/25 82/19 91/20 91/23 91/25 92/15
**Section 2 [6]** 13/3 32/13 43/23 81/25 91/20 91/23
**Section 3 [7]** 27/7 27/8 27/11 32/17 56/7 82/19 92/15
**Section 4 [1]** 14/7
**sections [1]** 94/13

**Secure [1]** 1/19
**Security [8]** 12/15 18/18 23/15 64/12 64/14 64/15 64/16 90/15
**see [5]** 22/9 30/23 70/12 90/11 90/23
**seek [2]** 47/23 75/13
**seeking [2]** 39/16 103/25
**seem [1]** 88/10
**seems [12]** 5/2 7/19 25/22 27/17 33/15 51/2 61/10 65/24 73/11 83/12 88/12 94/1
**seen [4]** 43/3 43/4 54/17 70/2
**self [3]** 87/7 87/21 87/22
**self-inflected [1]** 87/22
**self-inflicted [2]** 87/7 87/21
**Senator [5]** 44/4 44/5 44/11 44/18 45/6
**send [5]** 37/15 39/23 42/20 49/12 49/15
**sending [5]** 44/2 46/8 75/11 76/18 77/13
**sends [1]** 75/21
**sense [5]** 16/10 30/9 33/9 61/2 67/7
**sensitive [3]** 9/3 23/14 64/11
**sent [5]** 37/6 38/5 47/25 74/5 75/5
**sentences [1]** 47/3
**separate [5]** 7/24 11/13 45/16 50/16 103/2
**separation [1]** 52/1
**September [2]** 52/22 74/2
**September 4th [1]** 52/22
**serious [3]** 25/15 48/3 92/17
**service [28]** 27/14 27/18 27/20 28/11 28/25 31/1 31/8 31/14 31/18 31/20 33/19 33/22 34/22 46/9 56/7 56/9 56/12 78/19 79/8 79/20 80/5 82/2 82/16 83/4 83/10 93/10 98/13

98/14
**Service's [1]** 83/2
**services [1]** 98/13
**set [7]** 4/15 49/5 59/8 62/15 65/23 99/19 101/17
**setting [3]** 75/18 95/5 95/13
**settle [1]** 41/11
**several [3]** 26/3 56/22 65/11
**shadowboxing [2]** 70/21 72/9
**shall [9]** 12/15 27/20 27/22 28/5 28/6 32/6 32/25 62/7 73/3
**share [3]** 65/16 68/25 81/6
**shared [9]** 24/2 25/17 38/9 38/20 38/25 39/13 39/19 63/5 66/4
**shareffi [3]** 2/8 2/11 3/25
**shares [1]** 27/18
**sharing [15]** 7/5 13/17 25/21 38/10 38/14 62/21 62/25 63/11 63/12 64/11 64/17 65/21 68/9 69/16 69/23
**she [1]** 80/14
**sheet [1]** 33/1
**Shelly [2]** 1/12 5/19
**short [3]** 4/13 5/4 75/22
**shorthand [1]** 2/24
**should [24]** 4/17 4/21 5/4 5/8 5/19 8/25 8/25 19/23 32/9 32/13 32/19 41/11 42/22 45/9 48/25 50/5 56/2 76/16 80/6 86/6 96/19 96/21 97/18 101/18
**shouldn't [6]** 16/18 37/24 80/10 80/11 84/12 95/5
**show [7]** 55/25 61/21 63/24 65/15 83/11 90/3 93/1
**shown [1]** 81/17
**side [7]** 5/1 5/3 66/9 86/19 88/21 94/21 104/10
**sides [1]** 4/21
**sight [1]** 37/4

## S

**significantly [1]** 80/16
**similar [3]** 32/10 43/15 103/25
**simple [2]** 7/25 10/11
**simplicity [1]** 16/11
**simply [2]** 41/16 41/25
**since [1]** 17/1
**single [3]** 19/6 78/5 100/17
**sit [1]** 42/19
**sitting [1]** 18/10
**situation [2]** 30/23 32/23
**six [3]** 52/18 61/1 61/24
**six months [3]** 52/18 61/1 61/24
**Sixty [1]** 100/5
**Sixty days [1]** 100/5
**slow [1]** 12/12
**small [3]** 79/21 81/18 84/3
**so [127]**
**Social [7]** 18/18 23/15 64/12 64/14 64/15 64/16 90/15
**software [1]** 12/4
**solely [1]** 95/12
**some [77]** 4/20 5/12 10/3 16/17 17/11 17/23 18/4 18/6 18/8 18/13 20/10 22/22 27/18 28/5 28/10 28/15 28/16 28/18 34/7 35/17 36/1 42/2 43/9 45/3 45/7 46/4 46/11 47/18 47/18 56/4 56/25 60/17 60/20 63/22 64/6 64/7 64/7 65/6 65/7 65/19 68/8 69/2 69/6 69/10 69/18 70/14 70/15 71/10 71/14 71/21 72/16 74/19 75/19 76/19 76/22 78/11 78/20 79/16 79/21 80/22 81/4 81/19 84/9 85/2 85/5 86/7 86/9 86/10 87/6 88/11 92/7 96/21 98/25 99/7 99/9 105/17 105/19
**somehow [1]** 17/20
**someone [10]** 22/18

25/17 37/23 64/21 64/24 65/2 75/12 76/18 77/9 77/24
**something [26]** 5/2 5/3 14/12 15/14 17/22 19/1 21/22 35/14 60/10 63/24 63/25 63/25 67/19 67/23 67/24 68/6 74/2 75/8 75/13 76/16 76/21 77/11 78/8 85/16 85/22 105/18
**sometimes [7]** 5/7 40/11 40/14 64/12 64/13 64/14 70/5
**somewhat [1]** 83/8
**somewhere [1]** 63/22
**soon [2]** 48/11 49/10
**SORN [1]** 103/6
**SORNs [1]** 103/7
**sorry [6]** 7/18 12/13 17/17 29/13 33/2 73/13
**sort [33]** 5/11 8/1 9/1 14/18 20/3 21/20 25/12 27/3 28/10 56/9 57/3 61/22 62/1 62/8 63/14 64/19 67/8 70/16 70/21 71/2 71/8 72/18 73/8 74/6 75/18 77/5 78/22 80/20 83/9 84/7 92/3 99/9 103/8
**sorts [6]** 26/19 28/13 58/20 68/23 70/6 103/16
**sound [1]** 59/2
**sources [1]** 7/12
**speak [2]** 27/12 60/6
**speaking [1]** 35/22
**speaks [1]** 42/14
**specific [9]** 21/18 28/6 29/6 30/2 34/6 55/11 82/19 97/3 104/1
**specifically [3]** 4/16 6/7 8/25
**speculating [2]** 78/13 88/22
**speculation [8]** 57/1 61/22 62/1 62/2 75/19 88/1 88/25 89/15
**spending [1]** 34/4
**spoken [1]** 94/24
**spot [1]** 43/2
**SSA [6]** 2/11 8/6 8/7 25/17 69/9 100/10
**St [2]** 1/20 2/14

**stage [2]** 37/25 80/15
**stale [1]** 49/16
**standard [5]** 25/4 91/3 91/5 91/8 95/14
**standing [43]** 15/7 15/19 16/5 20/3 20/4 21/3 23/21 25/1 29/19 30/1 34/9 40/5 40/7 41/6 42/4 42/11 45/23 55/7 55/25 61/18 61/19 63/10 63/14 63/20 65/13 65/15 66/6 67/18 76/5 76/17 77/10 77/12 86/11 86/12 87/11 87/19 87/23 87/24 89/3 89/8 89/20 89/22 99/6
**standings [1]** 86/10
**stands [1]** 89/5
**stark [2]** 54/12 100/8
**start [8]** 5/14 14/19 35/22 37/8 56/6 63/3 80/7 88/6
**started [1]** 100/23
**starting [1]** 80/3
**state [61]** 3/4 4/4 4/12 4/18 5/25 6/8 6/15 8/14 13/6 14/8 14/11 14/12 14/16 14/23 14/24 15/1 15/3 15/15 16/2 16/7 16/12 17/18 17/19 18/9 27/17 37/4 38/5 43/16 43/22 44/2 44/8 46/23 47/9 47/11 47/12 49/15 49/19 52/4 73/15 73/21 74/12 74/19 76/15 77/10 77/10 77/19 77/23 77/25 78/4 78/9 81/24 82/19 86/2 86/7 88/11 88/14 88/18 88/18 90/7 96/15 98/19
**state -- I [1]** 88/11
**state -- or [1]** 96/15
**state's [6]** 13/8 14/11 14/14 14/15 18/6 93/4
**state-specific [1]** 82/19
**stated [1]** 8/5
**statement [2]** 33/1 92/25
**statements [2]** 32/23 68/8
**states [76]** 1/1 1/9 2/13 3/24 8/14 11/13 13/4 13/22 15/4 15/13

15/13 16/9 16/10 16/12 17/5 17/11 17/12 17/24 17/24 18/4 18/4 19/1 19/3 36/17 36/23 42/21 44/21 44/22 45/2 45/3 45/7 45/9 45/10 45/14 45/19 46/4 46/5 46/9 46/13 46/16 46/17 46/20 46/25 47/9 47/18 48/1 48/3 48/4 49/22 52/3 52/4 55/19 71/25 74/2 74/10 75/5 75/6 75/17 78/3 78/13 84/2 88/3 88/3 88/5 88/8 88/12 88/13 88/16 88/18 88/23 93/14 94/8 98/8 99/18 100/14 102/16
**statewide [1]** 46/19
**status [3]** 64/20 96/6 96/8
**statute [4]** 6/6 6/8 6/10 91/14
**statutes [4]** 6/2 56/17 98/9 98/15
**statutory [7]** 51/24 52/9 83/5 92/4 98/17 98/21 98/23
**stay [3]** 30/19 77/8 96/1
**stayed [1]** 41/15
**Ste [1]** 1/14
**stenotype [1]** 2/24
**step [5]** 10/25 21/4 40/2 71/24 95/5
**Stephen [3]** 2/8 3/23 55/18
**Stephen Pezzi [2]** 3/23 55/18
**stephen.pezzi [1]** 2/10
**stepped [1]** 41/14
**steps [11]** 18/11 20/5 20/10 35/11 61/9 66/13 76/25 77/6 77/7 87/18 104/2
**Sterling [3]** 53/14 53/22 54/3
**still [12]** 21/3 21/3 25/7 26/11 65/20 66/9 66/11 66/21 68/25 70/19 71/14 77/19
**stop [2]** 21/21 57/17
**stopped [2]** 25/6 94/2
**store [1]** 95/25

## S

**story [2]** 75/14 83/23
**straightforward [2]** 6/5 95/7
**strategies [3]** 90/18 95/5 97/19
**Street [2]** 2/9 2/14
**strong [2]** 61/11 68/8
**stronger [1]** 91/12
**strongest [1]** 61/4
**structure [1]** 94/22
**structured [1]** 5/9
**Students' [1]** 1/20
**stuff [2]** 24/15 82/25
**subject [5]** 19/13 56/19 57/24 72/24 74/12
**submit [1]** 87/10
**subordinates [1]** 9/24
**substantial [1]** 26/12
**success [2]** 72/6 82/11
**successfully [1]** 65/13
**such [7]** 39/18 73/8 74/18 74/20 78/7 83/10 103/6
**sue [7]** 15/8 16/20 16/23 24/2 76/17 77/10 77/12
**sues [1]** 76/6
**sufficient [2]** 8/10 48/4
**sufficiently [1]** 33/11
**suggest [3]** 61/13 88/5 90/7
**suggested [4]** 81/20 82/4 89/4 92/25
**suggesting [2]** 20/16 71/18
**suggestion [8]** 28/10 32/13 32/15 32/24 76/15 80/22 98/25 99/7
**suggests [2]** 37/22 47/20
**Suite [2]** 1/20 2/14
**supervise [1]** 93/16
**supervising [1]** 93/2
**supplemental [2]** 50/23 105/19
**supplying [1]** 87/3
**support [1]** 54/16
**supporters [1]** 34/3
**supporting [1]** 26/25
**supports [2]** 90/7 92/23

**supposed [2]** 38/25 60/18
**Supreme [25]** 20/24 23/21 24/6 26/5 26/8 34/8 40/4 41/6 41/14 47/14 62/4 62/9 84/17 84/21 85/3 86/12 86/24 87/1 87/8 87/20 89/19 91/2 91/8 92/25 93/7
**sure [16]** 14/1 21/13 22/13 58/24 67/10 67/24 69/21 76/3 77/3 78/1 79/15 79/16 79/24 82/20 85/16 85/22
**surely [2]** 6/24 79/2
**surprise [1]** 71/14
**surprises [1]** 67/20
**Susan [2]** 91/6 91/12
**sway [1]** 41/10
**sword [4]** 48/6 48/8 51/5 100/4
**sworn [1]** 10/5
**sympathize [1]** 81/4
**system [3]** 37/2 46/24 54/19
**systems [2]** 36/17 69/15

## T

**table [4]** 3/14 3/20 3/24 80/18
**tailor [1]** 47/21
**tailored [1]** 47/15
**take [21]** 8/6 20/5 21/19 25/1 27/15 33/23 35/11 36/23 40/2 52/22 55/16 62/16 77/5 78/4 80/11 80/17 83/5 85/17 87/6 102/5 103/23
**taken [3]** 61/9 66/13 75/25
**takes [3]** 44/9 63/4 104/19
**taking [2]** 76/25 77/7
**talk [13]** 14/3 27/10 27/13 41/7 56/8 63/16 86/16 86/19 89/3 90/4 95/24 99/2 102/22
**talked [7]** 40/4 86/22 87/1 88/2 88/21 89/8 90/5
**talking [21]** 13/13 13/14 14/4 23/13 24/23 28/22 29/23 30/4 39/7

39/12 43/19 64/10 64/19 65/20 65/20 68/7 74/7 76/14 76/24 95/23 95/25
**talks [2]** 37/14 90/25
**tangentially [1]** 89/22
**target [1]** 79/7
**targeted [4]** 39/18 54/18 54/22 74/14
**tasked [1]** 6/2
**tax [2]** 64/13 64/18
**teaches [1]** 55/1
**Tech [2]** 97/7 97/13
**technical [3]** 12/2 12/6 13/19
**technically [1]** 103/23
**tell [5]** 36/17 49/21 66/24 75/23 96/1
**telling [2]** 39/22 46/23
**tells [3]** 20/25 21/13 48/18
**ten [1]** 5/4
**ten minutes [1]** 5/4
**tens [1]** 88/23
**term [1]** 97/4
**terms [6]** 14/9 29/4 73/20 78/13 89/24 102/20
**territories [1]** 16/11
**Texas [8]** 36/22 36/25 37/1 46/9 74/22 74/23 75/2 88/20
**text [6]** 32/20 51/17 68/16 68/21 70/7 74/8
**than [18]** 16/10 28/23 28/24 32/13 40/22 48/19 52/18 58/13 62/3 70/21 73/21 74/2 82/6 87/4 89/7 99/10 103/22 105/12
**thank [19]** 35/19 35/22 51/11 51/12 55/14 85/24 85/25 93/21 97/21 97/22 100/21 100/24 103/18 103/19 103/20 104/21 105/7 105/14 105/22
**that [740]**
**that -- and [1]** 33/18
**that -- I [1]** 45/8
**that -- the [1]** 101/21
**that's [97]** 5/10 7/6 7/6 8/22 10/9 10/10 10/14 10/16 10/16 11/17

12/10 12/10 12/22 13/5 13/9 15/18 17/16 22/11 24/3 24/15 24/22 25/2 27/3 30/21 31/11 31/16 33/1 33/17 37/7 38/14 39/2 39/3 40/13 40/18 40/23 41/12 42/19 43/17 44/14 45/18 47/9 47/23 48/4 48/9 48/12 48/13 49/6 49/18 50/12 50/16 51/10 53/14 53/22 54/3 54/9 55/8 55/8 59/18 60/10 61/18 61/19 61/19 71/2 71/3 72/1 75/12 78/16 80/2 81/14 81/25 83/8 84/24 85/13 86/14 86/25 87/4 87/7 87/7 87/20 87/20 87/22 88/25 89/9 89/11 90/10 90/17 92/21 94/2 94/18 95/13 95/17 96/5 96/25 98/6 100/11 101/11 102/24
**that's -- now [1]** 80/2
**their [52]** 6/1 14/20 14/20 14/21 19/7 21/5 22/18 22/19 28/8 36/18 37/11 37/11 38/18 38/19 39/9 39/25 40/24 40/25 43/7 44/10 46/23 50/2 50/10 52/5 52/6 52/7 52/15 52/20 53/1 53/2 53/20 53/20 54/1 54/8 54/8 55/5 57/1 58/20 61/16 61/16 63/10 74/20 74/23 74/24 75/17 75/24 77/3 78/6 88/7 90/2 91/24 99/15
**them [22]** 7/3 18/7 18/13 26/23 29/9 37/8 41/9 41/20 42/17 46/23 48/15 48/16 52/5 52/14 53/11 57/17 62/17 78/8 93/17 96/1 97/16 101/8
**themselves [3]** 9/23 71/19 99/3
**then [51]** 4/10 4/12 4/12 5/7 6/15 9/5 9/13 10/13 11/7 13/21 14/8 14/12 14/12 18/2 18/5 21/15 21/18 25/1 25/20 27/16 27/23 28/21 28/23 33/23 34/21

## T

**then... [26]** 35/10 36/24 39/15 39/16 41/4 45/2 45/9 47/13 50/4 56/21 57/18 59/23 60/25 68/18 71/4 71/10 71/10 71/23 76/21 78/4 80/8 82/10 88/6 96/22 98/25 99/6

**theories [3]** 30/1 86/10 89/20

**theory [5]** 39/10 44/13 64/23 65/14 87/24

**there [116]**

**there's [28]** 11/5 12/3 12/5 12/25 14/1 16/10 26/13 26/25 35/8 41/20 49/14 50/22 50/24 51/7 56/8 59/3 65/11 65/18 71/22 76/16 82/9 88/15 89/14 92/11 92/22 95/3 99/6 103/3

**thereafter [2]** 21/23 66/3

**therefore [2]** 9/12 26/23

**these [57]** 14/19 17/13 18/24 19/13 20/21 26/19 26/22 28/14 28/15 34/1 36/23 37/7 37/15 37/22 41/5 41/24 42/17 43/11 44/2 49/9 49/10 49/15 49/24 52/19 52/23 53/5 53/8 53/10 53/14 53/22 54/3 54/7 54/20 54/22 54/24 54/24 55/1 55/20 55/20 56/18 58/12 60/24 68/17 68/19 70/6 70/9 73/6 81/21 83/14 88/6 93/6 95/4 98/25 99/7 99/20 99/23 100/6

**they [127]**

**they -- as [1]** 77/2

**they'll [1]** 101/24

**they're [7]** 8/5 25/25 46/6 49/14 82/12 95/23 95/24

**they've [2]** 35/2 93/2

**thing [16]** 22/4 22/5 31/16 34/23 46/6 57/3 58/25 78/7 83/6 83/10 84/3 84/16 96/11 102/7

102/21 105/17

**things [21]** 22/7 23/15 27/21 27/22 28/5 28/15 28/16 29/7 31/22 35/7 36/7 70/6 70/19 75/6 80/6 80/16 90/15 94/5 97/14 104/1 104/18

**think [136]**

**think -- I [1]** 78/2

**think -- well [1]** 104/16

**thinking [1]** 104/17

**third [3]** 16/25 28/19 28/20

**this [180]**

**those [50]** 8/7 9/21 9/21 16/11 17/24 18/11 18/20 18/20 18/22 19/4 21/3 22/1 22/9 24/20 28/9 28/9 29/7 30/24 32/18 33/6 34/7 35/11 38/7 39/17 41/2 42/13 42/23 44/12 48/3 48/4 49/22 50/12 52/4 57/10 64/3 64/4 64/10 68/23 70/4 74/4 75/6 75/11 75/19 86/8 86/17 95/21 97/7 97/18 99/2 99/25

**though [6]** 11/15 42/3 51/3 54/16 81/3 104/7

**thought [3]** 84/21 84/22 105/5

**thousands [2]** 48/24 88/24

**threat [1]** 47/2

**threats [1]** 54/7

**three [5]** 4/8 25/5 84/13 85/2 97/25

**three-judge [2]** 84/13 85/2

**threshold [5]** 57/19 70/14 71/15 79/17 79/18

**throatedness [1]** 60/13

**through [16]** 10/15 25/23 28/13 32/10 37/24 56/3 58/10 69/9 71/3 86/9 94/5 94/17 99/3 104/3 104/18 105/5

**Throughout [1]** 95/22

**throw [1]** 78/5

**throwing [1]** 88/6

**thrust [1]** 85/6

**thus [1]** 72/23

**tied [1]** 14/22

**TikTok [2]** 48/9 48/10

**time [26]** 4/15 5/1 9/21 9/21 22/21 22/22 24/23 27/9 29/14 35/18 51/8 53/4 55/15 57/17 59/25 62/19 71/6 71/21 73/2 74/11 79/13 81/1 85/14 86/5 100/5 104/3

**timeline [4]** 49/5 70/24 74/5 97/3

**timers [1]** 4/14

**times [1]** 100/10

**timing [2]** 10/4 71/15

**today [31]** 18/10 19/4 33/4 50/22 50/25 56/5 58/7 60/21 63/17 64/2 64/15 68/6 68/7 75/1 75/15 78/14 78/17 80/19 81/16 83/12 86/18 91/23 94/1 94/16 94/19 95/5 95/25 96/5 98/2 98/18 98/24

**together [2]** 8/20 14/6

**told [7]** 17/13 35/4 40/8 49/25 61/7 78/8 83/23

**too [10]** 11/22 41/22 42/1 42/5 55/10 63/17 88/25 89/15 89/25 94/18

**took [3]** 21/8 87/18 105/11

**tool [1]** 77/15

**top [3]** 46/24 47/1 47/8

**top-down [1]** 46/24

**topics [2]** 27/22 70/10

**tort [6]** 64/2 90/4 90/6 90/8 90/11 90/23

**torts [2]** 24/18 64/4

**totally [3]** 19/25 37/21 63/6

**touch [1]** 16/3

**towards [1]** 50/13

**traceable [1]** 89/1

**tracing [1]** 93/13

**trade [1]** 90/17

**traditionally [1]** 63/25

**train [1]** 87/5

**training [1]** 86/20

**Trans [4]** 23/22 24/6 63/20 89/25

**transcript [3]** 1/8 2/25

106/4

**transcription [1]** 2/25

**transmission [5]** 6/11 8/13 72/19 76/7 76/14

**transmit [3]** 12/16 52/3 82/17

**transmitted [7]** 6/15 13/4 14/11 16/9 29/11 29/15 73/9

**transmitting [1]** 33/19

**Treasury [1]** 64/14

**treat [1]** 45/11

**tried [3]** 87/19 93/3 100/10

**trod [1]** 4/24

**trodden [1]** 4/24

**true [5]** 39/3 45/18 46/19 65/5 106/4

**TRUMP [9]** 1/5 2/8 3/4 12/1 12/1 84/17 96/17 102/8 102/8

**Trump -- the [1]** 96/17

**try [8]** 36/16 39/22 39/23 54/24 62/15 86/5 94/5 101/1

**trying [8]** 38/1 39/10 61/13 65/22 66/5 93/16 93/16 95/8

**turn [5]** 27/16 31/7 35/17 49/17 91/20

**turned [1]** 90/18

**turning [2]** 21/20 53/3

**turnout [1]** 34/12

**turns [1]** 66/10

**two [12]** 22/4 22/7 26/2 42/13 50/24 52/24 58/24 65/6 71/8 80/13 81/21 104/1

**two -- that [1]** 81/21

**two months [1]** 52/24

**TX [1]** 2/14

**type [1]** 86/24

**types [1]** 41/2

**typical [1]** 42/14

**typically [2]** 24/9 69/3

## U

**U.S [14]** 2/10 2/10 2/11 2/21 20/24 31/1 52/3 64/1 65/1 77/22 83/2 83/9 87/8 93/7

**ultimate [1]** 57/2

**ultimately [6]** 19/16 65/12 70/11 75/5 81/8

**U**

**ultimately... [1]** 81/14
**ultra [3]** 51/25 95/19 95/21
**unable [1]** 100/15
**unambiguously [1]** 9/23
**uncertainty [1]** 96/4
**unconstrained [1]** 12/10
**uncontested [1]** 18/19
**uncontroversial [1]** 74/18
**undeniable [1]** 47/12
**under [28]** 7/11 7/20 14/24 26/10 33/7 34/18 35/8 47/10 51/18 61/20 61/24 72/14 76/10 77/2 77/19 82/19 83/14 85/18 87/7 87/10 89/1 91/13 92/6 94/25 97/18 103/23 104/15 105/15
**under-inclusive [2]** 76/10 77/2
**underlying [1]** 57/8
**underscore [2]** 36/7 100/25
**understand [13]** 14/4 33/13 39/10 56/25 62/24 66/5 66/18 67/16 89/13 91/24 104/3 105/6 105/9
**understanding [2]** 50/9 89/21
**understands [1]** 105/10
**Understood [1]** 66/15
**undertake [2]** 98/20 103/16
**undertaking [1]** 99/8
**undertakings [1]** 104/13
**undoubtedly [3]** 40/1 46/4 46/17
**unequivocal [5]** 12/9 12/19 29/3 30/11 51/20
**unequivocally [1]** 99/18
**unidentified [1]** 87/24
**uniformity [1]** 46/19
**union [5]** 23/22 24/6 63/20 89/25 90/19
**unique [1]** 35/14

**UNITED [10]** 1/1 1/9 3/24 40/23 47/9 55/19 74/10 93/14 98/8 100/14
**United States [6]** 3/24 55/19 74/10 93/14 98/8 100/14
**universal [1]** 98/14
**unlawful [23]** 11/24 17/16 17/20 17/22 17/25 23/16 25/18 25/21 28/22 30/14 31/9 31/11 32/20 45/11 45/17 63/12 72/3 72/14 72/19 94/13 101/11 102/6 103/2
**unlawfully [4]** 18/1 22/5 23/7 101/22
**unless [6]** 29/11 29/16 68/4 82/18 85/12 93/19
**unlikely [1]** 105/18
**unquote [1]** 104/17
**unreasonable [4]** 60/11 61/8 87/12 87/13
**unring [1]** 43/3
**unrung [1]** 42/25
**unsatisfying [1]** 83/8
**unsavable [1]** 12/23
**unseen [1]** 37/5
**unsuccessful [1]** 100/11
**until [14]** 29/11 29/16 33/20 33/20 34/1 38/9 38/9 41/19 42/8 42/20 53/6 53/6 61/8 100/2
**unusable [1]** 21/23
**unveiled [1]** 53/7
**unwind [1]** 22/22
**unwindable [1]** 22/24
**unwinding [1]** 48/22
**UOCAVA [1]** 49/12
**up [19]** 21/13 21/19 33/23 38/9 46/9 49/5 49/25 61/3 63/17 65/23 66/25 77/21 78/22 80/3 80/11 95/5 95/13 98/2 100/15
**upcoming [4]** 73/2 73/4 74/11 81/5
**update [1]** 85/17
**updates [2]** 21/14 67/23
**upon [7]** 6/22 24/19 25/8 27/4 38/12 38/25

64/3
**urge [1]** 100/19
**us [12]** 5/15 17/13 20/25 28/17 29/21 29/21 29/22 31/21 33/25 35/21 48/19 55/1
**USCIS [2]** 2/10 37/2
**usdoj.gov [2]** 2/10 2/11
**use [32]** 13/22 16/7 17/5 17/11 17/13 17/15 17/24 17/24 18/4 18/17 19/4 19/22 36/14 36/17 42/22 44/16 44/22 45/2 45/7 46/5 46/13 46/22 53/13 69/4 72/9 73/15 88/12 92/11 93/23 103/1 103/9 103/9
**used [15]** 9/6 13/7 18/5 19/24 35/4 45/4 49/1 68/19 72/22 72/23 72/25 73/4 74/1 74/20 87/2
**useful [1]** 77/15
**uses [6]** 13/6 16/21 44/9 69/6 74/18 103/7
**using [2]** 10/13 21/24
**USPS [27]** 2/10 28/6 28/8 32/5 32/24 33/3 33/5 33/12 35/1 51/17 51/21 93/2 93/5 93/12 93/16 95/2 95/12 95/14 97/25 98/3 98/5 98/8 98/11 99/4 101/3 101/7 104/19
**USPS's [2]** 33/2 53/6
**usually [3]** 64/10 69/7 72/5

**V**

**v. [7]** 84/18 87/17 89/2 90/7 91/4 102/8 102/8
**v. Amnesty [2]** 87/17 91/4
**v. Bessent [1]** 90/7
**v. New York [1]** 84/18
**v. Trump [2]** 102/8 102/8
**vague [2]** 87/6 91/15
**various [7]** 6/9 7/12 26/21 50/22 63/7 97/14 97/19
**vary [2]** 88/17 88/18
**Venetian [1]** 90/16

**vented [1]** 78/10
**verify [1]** 52/5
**version [5]** 14/8 14/11 61/4 61/11 65/13
**very [46]** 5/3 5/22 5/23 9/2 9/3 13/25 13/25 17/10 24/23 25/9 25/9 25/15 28/3 29/4 29/6 34/13 44/7 44/7 49/10 49/16 50/21 51/11 53/9 55/15 55/22 56/13 60/17 60/20 63/20 70/9 72/16 72/18 75/1 78/12 83/9 83/14 84/21 84/22 87/4 92/17 93/21 94/14 97/3 100/7 101/13 104/2
**very -- to [1]** 44/7
**vet [1]** 42/22
**view [18]** 11/14 13/1 15/7 23/20 25/2 31/6 31/18 57/21 62/17 63/9 65/8 68/10 70/5 74/16 74/23 79/2 83/13 105/10
**views [1]** 81/6
**vindicated [1]** 85/3
**violate [8]** 6/16 6/19 11/15 11/16 38/6 91/16 93/17 98/12
**violated [1]** 16/20
**violates [4]** 21/10 51/25 75/10 98/9
**violation [5]** 11/5 18/8 63/1 64/22 76/21
**violations [2]** 89/24 90/1
**vires [3]** 51/25 95/19 95/21
**voluntary [1]** 99/8
**volunteer [1]** 54/13
**volunteers [4]** 53/18 54/9 54/17 86/19
**vote [13]** 15/21 19/21 20/2 34/19 39/4 47/4 47/7 51/20 59/15 76/4 77/22 90/22 96/2
**voter [47]** 13/8 14/15 15/6 15/18 15/25 16/5 16/15 16/18 16/19 16/22 17/1 17/8 19/8 19/20 19/21 19/22 20/1 20/5 21/2 34/11 34/12 34/12 36/18 37/1 37/23

## V

**voter... [22]** 39/23
40/22 42/22 44/10 52/6
52/11 52/15 55/1 73/4
74/24 75/18 75/25
77/11 78/6 87/25 88/15
88/21 89/10 89/14
89/15 95/24 95/25
**voter-enablement [1]**
52/11
**voters [50]** 14/20 18/6
18/23 19/12 20/10 21/2
26/21 28/7 34/3 34/24
35/3 36/13 36/13 36/20
36/24 37/3 37/8 39/7
39/10 39/11 39/22 40/1
42/21 42/23 43/4 44/3
46/22 47/5 47/7 50/8
51/16 51/19 52/12 53/3
53/12 53/21 54/16
54/19 55/6 69/11 77/4
86/20 87/25 88/6 88/8
88/15 88/17 95/23
99/12 99/25
**voters' [1]** 30/19
**votes [1]** 89/9
**voting [19]** 7/4 7/8
8/13 13/11 13/15 15/11
15/20 19/5 19/7 20/9
24/15 38/18 38/19 39/6
47/17 49/8 49/22 51/21
103/13
**voting-related [1]**
47/17
**vs [4]** 1/4 3/3 39/1
69/12

## W

**wait [13]** 10/21 30/23
34/1 35/14 41/8 41/9
41/9 41/19 42/20 43/15
43/18 100/2 100/4
**wait -- candidates [1]**
41/9
**waiting [4]** 22/9 22/9
42/18 53/5
**walk [1]** 37/24
**walked [1]** 58/10
**want [34]** 4/23 5/8
15/24 16/14 17/13 23/4
27/9 27/10 27/11 27/12
30/25 31/1 36/6 38/3
45/16 46/13 55/10 61/5
61/14 66/7 67/21 68/5

77/3 78/25 86/8 88/13
89/3 89/24 90/18 96/11
100/25 101/9 102/21
102/25
**wanted [6]** 40/2 82/5
82/7 84/4 101/15 102/7
**wanting [1]** 81/5
**wants [1]** 79/8
**warned [1]** 89/19
**warranted [2]** 4/13
26/17
**warrants [2]** 23/11
26/14
**was [56]** 5/24 6/13
12/18 18/8 21/2 21/9
23/8 25/12 27/8 32/4
32/8 32/15 33/4 34/9
36/5 38/1 38/1 38/13
42/11 42/16 43/10
43/25 47/21 55/21
55/22 59/7 62/14 63/6
63/12 63/18 65/22
66/21 67/1 71/6 75/15
76/20 77/11 82/14 84/4
84/22 85/2 85/3 87/1
87/2 87/16 91/12 97/8
97/9 97/10 98/1 98/25
99/8 100/22 101/21
102/18 103/10
**Washington [6]** 1/4
1/15 1/21 2/5 2/10 2/22
**way [63]** 5/9 9/6 9/8
10/25 11/11 11/21
11/23 12/25 13/7 14/6
17/6 17/15 17/20 17/25
18/6 18/21 19/13 21/9
22/8 25/10 25/18 28/20
29/10 31/7 33/7 33/12
34/20 35/16 36/4 37/11
40/5 41/7 44/3 44/8
44/10 45/7 45/8 49/4
57/3 59/22 62/7 62/13
62/18 63/18 73/15
75/11 75/12 81/21
83/13 88/25 89/15
89/16 92/12 96/3 98/4
98/5 100/8 101/4
101/25 102/1 102/2
103/14 104/16
**ways [4]** 58/10 58/25
80/13 83/17
**we [166]**
**we're [24]** 4/6 7/11
15/23 16/15 19/10

21/16 21/21 24/23
31/22 31/23 34/4 39/12
42/2 43/19 44/14 49/12
50/17 58/6 64/10 65/20
65/20 76/14 77/5 77/6
**we've [6]** 16/16 19/9
19/10 66/16 73/1 86/4
**websites [1]** 58/20
**week [4]** 22/4 25/5
25/6 49/8
**weeks [1]** 100/2
**weigh [1]** 96/8
**well [20]** 3/21 5/22 9/9
10/21 24/6 27/7 30/12
60/20 60/25 75/22
80/10 82/22 85/7 86/23
88/19 93/5 94/24 95/10
101/13 104/16
**went [3]** 41/6 69/9
94/16
**were [19]** 24/12 36/8
39/7 60/21 66/10 66/20
67/25 68/1 68/8 68/15
69/17 70/15 72/1 72/16
78/7 96/16 96/17 97/9
103/11
**what [100]** 5/8 9/7
10/14 15/22 15/25
17/11 17/17 19/6 19/8
19/18 22/5 23/10 23/23
24/1 24/21 24/23 28/4
28/11 28/21 29/4 30/12
30/25 33/8 34/8 34/18
34/22 35/5 36/20 36/20
37/18 37/25 38/1 38/10
38/13 39/9 39/10 39/12
40/13 41/4 45/19 48/18
49/25 53/9 53/21 55/1
55/10 56/9 56/11 57/23
58/5 59/19 60/1 60/1
60/9 61/13 61/15 61/23
62/20 63/24 65/19 66/5
66/19 67/9 68/19 68/20
69/23 69/24 70/20 72/8
73/8 73/10 73/25 74/6
76/9 77/10 78/13 80/18
81/1 83/1 83/4 83/5
83/22 84/7 84/20 87/1
87/8 87/13 87/17 88/22
88/23 89/10 94/8 96/23
97/1 97/10 97/14 101/5
101/11 104/14 105/12
**what's [14]** 6/21 21/13
22/12 22/17 24/11 28/1

29/22 71/25 72/9 80/23
82/15 97/2 97/3 102/23
**whatever [14]** 4/24
14/10 18/8 21/11 25/6
28/22 38/3 57/18 66/7
76/1 77/2 79/5 79/7
105/20
**whatnot [1]** 94/18
**when [29]** 7/7 11/1
11/2 13/21 20/9 33/22
36/8 38/24 38/25 40/11
41/19 46/6 46/7 46/19
46/24 47/16 48/14
68/18 68/23 71/21 72/5
73/9 75/4 85/14 90/21
96/8 99/13 99/14
100/13
**where [29]** 7/11 10/3
16/8 20/15 22/21 24/12
26/21 30/23 38/2 39/21
42/19 44/14 45/3 47/25
50/18 58/2 58/3 59/3
62/12 62/19 66/13
85/14 88/3 94/24 96/12
97/8 102/5 102/9 105/8
**whether [27]** 9/18
10/19 11/5 11/12 11/12
12/4 15/18 17/2 18/10
21/19 33/23 39/25
57/19 64/21 64/25 65/2
71/11 72/18 75/5 77/12
80/9 81/17 82/23 92/10
92/11 92/12 97/6
**which [47]** 4/9 10/7
13/25 18/17 18/22
21/17 22/19 26/15
27/19 28/23 34/17
42/11 49/20 51/18 52/4
52/22 55/24 56/4 56/7
57/11 58/11 60/12
60/17 62/8 63/15 64/7
64/8 65/10 65/11 65/24
66/9 68/16 68/20 70/15
71/9 73/23 77/1 77/20
80/25 83/24 84/15 85/9
88/20 90/17 93/13 94/1
105/2
**whichever [1]** 5/14
**while [7]** 10/24 34/16
49/6 49/11 49/12 56/25
104/15
**whims [1]** 50/11
**White [3]** 32/23 33/1
50/25

**W**

**who [38]** 5/25 6/2 6/24 14/15 14/20 15/5 17/11 17/12 19/3 19/23 20/1 21/2 29/22 30/7 32/25 35/1 37/16 37/16 37/23 40/12 40/15 40/21 42/23 47/4 47/15 49/21 51/3 55/16 59/14 69/24 74/10 74/11 74/15 76/6 77/22 77/24 78/6 82/23
**Whoa [1]** 31/21
**whole [2]** 13/25 74/17
**whom [1]** 73/9
**whose [2]** 9/6 25/17
**why [45]** 5/14 10/21 16/19 16/24 21/17 21/22 22/1 22/2 25/20 26/15 26/16 31/19 33/22 39/10 41/4 41/7 41/18 43/17 43/21 44/12 45/9 45/12 45/12 50/5 51/10 55/22 56/1 57/1 58/22 60/11 61/1 63/11 70/12 72/1 72/3 72/6 72/10 75/23 80/11 83/1 86/6 95/4 95/17 96/18 98/6
**wide [1]** 32/23
**wide-open [1]** 32/23
**wife [1]** 54/21
**Wildlife [2]** 97/7 97/9
**will [58]** 4/20 11/14 16/3 16/3 16/4 17/8 17/24 17/24 18/4 20/17 27/16 31/4 31/9 31/14 35/17 36/1 36/23 41/21 42/18 45/2 47/1 47/8 47/8 49/1 51/9 52/5 52/23 54/18 57/5 57/10 57/17 58/19 63/15 65/25 66/1 66/14 67/17 70/9 73/18 74/10 75/9 75/16 77/19 80/18 82/17 85/17 88/8 89/16 91/20 99/3 99/13 99/14 99/17 101/1 104/2 105/13 105/16 105/19
**willing [2]** 67/22 98/1
**within [16]** 12/15 13/20 38/14 38/20 60/4 65/17 65/21 66/2 68/25 83/2 83/14 85/20 88/11

92/5 96/22 100/9
**without [7]** 8/18 30/10 37/5 38/21 56/2 57/25 103/2
**Women [1]** 69/11
**won't [5]** 47/17 49/8 60/8 80/17 88/12
**word [2]** 71/3 72/9
**work [14]** 5/4 10/5 10/6 47/16 50/1 53/3 54/16 58/13 58/20 65/24 67/19 67/25 85/16 85/22
**workers [1]** 54/17
**working [3]** 33/3 58/11 99/11
**world [11]** 10/7 16/8 58/2 58/3 58/15 59/3 60/12 61/23 80/8 80/18 80/24
**worried [1]** 81/13
**worst [4]** 45/13 61/6 61/14 62/2
**would [134]**
**wouldn't [5]** 7/3 17/2 31/19 34/21 71/14
**Wright [1]** 89/2
**write [1]** 94/10
**written [2]** 54/2 59/9
**wrong [5]** 63/21 63/21 65/7 77/2 94/8
**wrongful [1]** 53/13
**wrongly [2]** 18/24 19/14

**Y**

**yeah [7]** 8/22 11/17 13/9 45/22 76/12 80/2 93/23
**year [8]** 3/3 15/21 36/16 39/15 65/6 77/22 95/22 102/5
**yes [35]** 6/16 7/11 7/16 8/11 10/9 15/3 15/9 20/7 20/14 20/20 25/8 29/18 30/6 31/15 39/8 48/9 59/20 63/2 64/20 64/21 66/15 67/12 67/15 68/14 71/13 73/24 74/3 77/9 79/9 79/11 79/14 80/6 85/11 90/12 90/12
**yes/no [2]** 90/12 90/12
**yet [9]** 7/21 10/22 23/3

48/10 66/19 68/22 70/22 72/8 73/8
**York [10]** 12/1 44/6 44/7 44/8 44/14 45/4 45/5 47/1 84/18 102/8
**York's [1]** 44/16
**you [163]**
**you'd [1]** 5/5
**you'll [2]** 78/2 96/18
**you're [11]** 22/16 23/13 29/22 34/18 39/4 39/22 39/23 72/8 89/6 90/21 90/23
**you've [3]** 33/18 42/8 45/10
**you-all [5]** 5/5 103/20 104/21 105/14 105/22
**Youngstown [6]** 45/20 92/6 94/14 94/16 94/25 98/22
**your [103]** 3/2 3/12 3/18 3/22 4/3 6/20 7/2 9/22 11/14 13/1 15/7 15/12 20/1 20/13 20/18 22/11 25/2 27/11 27/16 27/16 28/5 31/18 33/16 34/10 35/21 35/23 36/2 37/20 38/1 38/8 38/17 38/22 38/24 39/10 39/25 41/18 42/10 42/22 43/24 44/2 44/17 45/15 45/24 46/2 51/13 54/11 55/15 55/17 56/4 58/5 58/25 59/20 61/11 61/12 63/2 63/13 63/21 66/9 66/15 67/3 67/6 67/12 67/15 67/17 68/4 68/14 71/13 72/9 72/9 72/11 73/24 74/3 78/16 79/9 79/11 79/15 79/18 79/23 80/12 81/16 81/19 81/21 82/20 82/22 85/11 85/12 85/15 85/25 86/1 90/12 93/24 93/25 94/6 97/22 97/24 98/1 99/5 100/12 100/24 101/16 104/25 105/6 105/7
**Your Honor [56]** 3/2 3/12 3/18 3/22 4/3 9/22 20/18 27/16 28/5 34/10 37/20 38/22 42/10 44/17 45/15 51/13 54/11 55/17 56/4 58/25

59/20 61/12 63/2 63/13 66/15 67/3 67/6 67/12 67/17 68/4 68/14 71/13 73/24 74/3 78/16 79/9 79/11 79/15 79/23 80/12 81/16 81/21 82/20 85/12 85/25 86/1 93/25 94/6 97/22 97/24 98/1 99/5 100/12 100/24 101/16 104/25
**Your Honor's [2]** 81/19 85/15
**yourself [1]** 42/8
**yourselves [1]** 3/7