IN THE

# United States Court of Appeals
# for the District of Columbia Circuit

DSCC, et al.,

*Plaintiffs-Appellants*,

v.

DONALD J. TRUMP, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Columbia, No. 1:26-cv-0114
Hon. Carl J. Nichols

**BRIEF FOR STATE AND LOCAL ELECTION OFFICIALS, LOCAL GOVERNMENTS, AND ELECTION EXPERTS AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLANTS**

SAMANTHA P. BATEMAN
KYLE R. FREENY
ROSA L. BAUM
WASHINGTON LITIGATION GROUP
1717 K St., NW, Suite 1120
Washington, D.C. 20006
(202) 521-8750
sbateman@washingtonlitigationgroup.org

ALEX M. GOLDSTEIN
JONATHAN B. MILLER
MARICA L. WRIGHT
PUBLIC RIGHTS PROJECT
490 43rd Street, #115
Oakland, CA 94609
(510) 738-6788
alex.goldstein@publicrightsproject.org

*Counsel for Amici Curiae State and Local Election Officials, Local Governments, and Election Experts*

June 24, 2026

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**Parties.** Amici Curiae State and Local Election Officials and Election Experts were amici before the District Court for the District of Columbia and were not named in Plaintiffs-Appellants' Brief. Otherwise, to the best of Amici's knowledge, all parties, intervenors, and amici appearing in this court are listed in the Plaintiffs-Appellants Brief.

**Ruling Under Review.** To the best of Amici's knowledge, accurate references to the ruling at issue, *i.e.*, the district court's denial of Plaintiffs-Appellants' motion for a preliminary injunction, appear in the Plaintiffs-Appellants Brief.

**Related Cases.** To the best of Amici's knowledge, all related cases are identified in the Plaintiffs-Appellants Brief.

INTRODUCTION AND STATEMENT OF INTEREST OF *AMICI CURIAE*.................................................................. 1

ARGUMENT .......................................................................... 3

I. The EO Is Already Causing Administrative Burdens and Confusion and Wreaking Ongoing Havoc on Election Administration.................................................................. 5

    A. Preparation for the 2026 midterm elections is already well underway ........................................................ 5

    B. The EO has already placed state and local election officials in an untenable position............................ 7

    C. The State Citizenship Lists mandated in the EO will inevitably contain errors and place substantial burdens on Amici .................................................................... 9

    D. Substantial burdens also result from the EO's changes to procedures governing absentee and mail-in ballots .......... 13

II. The EO Imposes Significant Legal Risks for Election Officials, Causing Downstream Harms to Election Administration *Right Now*.................................................. 18

    A. The threat of prosecution of state and local election officials functions as the EO's enforcement mechanism.......................................................... 18

    B. The EO's threats of prosecution are already harming Amici's ability to reach adequate staffing levels for upcoming elections.............................................. 21

    C. The EO runs headlong into existing voting rights laws and risks undermining confidence in elections ..................... 23

    D. The EO also imposes significant data privacy-related costs for local jurisdictions and election officials ................. 24

CONCLUSION ................................................................ 27

APPENDIX: LIST OF *AMICI CURIAE* ........................................... 32

# TABLE OF AUTHORITIES

**CASES**

*Democratic Nat'l Comm. v. Wis. State Legislatures*,
141 S. Ct. 28 (2020) ................................................................. 7

*Grayned v. City of Rockford,*
408 U.S. 104 (1972) ................................................................ 21

*Huisha-Huisha v. Mayorkas*,
27 F.4th 718 (D.C. Cir. 2022) ............................................... 21

*League of Women Voters of Mass. v. Trump*,
Nos. 1:26-cv-11549-IT, 1:26-cv-11581-IT, 2026 WL
1755833 (D. Mass. June 18, 2026) .......................................... 4

*Pub. Int. Legal Found, Inc. v. N.C. State Bd. of Elections*,
996 F.3d 257 (4th Cir. 2021) ................................................. 10

*Pub. Int. Legal Found. v. Benson*,
136 F.4th 613 (6th Cir. 2025) ................................................ 10

*United States v. Benson*,
No. 25-cv-01148 (W.D. Mich. filed Sept. 25, 2025) ............... 20

*United States v. Oregon*,
No. 25-cv-01666 (D. Or. filed Sept. 16, 2025) ....................... 20

*United States v. Weber*,
No. 25-cv-09149 (C.D. Cal. filed Sept. 25, 2025) .................. 20

**STATUTES**

52 U.S.C. § 10307(a) ................................................................. 23

52 U.S.C. § 20501(a) .............................................................. 2, 23

52 U.S.C. § 21083(a)(2)(A)(i) ................................................... 10

52 U.S.C. § 21083(a)(2)(B)(ii) .................................................. 10

52 U.S.C. § 20507(a) ................................................................. 10

**REGULATIONS**

"Ballot Mail for Federal Elections," 91 Fed. Reg. 32915 (proposed June 2, 2026) ......................................................*passim*

"Ensuring Citizenship Verification and Integrity in Federal Elections," Exec. Order No. 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026), https://perma.cc/LVY4-3ATL......................*passim*

**OTHER AUTHORITIES**

2026-2027 Official Election Mail Guide Kit 600, USPS (Feb. 2026), https://perma.cc/8W4V-HRGS .................................... 6

Adrian Ashford, *House approves tax break for poll workers as SC struggles to recruit enough of them*, S.C. Daily Gazette (Feb. 5, 2026), https://perma.cc/7U8C-YX5A ......................................................................................... 5

Andrew Howard, *Election officials grapple with a brain drain as threats rise*, Politico (Feb. 3, 2026), https://perma.cc/45E6-VSME ........................................................ 22

Dep't of Homeland Sec., DHS Ref. No. DHS/USCIS/PIA-006(d), Privacy Impact Assessment for the Systematic Alien Verification Entitlements "SAVE" Program 19 (Oct. 31, 2025), https://perma.cc/G92ULYPM ............................ 11

Dion Nissenbaum et al., *USPS proposal to carry out Trump's Executive Order could create new barriers to mail voting*, VOTEBEAT (May 29, 2026), https://perma.cc/8TV4-MW5K ....................................................... 17

Donald F. Norris & Laura K. Mateczun, *Managing cybersecurity in local governments: 2022*, 2025 J. of Cybersecurity Educ., Rsch. & Prac. 1, 10 (2025), https://perma.cc/ZPU7-3YLY ....................................................... 25

Gowri Ramachandran, *Requests for Access to Election Data and Equipment Require Balancing Risks and Public Access*, Brennan Ctr. for Just. (June 27, 2025), https://perma.cc/Z939-LSNM ...................................................... 26

Jacob Wendler, *Trump DOJ redoubling election scrutiny efforts*, Politico (Apr. 19, 2026), https://perma.cc/5RTU-UA5B ............................................................................ 20

Jen Fifield, *Election Records Handed Over to the FBI in Maricopa County, Arizona, Could Be Fatally Flawed, Experts Say*, ProPublica (Mar. 12, 2026), https://perma.cc/B8RV-V36U ...................................... 20

Jonathan Shorman, *Local election officials reel over 'logistical nightmare' of Trump's vote-by-mail order*, News from the States (June 16, 2026), https://perma.cc/N7UJ-TW9E ....................................... 15

*Local Election Officials Survey* 3, Brennan Ctr. for Just. (Apr. 13, 2026), https://perma.cc/F9ZX-WVHL .............................. 6

McKenzie Muskett, *Charleston County program gets creative to recruit new poll workers*, Spectrum News (Apr. 29, 2026), https://perma.cc/AE3H-AUE6 .............................. 5

Patrick Marley, *DOJ demands Detroit-area 2024 ballots, escalating election scrutiny*, Wash. Post (Apr. 19, 2026), https://perma.cc/A774-BA7C ...................................... 20

Payton Brooker, *Wood County Clerk's Office prepares for Tuesday Primary*, WTAP (May 8, 2026), https://perma.cc/Q68Y-J4PB ........................................... 5

Ruby Edlin & Lawrence Norden, *Poll of Election Officials Finds Concerns About Safety, Political Interference*, Brennan Ctr. for Just. (May 1, 2024), https://perma.cc/93M9-JWS4 ...................................... 22

Shea Johnson, *Pierce County library was hit by data breach. What was in the stolen files*, The News Trib. (Sept. 9, 2025), https://perma.cc/F3DK-U9T5 ............................. 26

Stephen Fowler, *The FBI executes a search warrant for 2020 election ballots in Georgia's Fulton County*, NPR (Jan. 29, 2026), https://perma.cc/9JH3-A3LH .............................. 20

Susana Canales Barrón, *LA Officials race to recruit bilingual election workers ahead of primary elections*, L.A. Public Press (Apr. 3, 2026), https://perma.cc/PEB9-N9BE ................................................................................. 5

Table, *Voter Registration Deadlines: Number of Days Before an Election Voters Must Register*, Nat'l Conf. of State Legislatures (May 20, 2026), https://perma.cc/5CPT-HJFR ........................................................ 16

Trishna Begam, *Center for Internet Security facing federal funding cuts*, ABC News10 (Apr. 22, 2025), https://perma.cc/ACV6-R8S4........................................................ 26

*Update: Review of Claims of Noncitizen Registrants and Voters*, Ctr. for Election Innovation & Rsch. (Feb. 2026), https://perma.cc/2FEG-JH84 ....................................................... 18

Wendy Wright, *Primary Election Day preparations underway across upstate New York*, Spectrum News 1 (June 4, 2026), https://perma.cc/SAF8-9KGU ............................... 5

William T. Adler & Wren Orey, *What's In The New Executive Order On Elections?*, Bipartisan Pol'y Ctr. (Apr. 14, 2026), https://perma.cc/283L-JL8B ............................... 17

**INTRODUCTION AND STATEMENT OF INTEREST OF *AMICI CURIAE***

*Amici Curiae* ("Amici") include a bipartisan group of 101 current and former state and local election officials who are or were charged with the responsibility for administering elections, including federal elections, within their jurisdictions. Amici hail from a diverse range of states and localities, including 28 states. Amici also include several local governments that administer elections, as well as election experts from the Center for Election Innovation and Research ("CEIR") who support election officials' work.[1] Amici are authorized to sign this brief in their individual capacities or as local governments in support of Plaintiffs-Appellants' appeal of the district court's refusal to preliminarily enjoin the unconstitutional executive order entitled "Ensuring Citizenship Verification and Integrity in Federal Elections," Exec. Order No. 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026), https://perma.cc/LVY4-3ATL (the "EO").

Given their roles and responsibilities, Amici have a strong interest in the fair and efficient administration of elections, in avoiding threats of baseless prosecutions of election officials, and in protecting the constitutionally derived rights of states and

---

[1] A complete list of signatories can be found in the Appendix. Amici state that no counsel for a party to this case authored this brief in whole or in part; no party or party's counsel contributed monetarily to the preparation or submission of any portion of this brief; and no person other than counsel for Amici contributed money that was intended to fund preparing or submitting the brief. All parties have consented to the filing of this brief.

localities to regulate elections within their borders. To carry out their duties, Amici election officials develop policies and procedures for their offices, train staff and poll workers, educate voters, and respond to real-time constituent needs within their respective jurisdictions. Amici election officials are also duty bound under the National Voter Registration Act ("NVRA") to "promote the exercise of" the "fundamental right" to vote. 52 U.S.C. § 20501(a). Amici are unified in their commitment to ensuring that elections operate in accordance with state and federal law and that every eligible voter has an opportunity to cast a ballot.

As the front-line workers of election administration and election administration experts, Amici are well-positioned to understand and explain the practicalities of administering elections, including the significant administrative problems and confusion introduced by the challenged EO and its implementing provisions, including the U.S. Postal Service's ("USPS") proposed rule, titled "Ballot Mail for Federal Elections," 91 Fed. Reg. 32915 (proposed June 2, 2026) (the "Proposed Rule"). Amici write to offer the Court their perspective on the on-the-ground impact of the EO, including the clear and immediate harms that the EO is already imposing on election officials and their ongoing preparations for the upcoming midterm elections. Not only is the EO unconstitutional and contrary to statutory requirements, Defendants-Appellees issued the EO and began its implementation weeks *after* primary elections were in full swing in many states.

Immediate judicial intervention is thus both necessary and appropriate to halt the EO's harmful effects.

Defendants-Appellees' ongoing efforts to implement the EO have placed Amici in the untenable position of having to help carry out the EO's directives—on pain of threats of potential criminal prosecution and loss of funding—with primaries already underway. Moreover, the EO clearly conflicts with existing laws and poses a real risk of disenfranchising significant numbers of eligible voters. These risks are particularly intolerable given the EO's tight deadlines and the backdrop of the rapidly approaching November 2026 elections.

## ARGUMENT

The district court's refusal to enjoin the EO, despite its obvious constitutional defects and other infirmities, was an abuse of discretion. Beyond violating the Constitution and multiple federal statutes, as Plaintiffs-Appellants in these cases have ably demonstrated, the EO is currently causing immediate and irreparable harm that warrants issuance of a preliminary injunction. Because election preparation is already underway, and because the EO's unlawful provisions are causing immediate harm to election administration right now—including impacting recruitment and retention of election workers and volunteers—this Court should reverse.

Amici strongly concur that the district court erred by failing to recognize that Plaintiffs-Appellants have standing to challenge the EO, that the matter is ripe for

judicial review, and that Plaintiffs-Appellants have met all necessary requirements for issuance of a preliminary injunction. Amici also write from their unique perspective to further explain the significant adverse effects that the EO will have—and indeed, is already having—on local election officials and election administration. *See League of Women Voters of Mass. v. Trump*, Nos. 1:26-cv-11549-IT, 1:26-cv-11581-IT, 2026 WL 1755833, at *6 (D. Mass. June 18, 2026) (finding "postponing judicial review . . . impracticable" "because the EO requires State elections officials and voters to reckon today with both the likelihood that the executive branch agencies will follow the EO's multiple directed actions and simultaneously with the uncertainty that exists as the details are slowly rolled out over the next few months"). The EO places local officials and jurisdictions in an impossible situation that is already undermining their ability to prepare for upcoming elections. And implementation of the EO runs headlong into other federal statutes governing voting and privacy rights.

Each day that the EO remains in effect is another day of disruption and confusion, at a time when election officials are deep into their preparations for the 2026 midterm elections. Waiting until the eleventh hour to address the obvious problems with the EO, as the district court's opinion contemplates, is neither required by law nor appropriate at this moment in the electoral cycle. This Court should reverse.

4

**I.** **The EO Is Already Causing Administrative Burdens and Confusion and Wreaking Ongoing Havoc on Election Administration.**

**A.** **Preparation for the 2026 midterm elections is already well underway.**

Implementation of the EO, and the EO's resulting impacts, will be felt most acutely at the state and local levels, where elections are administered. State and local election officials coordinate with election workers, establish guidance and rules for election administration, engage in voter education, send ballots to registered voters, work with third-party contractors, and rely on election workers' experience and expertise in each jurisdiction to ensure the orderly operation of elections.[2] Amici are thus already undertaking efforts to recruit and train election workers for the midterm elections.[3] And those efforts are proving difficult in the current climate.[4] In the last election cycles, election workers were harassed at increasing and alarming

---

[2] *See* Payton Brooker, *Wood County Clerk's Office prepares for Tuesday Primary*, WTAP (May 8, 2026), https://perma.cc/Q68Y-J4PB (quoting one local election official as explaining, "There's just a lot of behind-the-scenes work that goes into an election.").

[3] *See* Wendy Wright, *Primary Election Day preparations underway across upstate New York*, Spectrum News 1 (June 4, 2026), https://perma.cc/SAF8-9KGU.

[4] *See* McKenzie Muskett, *Charleston County program gets creative to recruit new poll workers*, Spectrum News (Apr. 29, 2026), https://perma.cc/AE3H-AUE6; Susana Canales Barrón, *LA Officials race to recruit bilingual election workers ahead of primary elections*, L.A. Public Press (Apr. 3, 2026), https://perma.cc/PEB9-N9BE; Adrian Ashford, *House approves tax break for poll workers as SC struggles to recruit enough of them*, S.C. Daily Gazette (Feb. 5, 2026), https://perma.cc/7U8C-YX5A.

rates.[5]  Now, the uncertainty injected by the EO into election administration, along with threatened prosecution of election workers, as described further below, has further depressed recruitment.

Additionally, other preparations have already begun for the midterm elections in many jurisdictions.  Indeed, as particularly relevant to the challenged EO, many election officials have begun preparations for absentee and mail-in voting in the 2026 election cycle, relying on prior USPS guidance.  USPS published its 2026–2027 Official Election Mail Guide *in February 2026*.  2026-2027 Official Election Mail Guide Kit 600, USPS (Feb. 2026), https://perma.cc/8W4V-HRGS (the "Kit"). Election officials have relied on the Kit for the ongoing primary elections, and, consistent with the Kit's own encouragement, have begun plans to implement consistent Election Mail practices for the 2026 general election.  In the Kit, USPS acknowledges that it is critical for increased public understanding and election preparedness that voters and election officials have clarity regarding any USPS-proposed changes early in the election cycle. *See, e.g.*, Kit at 2, 27 (explaining recent changes "[i]n preparation for the upcoming election season").  Changes to the election process at this late juncture, such as the significant changes mandated by

---

[5] *Local Election Officials Survey* 3, Brennan Ctr. for Just. (Apr. 13, 2026), https://perma.cc/F9ZX-WVHL (noting that 32% of local election officials report experiencing threats, harassment, or abuse because of their job).

the EO, will undermine that clarity and severely burden election officials during an already busy time.

**B.      The EO has already placed state and local election officials in an untenable position.**

"The Court's precedents recognize a basic tenet of election law: When an election is close at hand, the rules of the road should be clear and settled." *Democratic Nat'l Comm. v. Wis. State Legislatures*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring in denial of application to vacate stay). "[R]unning a statewide election is a complicated endeavor," requiring "thousands of state and local officials [to] participate in a massive coordinated effort to implement the lawmakers' policy choices on the ground before and during the election," and requiring "at every step, state and local officials [to] communicate to voters how, when, and where they may cast their ballots through in-person voting on election day, absentee voting, or early voting." *Id.* But the continued existence of this unconstitutional EO, given the district court's refusal to enjoin it, places election officials in the untenable situation of having to prepare to implement an unlawful and confusing order, while facing threats of criminal sanctions, and without knowing what rules will govern the midterm elections that are now only months away.

In the district court's view, Plaintiffs-Appellants do not have standing to challenge the EO, nor will the matter be ripe for judicial review, unless and until the EO's mandates to USPS, the Secretary of Homeland Security, and various other

federal agencies are fully implemented. The problem with this wait-and-see approach, however, is that it leaves no time for judicial intervention to halt this obviously unlawful EO until the months or even weeks immediately preceding the upcoming midterm elections—by which point irreparable damage will already have been done. The final USPS rule, for example, is not due to be issued until July 29, 2026. *See* EO § 3(d) (directing the final rule be issued 120 days from the date of the order, dated March 31, 2026). Meanwhile, the EO directs that the "State Citizenship List[s] shall be updated and transmitted to State election officials no fewer than 60 days before each regularly scheduled Federal election." *Id.* § 2(a). In the case of the upcoming November 3, 2026 elections, this means that those lists may not be finalized until September 4, 2026.

The district court's opinion suggests that Plaintiffs-Appellants may "renew their motions if and when those future actions occur," such as when the federal government develops "State Citizenship Lists that omit specific individuals due to particularized flaws." JA697. But in the meantime, this results in an absurd and unworkable outcome whereby Amici and other election officials are expected to proceed for the next several months—indeed, throughout most or all of this summer—on the assumption that the EO will remain in full effect and that they must prepare themselves and their constituent voters accordingly. Even if the district court were to later permit Plaintiffs-Appellants to renew their motions for injunctive

relief, any decision on those motions likely could not be expected until early fall. And even if the court were to enjoin the EO at that point, that would only add to the chaos and confusion by changing the rules yet again, on the eve of an election, and requiring everyone (including Plaintiffs-Appellants, voters, and election officials like Amici) to pivot on a dime.

Local election officials, as well as the voters whom they serve, deserve better. Amici deserve to know the rules and procedures that will apply to elections sufficiently far in advance to enable the orderly administration of elections—including such time-intensive matters as preparing, printing, mailing, and receiving ballots; training election workers and volunteers; educating voters about how to cast a ballot; and responding to voters' inevitable questions and concerns. As Plaintiffs-Appellants have explained, the balance of equities and the public interest thus strongly favor enjoining the EO now.

### C. The State Citizenship Lists mandated in the EO will inevitably contain errors and place substantial burdens on Amici.

The State Citizenship Lists, which the EO mandates be "compile[d] and transmit[ted] to the chief election official of each State," EO § 2(a), will inevitably conflict with states' and localities' own lists, contain significant errors, and thus impose substantial costs and harms on election officials and voters alike. Consistent with existing federal law, states and localities already maintain their own lists of eligible voters in their jurisdictions. For example, the Help America Vote Act

("HAVA") directs that "*the appropriate State or local election official shall perform list maintenance* with respect to" such lists on a "regular basis," including to remove ineligible voters, 52 U.S.C. § 21083(a)(2)(A)(i) (emphasis added), but such maintenance must be conducted "in a manner that ensures that . . . only voters who are not registered or who are not eligible to vote are removed from the computerized list[s]." *Id.* § 21083(a)(2)(B)(ii). And NVRA mandates that each state "conduct a general program that makes a reasonable effort to remove the names of ineligible voters." 52 U.S.C. § 20507(a). The EO's direction to the federal government to create and disseminate so-called "State Citizenship Lists," however, will upend this carefully calibrated scheme, amounting to federal maintenance of these lists, in contradiction of HAVA and NVRA. *See Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 624–29 (6th Cir. 2025).

The EO threatens election workers and officials like Amici with criminal and other sanctions if they provide ballots to individuals who do not appear on the federal "Citizenship Lists," *see* EO § 2(b)—even if those individuals are in fact eligible voters, as confirmed by states' own voting rolls. But as Plaintiffs-Appellants explained, the federal databases from which the EO directs that the State Citizenship Lists be derived are not designed for this task, and are almost certain to contain errors that improperly exclude many eligible citizen voters. *See, e.g.*, *Pub. Int. Legal Found, Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 261 (4th Cir. 2021) (noting

10

a "high rate of inaccuracy" in the federal SAVE database's information on voter eligibility).[6]  Furthermore, federal databases do not track voters' current residences, while state voter registration lists regularly use driver's license numbers rather than Social Security numbers.  Local election officials will thus bear the burdens of determining how to reconcile their voting rolls with the State Citizenship Lists, all while lacking sufficient information to cross-check their rolls with those lists, yet being threatened with potential criminal enforcement action anytime the lists conflict.

The Defendant-Appellees' June 8 Notice to the District Court (the "June 8 Notice") pertaining to implementation of the EO provides no clarification and risks imposing more burdens on Amici.  Per the June 8 Notice, the Department of Homeland Security ("DHS") has approved a plan to coordinate with the Social Security Administration and Department of State to "deliver" "a mechanism for States to receive secure, state-focused citizenship-related information from each agency."  JA732.  DHS is also proceeding with a "phased plan under which citizen-facing portal capabilities would be developed and implemented later in 2026," and

---

[6] The Department of Homeland Security itself has acknowledged that "due to misspelling of names, transposed numbers, or incomplete information, the SAVE Program may produce inaccurate results" regarding citizenship.  Dep't of Homeland Sec., DHS Ref. No. DHS/USCIS/PIA-006(d), Privacy Impact Assessment for the Systematic Alien Verification Entitlements "SAVE" Program 19 (Oct. 31, 2025), https://perma.cc/G92ULYPM.

will "continue preliminary conversations with USPS concerning potential data-sharing arrangements," subject to USPS's anticipated final rule. *Id*.

The steps outlined in this notice—which corner election officials into consulting flawed federal databases, all while under threat of potential criminal prosecution, as described further below—needlessly burden election officials like Amici who are already operating under time and resource constraints. They task election officials with establishing procedures to accept, review, cross-check, and safeguard citizenship-related information coming from federal agencies through an unspecified "mechanism." *Id*. It is also unclear who would be responsible for the "portal" with "citizen-facing" "capabilities," or what those "capabilities" would be. *Id*. And most concerningly, many of these changes will not come until "later in 2026." *Id.* Election officials cannot delay preparations for the midterm elections to accommodate this uncertain timeframe.

Relatedly, although not addressed in the June 8 Notice, the EO requires the Secretary of Homeland Security to "establish procedures to" "enable States to routinely supplement and provide suggested modifications or amendments to the State Citizenship List[s] transmitted thereto." EO § 2(a). Local election officials regularly work with voters to correct issues with their registration status, and it is likely that the burden will again fall on them to correct significant errors resulting from the State Citizenship Lists. Given that the EO provides that the federal

government can transmit the lists to states as close as 60 days before the election, *see id.*, election officials will be under significant strain to work with voters in their jurisdictions to correct errors during an already quite challenging period. And because the EO does not even guarantee that the federal government will heed states' suggestions or make the requested corrections to erroneous lists, this further heightens the risks that eligible voters will be disenfranchised.

**D.    Substantial burdens also result from the EO's changes to procedures governing absentee and mail-in ballots.**

Similarly, the EO's State-Specific Mail-In and Absentee Participation Lists, along with USPS's Proposed Rule, impose additional requirements for mail-in and absentee ballots, again relying on election officials to perform the majority of the labor associated with the changes. USPS's proposal tasks election officials with providing voter data to USPS to create the (wholly unnecessary) Mail-In and Absentee Participation Lists. This will inescapably cost state and local election officials, like Amici, significant time and resources and ultimately risks disenfranchising voters who rely on voting absentee or by mail.

On June 2, 2026, USPS published its Proposed Rule implementing the EO's directives to USPS. *See* Proposed Rule at 32915. Among various changes to USPS procedures for mail-in and absentee voting, the Proposed Rule creates a state-specific "Mail-In and Absentee Participation List" process through a new "Federal Ballot Mail Portal." *Id*. at 32916. Local election officials like Amici must notify

USPS of individuals to whom they plan to mail a ballot, including the unique barcode associated with the outbound and return ballot assigned to each voter. *Id*. at 32916–18. USPS would then compile and return a state-specific Mail-In and Absentee Participation List to the state's chief election official. *Id*. at 32916. While the Proposed Rule does not outline a specific process, a state may make supplemental submissions and modifications to its list until the last day that ballots may be mailed to individuals under state law. *Id.* at 32918.

To receive a mail-in or absentee ballot, an individual must be on USPS's Mail-In and Absentee Participation List and pass USPS's verification process. Noncompliant mailings—whether because of an error in the Participation Lists, an issue with the design of the mail ballot envelope, or another purported issue USPS identifies—would not be accepted by USPS nor transmitted to the voters. *Id.* at 32918. And if a state declines to certify a Mail-In and Absentee Participation List, USPS will not transmit any outbound federal ballot mail to that state's voters. *Id*. It is unclear when USPS will notify state and local election officials of its decision not to accept or deliver a mail ballot to a voter deemed qualified by the state, if at all.

The Proposed Rule's burdens will fall on election officials. The chief election official of each state is responsible for authorizing users for the USPS portal for their state. State and local election officials will then be required to stand up new procedures to input information into that portal to form the basis of the state-specific

Mail-In and Absentee Participation Lists. The portal specifications have not been released, and the portal itself may not be ready for intake until well after the Proposed Rule becomes finalized, just three months before Election Day. Amici and their colleagues around the country store their voter data on a variety of different technologies, in many different formats, and need many months if not years to assure data and technology compatibility between systems.[7] USPS cannot simply dictate that, three months before an election, states upload their data in these various formats to an as-yet-non-operational portal and expect the process to work.

If the mandate of wholesale new procedures while preparations for the 2026 midterms are already well underway were not enough to show the burdens on Amici (it is), the Proposed Rule also requires that state-specific Mail-in and Absentee Participation Lists be certified at least 30 days before federal Election Day, to the extent practicable, or by the date on which mail-in or absentee ballots may begin to be mailed under state law. *Id.* at 32918. But, sowing further uncertainty for Amici, that deadline precedes the voter registration deadline in many states, thus

---

[7] Jonathan Shorman, *Local election officials reel over 'logistical nightmare' of Trump's vote-by-mail order*, News from the States (June 16, 2026), https://perma.cc/N7UJ-TW9E.

guaranteeing that the Participation Lists will be underinclusive.[8] While the Proposed Rule notes (but does not elaborate) that states would be allowed to modify and update these lists, administrative, financial, and technical issues will make it difficult, if not impossible, for local election officials to do so under the Proposed Rule's timeframes in the midst of an election. That is particularly true because election officials like Amici will be required to use a wholly new, and as-yet-untested, USPS Portal, for which none of them have yet received any training.

The Proposed Rule also imposes burdens on state and local election officials to re-design and even re-print ballot envelopes. Most states do not have a single design for mail ballot envelopes. Counties and localities in a single state may use different voting machines and different types and sizes of ballots, requiring different ballot and envelope designs. Changing these processes will be a major undertaking, for which USPS has no expertise, even though the Proposed Rule requires outbound and return envelopes undergo USPS "review." Proposed Rule at 32917–18. This burden will inevitably fall on state and local election officials.

Similarly, local election officials would be "responsible for barcode creation" "as well as envelope design and printing for all ballot mail." *Id.* at 32918. The

---

[8] *See* Table, *Voter Registration Deadlines: Number of Days Before an Election Voters Must Register*, Nat'l Conf. of State Legislatures (May 20, 2026), https://perma.cc/5CPT-HJFR.

requirement that every jurisdiction use Intelligent Mail barcodes on each outbound and return envelope creates onerous, new regulations that will be difficult and costly for election officials to follow. *Id*. This will especially be the case in rural communities that do not currently have the technology to produce these barcodes.[9] These systems cost significant sums of money[10]—resources that many communities do not have and that are not provided by the EO nor by the Proposed Rule. Additionally, changes to the design of the envelopes could force jurisdictions to re-design (and subsequently re-print) already-prepared envelopes and re-negotiate vendor contracts. Local election officials, to whom this would inevitably fall, have neither the time nor the resources to undertake these steps.

Finally, this upheaval and the burdens imposed on election officials are unnecessary. States already maintain their own accurate lists of eligible voters, and USPS is already positioned to transmit mail-in and absentee ballots without these new procedures, as it has always done.

---

[9] Dion Nissenbaum et al., *USPS proposal to carry out Trump's Executive Order could create new barriers to mail voting*, VOTEBEAT (May 29, 2026), https://perma.cc/8TV4-MW5K.

[10] *See* William T. Adler & Wren Orey, *What's In The New Executive Order On Elections?*, Bipartisan Pol'y Ctr. (Apr. 14, 2026), https://perma.cc/283L-JL8B.

## II. The EO Imposes Significant Legal Risks for Election Officials, Causing Downstream Harms to Election Administration *Right Now*.

The EO exacerbates these burdens on Amici by threatening state and local election officials with federal charges for issuing ballots to individuals who the federal government—relying on flawed and extra-statutory lists—deems ineligible. These legal threats have already harmed ongoing election preparations, including by deterring staff, volunteers, and contractors from agreeing to assist in election administration.

### A. The threat of prosecution of state and local election officials functions as the EO's enforcement mechanism.

The EO puts state and local election officials, like Amici, in baseless legal peril. Election officials carefully follow state and federal law, adopting strict processes to ensure only eligible voters can vote. As a result, noncitizen voting is vanishingly rare.[11]

Regardless, the EO highlights that "[f]ederal statutes explicitly prohibit non-citizens from registering to vote or voting in Federal elections and impose criminal penalties for violations," citing various criminal statutes, and that it is the federal government's duty to "prevent[] violations of Federal criminal law." EO § 1. It directs the Attorney General to "prioritize the investigation and, as appropriate, the

---

[11] *See Update: Review of Claims of Noncitizen Registrants and Voters*, Ctr. for Election Innovation & Rsch. (Feb. 2026), https://perma.cc/2FEG-JH84.

prosecution of" both "*State and local officials* or any others involved in the administration of Federal elections who issue Federal ballots to individuals not eligible to vote in a Federal election" and of "*individuals and public or private entities engaged in, or aiding and abetting*, the printing, production, shipment, or distribution of ballots to individuals who are not eligible to vote in a Federal election." *Id.* § 2(b) (emphases added). The EO specifies that "the unlawful use of the mail in connection with elections is prohibited by various Federal statutes" and directs agencies to coordinate "for investigation of suspected unlawful use of the mail involving Federal election materials." *Id.* § 3(a), (c). Furthermore, it prioritizes referral of "[e]vidence of violations of existing Federal laws *by State or local election officials* [and] *States or localities, including any instrumentalities thereof* . . ." for investigation and potential charges under various federal criminal statutes. *Id.* § 5 (emphasis added).

Under the EO, criminal prosecution is an option of ***first*** resort, creating an atmosphere of fear and making clear that even small mistakes resulting from confusion related to the EO's new mandates could result in investigations, indictments, and prison time. The EO's prosecute-first mandate does not exist in a vacuum. While the federal government has long been a partner to state and local governments in the effort to administer free and fair elections, over the past year the federal government has repeatedly undermined that relationship. Recently, the

federal government has seized or attempted to gain access to election materials in Fulton County, Georgia;[12] Maricopa County, Arizona;[13] and Wayne County, Michigan.[14] The Department of Justice has filed dozens of lawsuits against states that refused to comply with the federal government's demand for voter registration lists.[15] FBI Director Kash Patel recently announced plans to initiate arrests related to the 2020 election, despite the fact that the five-year statute of limitations for election crimes has passed and without any proof of wrongdoing.[16] These efforts are not aimed at improving election administration; they are focused on attempting to revive disproven conspiracy theories. Under these conditions, local election officials reasonably fear that the EO's threat of prosecution is genuine.

And yet, because the EO's terms "are not clearly defined," the EO fails to provide Amici with a "reasonable opportunity to know what is prohibited." *Grayned*

---

[12] Stephen Fowler, *The FBI executes a search warrant for 2020 election ballots in Georgia's Fulton County*, NPR (Jan. 29, 2026), https://perma.cc/9JH3-A3LH.

[13] Jen Fifield, *Election Records Handed Over to the FBI in Maricopa County, Arizona, Could Be Fatally Flawed, Experts Say*, ProPublica (Mar. 12, 2026), https://perma.cc/B8RV-V36U.

[14] Patrick Marley, *DOJ demands Detroit-area 2024 ballots, escalating election scrutiny*, Wash. Post (Apr. 19, 2026), https://perma.cc/A774-BA7C.

[15] *See, e.g.*, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. filed Sept. 25, 2025); *United States v. Oregon*, No. 25-cv-01666 (D. Or. filed Sept. 16, 2025); *United States v. Benson*, No. 25-cv-01148 (W.D. Mich. filed Sept. 25, 2025).

[16] *See* Jacob Wendler, *Trump DOJ redoubling election scrutiny efforts*, Politico (Apr. 19, 2026), https://perma.cc/5RTU-UA5B.

*v. City of Rockford*, 408 U.S. 104, 108 (1972).  For example, as described above, Section 2 directs the creation of State Citizenship Lists to determine voter eligibility, but fails to explain how these lists interact with already-existing state voter rolls. The EO similarly does not explain how State Citizenship Lists will interact with USPS's Mail-In and Absentee Participation Lists.  And it fails to "provide explicit standards" of enforcement, *Grayned*, 408 U.S. at 108, threatening prosecution of a potentially wide range of actors and broad scope of conduct, *see* EO § 2(b) (threatening prosecution of those "*engaged in, or aiding and abetting*, the printing, production, shipment, or distribution of ballots . . ." (emphasis added)).  The practical consequences of this risk of arbitrary enforcement are severe and present another reason that the district court should have granted an injunction to preserve the status quo.  *See Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733 (D.C. Cir. 2022) (clarifying the status quo is the last "uncontested status" that preceded the pending controversy—here, the state of affairs prior to the implementation of the EO).

**B.      The EO's threats of prosecution are already harming Amici's ability to reach adequate staffing levels for upcoming elections.**

State and local election officials operate under challenging conditions.  They manage our nation's consequential elections within a short time frame and rely on recruiting temporary workers and volunteers.  Many of their colleagues have resigned in large numbers in recent years, due in part to a rise in threats and

harassment against election workers.[17]  A 2024 survey found that 38% of election workers reported experiencing threats, harassment, or abuse for doing their jobs.[18] Now, as local election officials are struggling to retain talent, the EO imposes new burdens that will inevitably result in further attrition.

Because the EO's reach is so broad, threatening "public or private entities" who are "engaged in, or aiding and abetting," activities that include "the printing, production, shipment, or distribution of ballots," EO § 2(b), it carries downstream chilling effects throughout the electoral apparatus.  The EO is already making it more difficult for election officials to recruit poll workers and other volunteers, who fear they could be subject to severe criminal penalties simply for giving a ballot to someone they understand to be an eligible voter.  Similarly, the EO may make it more difficult for election officials to work with contractors, instill fear in other actors involved in the preparation and delivery of ballots, and discourage a broad range of activities needed to administer a federal election.  Amici and other officials like them cannot effectively do their jobs under such conditions.

---

[17] Andrew Howard, *Election officials grapple with a brain drain as threats rise*, Politico (Feb. 3, 2026), https://perma.cc/45E6-VSME.

[18] Ruby Edlin & Lawrence Norden, *Poll of Election Officials Finds Concerns About Safety, Political Interference*, Brennan Ctr. for Just. (May 1, 2024), https://perma.cc/93M9-JWS4.

**C.    The EO runs headlong into existing voting rights laws and risks undermining confidence in elections.**

Beyond the threats of prosecution under the EO itself, the EO puts election officials in legal jeopardy by potentially forcing them to violate statutes governing voting rights.  This places officials in an impossible position: They risk federal prosecution if they send ballots to individuals who appear on state voter rolls but not on the federal government's lists (which, as already explained, necessarily rely on unreliable citizenship-verification mechanisms).  But if they fail to provide ballots to eligible voters, election officials place themselves in potential legal jeopardy under state and federal criminal law.  *See, e.g.*, 52 U.S.C. § 10307(a) (prohibiting refusing to permit an eligible voter to vote).  Indeed, local election officials have a responsibility to promote the fundamental right to vote. 52 U.S.C. § 20501(a).  And even if they do not face criminal prosecution, process failures from the rushed implementation of the EO will require that local election officials field an overwhelming number of calls when eligible voters do not receive the mail-in ballots they are expecting, manage long lines at polling places as voters seek to vote in-person instead, and attempt to help rural voters who have limited options to cast ballots in-person.

Election officials also play an important role in promoting voter confidence and increasing voter participation.  Because the EO and the accompanying USPS Proposed Rule impose significant changes immediately preceding an election and

do not clearly delineate the functionality or uses of the various lists or legal threats contemplated, election officials are unable to counter and respond to the uncertainty and fear sowed by the EO. Similarly, without clarity on how the federal government seeks to operationalize the EO, election officials are unable to prepare communications and trainings for election workers and the public to assuage confusion or concerns about, for example, how the State Citizenship Lists and Mail-in and Absentee Participation Lists will be used or how registered voters can assure that they receive their mail-in or absentee ballot and can then confidently return it.

D. **The EO also imposes significant data privacy-related costs for local jurisdictions and election officials.**

The EO also imposes direct harms to election administration and election officials right now by requiring significant, new data-sharing on impossible deadlines and without providing necessary resources. Moreover, it forces election officials to choose between complying with its data-sharing mandates and complying with existing state and federal privacy laws.

The burdens of implementing the EO's data-sharing portions will largely fall on local officials. With respect to the State Citizenship Lists, states will receive information from the federal government, *see* JA732, but it is local election officials who actually handle voter registration and voter verification. Similarly, it will fall to local election officials to assure the accuracy of the information for the Federal Ballot Mail Portal described in USPS's Proposed Rule, including working with

constituents to correct errors in the portal. It is unclear how any such corrections may be made, but it could likely include the transmission of personally identifying information (e.g., Social Security numbers), and the accordant risks.

The EO demands a significant amount of data-sharing without providing the necessary time and funds to implement it. Absent an injunction, local jurisdictions must now develop data infrastructure that can securely store additional voter-related data provided by the federal government, function compatibility with state-level databases, and implement necessary security precautions. Building these policies will require jurisdictions to analyze their present data-processing capabilities against the EO's mandates; ensure compliance with state data-privacy laws; build infrastructure to accommodate these changes; test processes; and train staff to use the new systems. All these steps will cost both time and financial resources.

Without the proper implementation, data storage practices carry substantial risks. Sensitive citizen data must be safeguarded as the potential for information breaches, whether by innocent misstep or through a malicious actor,[19] can be costly

---

[19] Local governments face "seemingly unrelenting" cybersecurity attacks, including ransomware attacks. Donald F. Norris & Laura K. Mateczun, *Managing cybersecurity in local governments: 2022*, 2025 J. of Cybersecurity Educ., Rsch. & Prac. 1, 10 (2025), https://perma.cc/ZPU7-3YLY. Requiring local governments to store additional batches of sensitive personal data increases the risk of a serious breach.

for communities that are already stretched thin.[20]  Adding to local officials' burdens, the federal government has recently *reduced* cybersecurity resources to support local governments.  For instance, the federal government cut funding to the Center for Internet Security, which ran the Elections Infrastructure Information Sharing and Analysis Center, a program that provides resources and services to local election offices to combat cybersecurity threats.[21]

Finally, the EO risks placing election officials and workers at odds with existing state and federal privacy protections.  The EO vaguely references compliance with federal law, *see, e.g.*, EO §§ 2(a), 4(c), but it does not account for the patchwork of state privacy laws that election officials will need to navigate,[22] while also still communicating with federal officials under tight timelines to assure that voters remain eligible to vote by mail.  Coupled with the EO's threats of federal criminal penalties for election officials, the EO's data-sharing provisions thus place

---

[20] In one example, when hackers stole names and addresses from the Pierce County, Washington public library, the library covered the costs of credit monitoring and identity protection services and was also sued by patrons who had their data stolen. *See* Shea Johnson, *Pierce County library was hit by data breach. What was in the stolen files*, The News Trib. (Sept. 9, 2025), https://perma.cc/F3DK-U9T5.

[21] *See* Trishna Begam, *Center for Internet Security facing federal funding cuts*, ABC News10 (Apr. 22, 2025), https://perma.cc/ACV6-R8S4.

[22] *See* Gowri Ramachandran, *Requests for Access to Election Data and Equipment Require Balancing Risks and Public Access*, Brennan Ctr. for Just. (June 27, 2025), https://perma.cc/Z939-LSNM.

election officials on the horns of yet another impossible dilemma. And this only further exacerbates the downstream harms to election administration and ongoing preparations for the rapidly approaching midterm elections.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's denial of Plaintiffs-Appellants' motion for a preliminary injunction and remand to the district court with instructions to enjoin the challenged sections of the EO.

Respectfully submitted,

/s/ Alex Goldstein
*Counsel for Amici Curiae*

| | |
|---|---|
| SAMANTHA P. BATEMAN | ALEX M. GOLDSTEIN |
| KYLE R. FREENY | JONATHAN B. MILLER |
| ROSA L. BAUM | MARICA L. WRIGHT |
| WASHINGTON LITIGATION GROUP | PUBLIC RIGHTS PROJECT |
| 1717 K St., NW, Suite 1120 | 490 43rd Street, #115 |
| Washington, D.C. 20006 | Oakland, CA 94609 |
| (202) 521-8750 | (510) 738-6788 |
| sbateman@washingtonlitigationgroup.org | alex.goldstein@publicrightsproject.org |

*Counsel for Amici Curiae State and Local Election Officials, Local Governments, and Election Experts*

June 24, 2026

**ADDITIONAL COUNSEL**

ROBERT MAGEE
Corporation Counsel
24 Eagle Street, Room 106
Albany, NY 12207
*Attorney for the City of Albany, New York*

ROSALYN GUY-MCCORKLE
Allegheny County Solicitor
445 Fort Pitt Boulevard, Suite 300
Pittsburgh, PA 15219
*Attorney for Allegheny County, Pennsylvania*

ATLEEN KAUR
City Attorney
Guy C. Larcom City Hall
301 East Huron, 3rd Floor
Ann Arbor, MI 48104
*Attorney for the City of Ann Arbor, Michigan*

LEE AWBREY
County Solicitor
201 Front Street
Media, PA 19063
*Attorney for the County of Delaware, Pennsylvania*

DAN GRIESER
County Solicitor
55 E. Court Street
Doylestown, PA 18902
*Attorney for Bucks County, Pennsylvania*

MICHAEL HAAS
City Attorney
210 Martin Luther King Jr. Boulevard, Room 401
Madison, WI 53703
*Attorney for the City of Madison, Wisconsin*

MARGARET C. DAUN
Corporation Counsel
901 North 9th Street, Room 303
Milwaukee, WI 53233
*Counsel for Milwaukee County, Wisconsin*

KRISTYN ANDERSON
City Attorney
350 S. 5th Street
Minneapolis, MN 55415
*Attorney for the City of Minneapolis, Minnesota*

SUSAN K. BLITCH
County Counsel
188 W. Alisal Street, 3rd Floor
Salinas, CA 93901
*Attorney for the County of Monterey, California*

JOHN P. MARKOVS
Montgomery County Attorney
101 Monroe Street, 3rd Floor
Rockville, MD 20850
*Attorney for Montgomery County, Maryland*

ALLIE JACOBS
Corporation Counsel
165 Church Street, 4th Floor
New Haven, CT 06510
*Attorney for the City of New Haven,
Connecticut*

DAMON BROWN
County Counsel
1600 Pacific Highway, Room 355
San Diego, CA 92101
*Attorney for the County of San Diego*

TONY LOPRESTI
County Counsel
70 West Hedding Street East Wing,
9th Floor
San José, CA 95110
*Counsel for the County of Santa
Clara, California*

ERIKA EVANS
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7097
*Attorney for the City of Seattle,
Washington*

ROI LUSK
City Attorney
PO Box 27210
Tucson, AZ 85726-7210
*Attorney for the City of Tucson,
Arizona*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the typeface requirement of Fed. R. App. P. 32(a)(5) because it was prepared in a proportionally spaced typeface using Microsoft Word Times New Roman 14-point font.

I also certify that the brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 6,203 words, exclusive of the portions excluded under this Court's rules.

/s/ Alex Goldstein
*Counsel for Amici Curiae*

June 24, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of

Court by using the CM/ECF system on June 24, 2026. I certify that participants in

the case are registered CM/ECF users and that service will be accomplished by the

CM/ECF system.


/s/ Alex Goldstein
*Counsel for Amici Curiae*

June 24, 2026

# APPENDIX: LIST OF *AMICI CURIAE*

Amici include the Center for Election Innovation and Research ("CEIR"), a nonpartisan nonprofit whose core mission is to work with election officials and build confidence in elections that voters should trust and do trust. Amici also include the following local governments, and the following current or former election officials, listed alphabetically by last name, along with their titles and jurisdictions:

## LOCAL GOVERNMENTS

City of Albany, New York

Allegheny County, Pennsylvania

City of Ann Arbor, Michigan

City of Beaverton, Oregon

City of Boston, Massachusetts

Bucks County, Pennsylvania

Delaware County, Pennsylvania

City of Madison, Wisconsin

Milwaukee County, Wisconsin

City of Minneapolis, Minnesota

Monterey County, California

Montgomery County, Maryland

City of New Haven, Connecticut

City of Northampton, Massachusetts

San Diego County, California

County of Santa Clara, California

City of Seattle, Washington

City of Tucson, Arizona

**STATE AND LOCAL ELECTION OFFICIALS**

Natalie Adona
*Registrar of Voters, Marin County, California*

Laura E. Anna
*Director of Elections, Venango County, Pennsylvania*

Kate Sweeney Bell
*Clerk, Marion County, Indiana*

Shenna Bellows
*Secretary of State, Maine*

Karen Brinson Bell
*Former Executive Director, State Board of Elections, North Carolina*

Lisa Brown
*Clerk & Register of Deeds, Oakland County, Michigan*

Bill Burgess
*County Clerk, Marion County, Oregon*

Barb Byrum
*Clerk, Ingham County, Michigan*

Gabriella Cazares-Kelly
*Recorder, Pima County, Arizona*

Juan Pablo Cervantes
*Clerk, Recorder & Registrar of Voters, Humboldt County, California*

George Christenson
*Clerk, Milwaukee County, Wisconsin*

Mary Clark
*Clerk, Delta Township, Michigan*

Katharine Clark
*Clerk, Santa Fe County, New Mexico*

Domonique Clemons
*Clerk & Register of Deeds, Genesee County, Michigan*

Rich Coglianese
*Board of Elections Member, Union County, Ohio*

Ethan Compton
*Election Supervisor, Irwin County, Georgia*

Kristin Connelly
*Clerk-Recorder & Registrar of Voters, Contra Costa County, California*

Brenda L. Corbett
*Clerk & Recorder, Clear Creek County, Colorado*

Cynthia Cornejo
*Interim Registrar of Voters, Alameda County, California*

Matt Crane
*Executive Director, Colorado County Clerks Association*

Dustin Czarny
*Commissioner of Elections, Onondaga County, New York*

R. Todd Davidson
*Director of Elections, City of Denver, Colorado*

Lisa Deeley
*Commissioner, City of Philadelphia, Pennsylvania*

David Del Terzo
*Elections Senior Software Developer, Miami-Dade County, Florida*

Jilline Dobratz
*Clerk, City of West Bend, Wisconsin*

Justin Douglas
*Commissioner, Dauphin County, Pennsylvania*

Lori Edwards
*Former Supervisor of Elections, Polk County, Florida*

Kelsey Faust-Kubale
*Clerk, City of Clayton, Wisconsin*

Giselle Feliciano
*Registrar of Voters, City of Hartford, Connecticut*

Diana Fuentes
*Clerk, City of San Diego, California*

Judith L. Garrison
*Election Commissioner, Delaware County, New York*

Christine Owens Gibbons
*Former Director of Elections & General Registrar, Lynchburg, Virginia*

Eileen Giesbrecht
*Clerk, Town of Southfield, Michigan*

Amanda Gonzalez
*Clerk & Recorder, Jefferson County, Colorado*

Monica Gordon
*Clerk, Cook County, Illinois*

Lynn Goya
*Clerk, Clark County, Nevada*

Justin D. Grantham
*Clerk & Recorder, Fremont County, Colorado*

Karyn Hagen
*Supervisor of the Checklist, Surry, New Hampshire*

Beau Harbin
*County Legislator & Democratic Minority Leader, Cortland County, New York*

Philip J. Hatcher
*Moderator, Ward 3, Dover, New Hampshire*

Deidre Henderson
*Lieutenant Governor, Utah*

Celia Israel
*Tax Assessor-Collector, Travis County, Texas*

Jonathan Johnson
*Clerk, Town of Putney, Vermont*

Hayle M. Johnson
*Clerk & Recorder, Jackson County, Colorado*

Jean Judd
*Clerk, Town of LaValle, Wisconsin*

Abbie Kamin
*County Attorney, Harris County, Texas*

Deanna K. Kendall
*Election Clerk Lead, Pueblo County, Colorado*

Kevin J. Kennedy
*Former Executive Director, State Elections Board, Wisconsin*

Greg Kimsey
*Auditor, Clark County, Washington*

Scott O. Konopasek
*Member, County Electoral Board, Hanover County, Virginia*

Carly Koppes
*Clerk & Recorder, Weld County, Colorado*

Alfreda Langhorne
*Deputy Director, Voter Registration, Clarendon County, South Carolina*

Lisa Lawitzke
*Clerk, Town of Bellevue, Michigan*

Debra Lee
*Clerk, Laramie County, Wyoming*

Corinne M. Lengel
*Clerk & Recorder, Lincoln County, Colorado*

Nicholas J. Lima
*Registrar/Director of Elections, City of Cranston, Rhode Island*

Dyana Limon-Mercado
*Clerk, Travis County, Texas*

Jo Ellen Litz
*Commissioner, Lebanon County, Pennsylvania*

Dean C. Logan
*Registrar-Recorder & Clerk, Los Angeles County, California*

Joan Lopez
*Clerk & Recorder, Arapahoe County, Colorado*

Neil Makhija
*Commissioner & Chair of Board of Elections, Montgomery County, Pennsylvania*

Lydia McComas
*Clerk, Madison, Wisconsin*

Sahari McCormick
*Clerk & Recorder, Gilpin County, Colorado*

Claudia McDaniel
*Clerk, Dimmit County, Texas*

Kirk McDonough
*Chairperson, Board of Canvassers, Cranston, Rhode Island*

Catherine McMullen
*Clerk, Clackamas County, Oregon*

Lori Mitchell
*Clerk & Recorder, Chaffee County, Colorado*

Elizabeth Montalvo
*Elections Administrator, Karnes County, Texas*

Christine Nakabaale
*Operations Administrator, County Supervisor of Elections, Flagler County, Florida*

Cheryl Neilsen
*Clerk, Montmorency County, Michigan*

Rosa Olgin
*Elections Administrator, Midland County, Texas*

Nathan Orck
*Voter Registration Coordinator, Jackson County, Georgia*

Rebecca Pallotta
*Elections Clerk I, Athens-Clarke County Unified Government, Georgia*

Lori Parmenter
*Clerk, City of East Lansing, Michigan*

Chris Piper
*Former Commissioner of Elections, Virginia*

Taryn Power
*Clerk & Recorder, Summit County, Colorado*

Jake Quinn
*Member, County Board of Elections, Buncombe County, North Carolina*

Christine Riley
*Deputy Registrar, Manchester, New Hampshire*

Candace Rivera
*Clerk & Recorder, Pueblo County, Colorado*

Gabriel Romero
*Deputy Supervisor of Elections, Hendry County, Florida*

Katie Rosenberg
*Board Supervisor, Marathon County, Wisconsin*

Joshua Lee Rozendaal
*Elections Manager, Black Hawk County, Iowa*

James Sabatino
*Council Chair, Luzerne County, Pennsylvania*

Jesse Salinas
*Clerk/Recorder/Assessor, Yolo County, California*

Dawn Marie Sass
*Clerk/Deputy Treasurer, City of Exeter, Wisconsin*

Lynda Scott
*Clerk & Recorder, Otero County, Colorado*

Beth Seldin
*Supervisor of the Checklist, Wakefield, New Hampshire*

Michael Siegrist
*Clerk, Town of Canton, Michigan*

Kathy Simillion
*Clerk & Recorder, Gunnison County, Colorado*

Philbert Sherlock Smith
*Warehouse and Distribution Manager, County Elections, Douglas County, Georgia*

Aubrey Sonderegger
*Recorder, Coconino County, Arizona*

Susie Spring
*Clerk, Parmer County, Texas*

Chris Swope
*Clerk, City of Lansing, Michigan*

Jenny Lee Thomas
*Clerk & Recorder, Routt County, Colorado*

Damon Todd
*Clerk & Recorder, Ouray County, Colorado*

Anthony Vega
*Clerk, Lake County, Illinois*

Dedee Verdin
*Deputy Secretary of State, Chief Communications Officer, California*

Kenneth Lee Warner
*Elections Commissioner, Cayuga County, New York*

Braxton White
*Commissioner, Clarion County, Pennsylvania*

Jamila Winder
*Commissioner, Montgomery County, Pennsylvania*

Julie Wise
*Director of Elections, King County, Washington*

Michael Wyszynski
*Clerk & Recorder, San Miguel County, Colorado*