NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 26-5193

---

## UNITED STATES COURT OF APPEALS

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

DSCC, et al.,

*Plaintiffs-Appellants,*

v.

DONALD J. TRUMP, in his official capacity as
President of the United States, et al.,

*Defendants-Appellees.*

---

On Appeal from the U.S. District Court for the District of Columbia,
Case No. 1:26-cv-01114
The Honorable Carl J. Nichols, District Judge, presiding

---

**BRIEF OF WISCONSIN DEMOCRACY CAMPAIGN, INC., EXPO
OF WISCONSIN, INC., JALEYCE ORAEDU, JASMINE ORAEDU,
AND AHARON SHELEF AS *AMICI CURIAE* IN SUPPORT OF
APPELLANTS AND REVERSAL**

---

Jeffrey A. Mandell (D.C. Cir. No. 51474)
Douglas M. Poland*
Rachel E. Snyder*
LAW FORWARD, INC.

222 W. Washington Ave., Ste. 680
Madison, Wisconsin 53703
jmandell@lawforward.org
dpoland@lawforward.org
rsnyder@lawforward.org
608.283.9822

*Application for admission to the U.S. Court of Appeals for the
D.C. Circuit forthcoming

## Certificate as to Parties, Rulings, and Related Cases

(A)    **Parties and Amici.** Except for the following, all parties, intervenors, and amici appearing before the district court and in this court are listed in the Brief for Plaintiffs-Appellants:

<u>Amici</u>:

- Neil Abercrombie, Governor of Hawaii from 2010 to 2014

- Jerry Brown, Governor of California from 1975 to 1983 and 2011 to 2019; Secretary of State of California from 1971 to 1975

- Steve Bullock, Governor of Montana from 2013 to 2021

- Arne Carlson, Governor of Minnesota from 1991 to 1999

- Chet Culver, Governor of Iowa from 2007 to 2011; Secretary of State of Iowa from 1999 to 2007

- Mark Dayton, Governor of Minnesota from 2011 to 2019

- Parris Glendening, Governor of Maryland from 1995 to 2003

- Jennifer Granholm, Governor of Michigan from 2003 to 2011

- Bill Graves, Governor of Kansas from 1995 to 2003; Secretary of State of Kansas from 1987 to 1995

- Christine Gregoire, Governor of Washington from 2005 to 2013

- John Kitzhaber, Governor of Oregon from 1995 to 2003 and 2011 to 2015

- Gary Locke, Governor of Washington from 1997 to 2005

- Jack Markell, Governor of Delaware from 2009 to 2017

- Terry McAuliffe, Governor of Virginia from 2014 to 2018

- Martin O'Malley, Governor of Maryland from 2007 to 2015

- Deval Patrick, Governor of Massachusetts from 2007 to 2015

- Pat Quinn, Governor of Illinois from 2009 to 2015

- Marc Racicot, Governor of Montana from 1993 to 2001

- Kathleen Sebelius, Governor of Kansas from 2003 to 2009

- Steve Sisolak, Governor of Nevada from 2019 to 2023

- Eliot Spitzer, Governor of New York from 2007 to 2008

- Tom Vilsack, Governor of Iowa from 1999 to 2007

- Bill Weld, Governor of Massachusetts from 1991 to 1997

- Christine Todd Whitman, Governor of New Jersey from 1994 to 2001

- Tom Wolf, Governor of Pennsylvania from 2015 to 2023

- Center for Election Innovation and Research

- Sarah Adair, Elections Technician, Jefferson County, CO

- Natalie Adona, Registrar of Voters, Marin County, CA

- Laura Anna, Director of Elections, Venango County, PA

- Seth Blustein, City Commissioner, City of Philadelphia, PA

- Karen Brinson Bell, Former Executive Director, State Board of Elections, NC

- Lisa Brown, Clerk/Register of Deeds, Oakland County, MI

- John Butkovich, Elections Specialist, Pueblo County, CO

- Kevin Castillo, Mail Ballot Administrator, City of Denver, CO

- Laura Cantrell, Board of Election Commissioners, Hot Spring County, AR

- Domonique Clemons, Clerk/Register of Deeds, Genesee County, MI

- Becky Close, Clerk and Recorder, Eagle County, CO

- Ethan Compton, Election Supervisor, Irwin County, GA

- Kristin B. Connelly, Clerk-Recorder/Registrar of Voters, Contra Costa County, CA

- Matt Crane, Executive Director, State County Clerks Association, CO

- Daryl Daugs, Chief of Staff, Kitsap County, WA

5

- Jilline Dobratz, City Clerk, City of West Bend, WI

- Sharon Dubois, Clerk and Recorder, Baca County, CO

- Amanda Gonzalez, Clerk and Recorder, Jefferson County, CO

- Monica Gordon, Clerk, Cook County, IL

- Justin D. Grantham, Clerk and Recorder, Fremont County, CO

- Ingrid Grueter, Clerk and Recorder, Pitkin County, CO

- Hayle Johnson, Clerk and Recorder, Jackson County, CO

- Stephanie Kees, Clerk and Recorder, Teller County, CO

- Kevin Kennedy, Former Executive Director, State Elections Board, WI

- Greg Kimsey, Auditor, Clark County, WA

- Carly Koppes, Clerk and Recorder, Weld County, CO

- Tracey Lauritzen, Clerk and Recorder, Lake County, CO

- Debra Lee, Clerk, Laramie County, WY

- Nicholas J. Lima, Registrar/Director of Elections, City of Cranston, RI

- Shawn Luce, Clerk and Recorder, Rio Blanco County, CO

- Robin Major, Election Board Administrator, Monmouth County, NJ

- Kirk McDonough, Election Board Chair, City of Cranston, RI

- Catherine McMullen, Clerk, Clackamas County, OR

- Lori Mitchell, Clerk and Recorder, Chaffee County, CO

- Jessica Moisa, Voter Services Assistant Manager, Palm Beach County, FL

- Cheryl A. Neilsen, County Clerk, Montmorency County, MI

- Chris Piper, Former Commissioner and Chief Election Official, State Department of Elections, VA

- Jake Quinn, Election Board Member, Buncombe County, NC

- Annette Ramirez, Tax-Assessor-Collector and Voter Registrar, Harris County, TX

- Katie Riley, Election Board Deputy Commissioner, Cayuga County, NY

- Justin Roebuck, Clerk and Register of Deeds, Ottawa County, MI

- Kathy Simillion, Clerk and Recorder, Gunnison County, CO

- Susie Spring, Clerk, Parmer County, TX

- Damon Todd, Clerk and Recorder, Ouray County, CO

- Stacy Towell, Signature Technician, Maricopa County, AZ

- Kenneth Warner, Election Board Commissioner, Cayuga County, NY

- Julie Wise, Director of Elections, King County, WA

- Michael Wyszynski, Clerk and Recorder, San Miguel County, CO

- Josh Zygielbaum, Clerk and Recorder, Adams County, CO

In accordance with Circuit Rule 26.1(a), *amici curiae* Wisconsin Democracy Campaign, Inc., and EXPO of Wisconsin, Inc., have no parent corporations, and there are no publicly held corporations that own more than 10% of their stock.

(B)    **Rulings Under Review.** References to the rulings at issue appear in the Brief for Plaintiffs-Appellants.

(C)    **Related Cases.** The case on review was previously before the United States District Court for the District of Columbia, *DSCC, et al. v. Donald J. Trump, et al.*, No. 26-cv-0114-CJN. Related cases also pending before the United States District Court for the District of Columbia and consolidated with Plaintiffs-Appellants' case below include *League of United Latin American Citizens, et al. v. Executive Office of the President, et al.*, No. 26-cv-01132-CJN, and *National Association for the*

*Advancement of Colored People, et al. v. Donald J. Trump, et al.*, No. 26-cv-01151-CJN.

/s/ *Jeffrey A. Mandell*
Jeffrey A. Mandell

Attorney for *amici curiae* Wisconsin Democracy Campaign, Inc., EXPO of Wisconsin, Inc., Jaleyce Oraedu, Jasmine Oraedu, and Aharon Shelef

Dated: June 24, 2026

9

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................10

TABLE OF AUTHORITIES ..........................................................12

GLOSSARY ...................................................................................16

INTERESTS OF AMICI CURIAE .................................................17

INTRODUCTION ..........................................................................20

PERTINENT STATUTES AND REGULATIONS ..............................21

BACKGROUND .............................................................................21

SUMMARY OF ARGUMENT .........................................................33

ARGUMENT ..................................................................................33

I.      EO 14399 threatens to unlawfully disenfranchise Wisconsin voters. .................................................................................33

    A.    Verifying voter citizenship with inaccurate federal data will disenfranchise eligible Wisconsin voters ..............34

    B.    Burdening USPS with election duties outside its expertise and without additional resources will further delay mailed absentee ballots and increase the risk of disenfranchising Wisconsin voters.....................36

    C.    USPS's proposed rules are unnecessary and create more problems than they purport to solve. ..........................40

II.     EO 14399's conflicts with Wisconsin election laws and practices will cause confusion and undermine voter confidence and participation........................................................43

    A.    EO 14399 conflicts with Wisconsin and federal elections records requirements .............................................43

    B.    EO 14399 may prohibit certain Wisconsinites from voting by mail..................................................................44

10

C.  EO 14399 may interfere with Wisconsin's in-person absentee voting and increase election day challenges to absentee ballots ...............................................45

III.  EO 14399 threatens the privacy of all Wisconsinites. ..................47

CONCLUSION .......................................................................................49

## TABLE OF AUTHORITIES

**Cases**

*Brown v. Wis. Elections Comm'n*,
  2025 WI 5, 414 Wis. 2d 601, 16 N.W.3d 619 ........................................ 25

*Carey v. Wis. Elections Comm'n,*
  624 F.Supp.3d 1020 (W.D. Wis. 2022) ................................................. 32

*Jefferson v. Dane Cnty.*,
  2020 WI 90, 394 Wis. 2d 602, 951 N.W.2d 556 .................................... 25

*Luedtke v. Yunker,*
  No. 25CV1277, Order (Waukesha Cnty. Cir. Ct. Feb. 13, 2026) ......... 31

*Priorities USA v. Wis. Elections Comm'n,*
  2024 WI 32, 412 Wis. 2d 594, 608, 8 N.W.3d 429 .................... 22, 25, 31

*Rise, Inc. v. Wis. Elections Comm'n,*
  2024 WI App 48, 413 Wis. 2d 366, 11 N.W.3d 241 .............................. 25

*Sewell v. Racine Unified Sch. Dist. Bd. of Canvassers,*
  2022 WI 18, 401 Wis. 2d 58, 972 N.W.2d 155 ...................................... 25

*State ex rel McGrael v. Phelps*,
  144 Wis. 1, 128 N.W. 1041 (Wis. 1910). ............................................. 45

*State ex rel. Zignego v. Wis. Elections Comm'n,*
  2021 WI 32, 396 Wis. 2d 391, 957 N.W.2d 208 .................. 21, 22, 25, 35

*Teigen v. Wis. Elections Comm'n,*
  2022 WI 64, 403 Wis. 2d 607, 976 N.W.2d 519 .................................... 25


**Statutes and Constitutional Provisions**

52 U.S.C. § 20503 ..................................................................................... 27

52 U.S.C. § 20701 ..................................................................................... 44

U.S. Const. art. I, § 4, cl. 1 ...................................................................... 43

Wis. Const. art. I, § 1 ........................................................................ 45

Wis. Const. art. III ........................................................................... 45

Wis. Stat. chs. 5–10 .......................................................................... 24

Wis. Stat. § 5.02 ............................................................................... 32

Wis. Stat. § 5.05 ............................................................................... 23

Wis. Stat. § 5.66 ............................................................................... 39

Wis. Stat. § 6.02 ....................................................................... 26, 44

Wis. Stat. § 6.03 ............................................................................... 26

Wis. Stat. § 6.20 ............................................................................... 24

Wis. Stat. § 6.22 ............................................................................... 30

Wis. Stat. § 6.24 ............................................................................... 30

Wis. Stat. § 6.28 ............................................................................... 27

Wis. Stat. § 6.29 ............................................................................... 27

Wis. Stat. § 6.34 ............................................................................... 30

Wis. Stat. § 6.36 ............................................................................... 35

Wis. Stat. § 6.55 ............................................................................... 27

Wis. Stat. § 6.85 ............................................................................... 24

Wis. Stat. § 6.855 ............................................................................. 29

Wis. Stat § 6.86 ....................................................................... 24, 29

Wis. Stat. § 6.865 ............................................................................. 30

Wis. Stat. § 6.87 ........................................................... 29, 30, 31, 38

Wis. Stat. § 6.88 ............................................................................... 46

Wis. Stat. § 7.08 ............................................................................... 23

Wis. Stat. § 7.10 ............................................................................... 22

Wis. Stat. §§ 7.15–7.22 ..................................................................... 22

Wis. Stat. § 7.20 ............................................................................... 22

Wis. Stat. § 7.21 ............................................................................... 23

Wis. Stat. §§ 7.21–7.22 ..................................................................... 22

Wis. Stat. § 7.23 ......................................................................... 43, 44

Wis. Stat. §§ 7.51–7.53 ..................................................................... 22

Wis. Stat. § 7.52 ............................................................................... 32

Wis. Stat. § 7.60 ............................................................................... 22

Wis. Stat. § 9.01 ............................................................................... 22

Wis. Stat. ch. 11 ............................................................................... 24

Wis. Stat. ch. 12 ............................................................................... 24

Wis. Stat. § 15.61 ............................................................................. 23

Wis. Stat. § 19.62 ............................................................................. 47

Wis. Stat. § 19.69 ............................................................................. 48

## Other Authorities

Executive Order 14399 ....................... 18, 19, 20, 33, 34, 36, 37, 45, 48, 49

Make Elections Great Again Act, H.R. 7300,
    119th Congress (2025-2026) ................................................................ 34

*Military and Overseas Voters*, WIS. ELECTIONS COMM'N ......................... 30

SAVE Act, H.R. 22, 119th Congress (2025-2026) ................................... 34

SAVE America Act, H.R. 7296, 119th Congress (2025–2026)................34

Wis. Admin. Code § EL 9.02....................................................................47

Wis. Admin. Code chs. ETH-1 to ETH-26..............................................24

Wis. Admin. Code, chs. EL-2 to EL-20....................................................24

# GLOSSARY

| | |
|---|---|
| EO | Executive Order |
| ERIC | Electronic Registration Information Center |
| EXPO | EXPO of Wisconsin, Inc. (*amicus*) |
| IRC | Internal Revenue Code, Title 26 of U.S. Code |
| SAVE System | Systematic Alien Verification for Entitlements System |
| SAVE Act/SAVE America Act | Safeguard American Voter Eligibility Act / Safeguard American Voter Eligibility Act, two similar bills proposed in, but not enacted by, the 119th Congress |
| UOCAVA | Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. §§ 20301–20311 |
| USPS | United States Postal Service |
| WDC | Wisconsin Democracy Campaign, Inc. (*amicus*) |
| WEC | Wisconsin Elections Commission |

## INTERESTS OF *AMICI CURIAE*[1]

Wisconsin Democracy Campaign, Inc. is a Wisconsin nonstock corporation recognized as nonpartisan and tax exempt under Section 501(c)(3) of the Internal Revenue Code. WDC functions as a watchdog, advocating for and educating about government transparency and accountability to create a just democracy. WDC engages in many activities designed to encourage Wisconsinites to vote, including voter registration and get-out-the-vote campaigns. WDC advocates for secure, broadly accessible voting rules and litigates to protect Wisconsinites' voting rights.

EXPO of Wisconsin, Inc. is a Wisconsin nonstock corporation recognized as nonpartisan and tax exempt under Section 501(c)(3) of the IRC. EXPO supports people affected by the criminal legal system and encourages civic engagement across Wisconsin. EXPO conducts voter education, registration, and advocacy efforts, including focused efforts to educate individuals with past or current involvement in the criminal

---

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person—other than *amici*, their members, or their counsel—contributed money that was intended to fund preparing or submitting this brief.

legal system about their voting rights, enabling them to exercise those rights where eligible under Wisconsin law. Because eligibility to vote in Wisconsin depends on the status of an individual's criminal sentence, EXPO works with populations for whom voting eligibility is complicated and often misunderstood and advocates for the rights of Wisconsin voters in related litigation. Executive Order 14399 threatens to exacerbate confusion and create additional barriers to voting, especially for voters who may already face heightened scrutiny and administrative obstacles.

Individual *amici* Jaleyce Oraedu, Jasmine Oraedu, and Aharon Shelef are current or prospective Wisconsin voters who will rely on absentee voting in Wisconsin's November 2026 general election while attending college outside the state. Ms. Jaleyce Oraedu and Ms. Jasmine Oraedu are students at the University of Minnesota–Twin Cities in Minneapolis, Minnesota, and are residents of Germantown, Wisconsin. They are not yet registered to vote in Wisconsin but will be eligible, and intend to, register to vote and to vote for the first time in the August 2026 partisan primary and November 2026 general election. Mr. Shelef is a student at Yale University in New Haven, Connecticut, and a resident of Madison, Wisconsin. He is a registered Wisconsin voter who previously

voted absentee by mail in the April 2026 spring election and who attempted to vote by absentee ballot in the February 2026 primary but did not receive his ballot.

Because they reside out of state for school, the individual *amici* will vote absentee in the future. As less experienced voters, they are particularly vulnerable to confusion and barriers arising from changes to election procedures. Mr. Shelef's recent experience demonstrates the real challenge that voters may face in receiving and returning their ballots in time to be counted. EO 14399's requirements, including those affecting absentee ballot transmission, voter verification, and coordination with federal systems, complicate the absentee voting process and increase the risk that ballots will be delayed or not counted. These risks are especially acute for Wisconsin student voters residing outside Wisconsin, who depend on the consistent, efficient, and reliable functioning of Wisconsin's absentee voting systems to exercise their constitutional right to vote.

Together, the organizational and individual *amici* have a strong interest in ensuring that they and other eligible Wisconsin voters are able to exercise their constitutional right to vote through Wisconsin's existing

19

election administration system; that elections in Wisconsin continue to be administered in ways that are accessible, reliable, and consistent with *amici*'s rights under existing state constitutional, statutory, and administrative law; and that eligible voters—particularly those who rely on absentee voting or who face additional barriers to participation—are not disenfranchised by the implementation of EO 14399.

## INTRODUCTION

As the Plaintiffs-Appellants demonstrated below and in their opening brief in this Court, neither the federal executive branch broadly, nor the Office of the President or any federal agency specifically, has the authority to unilaterally seize control of and dictate the regulation of elections. Pls-Appellants' Br., Doc. 2179332, at 3–4. Yet, EO 14399 seeks to do just that, with particularly alarming potential consequences for Wisconsin's unique election administration system and Wisconsin voters. *Amici* submit this brief in support of the Plaintiffs-Appellants' preliminary injunction motion to highlight for the Court several ways in which EO 14399, and the recently published United States Postal Service proposed rules, would affect Wisconsin's electoral process and harm Wisconsin voters. Namely, EO 14399:

(1) establishes procedures that threaten unlawful disenfranchisement of Wisconsin voters;

(2) conflicts with Wisconsin election laws and practices, creating procedural confusion and compromising Wisconsin voter confidence; and

(3) imperils the privacy interests and expectations of Wisconsin voters.

For these reasons, on top of those advanced by the Plaintiffs-Appellants, *amici* urge the Court to reverse the district court's denial of Plaintiffs-Appellants' motion for a preliminary injunction and remand the case for further proceedings.

## PERTINENT STATUTES AND REGULATIONS

Except for the Wisconsin-specific statutes and regulations set forth in the addendum to this brief, all applicable statutes are contained in the Addendum to the Brief for Plaintiffs-Appellants.

## BACKGROUND

Wisconsin has a uniquely decentralized election system. *State ex rel. Zignego v. Wis. Elections Comm'n*, 2021 WI 32, ¶13, 396 Wis. 2d 391, 957 N.W.2d 208.[2] Unlike many states, rather than place responsibility

---

[2] *See Wisconsin,* MIT ELECTION DATA + SCIENCE LAB, https://electionlab.mit.edu/landscapes/wisconsin ("Wisconsin is notable for having perhaps the most decentralized system of election administration in the nation.") (last visited June 24, 2026).

21

for overseeing and administering elections in a single official, such as a Secretary of State, Wisconsin administers elections using a multi-tiered system. *See Priorities USA v. Wis. Elections Comm'n*, 2024 WI 32, ¶27, 412 Wis. 2d 594, 608, 8 N.W.3d 429, 436; *Zignego*, 2021 WI 32, ¶13. Conducting elections in Wisconsin occurs primarily at the local level, where approximately 1,850 municipal clerks verify voter registrations, accept requests for absentee ballots, send and receive absentee ballots, select and establish polling places, review and count ballots, complete the local canvass, and conduct any recount that candidates request. *See* Wis. Stat. §§ 6.27–6.57, 6.84–6.89; *id.* §§ 7.15–7.22, 7.51–7.53, 9.01.

Wisconsin's 72 county clerks also play a role. They print ballots and absentee ballot return envelopes, which they distribute to municipal clerks, and conduct a county-wide canvass for votes within their jurisdiction. *Id.* §§ 7.10, 7.60.[3]

---

[3] Because of the size of its population, one Wisconsin municipality—the City of Milwaukee—and one Wisconsin county—Milwaukee County—are statutorily required to have their elections conducted by special commissions, the Milwaukee Election Commission and the Milwaukee County Election Commission, respectively. Wis. Stat. § 7.20. The Milwaukee Election Commission generally fulfills the duties under state law for the City of Milwaukee that are fulfilled by municipal clerks in other cities. *Id.* §§ 7.21–7.22. Likewise, the Milwaukee County Election Commission generally fulfills the duties under state law for Milwaukee

Finally, the Wisconsin Elections Commission provides statewide election oversight. WEC is a six-member, bipartisan body established by statute in 2015. WEC comprises three Republican and three Democratic appointees,[4] with a nonpartisan Administrator, nominated by the Commission and subject to Senate confirmation, who runs the Commission on a day-to-day basis and serves as Wisconsin's "chief election officer." Wis. Stat. §§ 5.05(3d), (3g), (4) ("All employees of the commission shall be nonpartisan."), 15.61. WEC administers Wisconsin's election code. Wis. Stat. § 5.05(1), (2w). WEC trains and supports the municipal and county clerks who conduct elections throughout the state, *see, e.g., id.* § 5.05(5t)–(7), designs and approves ballot forms and absentee ballot envelopes and return certificates, *id.* § 7.08(1), and also develops and maintains online tools to inform Wisconsin voters about election eligibility requirements, the registration process, polling locations, and how to request absentee ballots, *id.* § 5.05(12)–(13). WEC's primary voter-facing tool is MyVote, an online portal through which

---

County that are fulfilled by county clerks in other counties. *Id.* § 7.21.

[4] WEC membership can be expanded to include representatives from other political parties if any were to qualify for ballot status under Wisconsin law and receive at least 10 percent of the vote in a gubernatorial election. Wis. Stat. § 15.61(1)(a)6.

23

voters can, among other things, request that absentee ballots be mailed to them. Although WEC operates MyVote, a voter's absentee ballot request is routed to their local clerk, who reviews their request and sends out their ballot. *Id.* § 6.86.

To administer this complex election administration system, the Wisconsin Legislature has—over many years—enacted a comprehensive set of statutes that (along with regulations promulgated by WEC and its predecessor agencies) provide the framework for Wisconsin's elections. *See generally id.* chs. 5–10, 12; Wis. Admin. Code, chs. EL-2–EL-20.[5] Wisconsin allows for no-excuse absentee voting, including both in-person absentee voting in the days leading up to an election and absentee voting by mail. Wis. Stat. §§ 6.20, 6.85, 6.86(1)(a). The statutes and regulations governing absentee voting by mail are summarized briefly below.

Wisconsin courts have also, over a period of many years, interpreted and applied Wisconsin's election statutes, in the context of our state's

---

[5] Wisconsin's campaign finance rules are codified in Wis. Stat. ch. 11 and Wis. Admin. Code, chs. ETH-1–ETH-26, which are administered by the Wisconsin Ethics Commission, a separate six-member, bipartisan body established by statute in 2015.

constitution and the federal constitution. This body of law is substantial and growing.[6]

Collectively, Wisconsin's enacted statutes governing absentee voting and the court decisions interpreting and applying those laws (and implicated state constitutional provisions) encourage voter participation by ensuring that absentee voting by mail is convenient and secure. In recent years, the number of absentee ballots returned by mail by

---

[6] *See, e.g.*, *Brown v. Wis. Elections Comm'n*, 2025 WI 5, 414 Wis. 2d 601, 16 N.W.3d 619 (limiting standing to appeal a WEC administrative decision to parties aggrieved by the decision); *Priorities USA*, 2024 WI 32 (allowing use of drop boxes to return absentee ballots); *Teigen v. Wis. Elections Comm'n*, 2022 WI 64, 403 Wis. 2d 607, 976 N.W.2d 519 (barring use of drop boxes and ballot return assistance for absentee ballots); *Sewell v. Racine Unified Sch. Dist. Bd. of Canvassers*, 2022 WI 18, 401 Wis. 2d 58, 972 N.W.2d 155 (electors do not have independent right to have ballots opened and re-examined); *Zignego*, 2021 WI 32 (requiring municipal clerks and local boards of elections commissioners, not WEC, to change the voter registration of electors who move out of the applicable jurisdiction); *Jefferson v. Dane Cnty.*, 2020 WI 90, 394 Wis. 2d 602, 951 N.W.2d 556 (photo identification required to obtain absentee ballot during declared health emergency unless voter's own age, physical illness or infirmity renders the voter indefinitely confined); *Rise, Inc. v. Wis. Elections Comm'n*, 2024 WI App 48, 413 Wis. 2d 366, 11 N.W.3d 241 (requiring municipal clerks to count absentee ballots with immaterial omissions from the ballot return envelope).

Wisconsin's approximately 3.6 million registered voters[7] has risen from 565,591 in 2018[8] to more than 1.5 million in 2024.[9]

### *Eligibility to Vote in Wisconsin*

To vote in Wisconsin, a person must be a United States citizen who is at least 18 years old by election day, and have resided in the city, village, or town in which the person wishes to vote for at least 28 days before election day. Wis. Stat. § 6.02. If convicted of a felony, the person must have fully completed their applicable sentence, including any probation, parole, or extended supervision. *Id.* § 6.03(1)(b).

---

[7] According to WEC, Wisconsin had 3,601,785 active registered voters as of February 1, 2026. *February 1, 2026 Voter Registration Statistics*, WIS. ELECTIONS COMM'N (Feb. 2, 2026), https://elections.wi.gov/resources/statistics/february-1-2026-voter-registration-statistics.

[8] Lawrence Andrea, *Absentee voting numbers in Wisconsin soar over the 2018 midterms*, MILWAUKEE J. SENTINEL (Nov. 8, 2022), available at https://www.jsonline.com/story/news/politics/elections/2022/11/08/absentee-voting-numbers-in-wisconsin-soar-over-the-2018-midterms/69627990007/.

[9] Rich Kremer, *More than 1.5M Wisconsin absentee ballots cast in presidential election*, WIS. PUBLIC RADIO (Nov. 4, 2024), updated Jan. 14, 2025, available at https://www.wpr.org/news/more-than-one-million-absentee-ballots-cast-wisconsin-presidential-election-2024-nov-4.

### *Registering to Vote*

Wisconsin permits eligible electors to register to vote in person at the municipal or county clerk's office, by US mail delivered to the municipal clerk's office, or online by the third Wednesday preceding an election (up to 20 days before the election). *Id.* § 6.28. Beyond that date, eligible electors may register in person at the applicable municipal clerk's office by 5:00 p.m. or the close of business, whichever is later, on the Friday before election day. *Id.* § 6.29. And eligible electors may register and vote in person at the polling location on election day. *Id.* § 6.55. Because Wisconsin permits same-day voter registration at the polls, and has done so since before 1994, Wisconsin is exempt from provisions of the National Voter Registration Act. 52 U.S.C. § 20503(b)(2).

### *Requesting an Absentee Ballot*

Wisconsin provides qualified voters with a range of options to request to vote absentee; most frequently, this is accomplished by mail, in person at the municipal clerk's office, by electronic mail, or through MyVote. Wis. Stat. § 6.86.[10]

---

[10] *See also, Vote Absentee by Mail*, MYVOTE WISCONSIN, available at https://archive.ph/fiux0 (last visited June 24, 2026).

27

A qualified Wisconsin voter may request an absentee ballot for one election or to automatically receive absentee ballots "for every election that is held within the same calendar year in which the application is filed." Wis. Stat. § 6.86(2m)(a). This means a voter may submit one request that absentee ballots for up to four elections (spring primary, spring election, partisan primary, general election) in a calendar year be automatically sent to them. If a voter moves during the year that they made such a request, they must notify their municipal clerk of the move. *Id.* The notified clerk "shall forward" the elector's request for an absentee ballot to the voter's new municipal clerk, and "that municipal clerk shall honor the request." *Id.* § 6.86(2m)(b).

A Wisconsin voter who is indefinitely confined due to age, physical illness, permanent disability or other infirmity may request "that an absentee ballot be sent to the elector automatically for every election." *Id.* § 6.86(2)(a). When such a voter does not return their absentee ballot for an election, the municipal clerk stops mailing ballots to that voter until and unless another request is made. *Id.* § 6.86(2)(b).

Requests for absentee ballots made by mail must generally be received no later than 5:00 p.m. on the Thursday (the fifth day) before

28

election day. *Id.* § 6.86(1)(b). Requests made in person must be made no earlier than 14 days before the election and no later than the Sunday before the election. *Id.*

In response to a proper absentee ballot request, the municipal clerk shall initial an absentee ballot, *id.* § 6.87(1), "verify that the name or proof of identification" matches that found on the absentee ballot request form, and place the absentee ballot in an unsealed envelope, *id.* § 6.87(2). On one side of the envelope, a certificate must be printed for the voter and the voter's witness to fill out. *Id.* Through that certificate, the voter certifies, under state penalties for false statements, that they are qualified to vote absentee, and further certifies that they marked their ballot in the presence of a witness. *Id.* The same certification provides space for the witness to certify, under state penalties for false statements, that they (the witness) are a United States citizen and that the relevant absentee ballot was properly executed, as described on the certificate. *Id.* The ballot and certificate envelope are then mailed by the municipal clerk to the voter's residence or may be delivered "personally" to the voter at the clerk's office or at an alternate site that has, in accordance with Wis.

Stat. § 6.855, been properly designated in advance of the election. *Id.* § 6.87(3).

Military and overseas voters have additional options for voting absentee. They are permitted not only to request absentee ballots by email or fax, but also to receive absentee ballots from the municipal clerk by email or fax or, if eligible, by direct download from MyVote.[11] *Id.* § 6.22(1)(b). They are also permitted to request an absentee ballot using a federal absentee ballot request form. *Id.* §§ 6.24(4)(b), 6.865. Requests for overseas voters must be submitted and received by the clerk by 5:00 p.m. on the Thursday (fifth day) before the election. *Id.* § 6.86(1)(b). Requests for military voters must generally be submitted and received by the clerk by 5:00 p.m. on the Friday before election day, *id.* §§ 6.22(4)(b), 6.86(1)(c), except that for elections involving a federal office, active military voters may request an absentee ballot up until 5:00 p.m. on election day, *id.* §§ 6.34(1), 6.86(1)(b).

---

[11] *See also, Military and Overseas Voters*, WIS. ELECTIONS COMM'N at https://myvote.wi.gov/Military-Overseas-Voters (last visited June 24, 2026).

### *Marking an Absentee Ballot*

Upon receipt of their absentee ballot (contained in the certificate envelope) the voter marks the ballot in the presence of a witness and places the ballot in the certificate envelope. The voter must then seal, sign, date, and put their residential address on the envelope. The witness must also sign, date, and put their printed name and residential address on the envelope. *Id.* § 6.87(4).

### *Returning an Absentee Ballot*

Wisconsin does not currently allow electronic return of absentee ballots. Rather, they must be returned by mail or delivered in person to the municipal clerk. *Id.* § 6.87(4)(b)1. State law has been interpreted to allow an elector to also return their absentee ballot to their polling location on election day. *See Luedtke v. Yunker*, No. 25CV1277, Order (Waukesha Cnty. Cir. Ct. Feb. 13, 2026) (dismissing challenge to WEC guidance permitting return of absentee ballots to polling place on election day) (attached as Exhibit 1). Municipal clerks may, but are not required to, provide secure drop boxes for absentee voters to return their completed ballots. *Priorities USA*, 2024 WI 32, ¶34. In general, each voter must personally return an absentee ballot, but voters with disabilities

31

may use assistance to return their ballots. *Carey v. Wis. Elections Comm'n,* 624 F. Supp. 3d 1020, 1033 (W.D. Wis. 2022). In all circumstances, absentee ballots must be delivered to the polling place or, in municipalities that use a central-count procedure to canvass absentee ballots, to the municipal clerk by 8:00 p.m. on election day. Wis. Stat. §§ 6.87(6), 7.52(1)(a).

### *Wisconsin Elections Schedule*

Wisconsin holds as many as four regularly scheduled elections in a calendar year. Nonpartisan elections occur every year in a spring election held during the first week of April, with the primary for that election occurring in February. *Id.* § 5.02(21), (22). Partisan elections are held in November of even-numbered years, with the partisan primary occurring during the second week of August. *Id.* § 5.02(5), (12s). Wisconsin already has held two elections in 2026: the spring election for nonpartisan offices was held on April 7, following the primary for the spring election on February 17. The general election, which includes elections for partisan state and federal offices (such as congressional elections), will be held on November 3, 2026, following the partisan primary on August 11, 2026.

## SUMMARY OF ARGUMENT

EO 14399 contravenes broad swaths of Wisconsin election law and would impose substantial changes to Wisconsin election procedures. Not only is there no basis for making such changes to state election law by executive order, but also doing so in a rushed, haphazard fashion amidst an ongoing Wisconsin election—as EO 14399 requires—is both legally improper and practically imprudent. If implemented as written, EO 14399 will disenfranchise lawful Wisconsin voters, create unnecessary confusion amongst election officials and voters alike, invite conflict over the validity of absentee ballots properly cast under Wisconsin law, violate voter privacy laws, and damage public faith in Wisconsin elections. Such implementation is an affront to federalism, to election administration, and to the most fundamental principles of our democracy. It cannot be countenanced, and the practical consequences in Wisconsin illustrate why not. Implementation of EO 14399 should be enjoined.

## ARGUMENT

### I. EO 14399 threatens to unlawfully disenfranchise Wisconsin voters.

To date, Congress has considered and declined to enact several bills that would impose documentary proof of citizenship requirements for

33

voter registration and participation in federal elections and would restrict the use of mail-in absentee votes. *See* SAVE Act, H.R. 22, 119th Congress (2025–2026); SAVE America Act, H.R. 7296, 119th Congress (2025–2026); Make Elections Great Again Act, H.R. 7300, 119th Congress (2025–2026). EO 14399 is an attempted executive end-run around Congress, threatening to disenfranchise Wisconsin voters in at least two ways.

### A. Verifying voter citizenship with inaccurate federal data will disenfranchise eligible Wisconsin voters.

The order contains several provisions requiring the Department of Homeland Security and the Social Security Administration to compile lists of eligible voters and to investigate and prosecute state and local officials who participate in printing, producing, shipping, or distributing ballots to ineligible voters. EO 14399, § 2. This is plainly a threat against state and local election officials designed to coerce compliance with the federal government's current desire that states use the federal SAVE System to verify voter citizenship and vet the accuracy of state voter registration lists.

But Wisconsin already has appropriate mechanisms in place to continuously verify the accuracy of its voter registration list. The task is

a shared responsibility, shouldered primarily by municipal clerks with support from WEC. *See Zignego*, 2021 WI 32, ¶13. By law, Wisconsin is enrolled in the Electronic Registration Information Center, Wis. Stat. § 6.36(1)(ae), a nonprofit, nonpartisan membership organization created by and comprised of state election officials. Currently, 26 states and the District of Columbia participate in ERIC.[12] At least every 60 days, members securely submit certain voter registration, motor vehicle licensing, and identification data to ERIC. In turn, ERIC's technical staff compare the data received from all states to create list maintenance reports that identify voters who appear to have moved to other states or within the same state, who have duplicate registrations within the same state, and who have died. Wisconsin and other member states use these reports to keep their voter registration lists up to date.[13]

The SAVE System was not designed to verify the accuracy of voter registration lists and has significant limitations that threaten to disenfranchise eligible voters.[14] Pls-Appellants' Br., Doc. 2179332, at 5.

---

[12] *What is ERIC?,* ELECTRONIC REGISTRATION INFORMATION CENTER, https://ericstates.org/about/ (last visited June 24, 2026).

[13] *How ERIC Works*, ELECTRONIC REGISTRATION INFORMATION CENTER, https: //ericstates.org/how-does-it-work/ (last visited June 24, 2026).

[14] *See also* https://fairelectionscenter.org/wp-content/uploads/2025/07/

35

Its use most threatens naturalized citizens. In Wisconsin, there are over 140,000 naturalized citizens, of whom nearly 21,000 were naturalized between 2016 and 2020.[15] In a state where the results of presidential elections are often decided by fewer than 30,000 votes, unlawfully disenfranchising voters can have significant effects, including changing the outcome.[16]

### B. Burdening USPS with election duties outside its expertise and without additional resources will further delay mailed absentee ballots and increase the risk of disenfranchising Wisconsin voters.

EO 14399 puts significant responsibility to take a proactive role in mail-in voting on the USPS, an agency with no role in elections other

---

Examining-Changes-to-USCISs-SAVE-System.pdf (last visited June 24, 2026).

[15] *New American Voters in Wisconsin: Building the Electoral Power of Naturalized Citizens*, NATIONAL PARTNERSHIPS FOR NEW AMERICANS, 5 (Sept. 2022) available at https://partnershipfornewamericans.org/wp-content/uploads/2022/09/WI-NAV-State-Report-Final-2.pdf#:~:text=There%20are%20more%20than%20140.

[16] Donald Trump won Wisconsin in the 2016 presidential election by 22,748 votes and the 2024 presidential election by 29,397 votes; Joe Biden won Wisconsin in the 2020 presidential election by 20,682 votes. This not a new development in Wisconsin; Al Gore won Wisconsin in the 2000 presidential election by 5,708 votes. *Wisconsin vote in presidential elections since 1848*, WISCONSIN BLUE BOOK 2025–2026, 495, available at https://legis.wisconsin.gov/lrb/media/10uewg3p/2025200-elections-and-political-parties.pdf.

than to deliver mailed ballots. The EO requires that, within 60 days of the date of the order (by May 30, 2026), the Postmaster General must initiate proposed rulemaking, with final rules issued no later than 120 days after the order's issuance (by July 29, 2026). EO 14399, § 3. The Postmaster General has largely complied with this requirement, publishing proposed rules on June 2, 2026. Ballot Mail for Federal Elections, 91 Fed. Reg. 105, 32915 (June 2, 2026) (to be codified at 39 C.F.R. 111). Although the EO identifies a number of express requirements that the rules must contain, it provides no details about how USPS is to implement them, leaving it to USPS to fill the logical gaps with rules currently in development on an extremely compressed timeline.[17]

The duties imposed on USPS are problematic. Notably, the agency is underfunded and overburdened and implementing EO 14399 in light

---

[17] Nor does the order clarify how states in the midst of election cycles when USPS completes its rulemaking are to implement the new rules. Wisconsin's 2026 partisan primary will be held on August 11, 2026—a mere 13 days after the July 29 rulemaking deadline. Absentee ballots will have been distributed, and in-person absentee voting will have commenced, before USPS's rulemaking is complete. Will the rules go into effect immediately? Or will they apply only to elections not already underway? EO 14399 does not answer these questions.

of this would significantly affect Wisconsin voters.[18] USPS already delivers absentee ballots postmarked before election day after election day. In Wisconsin, absentee ballots received after election day are not counted. Wis. Stat. § 6.87(6). For example, in April of this year, 269 absentee ballots cast by City of Milwaukee voters in Wisconsin's spring election were received the day after election day and could not be counted.[19] Wisconsin has only two major USPS sorting facilities, located in Milwaukee and Green Bay. Most mail in Wisconsin, even when sent from one address to another in the same municipality, is routed to Milwaukee or Green Bay, sorted, and then transmitted back to the local post office before delivery. A smaller portion of Wisconsin mail is sent to

---

[18] Hansi Lo Wang, *The Postal Service may be out of cash in 2027 without Congress' help, postmaster says*, NATIONAL PUBLIC RADIO (Mar. 17, 2026), available at https://www.npr.org/2026/03/17/nx-s1-5750419/usps-running-out-of-money-postal-service-david-steiner; Richelle Wilson, *Wisconsin village faces mail delivery delays amid financial crisis for US Postal Service*, WIS. PUBLIC RADIO (Apr. 16, 2026), available at https://www.wpr.org/news/wisconsin-village-brown-deer-usps-postal-service-crisis.

[19] Mariana La Roche, *Milwaukee Election Commission reports late delivery of absentee ballots*, WISN 12 (Apr. 9, 2026), available at https://www.wisn.com/article/milwaukee-election-commission-reports-late-delivery-of-absentee-ballots/70977867.

the Twin Cities in Minnesota for sorting and then returned to Wisconsin for delivery.[20] All of this takes time and resources.

The order provides no funding to USPS either to fulfill the initial mandate or to comply with its ongoing obligations. This unfunded additional work is likely to further delay the delivery of mailed ballots, disenfranchising every Wisconsin voter whose ballot is delivered after election day.

The order also ignores entirely that Wisconsin law:

- Makes county and municipal clerks responsible for printing and distributing ballots, Wis. Stat. § 5.66(1);
- Specifies the format for absentee ballot return envelopes, requiring that one side of the envelope include statutorily prescribed certifications for the absentee voter and witness, *id*. § 6.87(2); and
- Permits clerks to return incorrectly completed absentee ballots to voters for correction, *id*. § 6.87(9).

EO 14399 provides no guidance for whether or how USPS is to take state-specific rules into account. In short, the order threatens significant

---

[20] *61 Regions with RPDCs*, RESEARCH HUB, available at https://www.randymajors.org/customgmap?x=89.4641473&y=44.2557563&cx=98.2092645&cy=37.5562624&zoom=5&mapbuilder=true&areatype=zips&sheetid=1pN41Qgq4thAjpFnqX7j74TNSVE1bcQDbABvb8Lx0LIs&markertype=sheet&markers=1eW0lrO6425MJDEvu4LrKOGWjp5jSa6831aiSx0wRro&title=61+Regions+with+RPDCs&hidelegend=hide. (last visited June 24, 2026).

confusion and logistical hurdles that will disrupt, rather than protect, Wisconsin's elections.

**C.    USPS's proposed rules are unnecessary and create more problems than they purport to solve.**

As USPS recognizes in its proposed rules, it already publishes ballot mail preparation recommendations that include use of an "Election Mail Logo." Ballot Mail for Federal Elections, 91 Fed. Reg. at 32916. States may print the logo on their absentee ballot return envelopes to ensure postal employees can readily identify and expedite the processing and delivery of election mail. *Id*. USPS's recommended best practices for ballot envelope design also include automation compatibility and mailpiece design review. *Id*.

Wisconsin has already adopted these recommendations. In 2023, for example, WEC redesigned and adopted new absentee ballot envelopes and return certificates that include prominent display of the USPS Election Mail Logo. WEC, Minutes of the Meeting of Aug. 4, 2023 at 2, available at https://elections.wi.gov/sites/default/files/documents/August%204%2C%202023%20Open%20Session%20Minutes%20APPROVED.pdf; *see also*, WEC, Open Session Materials – August 4, 2023 at 12–27, available at https://elections.wi.gov/sites/default/files/documents/Open

%20Session%20Materials%20-%20August%204%202023.pdf. And USPS was consulted as the new designs were developed. WEC, Open Session Materials–August 4, 2023 at 3, 7–8.

The proposed rules, in alignment with EO 14399, make USPS review and approval of state designed absentee ballot envelopes mandatory, but do not specify any further details. Must USPS review and approve envelopes for every state before every election? What is the timeline for approval? What happens if USPS rejects a proposed ballot design? The rules are clear that USPS will not accept ballots that do not comply with mandatory design standards and that USPS "assumes no responsibility for any outbound ballot mailing until it is accepted into the mail," that mail that does not comply with the design standards "will not be accepted," and that USPS "is not responsible for service delays" when "the applicable preparation or entry standards are not met." Ballot Mail for Federal Elections, 91 Fed. Reg. at 32918. Thus, the federal government seeks to further insert itself into state and local election procedures, while also disclaiming any responsibility for additional delays caused by its involvement.

41

The proposed rules also threaten delay and confusion in the following additional ways:

- The rules will not apply to absentee ballots distributed to eligible overseas voters under UOCAVA nor to absentee ballots distributed for primary elections. Different standards for different voters and different elections increases the risk of confusion, mistake, and delay.

- The mandatory unique barcodes to be printed on absentee ballot envelopes can be read only by USPS locations with the necessary equipment. For Wisconsin voters, the only locations currently equipped to read such bar codes are located in Milwaukee and Minneapolis, meaning that absentee ballots must be routed through those locations.[21] As noted above, most of Wisconsin's mail is routed through Milwaukee and Green Bay with some on the Western part of the state routed through Minneapolis. Cutting out Green Bay as a processing facility would be especially problematic for rural voters whose ballots are already delayed under the current process. Mandating that their ballots be routed through far more distant postal outlets will, again, create only further delay.

The USPS proposed rules, developed in a rush to comply with EO 14399, are unnecessary and will create only further sticking points for absentee voters.

---

[21] Molly Beck, *Proposed Postal Service rule could risk ballot delivery in Wisconsin*, Milwaukee J. Sentinel (June 11, 2026), available at https://www.jsonline.com/story/news/politics/2026/06/11/ballot-delivery-at-risk-if-wisconsin-doesnt-hand-over-voter-info/90501373007/.

**II.    EO 14399's conflicts with Wisconsin election laws and practices will cause confusion and undermine voter confidence and participation.**

EO 14399's sweeping language makes no effort to accommodate Wisconsin's unique voting rules, with particularly significant consequences for Wisconsin voters.

**A.    EO 14399 conflicts with Wisconsin and federal elections records requirements.**

Under Wisconsin law, poll lists, ballots, absentee ballot applications, registration forms, and other records and papers "requisite to voting at any federal election, other than registration cards, may be destroyed after 22 months." Wis. Stat. § 7.23(1)(e)–(g). EO 14399 declares that "States and localities should preserve, for a *5-year period*, all records and materials—excluding ballots cast—evidencing voter participation in any Federal election (e.g., ballot envelopes, regardless of carrier)." EO 14399, § 5 (emphasis added). Yet it provides states and local governments with no practical support or guidance to navigate these direct conflicts (let alone, any funding to do so). At bottom, it appears EO 14399 is designed to conflict with—and perhaps supersede—these state and federal laws, a facially unlawful proposition. *See* U.S. Const. art. I, § 4, cl. 1.

Moreover, five years of document retention—nearly triple the window created by the Congress and adopted by the Wisconsin Legislature (*see* 52 U.S.C. § 20701; Wis. Stat. § 7.23(1)(e)–(g))—would do little more than burden elections officials and risk the finality of elections. The longer the retention period, the more time for challenges to election results. The more challenges, meritorious or not, the more public confidence in the election process and results will be eroded.

**B.    EO 14399 may prohibit certain Wisconsinites from voting by mail.**

Qualified Wisconsinites have the right to vote in Wisconsin upon 28 days of residency. Wis. Stat. § 6.02. And Wisconsin permits residents to register to vote and to obtain absentee ballots until a few days before the election. *See* Background, *supra*. But the order prohibits USPS from transmitting ballots for individuals not enrolled on the USPS mail-in and absentee participation list, which must be prepared, finalized, and transmitted ***at least 60 days*** before election day. A person who moves to Wisconsin fewer than 60 days but more than 28 days before election day presumably would not appear on the USPS list, even if they are otherwise eligible to vote under state law, including by mail-in absentee ballot. The order could therefore foreclose eligible voters from voting by mail,

44

thwarting their right to vote, and at the very least, creating an equal protection problem under the Wisconsin Constitution which prescribes equal protection and recognizes and protects the fundamental right to vote. Wis. Const. art. I, § 1; Wis. Const. art. III; *State ex rel McGrael v. Phelps*, 144 Wis. 1, 14–15, 128 N.W. 1041, 1046 (1910) (the right to vote is "guaranteed by the declaration of rights and by sec. 1, art. III, of the [Wisconsin] [C]onstitution").

### C. EO 14399 may interfere with Wisconsin's in-person absentee voting and increase election day challenges to absentee ballots.

Wisconsin's absentee voters may return their ballots in several ways, including through the mail and "in-person absentee voting." *See* Wis. Stat. §§ 6.855, 6.87. As noted above, Wisconsin currently provides its absentee voters with different envelopes and ballot certificate and application forms for in-person absentee voting, voting absentee through a special voting deputy, and voting absentee by mail. *See supra*, WEC, Open Session Materials–August 4, 2023 at 12–27. Whereas these ballots, absentee ballot envelopes, and certificate and application forms are currently used for all elections in Wisconsin, EO 14399's form and its return-procedure requirements, paired with USPS's

proposed rules, purport to apply only to ballots returned via US mail in federal general elections, not to state elections, to federal primaries, or to UOCAVA voters. Using one ballot form for absentee ballots returned in state elections and another for federal general but not primary elections would be confusing to voters and may invite frivolous challenges to absentee ballots, exacerbating suspicion about election integrity. This will force Wisconsin to either adopt the EO's form and return requirements for all elections or risk potential voter confusion, complaints, and litigation.

The executive order could otherwise cause chaos in Wisconsin's absentee voting program, as well. Wisconsin formally processes and counts all absentee ballots on election day. *Id.* § 6.88(1). Once the ballots have been returned and are sorted for counting, they are not segregated by the method of their transmittal. Once the ballots are intermixed, there is often no way to tell how any particular ballot was returned to the clerk's office. And, were the EO's provisions to take effect, this itself could lead to confusion, as some election observers may seek to challenge absentee ballots from voters who are not registered with USPS for voting purposes, though often it will not be apparent from the returned absentee

46

ballot whether that voter returned their absentee ballot through the mail. This is likely despite the fact that Wisconsin law recognizes only seven legitimate bases for challenging a voter, none of which contemplates the provisions of EO 14399, *see* Wis. Admin. Code § EL 9.02(d), and, as clearly articulated by the Plaintiffs-Appellants' counsel, an executive order does not supersede properly enacted state law. Pls-Appellants' Br., Doc. 2179332, at 3.

## III.   EO 14399 threatens the privacy of all Wisconsinites.

Wisconsin law protects the privacy of personally identifiable information, including with respect to matching programs. As defined, a matching program is "the computerized comparison of information in one records series to information in another records series for use by an authority or a federal agency to establish or verify an individual's eligibility for any right, privilege or benefit or to recoup payments or delinquent debts under programs of an authority or federal agency." Wis. Stat. § 19.62(3). The state may not "use or allow the use of personally identifiable information maintained by the state authority in a match under a matching program, or provide personally identifiable information for use in a match under a matching program unless the

47

authority has" put the following things in writing and submitted the written materials to the state Public Records Board:

- The "purpose and legal authority for the matching program"; and
- The "justification for the program and the anticipated results, including an estimate of any savings."

Wis. Stat. § 19.69(1)–(2).

Here, EO 14399 encourages states to provide USPS with lists of voters who will vote by mail. At the same time, USPS must create its own list of individuals who have enrolled with USPS as intended mail-in voters and must not transmit ballots from any individual who is not on the list. EO 14399, § 3. Likewise, the EO requires the federal creation of state citizenship lists, the sharing of those lists with state election officials, and the creation of a procedure pursuant to which states may suggest updates and amendments to the state citizenship lists. EO 14399, § 2. This mutual sharing of personally identifiable voter information is arguably a matching program under Wisconsin law, for which the necessary written materials have not been prepared or filed with the Public Records Board. Any person who violates Wisconsin's matching program requirements may be subject to penalties, including

discharge or suspension without pay for individuals employed by Wisconsin governmental entities or financial forfeitures for anyone else.

## CONCLUSION

Executive Order 14399 seeks to evade Congress, overtakes state authority to administer elections, and contravenes vast portions of Wisconsin election law, promising confusion, conflict, and a loss of confidence. *Amici* respectfully urge the Court to reverse the district court's denial of Plaintiffs-Appellants' motion for a preliminary injunction and remand the case for further proceedings to prevent Executive Order 14399 from being implemented in Wisconsin.

Dated: June 24, 2026

Respectfully submitted,

/s/ *Jeffrey A. Mandell*
Jeffrey A. Mandell (D.C. Cir. No. 51474)
Douglas M. Poland*
Rachel E. Snyder*
LAW FORWARD, INC.
222 W. Washington Ave., Ste. 680
Madison, Wisconsin 53703
jmandell@lawforward.org
dpoland@lawforward.org
rsnyder@lawforward.org
608.283.9822

*Application for admission to the U.S. Court of Appeals for the D.C. Circuit forthcoming

*Attorneys for* amici curiae *Wisconsin Democracy Campaign, Inc., EXPO of Wisconsin, Inc., Jaleyce Oraedu, Jasmine Oraedu, and Aharon Shelef*

50

## Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This document complies with the type-volume limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,744 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office Word Version 16.110 in 14-point Century Schoolbook typeface.

/s/ *Jeffrey A. Mandell*
Jeffrey A. Mandell

Attorney for *amici curiae* Wisconsin Democracy Campaign, Inc., EXPO of Wisconsin, Inc., Jaleyce Oraedu, Jasmine Oraedu, and Aharon Shelef

Dated: June 24, 2026

## Certificate of Service

I certify that on June 24, 2026, I electronically filed a copy of the foregoing document with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system. A true and correct copy of the foregoing document has been served via the Court's CM/ECF system on all counsel of record.

Dated: June 24, 2026

/s/ *Jeffrey A. Mandell*
Jeffrey A. Mandell

# EXHIBIT 1

FILED
02-13-2026
Clerk of Circuit Court
Waukesha County
2025CV001277

**DATE SIGNED: February 13, 2026**

<u>Electronically signed by Paul Bugenhagen Jr</u>
Circuit Court Judge

STATE OF WISCONSIN    CIRCUIT COURT    WAUKESHA COUNTY
BRANCH 10

---

MICHELLE LUEDTKE,

      Petitioner/Plaintiff,

    v.                                             Case No. 25-CV-1277

ANDREW YUNKER, et al.,

      Defendants/Respondents.

---

## FINAL ORDER

---

Upon the motions to dismiss the plaintiff/petitioner's "Complaint/Petition for Writ of Certiorari and Review of an Administrative Agency Decision" filed by the defendants/respondents Wisconsin Election Commission and Andrew Yunker (Dkt. 43, 29, 10), briefing by the parties (Dkt. 26, 42, 59, 66, 63, 63, 70), and oral argument at a hearing held on December 19, 2025, for reasons stated on the record at the January 29, 2026, hearing, IT IS HEREBY ORDERED that the aforementioned motions to dismiss are GRANTED.

**THIS ORDER IS FINAL FOR PURPOSES OF APPEAL.**

# ADDENDUM

# TABLE OF CONTENTS

Wis. Stat. § 5.02.................................................................. Add. 1–2

Wis. Stat. § 5.05.................................................................. Add. 2–8

Wis. Stat. § 5.66.................................................................... Add. 9

Wis. Stat. § 6.02.................................................................. Add. 10

Wis. Stat. § 6.03.................................................................. Add. 10

Wis. Stat. § 6.20.................................................................. Add. 11

Wis. Stat. § 6.22............................................................... Add. 11–12

Wis. Stat. § 6.24............................................................... Add. 12–13

Wis. Stat. §§ 6.27–.57........................................................ Add. 14–24

Wis. Stat. § 6.28.................................................................. Add. 14

Wis. Stat. § 6.29............................................................... Add. 14–15

Wis. Stat. § 6.34............................................................... Add. 17–18

Wis. Stat. § 6.36............................................................... Add. 18–19

Wis. Stat. § 6.55............................................................... Add. 22–23

Wis. Stat. §§ 6.84–.875....................................................... Add. 25–32

Wis. Stat. § 6.85.................................................................. Add. 26

Wis. Stat. § 6.855................................................................ Add. 26

Wis. Stat. § 6.86............................................................... Add. 26–28

Wis. Stat. § 6.865................................................................ Add. 28

Wis. Stat. § 6.87............................................................... Add. 28–31

Wis. Stat. § 6.88............................................................... Add. 32–33

Wis. Stat. § 7.08............................................................... Add. 34–35

Wis. Stat. § 7.10 ........................................................ Add. 35–36

Wis. Stat. §§ 7.15–7.22 .......................................... Add. 36–38

Wis. Stat. § 7.20 .......................................................... Add. 38

Wis. Stat. § 7.21 .......................................................... Add. 38

Wis. Stat. §§ 7.21–7.22 .............................................. Add. 38

Wis. Stat. § 7.23 ..................................................... Add. 38–39

Wis. Stat. §§ 7.51–7.53 .......................................... Add. 40–46

Wis. Stat. § 7.52 .................................................... Add. 42–44

Wis. Stat. § 7.60 .................................................... Add. 46–48

Wis. Stat. § 9.01 .................................................... Add. 49–54

Wis. Stat. § 15.61 .................................................. Add. 55–56

Wis. Stat. § 19.62 .................................................. Add. 57–58

Wis. Stat. § 19.69 ....................................................... Add. 58

Wis. Admin. Code § EL 9.02 ................................. Add. 59–60

Updated 2023-24 Wis. Stats.  Published and certified under s. 35.18.  June 19, 2026.

USCA Case #26-5193    Document #2180381         Filed: 06/24/2026    Page 57 of 116

**5.01**        **ELECTIONS — GENERAL PROVISIONS; BALLOTS & VOTING**        **Updated 23-24 Wis. Stats.**    **2**

Only substantial violations of the election law should operate to vacate an election.  Carlson v. Oconto County Board of Canvassers, 2001 WI App 20, 240 Wis. 2d 438, 623 N.W.2d 195, 00-1788.

**5.02  Definitions.**  In chs. 5 to 12, unless the context requires otherwise:

**(1c)** "Automatic tabulating equipment" means apparatus which automatically examines and counts votes recorded on ballots or voting machines and tabulates the results.

**(1e)** "Ballot" means a ballot label, sheet of paper or envelope on which votes are recorded.  The term also includes a sheet or card, filmstrip or other device listing or containing information relative to offices, candidates and referenda which is placed, projected or composed on the board or screen inside a voting machine.

**(1q)** "Block" means an area which is the smallest geographic area used by the U.S. bureau of the census for data collection and tabulation.

**(2)** "County clerk" includes the executive director of the county board of election commissioners and their authorized representatives.

**(3)** "Educational officer" means the state superintendent and school board members.

**(3m)** "Elected official" means an individual who is elected to a national, state or local office.

**(4)** "Election" means every public primary and election.

**(4c)** "Election district" means a municipality that is not divided into wards, except as otherwise provided in s. 8.17 (1) (b).

**(4e)** "Election official" means an individual who is charged with any duties relating to the conduct of an election.

**(4g)** "Election registration official" means an election official assigned under s. 6.28 (1) (a) or 7.30 to register electors.

**(4m)** "Electronic voting system" means a system in which votes are recorded on ballots, and the votes are subsequently counted and tabulated by automatic tabulating equipment.  The term also includes a voting machine on which votes are recorded and tabulated by electronic means.

**(4s)** "Federal election" means any election at which a national office appears on the ballot.

**(4v)** For purposes of chs. 5 to 10 and 12, "filing officer" means the following:

(a) For a candidate for state office, as defined in sub. (23), the elections commission.

(b) For a candidate seeking local office, the clerk of the most populous jurisdiction for which the candidate seeks office.

(c) For a candidate for municipal judge elected under s. 755.01 (4), the county clerk or board of election commissioners of the county having the largest portion of the population in the jurisdiction served by the judge.

(d) For a candidate for school board member, the school district clerk.

NOTE: Sub. (4v) is created eff. 12-1-27 by 2023 Wis. Act 126, as affected by 2025 Wis. Act 7, section 2.

**(5)** "General election" means the election held in even-numbered years on the Tuesday after the first Monday in November to elect United States senators, representatives in congress, presidential electors, state senators, representatives to the assembly, district attorneys, state officers other than the state superintendent and judicial officers, and county officers other than supervisors and county executives.

**(6)** "Governing body" means the common council of a city, board of supervisors of a town or board of trustees of a village.

**(6m)** "Identification" means any of the following documents issued to an individual:

(a) One of the following documents that is unexpired or if expired has expired after the date of the most recent general election:

1. An operator's license issued under ch. 343.

2. An identification card issued under s. 343.50.

3. An identification card issued by a U.S. uniformed service.

4. A U.S. passport.

(b) A certificate of U.S. naturalization that was issued not earlier than 2 years before the date of an election at which it is presented.

(c) An unexpired driving receipt under s. 343.11.

(d) An unexpired identification card receipt issued under s. 343.50.

(e) An identification card issued by a federally recognized Indian tribe in this state.

(f) An unexpired identification card issued by a university or college in this state that is accredited, as defined in s. 39.30 (1) (d), or by a technical college in this state that is a member of and governed by the technical college system under ch. 38, that contains the date of issuance and signature of the individual to whom it is issued and that contains an expiration date indicating that the card expires no later than 2 years after the date of issuance if the individual establishes that he or she is enrolled as a student at the university or college on the date that the card is presented.

NOTE:  In Luft v. Evers, 963 F.3d 665 (2020), the U.S. Court of Appeals for the 7th Circuit affirmed the judgment in One Wisconsin Institute, Inc. v. Thomsen, 198 F. Supp.3d 896 (2016), that "the student-ID provision is invalid" on the alternative ground that the restriction that a student ID card "is not sufficient for voting unless the student also shows proof of current enrollment" is unconstitutional.

(g) An unexpired veterans identification card issued by the veterans health administration of the federal department of veterans affairs.

**(7)** "Judge" means a court of appeals judge or a judge of a circuit court.

**(8)** "Justice" means a justice of the supreme court.

**(8m)** "Labor organization" means any employee organization in which employees participate and which exists primarily for the purpose of engaging in collective bargaining with any employer concerning grievances, labor disputes, wages, hours or conditions of employment, or the promotion and advancement of the professional or occupational standards and the welfare of its members and families and any organization established for the same purposes composed of individuals or affiliates of any such employee organization.

**(9)** "Local office" means any elective office other than a state or national office.

**(10)** "Municipal clerk" means the city clerk, town clerk, village clerk and the executive director of the city election commission and their authorized representatives.  Where applicable, "municipal clerk" also includes the clerk of a school district.

**(11)** "Municipality" means city, town or village.

**(12)** "National office" means the offices of president and vice president of the United States, U.S. senator and representative in congress.

**(12m)** "Nickname" means a familiar or shortened form of a proper name by which an individual is commonly known.

**(12n)** "Overseas elector" means a U.S. citizen who is residing outside of the United States, who is not disqualified from voting under s. 6.03, who has attained or will attain the age of 18 by the date of an election at which the citizen proposes to vote, who was last domiciled in this state or whose parent was last domiciled in this state immediately prior to the parent's departure from the United States, and who is not registered to vote or voting in any other state, territory, or possession.

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026.  Published and certified under s. 35.18.  Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 58 of 116

**3    Updated 23-24 Wis. Stats.    ELECTIONS — GENERAL PROVISIONS; BALLOTS & VOTING    5.05**

**(12s)** "Partisan primary" means the primary held the 2nd Tuesday in August to nominate candidates to be voted for at the general election.

**(13)** "Political party" has the meaning given in s. 11.0101 (26).

**(14)** "Poll list" means the list which is compiled by election officials on election day showing the names and addresses of electors who actually cast votes in an election.

**(15)** "Polling place" means the actual location wherein the elector's vote is cast.

**(16)** "Primary" means a primary election.

**(16c)** "Proof of identification" means identification that contains the name of the individual to whom the document was issued, which name conforms to the individual's voter registration form, if the individual is required to register to vote, and that contains a photograph of the individual, except as authorized in s. 343.14 (3m) or 343.50 (4g).

**(16g)** "Qualified circulator" means a qualified elector of this state or any U.S. citizen age 18 or older who, if he or she were a resident of this state, would not be disqualified from voting under s. 6.03.

**(16m)** "Recognized political party" means a political party which qualifies for a separate ballot or column under s. 5.62 (1) (b) or (2).

**(16s)** "Referendum" means an election at which an advisory, validating or ratifying question is submitted to the electorate.

**(17)** "Registration list" means the list of electors who are properly registered to vote.

**(19)** "Special election" means any election, other than those described in subs. (5), (12s), (21), and (22), to fill vacancies or to conduct a referendum.

**(20)** "Special primary" means the primary held 4 weeks before the special election except when the special election is held on the same day as the general election the special primary shall be held on the same day as the general primary or if the special election is held concurrently with the spring election, the primary shall be held concurrently with the spring primary.

**(20g)** "Special purpose district" means any local governmental unit other than a county or municipality.

**(20r)** "Special referendum" means any referendum held at a special election which is not held concurrently with the elections described in sub. (5), (12s), (21), or (22).

**(21)** "Spring election" means the election held on the first Tuesday in April to elect judicial, educational and municipal officers, nonpartisan county officers and sewerage commissioners and to express preferences for the person to be the presidential candidate for each party in a year in which electors for president and vice president are to be elected.

**(22)** "Spring primary" means the nonpartisan primary held on the 3rd Tuesday in February to nominate nonpartisan candidates to be voted for at the spring election.

**(23)** "State office" means the offices of governor, lieutenant governor, secretary of state, state treasurer, attorney general, state superintendent, justice of the supreme court, court of appeals judge, circuit court judge, state senator, state representative to the assembly and district attorney.

**(24)** "State superintendent" means the state superintendent of public instruction.

**(24g)** "Voting device" means an apparatus other than a voting machine which the elector uses to record his or her votes on a ballot.

**(24r)** "Voting machine" means a machine which serves in lieu of a voting booth and which mechanically or electronically

records the votes cast by electors, who depress levers or buttons located next to the choices listed on a ballot to cast their votes.

**(24w)** "Voting system" means:

(a) The total combination of mechanical, electromechanical, or electronic equipment, including the software, hardware, and documentation required to program, control, and support the equipment, that is used to define ballots, to cast and count votes, to report or display election results, and to maintain and produce any audit trail information.

(b) The practices and associated documentation for any of the following purposes:

1. To identify equipment components and versions of such components.

2. To test the equipment during its development and maintenance.

3. To maintain records of equipment errors and defects.

4. To determine specific equipment changes to be made after the initial qualification of the equipment.

5. To make available any materials to an elector.

**(25)** "Ward" means a town, village or city subdivision created for the convenience of the electors therein and to facilitate the division of such municipalities into election districts of substantially equal population numbers along common boundaries observing the community of interest of existing neighborhoods and other settlements.

**History:** 1971 c. 211; 1971 c. 304 ss. 2, 29 (2); 1973 c. 280, 334; 1975 c. 93; 1977 c. 107, 187, 394; 1977 c. 427 ss. 3 to 14; 1977 c. 449; 1979 c. 32, 89, 221; 1979 c. 260 ss. 1m, 73 to 75; 1979 c. 311, 328; 1981 c. 4, 391; 1983 a. 484 ss. 5, 5c, 124m, 128; 1985 a. 303; 1985 a. 304 ss. 1m, 2, 155; 1987 a. 391 ss. 1 to 1r, 66w; 1989 a. 31; 1991 a. 5; 1993 a. 140, 184; 1995 a. 16 s. 2; 1995 a. 27 s. 9145 (1); 1995 a. 219; 1997 a. 35; 2001 a. 16, 109; 2003 a. 24, 265; 2005 a. 177, 451; 2007 a. 1; 2009 a. 397; 2011 a. 23, 32, 45, 75; 2013 a. 165; 2015 a. 117, 118, 261; 2017 a. 369; 2023 a. 126; 2025 a. 7 s. 2.; 2025 a. 129.

Municipal clerks are the officials primarily responsible for election administration in Wisconsin. A "board of election commissioners" is established in Wisconsin's high population cities and counties to carry out the duties otherwise accomplished by municipal and county clerks everywhere else. The phrase "municipal clerk or board of election commissioners" appears in tandem all over the election statutes because that describes the duties of local election officials. State ex rel. Zignego v. Wisconsin Elections Commission, 2021 WI 32, 396 Wis. 2d 391, 957 N.W.2d 208, 19-2397.

The "office" of a clerk and a "municipal clerk" are distinct terms. In elections statutes, when "office" is used in conjunction with a reference to the clerk, such "office" is specified as a place where a delivery or an action takes place. The "municipal clerk" is a person, while the "office of the municipal clerk" is a location. Priorities USA v. Wisconsin Elections Commission, 2024 WI 32, 412 Wis. 2d 594, 8 N.W.3d 429, 24-0164.

Photographic identification is necessary for in-person voting. Students may use college-issued credentials under sub. (6m) (f), but only before an ID's expiration date. There's nothing wrong with a requirement that IDs be current. Luft v. Evers, 963 F.3d 665 (2020).

Treating students differently from other potential voters without a rational basis violates the equal protection clause. Under sub. (6m) (f), a student identification card, alone among the sorts of photo ID that Wisconsin accepts, is not sufficient for voting unless the student also shows proof of current enrollment. No other category of acceptable identification depends on ongoing affiliation of any sort. That differential treatment violates the equal protection clause of the 14th amendment to the U.S. Constitution. Luft v. Evers, 963 F.3d 665 (2020).

The requirements in sub. (6m) (f) that a student identification card must display: 1) an issuance date; 2) an expiration date; 3) an expiration date not more than two years after the issuance date; and 4) a signature, are rationally related to a legitimate governmental interest and do not violate the equal protection clause. Common Cause v. Thomsen, 574 F. Supp. 3d 634 (2021).

**5.025 Elections commission; definition.** In chs. 5 to 10 and 12, "commission" means the elections commission.

**History:** 2015 a. 118 s. 2; Stats. 2015 s. 5.025.

**5.05 Elections commission; powers and duties.** **(1)** GENERAL AUTHORITY. The elections commission shall have the responsibility for the administration of chs. 5 to 10 and 12 and other laws relating to elections and election campaigns, other than laws relating to campaign financing. Pursuant to such responsibility, the commission may:

(b) In the discharge of its duties and after providing notice to any party who is the subject of an investigation, subpoena and

***2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)***

Add. 2

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193     Document #2180381     Filed: 06/24/2026     Page 59 of 116

**5.05**     **ELECTIONS — GENERAL PROVISIONS; BALLOTS & VOTING**     **Updated 23-24 Wis. Stats.**    **4**

bring before it any person and require the production of any papers, books, or other records relevant to an investigation. Notwithstanding s. 885.01 (4), the issuance of a subpoena requires action by the commission at a meeting of the commission. In the discharge of its duties, the commission may cause the deposition of witnesses to be taken in the manner prescribed for taking depositions in civil actions in circuit court.

(c) Bring civil actions to require a forfeiture for any violation of chs. 5 to 10 or 12. The commission may compromise and settle any civil action or potential action brought or authorized to be brought by it which, in the opinion of the commission, constitutes a minor violation, a violation caused by excusable neglect, or which for other good cause shown, should not in the public interest be prosecuted under such chapter. Notwithstanding s. 778.06, a civil action or proposed civil action authorized under this paragraph may be settled for such sum as may be agreed between the parties. Any settlement made by the commission shall be in such amount as to deprive the alleged violator of any benefit of his or her wrongdoing and may contain a penal component to serve as a deterrent to future violations. In settling civil actions or proposed civil actions, the commission shall treat comparable situations in a comparable manner and shall assure that any settlement bears a reasonable relationship to the severity of the offense or alleged offense. Except as otherwise provided in sub. (2m) (c) 15. and 16. and ss. 5.08 and 5.081, forfeiture actions brought by the commission shall be brought in the circuit court for the county where the defendant resides, or if the defendant is a nonresident of this state, in circuit court for the county wherein the violation is alleged to occur. For purposes of this paragraph, a person other than an individual resides within a county if the person's principal place of operation is located within that county. Whenever the commission enters into a settlement agreement with an individual who is accused of a civil violation of chs. 5 to 10 or 12 or who is investigated by the commission for a possible civil violation of one of those provisions, the commission shall reduce the agreement to writing, together with a statement of the commission's findings and reasons for entering into the agreement and shall retain the agreement and statement in its office for inspection.

(d) Sue for injunctive relief, a writ of mandamus or prohibition, or other such legal or equitable relief as may be appropriate to enforce any law regulating the conduct of elections or election campaigns, other than laws regulating campaign financing, or ensure its proper administration. No bond is required in such actions. Actions shall be brought in circuit court for the county where a violation occurs or may occur.

(e) Issue an order under s. 5.06, exempt a polling place from accessibility requirements under s. 5.25 (4) (a), exempt a municipality from the requirement to use voting machines or an electronic voting system under s. 5.40 (5m), approve an electronic data recording system for maintaining poll lists under s. 6.79, or authorize nonappointment of an individual who is nominated to serve as an election official under s. 7.30 (4) (e).

(f) Promulgate rules under ch. 227 applicable to all jurisdictions for the purpose of interpreting or implementing the laws regulating the conduct of elections or election campaigns, other than laws regulating campaign financing, or ensuring their proper administration.

**(1e)** ACTIONS BY THE COMMISSION. Any action by the commission, except an action relating to procedure of the commission, requires the affirmative vote of at least two-thirds of the members.

**(2m)** ENFORCEMENT. (a) The commission shall investigate violations of laws administered by the commission and may prosecute alleged civil violations of those laws, directly or through its agents under this subsection, pursuant to all statutes granting or assigning that authority or responsibility to the commission. Prosecution of alleged criminal violations investigated by the commission may be brought only as provided in par. (c) 11., 14., 15., and 16. and s. 978.05 (1). For purposes of this subsection, the commission may only initiate an investigation of an alleged violation of chs. 5 to 10 and 12, other than an offense described under par. (c) 12., based on a sworn complaint filed with the commission, as provided under par. (c). Neither the commission nor any member or employee of the commission, including the commission administrator, may file a sworn complaint for purposes of this subsection.

(c) 2. a. Any person may file a complaint with the commission alleging a violation of chs. 5 to 10 or 12. No later than 5 days after receiving a complaint, the commission shall notify each person who or which the complaint alleges committed such a violation. Before voting on whether to take any action regarding the complaint, other than to dismiss, the commission shall give each person receiving a notice under this subd. 2. a. an opportunity to demonstrate to the commission, in writing and within 15 days after receiving the notice, that the commission should take no action against the person on the basis of the complaint. The commission may not conduct any investigation or take any other action under this subsection solely on the basis of a complaint by an unidentified complainant.

am. If the commission finds, by a preponderance of the evidence, that a complaint is frivolous, the commission may order the complainant to forfeit not more than the greater of $500 or the expenses incurred by the commission in investigating the complaint.

4. If the commission reviews a complaint and fails to find that there is a reasonable suspicion that a violation under subd. 2. has occurred or is occurring, the commission shall dismiss the complaint. If the commission believes that there is reasonable suspicion that a violation under subd. 2. has occurred or is occurring, the commission may by resolution authorize the commencement of an investigation. The resolution shall specifically set forth any matter that is authorized to be investigated. To assist in the investigation, the commission may elect to retain a special investigator. If the commission elects to retain a special investigator, the administrator of the commission shall submit to the commission the names of 3 qualified individuals to serve as a special investigator. The commission may retain one or more of the individuals. If the commission retains a special investigator to investigate a complaint against a person who is a resident of this state, the commission shall provide to the district attorney for the county in which the person resides a copy of the complaint and shall notify the district attorney that it has retained a special investigator to investigate the complaint. For purposes of this subdivision, a person other than an individual resides within a county if the person's principal place of operation is located within that county. The commission shall enter into a written contract with any individual who is retained as a special investigator setting forth the terms of the engagement. A special investigator who is retained by the commission may request the commission to issue a subpoena to a specific person or to authorize the special investigator to request the circuit court of the county in which the specific person resides to issue a search warrant. The commission may grant the request by approving a motion to that effect at a meeting of the commission if the commission finds that such action is legally appropriate.

5. Each special investigator who is retained by the commission shall make periodic reports to the commission, as directed by the commission, but in no case may the interval for reporting exceed 30 days. If the commission authorizes the commission administrator to investigate any matter without retaining a special

**2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)**

Add. 3

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193 Document #2180381 Filed: 06/24/2026 Page 60 of 116

**5   Updated 23-24 Wis. Stats.     ELECTIONS — GENERAL PROVISIONS; BALLOTS & VOTING     5.05**

investigator, the administrator shall make periodic reports to the commission, as directed by the commission, but in no case may the reporting interval exceed 30 days. During the pendency of any investigation, the commission shall meet for the purpose of reviewing the progress of the investigation at least once every 90 days. The special investigator or the administrator shall report in person to the commission at that meeting concerning the progress of the investigation. If, after receiving a report, the commission does not vote to continue an investigation for an additional period not exceeding 90 days, the investigation is terminated at the end of the reporting interval. The commission shall not expend more than $25,000 to finance the cost of an investigation before receiving a report on the progress of the investigation and a recommendation to commit additional resources. The commission may vote to terminate an investigation at any time. If an investigation is terminated, any complaint from which the investigation arose is deemed to be dismissed by the commission. Unless an investigation is terminated by the commission, at the conclusion of each investigation, the administrator shall present to the commission one of the following:

a. A recommendation to make a finding that probable cause exists to believe that one or more violations under subd. 2. have occurred or are occurring, together with a recommended course of action.

b. A recommendation for further investigation of the matter together with facts supporting that course of action.

c. A recommendation to terminate the investigation due to lack of sufficient evidence to indicate that a violation under subd. 2 has occurred or is occurring.

6. a. If the commission finds that there is probable cause to believe that a violation under subd. 2. has occurred or is occurring, the commission may authorize the commission administrator to file a civil complaint against the alleged violator. In such case, the administrator may request the assistance of special counsel to prosecute any action brought by the commission. If the administrator requests the assistance of special counsel with respect to any matter, the administrator shall submit to the commission the names of 3 qualified individuals to serve as special counsel. The commission may retain one of the individuals to act as special counsel. The staff of the commission shall provide assistance to the special counsel as may be required by the counsel to carry out his or her responsibilities.

b. The commission shall enter into a written contract with any individual who is retained as special counsel setting forth the terms of the engagement. The contract shall set forth the compensation to be paid such counsel by the state. The contract shall be executed on behalf of the state by the commission and the commission shall file the contract in the office of the secretary of state. The compensation shall be charged to the appropriation under s. 20.510 (1) (br).

7. No individual who is appointed or retained by the commission to serve as special counsel or as a special investigator is subject to approval under s. 20.930.

9. At the conclusion of its investigation, the commission shall, in preliminary written findings of fact and conclusions based thereon, make a determination of whether or not probable cause exists to believe that a violation under subd. 2. has occurred or is occurring. If the commission determines that no probable cause exists, it shall dismiss the complaint. Whenever the commission dismisses a complaint or a complaint is deemed to be dismissed under subd. 5., the commission shall immediately send written notice of the dismissal to the accused and to the party who made the complaint.

10. The commission shall inform the accused or his or her counsel of exculpatory evidence in its possession.

11. If the commission finds that there is probable cause to believe that a violation under subd. 2. has occurred or is occurring, the commission may, in lieu of civil prosecution of any matter by the commission, refer the matter to the district attorney for the county in which the alleged violator resides, or if the alleged violator is a nonresident, to the district attorney for the county where the matter arises, or if par. (i) applies, to the attorney general or a special prosecutor. For purposes of this subdivision, a person other than a natural person resides within a county if the person's principal place of operation is located within that county.

12. The commission shall, by rule, prescribe categories of civil offenses which the commission will agree to compromise and settle without a formal investigation upon payment of specified amounts by the alleged offender. The commission may authorize the commission administrator to compromise and settle such alleged offenses in the name of the commission if the alleged offenses by an offender, in the aggregate, do not involve payment of more than $2,500.

13. If a special investigator or the commission administrator, in the course of an investigation authorized by the commission, discovers evidence that a violation under subd. 2. that was not within the scope of the authorized investigation has occurred or is occurring, the special investigator or the administrator may present that evidence to the commission. If the commission finds that there is a reasonable suspicion that a violation under subd. 2. that is not within the scope of the authorized investigation has occurred or is occurring, the commission may authorize the special investigator or the administrator to investigate the alleged violation or may elect to authorize a separate investigation of the alleged violation as provided in subd. 4.

14. If a special investigator or the commission administrator, in the course of an investigation authorized by the commission, discovers evidence of a potential violation of a law that is not administered by the commission arising from or in relation to the official functions of the subject of the investigation or any matter that involves elections, the special investigator or the administrator may present that evidence to the commission. The commission may thereupon refer the matter to the appropriate district attorney specified in subd. 11. or may refer the matter to the attorney general. The attorney general may then commence a civil or criminal prosecution relating to the matter.

15. Except as provided in subd. 17., if the commission refers a matter to the district attorney specified in subd. 11. for prosecution of a potential violation under subd. 2. or 14. and the district attorney informs the commission that he or she declines to prosecute any alleged civil or criminal violation related to any matter referred to the district attorney by the commission, or the district attorney fails to commence a prosecution of any civil or criminal violation related to any matter referred to the district attorney by the commission within 60 days of the date of the commission's referral, the commission may refer the matter to the district attorney for another prosecutorial unit that is contiguous to the prosecutorial unit of the district attorney to whom the matter was originally referred. If there is more than one such prosecutorial unit, the chairperson of the commission shall determine the district attorney to whom the matter shall be referred by publicly drawing lots at a meeting of the commission. The district attorney may then commence a civil or criminal prosecution relating to the matter.

16. Except as provided in subd. 17., if the commission refers a matter to a district attorney under subd. 15. for prosecution of a potential violation under subd. 2. or 14. and the district attorney informs the commission that he or she declines to prosecute any alleged civil or criminal violation related to any matter referred to

**2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)**

Add. 4

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193     Document #2180381          Filed: 06/24/2026     Page 61 of 116

**5.05**          **ELECTIONS — GENERAL PROVISIONS; BALLOTS & VOTING**          **Updated 23-24 Wis. Stats.     6**

the district attorney by the commission, or the district attorney fails to commence a prosecution of any civil or criminal violation related to any matter referred to the district attorney by the commission within 60 days of the date of the commission's referral, the commission may refer the matter to the attorney general. The attorney general may then commence a civil or criminal prosecution relating to the matter.

17. The commission is not authorized to act under subd. 15. or 16. if a special prosecutor is appointed under s. 978.045 in lieu of the district attorney specified in subd. 11.

18. Whenever the commission refers a matter to special counsel or to a district attorney or to the attorney general under this subsection, the special counsel, district attorney, or attorney general shall report to the commission concerning any action taken regarding the matter. The report shall be transmitted no later than 40 days after the date of the referral. If the matter is not disposed of during that period, the special counsel, district attorney, or attorney general shall file a subsequent report at the end of each 30-day period following the filing of the initial report until final disposition of the matter.

(d) 1. No individual who serves as the commission administrator may have been a lobbyist, as defined in s. 13.62 (11). No such individual may have served in a partisan state or local office.

2. No employee of the commission, while so employed, may become a candidate, as defined in s. 11.0101 (1), for a state or partisan local office. No individual who is retained by the commission to serve as a special investigator or as special counsel may, while so retained, become a candidate, as defined in s. 11.0101 (1), for any state or local office. A filing officer shall decline to accept nomination papers or a declaration of candidacy from any individual who does not qualify to become a candidate under this paragraph.

(e) No individual who serves as an employee of the commission and no individual who is retained by the commission to serve as a special investigator or a special counsel may, while so employed or retained, make a contribution to a candidate for state or local office. No individual who serves as an employee of the commission and no individual who is retained by the commission to serve as a special investigator or as special counsel, for 12 months prior to becoming so employed or retained, may have made a contribution to a candidate for a partisan state or local office. In this paragraph, contribution has the meaning given in s. 11.0101 (8).

(f) Pursuant to any investigation authorized under par. (c), the commission has the power:

1. To require any person to submit in writing such reports and answers to questions relevant to the proceedings as the commission may prescribe, such submission to be made within such period and under oath or otherwise as the commission may determine.

2. To order testimony to be taken by deposition before any individual who is designated by the commission and has the power to administer oaths, and, in such instances, to compel testimony and the production of evidence in the same manner as authorized by sub. (1) (b).

4. To pay witnesses the same fees and mileage as are paid in like circumstances by the courts of this state.

5. To request and obtain from the department of revenue copies of state income or franchise tax returns and access to other appropriate information under s. 71.78 (4) regarding all persons who are the subject of such investigation.

(h) If the defendant in an action for a civil violation of chs. 5 to 10 or 12 is a district attorney or a circuit judge or a candidate for either such office, the action shall be brought by the commission. If the defendant in an action for a civil violation of chs. 5 to 10 or 12 is the attorney general or a candidate for that office, the commission may appoint special counsel to bring suit on behalf of the state.

(i) If the defendant in an action for a criminal violation of chs. 5 to 10 or 12 is a district attorney or a circuit judge or a candidate for either such office, the action shall be brought by the attorney general. If the defendant in an action for a criminal violation of chs. 5 to 10 or 12 is the attorney general or a candidate for that office, the commission may appoint a special prosecutor to conduct the prosecution on behalf of the state.

(j) Any special counsel or prosecutor who is appointed under par. (h) or (i) shall be independent of the attorney general and need not be a state employee at the time of his or her appointment.

(k) The commission's power to initiate civil actions under this subsection for the enforcement of chs. 5 to 10 or 12 shall be the exclusive remedy for alleged civil violations of chs. 5 to 10 or 12.

**(2q)** SUPPLEMENTAL FUNDING FOR ONGOING INVESTIGATIONS. The commission may request supplemental funds to be credited to the appropriation account under s. 20.510 (1) (be) for the purpose of continuing an ongoing investigation initiated under sub. (2m). A request under this subsection shall be filed with the secretary of administration and the cochairpersons of the joint committee on finance in writing and shall contain a statement of the action requested, the purposes therefor, the statutory provision authorizing or directing the performance of the action, and information about the nature of the investigation for which the commission seeks supplemental funds, excluding the name of any individual or organization that is the subject of the investigation. If the cochairpersons of the joint committee on finance do not notify the secretary of administration that the committee has scheduled a meeting for the purpose of reviewing the request within 14 working days after the commission filed the request, the secretary shall supplement the appropriation under s. 20.510 (1) (be) from the appropriation under s. 20.505 (1) (d) in an amount not to exceed the amount the commission requested. If, within 14 working days after the commission filed the request, the cochairpersons of the joint committee on finance notify the secretary that the committee has scheduled a meeting for the purpose of reviewing the commission's request under this subsection, the secretary may supplement the appropriation under s. 20.510 (1) (be) only with the committee's approval. The committee and the secretary shall notify the commission of all their actions taken under this subsection.

**(2w)** ELECTIONS COMMISSION. The elections commission has the responsibility for the administration of chs. 5 to 10 and 12.

**(3d)** ADMINISTRATOR. The commission shall appoint an administrator in the manner provided under s. 15.61 (1) (b). The administrator shall be outside the classified service. The administrator shall appoint such other personnel as he or she requires to carry out the duties of the commission and may designate a commission employee to serve as the commission's legal counsel. The administrator shall perform such duties as the commission assigns to him or her in the administration of chs. 5 to 10 and 12.

**(3g)** CHIEF ELECTION OFFICER. The commission administrator shall serve as the chief election officer of this state.

**(4)** EMPLOYEES. All employees of the commission shall be nonpartisan.

**(5e)** ANNUAL REPORT. The commission shall submit an annual report under s. 15.04 (1) (d) and shall include in its annual report the names and duties of all individuals employed by the commission and a summary of its determinations and advisory opinions issued under sub. (6a). Except as authorized or required under sub. (5s) (f), the commission shall make sufficient alter-

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 5

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 62 of 116

**7    Updated 23-24 Wis. Stats.    ELECTIONS — GENERAL PROVISIONS; BALLOTS & VOTING    5.05**

ations in the summaries to prevent disclosing the identities of individuals or organizations involved in the decisions or opinions. The commission shall identify in its report the statutory duties of the commission administrator, together with a description of the manner in which those duties are being fulfilled. Notwithstanding sub. (5s) and s. 12.13 (5), the commission shall also specify in its report the total number of investigations conducted by the commission since the last annual report and a description of the nature of each investigation. The commission shall make such further reports on the matters within its jurisdiction and such recommendations for further legislation as it deems desirable.

**(5f)** ADVICE TO COMMISSION. The joint committee on legislative organization shall be advisory to the commission on all matters relating to operation of the commission.

**(5s)** ACCESS TO RECORDS. Records obtained or prepared by the commission in connection with an investigation, including the full text of any complaint received by the commission, are not subject to the right of inspection and copying under s. 19.35 (1), except as follows:

(a) The commission shall permit inspection of records that are distributed or discussed in the course of a meeting or hearing by the commission in open session. The commission shall post on its Internet site the draft minutes of each meeting or hearing conducted by the commission in open session no later than 48 hours after the completion of the meeting or hearing. The commission shall post minutes approved by the commission no later than 48 hours after the minutes are approved. The commission may indicate whether minutes posted on its Internet site have been approved by the commission or are in draft form. Minutes posted pursuant to this paragraph shall include a summary of every action that the commission voted on, a record of each member's vote for or against every action requiring a vote, a record of all motions and seconds made by each member, including the full text of each motion debated and voted on by the commission, and a record of each member's status as being present or absent for any part of a meeting or hearing. The commission shall maintain all minutes published under this paragraph on its Internet site so that the minutes are accessible to the public at all times.

(am) The commission shall provide to the joint committee on finance records obtained or prepared by the commission in connection with an ongoing investigation when required under sub. (2q).

(b) Investigatory records of the commission may be made public in the course of a prosecution initiated under chs. 5 to 10 or 12.

(bm) The commission shall provide investigatory records to the state auditor and the employees of the legislative audit bureau to the extent necessary for the bureau to carry out its duties under s. 13.94.

(c) The commission shall provide information from investigation and hearing records that pertains to the location of individuals and assets of individuals as requested under s. 49.22 (2m) by the department of children and families or by a county child support agency under s. 59.53 (5).

(d) If the commission commences a civil prosecution of a person for an alleged violation of chs. 5 to 10 or 12 as the result of an investigation, the person who is the subject of the investigation may authorize the commission to make available for inspection and copying under s. 19.35 (1) records of the investigation pertaining to that person if the records are available by law to the subject person and the commission shall then make those records available.

(e) The following records of the commission are open to public inspection and copying under s. 19.35 (1):

1. Any record of the action of the commission authorizing the filing of a civil complaint under sub. (2m) (c) 6.

2. Any record of the action of the commission referring a matter to a district attorney or other prosecutor for investigation or prosecution.

3. Any record containing a finding that a complaint does not raise a reasonable suspicion that a violation of the law has occurred.

4. Any record containing a finding, following an investigation, that no probable cause exists to believe that a violation of the law has occurred.

(f) The commission shall make public formal and informal advisory opinions and records obtained in connection with requests for formal or informal advisory opinions relating to matters under the jurisdiction of the commission, including the identity of individuals requesting such opinions or organizations or governmental bodies on whose behalf they are requested.

**(5t)** GUIDANCE FOLLOWING BINDING COURT DECISIONS. Within 2 months following the publication of a decision of a state or federal court that is binding on the commission and this state, the commission shall issue updated guidance or formal advisory opinions, commence the rule-making procedure to revise administrative rules promulgated by the commission, or request an opinion from the attorney general on the applicability of the court decision.

**(6a)** ADVISORY OPINIONS. (a) 1. Any individual, either personally or on behalf of an organization or governmental body, may make a request of the commission in writing, electronically, or by telephone for a formal or informal advisory opinion regarding the propriety under chs. 5 to 10 or 12 of any matter to which the person is or may become a party. Any appointing officer, with the consent of a prospective appointee, may request of the commission a formal or informal advisory opinion regarding the propriety under chs. 5 to 10 or 12 of any matter to which the prospective appointee is or may become a party. The commission shall review a request for an advisory opinion and may issue a formal or informal written or electronic advisory opinion to the person making the request. Except as authorized or required for opinions specified in sub. (5s) (f), the commission's deliberations and actions upon such requests shall be in meetings not open to the public. A member of the commission may, by written request, require the commission to review an advisory opinion.

2. To have legal force and effect, each formal and informal advisory opinion issued by the commission must be supported by specific legal authority under a statute or other law, or by specific case or common law authority. Each formal and informal advisory opinion shall include a citation to each statute or other law and each case or common law authority upon which the opinion is based, and shall specifically articulate or explain which parts of the cited authority are relevant to the commission's conclusion and why they are relevant.

3. No person acting in good faith upon a formal or informal advisory opinion issued by the commission under this subsection is subject to criminal or civil prosecution for so acting, if the material facts are as stated in the opinion request.

4. At each regular meeting of the commission, the administrator shall review informal advisory opinions requested of and issued by the administrator and that relate to recurring issues or issues of first impression for which no formal advisory opinion has been issued. The commission may determine to issue a formal advisory opinion adopting or modifying the informal advisory opinion. If the commission disagrees with a formal or informal advisory opinion that has been issued by or on behalf of the commission, the commission may withdraw the opinion, issue a revised formal or informal advisory opinion, or request an opin-

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Updated 2023-24 Wis. Stats.  Published and certified under s. 35.18.  June 19, 2026.

USCA Case #26-5193     Document #2180381     Filed: 06/24/2026     Page 63 of 116

**5.05**          **ELECTIONS — GENERAL PROVISIONS; BALLOTS & VOTING**          **Updated 23-24 Wis. Stats.     8**

ion from the attorney general.  No person acting after the date of the withdrawal or issuance of the revised advisory opinion is exempted from prosecution under this subsection if the opinion upon which the person's action is based has been withdrawn or revised in relevant degree.

5.  Except as authorized or required under sub. (5s) (f), no member or employee of the commission may make public the identity of the individual requesting a formal or informal advisory opinion or of individuals or organizations mentioned in the opinion.

(b) 1.  The commission may authorize the commission administrator or his or her designee to issue an informal written advisory opinion or transmit an informal advisory opinion electronically on behalf of the commission, subject to such limitations as the commission deems appropriate.  Every informal advisory opinion shall be consistent with applicable formal advisory opinions issued by the commission, statute or other law, and case law.

2.  Any individual may request in writing, electronically, or by telephone an informal advisory opinion from the commission under this paragraph.  The commission's designee shall provide a written response, a written reference to an applicable statute or law, or a written reference to a formal advisory opinion of the commission to the individual, or shall refer the request to the commission for review and the issuance of a formal advisory opinion.

3.  Any person receiving an informal advisory opinion under this paragraph may, at any time, request a formal advisory opinion from the commission on the same matter.

(c) 1.  Any individual may request in writing, electronically, or by telephone a formal advisory opinion from the commission or the review or modification of a formal advisory opinion issued by the commission under this paragraph.  The individual making the request shall include all pertinent facts relevant to the matter.  The commission shall review a request for a formal advisory opinion and may issue a formal advisory opinion to the individual making the request.  Except as authorized or required for opinions specified in sub. (5s) (f), the commission's deliberations and actions upon such requests shall be in meetings not open to the public.

2.  Any person requesting a formal advisory opinion under this paragraph may request a public or private hearing before the commission to discuss the opinion.  The commission shall grant a request for a public or private hearing under this paragraph.

3.  Promptly upon issuance of each formal advisory opinion, the commission shall publish the opinion together with the information specified under sub. (5s) (f) on the commission's Internet site.

4.  If the commission declines to issue a formal advisory opinion, it may refer the matter to the attorney general or to the standing legislative oversight committees.

**(7)** ADMINISTRATIVE MEETINGS AND CONFERENCES.  The commission shall conduct regular information and training meetings at various locations in the state for county and municipal clerks and other election officials.  Administrative meetings shall be designed to explain the election laws and the forms and rules of the commission, to promote uniform procedures and to assure that clerks and other officials are made aware of the integrity and importance of the vote of each citizen.  The commission may conduct conferences relating to election laws, practice and procedure.  The commission may charge persons attending the administrative meetings and conferences for its costs incurred in conducting the meetings and conferences at a rate not exceeding the per capita cost incurred by the commission.

**(9)** STANDING.  The commission has standing to commence or intervene in any civil action or proceeding for the purpose of enforcing the laws regulating the conduct of elections or election campaigns, other than laws regulating campaign financing, or ensuring their proper administration.

**(10)** STATE ELECTION ADMINISTRATION PLAN.  With the approval of the joint committee on finance as provided in this subsection, the commission shall adopt and modify as necessary a state plan that meets the requirements of P.L. 107-252 to enable participation by this state in federal financial assistance programs authorized under that law.  The commission shall adopt the plan and any modifications only after publishing a class 1 notice under ch. 985 or posting on the Internet a statement describing the proposed plan or modification and receiving public comment thereon.  After approval of the proposed plan or any modification of the plan by the commission, the commission shall submit the proposed plan or modification to the joint committee on finance for the approval of the committee.  The commission may adopt the proposed plan or modification only if the committee approves the proposed plan or modification.

**(11)** AIDS TO COUNTIES AND MUNICIPALITIES.  From the appropriations under s. 20.510 (1) (t) and (x), the commission may provide financial assistance to eligible counties and municipalities for election administration costs in accordance with the plan adopted under sub. (10).  As a condition precedent to receipt of assistance under this subsection, the commission shall enter into an agreement with the county or municipality receiving the assistance specifying the intended use of the assistance and shall ensure compliance with the terms of the agreement.  Each agreement shall provide that if the federal government objects to the use of any assistance moneys provided to the county or municipality under the agreement, the county or municipality shall repay the amount of the assistance provided to the commission.

**(12)** VOTER EDUCATION.  The commission may conduct or prescribe requirements for educational programs to inform electors about voting procedures, voting rights, and voting technology.  The commission shall conduct an educational program for the purpose of educating electors who cast paper ballots, ballots that are counted at a central counting location, and absentee ballots of the effect of casting excess votes for a single office.

**(13)** TOLL-FREE ELECTION INFORMATION AND REQUESTS.  (a) The commission shall maintain one or more toll-free telephone lines for electors to report possible voting fraud and voting rights violations, to obtain general election information, and to access information concerning their registration status, current polling place locations, and other information relevant to voting in elections.

(b) The commission may maintain a free access system under which an elector who votes under s. 6.96 or 6.97 may ascertain current information concerning whether the elector's vote has been counted, and, if the vote will not be counted, the reason that it will not be counted.

(c) The commission shall maintain a freely accessible system under which a military elector, as defined in s. 6.34 (1), or an overseas elector who casts an absentee ballot may ascertain whether the ballot has been received by the appropriate municipal clerk.

(d) The commission shall designate and maintain at least one freely accessible means of electronic communication which shall be used for the following purposes:

1.  To permit a military elector, as defined in s. 6.34 (1), or an overseas elector to request a voter registration application or an application for an absentee ballot at any election at which the elector is qualified to vote in this state.

2.  To permit a military elector or an overseas elector under subd. 1. to designate whether the elector wishes to receive the applications under subd. 1. electronically or by mail.

3.  To permit a municipal clerk to transmit to a military elec-

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026.  Published and certified under s. 35.18.  Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 7

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 64 of 116

**9    Updated 23-24 Wis. Stats.    ELECTIONS — GENERAL PROVISIONS; BALLOTS & VOTING    5.06**

tor or an overseas elector under subd. 1. a registration application or absentee ballot application electronically or by mail, as directed by the elector under subd. 2., together with related voting, balloting, and election information.

**(14)** INFORMATION FROM COUNTY AND MUNICIPAL CLERKS. (a) The commission may request information from county and municipal clerks relating to election administration, performance of electronic voting systems and voting machines, and use of paper ballots in elections.

(b) The commission shall establish a subscription service whereby a person may electronically access the absentee ballot information provided under s. 6.33 (5) (a), including semiweekly updates of such information.

(c) On election night the commission shall provide a link on its Internet site to the posting of each county's election returns on each county's Internet site.

**(15)** REGISTRATION LIST. The commission is responsible for the design and maintenance of the official registration list under s. 6.36. The commission shall require all municipalities to use the list in every election and may require any municipality to adhere to procedures established by the commission for proper maintenance of the list.

**(16)** POLICIES AND PROCEDURES. (a) Annually, the commission shall adopt written policies and procedures in order to govern its internal operations and management and shall annually report such policies and procedures to the appropriate standing committees of the legislature under s. 13.172 (3).

(b) Notwithstanding par. (a), the commission may reconsider at any time any policy or procedure adopted as provided under par. (a). If, upon reconsideration, the commission revises a previously reported policy or procedure, the commission shall report the revision to the appropriate standing committees of the legislature under s. 13.172 (3).

(c) The commission may reconsider at any time any written directives or written guidance provided to the general public or to any person subject to the provisions of chs. 5 to 10 and 12 with regard to the enforcement and administration of those provisions.

**(17)** PAYMENTS. The commission may accept payment by credit card, debit card, or other electronic payment mechanism for any amounts owed pursuant to the administration of chs. 5 to 10 or 12, and may charge a surcharge to the payer to recover charges associated with the acceptance of that electronic payment.

**(18)** ELECTRONIC POLL LISTS. The commission may facilitate the creation and maintenance of electronic poll lists for purposes of s. 6.79 including entering into contracts with vendors and establishing programs for development and testing.

**(19)** DEADLINES CONCERNING PRESIDENTIAL ELECTIONS. The commission shall publish on its website a table setting forth each day or deadline on or by which an act or event is required by law to occur in a presidential election, including with respect to recounts and recount appeals.

**History:** 1973 c. 334; 1975 c. 85, 93, 199; 1977 c. 29; 1977 c. 196 s. 131; 1977 c. 418, 427, 447; 1979 c. 32 s. 92 (8); 1979 c. 89, 154, 328; 1983 a. 27, 484, 524, 538; 1985 a. 303; 1985 a. 304 ss. 3, 155; 1989 a. 31, 192; 1999 a. 182; 2001 a. 109; 2003 a. 35, 265, 266, 327; 2005 a. 177; 2007 a. 1 ss. 2 to 19, 94, 99, 100, 103, 104, 107, 109, 111, 112, 114, 116, 127, 128; 2007 a. 20; 2009 a. 28, 180; 2011 a. 75; 2013 a. 20, 166; 2015 a. 2, 117; 2015 a. 118 ss. 3 to 54, 266 (10); 2015 a. 261; 2017 a. 365 s. 111; 2017 a. 366, 369; 2021 a. 38; 2025 a. 214.

**Cross-reference:** See also EL, Wis. adm. code.

Notice to the district attorney, attorney general, or governor is not a prerequisite to a civil forfeiture under sub. (1) (c). State Elections Board v. Hales, 149 Wis. 2d 306, 440 N.W.2d 579 (Ct. App. 1989).

A party being investigated by the Wisconsin Elections Board is not entitled under sub. (1) (b) to attend and participate in all depositions conducted by the board. Notice to the party being investigated under sub. (1) (b) is limited to the board's exercise of its subpoena power and does not relate in any way to the conduct of depositions the board may wish to take. State ex rel. Block v. Circuit Court, 2000 WI App 72, 234 Wis. 2d 183, 610 N.W.2d 213, 00-0507.

County clerks are not to interpret Wisconsin's election laws and make declarations based on those interpretations. It is the Wisconsin Elections Commission that is responsible for guidance in the administration and enforcement of Wisconsin's election laws, not the county clerks. Jefferson v. Dane County, 2020 WI 90, 394 Wis. 2d 602, 951 N.W.2d 556, 20-0557.

The Wisconsin Elections Commission's decisions whether to dismiss a complaint, to further investigate, to file a civil complaint, or to refer the complaint to a district attorney are not subject to judicial review. Stone v. Wisconsin Elections Commission, 2025 WI App 68, 418 Wis. 2d 611, 28 N.W.3d 211, 24-1782.

A complaint under sub. (2m) is frivolous if the Wisconsin Elections Commission finds, by a preponderance of the evidence, that either of these two standards is satisfied: (1) the complaint was submitted in bad faith, solely for purposes of harassing or maliciously injuring another or the commission or (2) the complainant, or the complainant's attorney, knew, or should have known, that the complaint was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification, or reversal of existing law. Stone v. Wisconsin Elections Commission, 2025 WI App 68, 418 Wis. 2d 611, 28 N.W.3d 211, 24-1782.

Due process requires that a complainant be provided timely and adequate notice of the Wisconsin Elections Commission's consideration that a complaint may be frivolous and a forfeiture is appropriate under sub. (2m) (c) 2. am. and that the complainant be provided an opportunity to defend the complainant's position before the commission. Stone v. Wisconsin Elections Commission, 2025 WI App 68, 418 Wis. 2d 611, 28 N.W.3d 211, 24-1782.

Unless otherwise stated in a specific statute, criminal and civil forfeiture provisions of the election, lobby, and ethics laws can be enforced by a district attorney independently of the Government Accountability Board (GAB). A referral following an investigation by GAB is not required. A district attorney may request prosecutorial or investigative assistance from the attorney general in connection with any duty of the district attorney under those laws. If there has been a referral to the district attorney by GAB under sub. (2m) (c) 11., 14., or 15., the district attorney must retain ultimate supervisory authority over the matter referred unless a special prosecutor has been appointed to serve in lieu of the district attorney. OAG 10-08.

The Government Accountability Board (GAB) and district attorneys possess joint and co-equal authority to investigate possible violations of the election, lobby, or ethics laws and to prosecute civil forfeiture actions under those laws. Unless otherwise stated in a specific statutory provision, the district attorney possesses the authority to prosecute criminal proceedings under those laws. GAB has no statutory authority to prosecute criminal proceedings under those laws except as stated in sub. (2m) (i). OAG 10-08.

For the attorney general to prosecute violations of the election, lobby, and ethics laws, there must be a specific statute authorizing the attorney general to independently initiate the prosecution of civil and criminal actions involving violations of those laws unless there is a referral to the attorney general by the Government Accountability Board under sub. (2m) (c) 16. or unless the attorney general or an assistant attorney general has been appointed as special prosecutor to serve in lieu of the district attorney. OAG 10-08.

Any cause of action under sub. (2m) to determine a candidate's ballot eligibility belongs to the Wisconsin Elections Commission rather than to individual voters. Stencil v. Johnson, 605 F. Supp. 3d 1109 (2022).

**5.055 Election assistance commission standards board.** The commission administrator shall, in consultation with the commission, appoint an individual to represent this state as a member of the federal election assistance commission standards board. The administrator shall also conduct and supervise a process for the selection of an election official by county and municipal clerks and boards of election commissioners to represent local election officials of this state as a member of the federal election assistance commission standards board. The administrator shall ensure that the members of the federal election assistance commission standards board representing this state shall at no time be members of the same political party. Upon appointment or election of any new member of the federal election assistance commission standards board representing this state, the administrator shall transmit a notice of that member's appointment or election to the officer or agency designated by federal law.

**History:** 2003 a. 265; 2007 a. 1; 2015 a. 118.

**5.056 Matching program with secretary of transportation.** The commission administrator shall enter into the agreement with the secretary of transportation specified under s. 85.61 (1) to match personally identifiable information on the official registration list maintained by the commission under s. 6.36 (1) and the information specified in s. 6.34 (2m) with personally identifiable information maintained by the department of transportation.

**History:** 2003 a. 265; 2007 a. 1; 2015 a. 118, 261.

**5.06 Compliance review; appeal. (1)** Whenever any elector of a jurisdiction or district served by an election official

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 8

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 65 of 116

**5.64**        ELECTIONS — GENERAL PROVISIONS; BALLOTS & VOTING        **Updated 23-24 Wis. Stats.    20**

under ss. 8.18 (2) and 8.20 (2) (d) are not listed on the ballot but a vote for the candidates for president and vice president is a vote for them through their named presidential electors.

(es)  The party candidates shall be arranged consecutively from top to bottom based on the number of votes received by their party's candidate for governor at the last election beginning with the party that received the most votes. The independent president-vice president candidates shall be listed together in an order drawn by lot by or under supervision of the commission, following under the party candidates. Along with the names of the independent candidates shall appear the party or principle of the candidates, if any, in 5 words or less, as shown on their nomination papers. Following under the independent candidates, a space shall be left for writing in the names of a candidate for president and vice president.

(f)  In the case of balloting for the office of governor and lieutenant governor, the names of the candidates shall be placed in the party column by which nominated or if independent, in a column designated independent. In each column there shall be one choice for the elector to cast a ballot jointly for both offices.

(g)  Following under the independent candidates for each office, a space shall be provided for the elector to write in the name of a candidate of his or her choice for that office.

**(2)** REFERENDUM BALLOT.  (am)  There shall be a separate ballot when any proposed constitutional amendment or any other measure or question is submitted to a vote of the people, except as authorized in s. 5.655. The ballot shall give a concise statement of each question in accordance with the act or resolution directing submission in the same form as prescribed by the commission under s. 7.08 (1) (a). The question may not be worded in such a manner as to require a negative vote to approve a proposition or an affirmative vote to disapprove a proposition. Unless otherwise expressly provided, this ballot form shall be used at all elections when questions are submitted to a vote of the people.

(c)  The official referendum ballot prescribed under this subsection shall be utilized at every election, except that the format shall be altered to the extent provided or required by other laws establishing or authorizing referenda to be conducted. Except as authorized in s. 5.655, all referenda shall appear on a separate ballot, but more than one referendum question may appear on the same referendum ballot whenever the questions are numbered and all electors voting the ballot are entitled to vote upon all questions appearing thereon. When more than one state referendum is placed on the same ballot, the commission shall number the questions in chronological sequence. If the legislature submits questions on different dates, the commission shall number the questions sequentially based on the date on which the questions are submitted by the legislature. Except as authorized in s. 5.655, state and county referenda shall appear on a separate ballot from municipal or special district referenda. The form of all referendum ballots shall be substantially the same as that prescribed by the commission under s. 7.08 (1) (a).

**History:**  1971 c. 304 s. 29 (2); 1977 c. 26, 427; 1979 c. 260; 1981 c. 79, 175, 377, 391; 1983 a. 484; 1985 a. 304; 1987 a. 391; 1989 a. 31, 192; 1991 a. 316; 1999 a. 182; 2005 a. 149; 2011 a. 23, 115; 2015 a. 118 s. 266 (10).

**5.65   Special referendum ballots.**  Unless otherwise provided, ballots for special referenda shall conform to the format prescribed under s. 5.64 (2), insofar as applicable.

**History:**  1983 a. 484; 1999 a. 182.

**5.655   Consolidated ballots. (1)**  Whenever a separate ballot is required to be used, a municipality may use a single ballot to facilitate the use of voting machines or an electronic voting system or, if the municipality employs paper ballots, may use a consolidated paper ballot that is authorized under sub. (2). If a municipality uses a single ballot in lieu of separate ballots, the ballot

shall include a separate column or row for any office, referendum or party for which a separate ballot is required by law and the ballot shall be distributed only to electors who are eligible to vote for all of the offices and referenda appearing on the ballot.

**(2)**  Whenever a municipality employing paper ballots is required to utilize separate ballots for certain offices, referenda or parties at an election, the municipality may, with the approval of the county clerk or board of election commissioners of each county in which there is located any portion of the municipality where one or more electors reside, substitute a single consolidated paper ballot or a ballot that is designed to be utilized with an electronic voting system, if the ballot contains all of the applicable information required to be provided for paper ballots at that election.

**(3)**  The commission shall prescribe notices and instructions to be given to electors who use a ballot that is authorized under sub. (2) in lieu of any notices and instructions that are applicable only to municipalities employing separate paper ballots.

**History:**  1999 a. 182; 2015 a. 118 s. 266 (10).

**5.66   Number of ballots.  (1)**  For local elections, where necessary, municipal clerks shall have sufficient ballots printed or otherwise prepared whenever a voting system does not utilize printed ballots to assure a ballot for all electors or voting machines. For all other elections the municipal clerks shall certify to their county clerk, on the first day of the 2nd month preceding the month in which the primary is held, the approximate number of electors in the municipality. The county clerk shall total these estimates and order a sufficient supply to assure ballots for all electors and voting machines.

**(2)**  The county clerk or board of election commissioners shall print a sufficient number of sample ballots. The municipal clerk or board of election commissioners shall print sample ballots whenever the municipality prepares ballots under s. 7.15 (2) (b) or (c). Sample ballots shall be printed on nonwhite colored paper and shall be overprinted "SAMPLE". Voting machine sample ballots shall be a reduced size diagram of the face of the board or screen inside the voting machine with all candidates, issues and voting instructions as they will appear on the official ballot. Sample ballots to be used with an electronic voting system in which ballots that are distributed to electors are used shall be an actual size copy of the ballot. The clerk or board of election commissioners printing the ballots shall distribute the samples approximately as follows: 45 percent shall be kept in the clerk's or board's office and distributed to electors requesting them; 45 percent shall be sent to the municipalities, or, if the municipality prints ballots, 45 percent shall be sent to the county for distribution to the electors; and 10 percent shall be reserved to be sent to the polling places by municipalities in proportion to the number certified in sub. (1) and made available to electors at the polls on election day.

**History:**  1979 c. 260, 311, 355; 1983 a. 484; 1987 a. 391; 2001 a. 16.

**5.68   Cost of elections.  (1)**  The cost of acquisition of ballot boxes and voting booths, voting machines or electronic voting systems and regular maintenance thereof shall be borne by the municipalities in which the boxes, booths, machines or systems are used.

**(2)**  Except as otherwise expressly provided, all costs for ballots, supplies, notices and any other materials necessary in preparing or conducting any election shall be paid for by the county or municipality whose clerk or board of election commissioners is responsible for providing them. If a ballot is prepared for a school, technical college, sewerage or sanitary district, the district shall pay for the cost of the ballot. If no other level of government is involved in a school, technical college, sewerage or sanitary

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 9

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 66 of 116

**1    Updated 23-24 Wis. Stats.**    **THE ELECTORS    6.06**

# CHAPTER 6

# THE ELECTORS

SUBCHAPTER I
WHO MAY VOTE

6.02    Qualifications, general.
6.03    Disqualification of electors.
6.05    Election day age determines elector's rights.
6.06    Information for uniformed service members.
6.10    Elector residence.
6.15    New residents; presidential voting.
6.18    Former residents.
6.20    Absent electors.
6.21    Deceased electors.
6.22    Absentee voting for military electors.
6.24    Federal overseas voting.
6.25    Write-in absentee ballot.

SUBCHAPTER II
REGISTRATION

6.27    Elector registration required.
6.275    Registration and voting statistics.
6.276    Federal absentee voting statistics.
6.28    Where and when to register.
6.29    Late registration in person.
6.30    How to register.
6.32    Verification of certain registrations.
6.325    Disqualification of electors.
6.33    Registration forms; manner of completing.
6.34    Proof of residence required.
6.35    Filing registration forms.
6.36    Official registration list.
6.45    Access to registration list.
6.46    Poll lists; copying.
6.47    Confidentiality of information relating to victims of domestic abuse, sexual assault, or stalking.
6.48    Challenging registration.
6.50    Revision of registration list.
6.54    Failure to register; rights.
6.55    Polling place registration; voting by certification.

6.56    Verification of voters not appearing on list.
6.57    Registration list for special elections.

SUBCHAPTER III
VOTING

6.76    Time off for voting.
6.77    Place for voting.
6.78    Poll hours.
6.79    Recording electors.
6.80    Mechanics of voting.
6.82    Assisting electors.

SUBCHAPTER IV
VOTING ABSENTEE

6.84    Construction.
6.85    Absent elector; definition.
6.855    Alternate absentee ballot site.
6.86    Methods for obtaining an absentee ballot.
6.865    Federal absentee ballots.
6.869    Uniform instructions.
6.87    Absent voting procedure.
6.875    Absentee voting in certain residential care facilities and retirement homes.
6.88    Voting and recording the absentee ballot.
6.89    Absent electors list public.

SUBCHAPTER V
CHALLENGING ELECTORS

6.92    Inspector making challenge.
6.925    Elector making challenge in person.
6.93    Challenging the absent elector.
6.935    Challenge based on incompetency.
6.94    Challenged elector oath.
6.95    Voting procedure for challenged electors.
6.96    Voting procedure for electors voting pursuant to federal court order.
6.965    Voting procedure for electors presenting citation or notice in lieu of license or receipt.
6.97    Voting procedure for individuals not providing required proof of identification or residence.

---

**NOTE:** **2005 Wis. Act 451, which made major revisions to the election laws, including to this chapter, contains an extensive prefatory note explaining the changes.**

**Cross-reference:** See definitions in s. 5.02.

## SUBCHAPTER I

## WHO MAY VOTE

**6.02 Qualifications, general. (1)** Every U.S. citizen age 18 or older who has resided in an election district or ward for 28 consecutive days before any election where the citizen offers to vote is an eligible elector.

**(2)** Any U.S. citizen age 18 or older who moves within this state later than 28 days before an election shall vote at his or her previous ward or election district if the person is otherwise qualified. If the elector can comply with the 28-day residence requirement at the new address and is otherwise qualified, he or she may vote in the new ward or election district.

**History:** 1971 c. 304 s. 29 (2); 1971 c. 336 s. 37; 1975 c. 85 ss. 5, 66 (3); 1977 c. 394; 1991 a. 316; 2011 a. 23.

An eligible elector and a qualified elector are identical. This chapter applies to annexation referendum elector qualifications under s. 66.021 (6) [now s. 66.0217 (10)]. Town of Washington v. City of Altoona, 73 Wis. 2d 250, 243 N.W.2d 404 (1976).

Constitutional Law—Equal Protection—Penalty on the Right to Travel—Durational Residence Requirements. Clifford. 1973 WLR 914.

**6.03 Disqualification of electors. (1)** The following persons shall not be allowed to vote in any election and any attempt to vote shall be rejected:

(a) Any person who is incapable of understanding the objective of the elective process or who is under guardianship, unless the court has determined that the person is competent to exercise the right to vote.

(b) Any person convicted of treason, felony or bribery, unless the person's right to vote is restored through a pardon or under s. 304.078 (3).

**(2)** No person shall be allowed to vote in any election in which the person has made or become interested, directly or indirectly, in any bet or wager depending upon the result of the election.

**(3)** No person may be denied the right to register to vote or the right to vote by reason that the person is alleged to be incapable of understanding the objective of the elective process unless the person has been adjudicated incompetent in this state. If a determination of incompetency of the person has already been made, or if a determination of limited incompetency has been made that does not include a specific finding that the subject is competent to exercise the right to vote, and a guardian has been appointed as a result of any such determination, then no determination of incapacity of understanding the objective of the elective process is required unless the guardianship is terminated or modified under s. 54.64.

**History:** 1973 c. 284; 1977 c. 26, 394; 1979 c. 110; 1991 a. 316; 2003 a. 121; 2005 a. 149, 387; 2007 a. 97; 2015 a. 197 s. 51.

Disenfranchisement of felons does not deny them equal protection. Richardson v. Ramirez, 418 U.S. 24, 94 S. Ct. 2655, 41 L. Ed. 2d 551 (1974).

**6.05 Election day age determines elector's rights.** Any person who will be 18 years old on or before election day is entitled to vote if the person complies with this chapter.

**History:** 1971 c. 336 s. 37; 1981 c. 390 s. 252; 1991 a. 316.

**6.06 Information for uniformed service members.** The

---

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 10

Updated 2023-24 Wis. Stats.  Published and certified under s. 35.18.  June 19, 2026.

USCA Case #26-5193     Document #2180381          Filed: 06/24/2026     Page 67 of 116

**6.15      THE ELECTORS**                                **Updated 23-24 Wis. Stats.      4**

died before the date of the election, the inspectors or board of absentee ballot canvassers shall return the ballot with defective ballots to the issuing official.

**History:** 1977 c. 394; 1979 c. 311; 1981 c. 391; 1983 a. 484; 1985 a. 304; 1987 a. 391; 1997 a. 250; 1999 a. 182; 2001 a. 16, 104; 2003 a. 265; 2005 a. 451; 2011 a. 23; 2013 a. 182.

2011 Wis. Act 23, which created requirements that voters present photo identification in order to vote at a polling place or obtain an absentee ballot, does not violate either section 2 of the federal Voting Rights Act, 52 USC 10301, or the U.S. Constitution. Frank v. Walker, 768 F.3d 744 (2014).

Increasing the durational residence requirement under sub. (1) from ten days to 28 days did not violate the U.S. Constitution. The 28-day window is close to the national norm and less than the 30-day window that is subject to a safe harbor for federal elections. States have valid and sufficient interests in providing for some period of time—prior to an election—in order to prepare adequate voter records and protect its electoral process from possible fraud. Luft v. Evers, 963 F.3d 665 (2020).

**6.18  Former residents.** If ineligible to qualify as an elector in the state to which the elector has moved, any former qualified Wisconsin elector may vote an absentee ballot in the ward of the elector's prior residence in any presidential election occurring within 24 months after leaving Wisconsin by requesting an application form and returning it, properly executed, to the municipal clerk of the elector's prior Wisconsin residence. When requesting an application form for an absentee ballot, the applicant shall specify the applicant's eligibility for only the presidential ballot. Unless the applicant is exempted from providing proof of identification under s. 6.87 (4) (b) 2. or 3., or the applicant is a military or overseas elector, the elector shall enclose a copy of his or her proof of identification or any authorized substitute document with his or her application. The municipal clerk shall verify that the name on the proof of identification conforms to the name on the application. The clerk shall not issue a ballot to an elector who is required to enclose a copy of proof of identification or an authorized substitute document with his or her application unless the copy is enclosed and the proof is verified by the clerk. The application form shall require the following information and be in substantially the following form:

This form shall be returned to the municipal clerk's office. Application must be received in sufficient time for ballots to be mailed and returned prior to any presidential election at which applicant wishes to vote. Complete all statements in full.

APPLICATION FOR PRESIDENTIAL

ELECTOR'S ABSENTEE BALLOT

(To be voted at the Presidential Election

on November ...., .... (year)

I, .... hereby swear or affirm that I am a citizen of the United States, formerly residing at .... in the .... ward .... aldermanic district (city, town, village) of ...., County of .... for 28 consecutive days prior to leaving the State of Wisconsin. I, .... do solemnly swear or affirm that I do not qualify to register or vote under the laws of the State of ....(State you now reside in) where I am presently residing. A citizen must be a resident of: State ....(Insert time) County ....(Insert time) City, Town or Village ....(Insert time), in order to be eligible to register or vote therein. I further swear or affirm that my legal residence was established in the State of ....(the State where you now reside) on .... Month .... Day .... Year.

Signed ....

Address ....(Present address)

....(City) ....(State)

Subscribed and sworn to before me this .... day of .... .... (year)

....(Notary Public, or other officer authorized to administer oaths.)

....(County)

My Commission expires

MAIL BALLOT TO:

NAME ....

ADDRESS ....

CITY .... STATE .... ZIP CODE ....

*Penalties for Violations.* Whoever swears falsely to any absent elector affidavit under this section may be fined not more than $1,000 or imprisoned for not more than 6 months or both. Whoever intentionally votes more than once in an election may be fined not more than $10,000 or imprisoned for not more than 3 years and 6 months or both.

....(Municipal Clerk)

....(Municipality)

**History:** 1971 c. 304 s. 29 (1), (2); 1975 c. 85 ss. 9, 66 (3); 1991 a. 316; 1997 a. 250; 2001 a. 107, 109; 2003 a. 321, 327; 2011 a. 23, 227.

2011 Wis. Act 23, which created requirements that voters present photo identification in order to vote at a polling place or obtain an absentee ballot, does not violate either section 2 of the federal Voting Rights Act, 52 USC 10301, or the U.S. Constitution. Frank v. Walker, 768 F.3d 744 (2014).

**6.20  Absent electors.** Any qualified elector of this state who registers may vote by absentee ballot under ss. 6.84 to 6.89.

**History:** 1985 a. 304; 2003 a. 265.

**6.21  Deceased electors.** When by due proof it appears to the inspectors or, in municipalities where absentee ballots are canvassed under s. 7.52, when by due proof it appears to the board of absentee ballot canvassers that a person casting an absentee ballot at an election has died before the date of the election, the inspectors or board of absentee ballot canvassers shall return the ballot with defective ballots to the issuing official. The casting of the ballot of a deceased elector does not invalidate the election.

**History:** 1985 a. 304; 2005 a. 451.

**6.22  Absentee voting for military electors. (1)** DEFINITIONS. In this section, except as otherwise provided:

(a) "Member of the merchant marine" means an individual, other than a member of a uniformed service or an individual employed, enrolled or maintained on the Great Lakes or the inland waterways, who is any of the following:

1. Employed as an officer or crew member of a vessel documented under the laws of the United States, or a vessel owned by the United States, or a vessel of foreign-flag registry under charter to or control of the United States.

2. Enrolled with the United States for employment or training for employment, or maintained by the United States for emergency relief service, as an officer or crew member of any such vessel.

(b) "Military elector" means any of the following:

1. Members of a uniformed service.

2. Members of the merchant marine of the United States.

3. Civilian employees of the United States and civilians officially attached to a uniformed service who are serving outside the United States.

4. Peace corps volunteers.

5. Spouses and dependents of those listed in the above categories residing with or accompanying them.

(c) "Uniformed service" means the U.S. army, navy, air force, marine corps or coast guard, the commissioned corps of the federal public health service or the commissioned corps of the national oceanic and atmospheric administration.

**(2)** APPLICATION AND VOTING PROCEDURE. (a) A military elector shall vote in the ward or election district for the address of his or her residence prior to becoming a military elector, except that:

1. A military elector voting in this state who is the spouse of another military elector and who did not maintain a residence in this state prior to becoming a military elector shall vote in the ward or election district for the address of his or her spouse.

***2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)***

Add. 11

2. A military elector voting in this state who is the dependent of another military elector and who did not maintain a residence in this state prior to becoming a military elector shall vote in the ward or election district for the address of the individual providing his or her support.

3. A military elector who is the spouse of another military elector and whose most recent residence in this state was different than the residence of his or her spouse prior to becoming a military elector may vote in the ward or election district for the address of his or her former residence or the ward or election district for the address of his or her spouse.

4. A military elector who is the dependent of another military elector and whose most recent residence in this state was different than the residence of the individual providing his or her support prior to becoming a military elector may vote in the ward or election district for the address of his or her former residence or the ward or election district for the address of the individual providing his or her support.

(b) A military elector shall make and subscribe to the certification under s. 6.87 (2) before a witness who is an adult.

(c) A federal postcard registration and absentee ballot request form may be used to apply for an absentee ballot under this section if the form is completed in such a manner that the municipal clerk or board of election commissioners with whom it is filed is able to determine all of the following:

1. That the applicant is qualified to vote in the ward or election district where he or she seeks to vote under par. (a).

2. That the applicant qualifies to receive an absentee ballot under this section.

(d) If an applicant uses a federal form under par. (c) to request an absentee ballot for all elections, the application shall so state.

(e) A military elector may file an application for an absentee ballot by means of electronic mail or facsimile transmission in the manner prescribed in s. 6.86 (1) (ac). Upon receipt of a valid application, the municipal clerk shall send the elector an absentee ballot or, if the elector is a military elector, as defined in s. 6.34 (1), and the elector so requests, shall transmit an absentee ballot to the elector by means of electronic mail or facsimile transmission in the manner prescribed in s. 6.87 (3) (d).

**(3)** REGISTRATION EXEMPT. Military electors are not required to register as a prerequisite to voting in any election.

**(4)** INSTRUCTIONS AND HANDLING. (a) Upon receiving a timely request for an absentee ballot under par. (b) by an individual who qualifies as a military elector, the municipal clerk shall send or, if the individual is a military elector as defined in s. 6.34 (1), shall transmit to the elector upon the elector's request an absentee ballot for all elections that occur in the municipality or portion thereof where the elector resides in the same calendar year in which the request is received, unless the individual otherwise requests.

(b) A military elector's application may be received at any time. The municipal clerk shall not send or transmit a ballot for an election if the application is received later than 5 p.m. on the Friday preceding that election. The municipal clerk shall send or transmit a ballot, as soon as available, to each military elector who files a timely request for a ballot.

(c) A military elector may indicate an alternate address on his or her absentee ballot application. If the elector's ballot is returned as undeliverable prior to the deadline for return of absentee ballots under s. 6.87 (6), and the elector remains eligible to receive absentee ballots under this section, the municipal clerk shall immediately send or, if the elector is a military elector as defined in s. 6.34 (1), transmit an absentee ballot to the elector at the alternate address.

(d) The commission shall prescribe the instructions for mark-

ing and returning ballots and the municipal clerk shall enclose instructions with each ballot and shall also enclose supplemental instructions for local elections. The envelope, return envelope and instructions may not contain the name of any candidate appearing on the enclosed ballots other than that of the municipal clerk affixed in the fulfillment of his or her duties.

(e) Whenever the material is mailed, the material shall be prepared and mailed to make use of the federal free postage laws. If the material does not qualify for mailing without postage under federal free postage laws, the municipal clerk shall pay the postage required for mailing to the military elector. If the return envelope qualifies for mailing free of postage under federal free postage laws, the clerk shall affix the appropriate legend required by U.S. postal regulations. Otherwise the municipal clerk shall pay the postage required for return when the ballot is mailed from within the United States. If the ballot is not mailed by the military elector from within the United States the military elector shall provide return postage.

(f) If the municipal clerk is reliably informed that an individual who requests an absentee ballot under this section is no longer a military elector or no longer resides in the municipality, or if the elector so requests, the clerk shall discontinue sending or transmitting absentee ballots to the elector under this subsection. If a military elector who has requested an absentee ballot changes his or her residence from the municipality where a request is filed to another municipality in this state, the municipal clerk of the municipality who received the request shall notify the clerk of the municipality to which the elector's residence is changed of the date of the request. The municipal clerk who is so notified shall treat the request as having been made to him or her.

(h) The municipal clerk shall notify a military elector of any action under par. (f) that is not taken at the elector's request within 5 days of taking that action, if possible.

**(5)** VOTING PROCEDURE. Except as authorized in s. 6.25, the ballot shall be marked and returned, deposited and recorded in the same manner as other absentee ballots. In addition, the certification under s. 6.87 (2) shall have a statement of the elector's birth date. Failure to return any unused ballots in a primary election does not invalidate the ballot on which the elector casts his or her votes.

**(6)** MILITARY ELECTOR LIST. Each municipal clerk shall keep an up-to-date list of all eligible military electors who reside in the municipality in the format prescribed by the commission. The list shall contain the name, latest-known military residence and military mailing address of each military elector. The list shall indicate whether each elector whose name appears on the list is a military elector, as defined in s. 6.34 (1), and has so certified under s. 6.865 (3m). All persons over 18 years of age or who will be 18 years old prior to an election shall be listed and remain on the list for the duration of their tour of duty. The list shall be kept current through all possible means. Each clerk shall exercise reasonable care to avoid duplication of names or listing anyone who is not eligible to vote. Each clerk shall distribute one copy of the list to the each polling place in the municipality for use on election day.

**(7)** EXTENSION OF PRIVILEGE. This section applies to all military electors for 28 days after the date of discharge from a uniformed service or termination of services or employment of individuals specified in sub. (1) (b) 1. to 4.

**History:** 1971 c. 304 s. 29 (2); 1971 c. 336 s. 37; 1973 c. 334 s. 57; 1975 c. 85 ss. 10, 66 (3); 1977 c. 394; 1979 c. 89, 311; 1981 c. 391; 1983 a. 484; 1985 a. 304; 1987 a. 391; 1989 a. 192; 1995 a. 313; 1999 a. 182; 2001 a. 16; 2005 a. 149, 451; 2011 a. 23, 75; 2015 a. 118 s. 266 (10); 2015 a. 261; 2017 a. 369.

**6.24 Federal overseas voting.** **(1)** DEFINITION. In this section, except as otherwise provided, "overseas elector" means a U.S. citizen who is not disqualified from voting under s. 6.03,

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 12

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 69 of 116

**6.24    THE ELECTORS**    **Updated 23-24 Wis. Stats.    6**

who has attained or will attain the age of 18 by the date of an election at which the citizen proposes to vote and who does not qualify as a resident of this state under s. 6.10, but who was last domiciled in this state or whose parent was last domiciled in this state immediately prior to the parent's departure from the United States, and who is not registered to vote or voting in any other state, territory or possession.

**(2)** ELIGIBILITY. An overseas elector may vote in any election for national office, including the partisan primary and presidential preference primary and any special primary or election. Such elector may not vote in an election for state or local office unless the elector qualifies as a resident of this state under s. 6.10. An overseas elector shall vote in the ward or election district in which the elector was last domiciled or in which the elector's parent was last domiciled prior to departure from the United States.

**(3)** REGISTRATION. The overseas elector shall register in the municipality where he or she was last domiciled or where the overseas elector's parent was last domiciled on a form prescribed by the commission designed to ascertain the elector's qualifications under this section. The commission shall ensure that the form is substantially similar to the original form under s. 6.33 (1), insofar as applicable. Registration shall be accomplished in accordance with s. 6.30 (4) or (5).

**(4)** REQUESTS. (a) An overseas elector who is properly registered may request an absentee ballot in writing under ss. 6.86 to 6.89.

(b) A federal postcard registration and absentee ballot request form may be used to apply for an absentee ballot under par. (a) if the form is completed in such manner that the municipal clerk or board of election commissioners with whom it is filed is able to determine all of the following:

1. That the applicant is an overseas elector under sub. (1).

2. That the applicant qualifies to vote in the ward or election district where he or she seeks to vote under sub. (2).

(c) Upon receipt of a timely application from an individual who qualifies as an overseas elector and who has registered to vote in a municipality under sub. (3), the municipal clerk of the municipality shall send, or if the individual is an overseas elector, shall transmit, an absentee ballot to the individual upon the individual's request for all subsequent elections for national office to be held during the year in which the ballot is requested, except as otherwise provided in this paragraph, unless the individual otherwise requests or until the individual no longer qualifies as an overseas elector of the municipality. The clerk shall not send an absentee ballot for an election if the overseas elector's name appeared on the registration list in eligible status for a previous election following the date of the application but no longer appears on the list in eligible status. The municipal clerk shall ensure that the envelope containing the absentee ballot is clearly marked as not forwardable. If an overseas elector who files an application under this subsection no longer resides at the same address that is indicated on the application form, the elector shall so notify the municipal clerk.

(d) An overseas elector, regardless of whether the elector qualifies as a resident of this state under s. 6.10, who is not registered may request both a registration form and an absentee ballot at the same time, and the municipal clerk shall send or transmit the ballot automatically if the registration form is received within the time prescribed in s. 6.28 (1). The commission shall prescribe a special certificate form for the envelope in which the absentee ballot for such overseas electors is contained, which shall be substantially similar to that provided under s. 6.87 (2). The overseas elector shall make and subscribe to the special certificate form before a witness who is an adult.

(e) An overseas elector, regardless of whether the elector qual-

ifies as a resident of this state under s. 6.10, may file an application for an absentee ballot by means of electronic mail or facsimile transmission in the manner prescribed in s. 6.86 (1) (ac). Upon receipt of a valid application, the municipal clerk shall send the elector an absentee ballot or, if the elector so requests, shall transmit an absentee ballot to the elector by means of electronic mail or facsimile transmission in the manner prescribed in s. 6.87 (3) (d).

**(5)** BALLOTS. The commission shall prescribe a special ballot for use under this section whenever necessary. Official ballots prescribed for use in the presidential preference primary may also be used. The ballot shall be designed to comply with the requirements prescribed under ss. 5.60 (8), 5.62, and 5.64 (1) insofar as applicable. All ballots shall be limited to national offices only.

**(6)** INSTRUCTIONS AND HANDLING. The municipal clerk shall send a ballot, as soon as available, to each overseas elector by whom a request has been made. The commission shall prescribe the instructions for marking and returning ballots and the municipal clerk shall enclose such instructions with each ballot. The envelope, return envelope and instructions may not contain the name of any candidate appearing on the enclosed ballots other than that of the municipal clerk affixed in the fulfillment of his or her duties. Except as authorized in s. 6.87 (3), the municipal clerk shall mail the material, with sufficient postage to ensure that the elector receives the ballot, unless the material qualifies for mailing free of postage under federal free postage laws. If the return envelope qualifies for mailing free of postage under federal free postage laws, the clerk shall affix the appropriate legend required by U.S. postal regulations. Otherwise, the municipal clerk shall pay the postage required for return when the ballot is mailed from within the United States. If the ballot is not mailed by the overseas elector from within the United States, the overseas elector shall provide return postage.

**(7)** VOTING PROCEDURE. Except as authorized under s. 6.25, the ballot shall be marked and returned, deposited and recorded in the same manner as other absentee ballots. In addition, the certificate shall have a statement of the elector's birth date. Failure to return the unused ballots in a primary election does not invalidate the ballot on which the elector casts his or her votes.

**History:** 1977 c. 394; 1979 c. 260, 311; 1985 a. 304; 1987 a. 391; 1989 a. 192; 1995 a. 313; 1997 a. 35; 1999 a. 182 ss. 68 to 75m, 224; 2001 a. 16; 2003 a. 24, 265; 2005 a. 451; 2011 a. 23, 45, 75; 2015 a. 118 s. 266 (10); 2015 a. 261; 2017 a. 369.

**6.25   Write-in absentee ballot. (1)** (a) Any individual who qualifies as a military elector under s. 6.22 (1) (b) and who transmits an application for an official absentee ballot for any election, including a primary election, no later than the latest time specified for the elector in s. 6.86 (1) (b) may, in lieu of the official ballot, cast a federal write-in absentee ballot prescribed under 42 USC 1973ff-2 for any candidate for an office listed on the official ballot or for all of the candidates of any recognized political party for the offices listed on the official ballot at that election if the federal write-in absentee ballot is received by the appropriate municipal clerk no later than the applicable time prescribed in s. 6.87 (6).

(b) Any individual who qualifies as an overseas elector, regardless of whether the elector qualifies as a resident of this state under s. 6.10, and who transmits an application for an official absentee ballot for an election, including a primary election, no later than the latest time specified for an elector in s. 6.86 (1) (b) may, in lieu of the official ballot, cast a federal write-in absentee ballot prescribed under 42 USC 1973ff-2 for any candidate or for all candidates of any recognized political party listed on the official ballot at that election, if the federal write-in absentee ballot is received by the appropriate municipal clerk no later than the applicable time prescribed in s. 6.87 (6).

(c) A completed and signed federal write-in absentee ballot

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 13

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 70 of 116

submitted by a qualified elector under par. (a) serves as an application for an absentee ballot and need not be accompanied by a separate application.

**(4)** A write-in absentee ballot issued under sub. (1) is valid only if the elector submitting the ballot does not submit an official ballot within the time prescribed in s. 6.87 (6) and, if the elector is an overseas elector, the elector resides outside the United States.

**History:** 1987 a. 391; 1989 a. 192; 2011 a. 75; 2013 a. 165; 2015 a. 261; 2017 a. 369.


SUBCHAPTER II

REGISTRATION

**Cross-reference:** See also ch. EL 3, Wis. adm. code.

**6.27    Elector registration required.** Each elector shall register under this chapter before voting in any election, except as authorized under ss. 6.15, 6.18, and 6.22.

**History:** 1973 c. 334 s. 57; 1977 c. 394; 1979 c. 260, 355; 1983 a. 484; 1985 a. 304; 1989 a. 192; 2003 a. 265.

**6.275    Registration and voting statistics. (1)** Except as provided in par. (f), no later than 30 days after each primary and election at which a state or national office is filled or a statewide referendum is held, including any special election, the municipal clerk or board of election commissioners shall submit electronically a report to the commission and the county clerk or board of election commissioners of each county in which the municipality is located specifying:

(a) The total number of electors residing in that county who voted in the municipality in that primary or election.

(b) The total number of electors of the municipality residing in that county who were preregistered on the deadline specified in s. 6.28 (1) (a), including valid mail registrations which are postmarked by that day and valid electronic registrations entered under s. 6.30 (5).

(c) The total number of electors of the municipality residing in that county who registered after the close of registration and prior to the day of the primary or election under ss. 6.29 and 6.86 (3) (a) 2.

(d) The total number of electors of the municipality residing in that county who registered on the day of the primary or election under ss. 6.55 and 6.86 (3) (a) 2.

(e) The total number of electors of the municipality voting absentee ballots at the primary or election.

(f) The total number of postcards sent by the municipal clerk or board of election commissioners under s. 6.56 (3), the total number of such postcards returned to the municipal clerk or board of election commissioners because the elector did not reside at the address given on the postcard, the total number of electors whose status was changed from eligible to ineligible on the registration list as a result of the audit under s. 6.56 (3), and the number of individuals referred to the district attorney under s. 6.56 (3). The municipal clerk or board of election commissioners shall provide the information described under this paragraph to the elections commission and the county clerk or county board of election commissioners at the earliest practicable time after, but no later than 90 days after, each primary and election at which a state or national office is filled or a statewide referendum is held, including any special election. The municipal clerk or board of election commissioners shall update the information described under this paragraph on a monthly basis and shall submit, on a monthly basis, any such updated information to the elections commission and the county clerk or county board of election commissioners.

**(2)** Upon receipt of each report filed under this section, the commission shall, within 7 days of receiving the report, publish the information on its Internet site. The commission shall update the information published under this subsection on a monthly basis.

**History:** 1979 c. 260; 1979 c. 355 ss. 12 to 14; 1983 a. 484; 1985 a. 304; 1989 a. 192; 1999 a. 182; 2001 a. 51; 2003 a. 265; 2005 a. 451; 2013 a. 148; 2015 a. 118, 261; 2017 a. 366.

**6.276    Federal absentee voting statistics. (1)** In this section, "military elector" has the meaning given in s. 6.34 (1).

**(2)** Within 30 days after each general election, each municipal clerk shall transmit to the commission a report of the number of absentee ballots transmitted by the clerk to absent military electors and overseas electors for that election and the combined number of those ballots that were cast by those electors in that election.

**(3)** Within 90 days after each general election, the commission shall compile the information contained in the reports received from municipal clerks under sub. (2) and transmit the information to the federal Election Assistance Commission.

**History:** 2003 a. 265; 2005 a. 451; 2015 a. 118 s. 266 (10); 2017 a. 369.

**6.28    Where and when to register. (1)** REGISTRATION DEADLINE; LOCATIONS. (a) Except as authorized in ss. 6.29, 6.55 (2), and 6.86 (3) (a) 2., registration in person for an election closes at 5 p.m. on the 3rd Wednesday preceding the election. Registrations made by mail under s. 6.30 (4) must be delivered to the office of the municipal clerk or postmarked no later than the 3rd Wednesday preceding the election. Electronic registration under s. 6.30 (5) for an election closes at 11:59 p.m. on the 3rd Wednesday preceding the election. The municipal clerk or board of election commissioners may assign election registration officials to register electors who apply for an in-person absentee ballot under s. 6.86 (1) (b) or to register electors at a polling place on election day or at a residential care facility, as defined under s. 6.875 (1) (bm).

(b) All applications for registration corrections and additions may be made throughout the year at the office of the city board of election commissioners, at the office of the municipal clerk, at the office of the county clerk, or at other locations provided by the board of election commissioners or the common council in cities over 500,000 population or by either or both the municipal clerk, or the common council, village or town board in all other municipalities. An elector who wishes to obtain a confidential listing under s. 6.47 (2) shall register at the office of the municipal clerk of the municipality where the elector resides.

**(4)** AT THE OFFICE OF THE COUNTY CLERK. Any person shall be given an opportunity to register to vote at the office of the county clerk for the county in which the person's residence is located. An applicant may complete the required registration form under s. 6.33. Unless the county clerk performs registration functions for the municipality where the elector resides under s. 6.33 (5) (b), the county clerk shall forward the form submitted by an elector to the appropriate municipal clerk, or to the board of election commissioners in cities over 500,000 population within 5 days of receipt. The clerk shall forward the form immediately whenever registration closes within 5 days of receipt.

**History:** 1971 c. 304 s. 29 (2); 1973 c. 166, 225, 334; 1975 c. 85, 199; 1977 c. 378, 394, 447; 1979 c. 32; 1981 c. 44 s. 3; 1981 c. 202 s. 23; 1983 a. 484; 1985 a. 304; 1989 a. 31, 192; 1991 a. 221; 1999 a. 49, 182; 2001 a. 38, 51; 2003 a. 265; 2005 a. 451; 2009 a. 302; 2011 a. 240; 2015 a. 261.

**6.29    Late registration in person. (1)** No names may be added to a registration list for any election after the close of registration, except as authorized under this section or s. 6.55 (2) or 6.86 (3) (a) 2. Any person whose name is not on the registration list but who is otherwise a qualified elector is entitled to vote at

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 14

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 71 of 116

**6.29**        **THE ELECTORS**                                    **Updated 23-24 Wis. Stats.**    **8**

the election upon compliance with this section, if the person complies with all other requirements for voting at the polling place.

**(2)** (a) Any qualified elector of a municipality who has not previously filed a registration form or whose name does not appear on the registration list of the municipality may register after the close of registration but not later than 5 p.m. or the close of business, whichever is later, on the Friday before an election at the office of the municipal clerk and at the office of the clerk's agent if the clerk delegates responsibility for electronic maintenance of the registration list to an agent under s. 6.33 (5) (b). The elector shall complete, in the manner provided under s. 6.33 (2), a registration form containing all information required under s. 6.33 (1). The registration form shall also contain the following certification: "I, ...., hereby certify that, to the best of my knowledge, I am a qualified elector, having resided at ... for at least 28 consecutive days immediately preceding this election, and I have not voted at this election". The elector shall also provide proof of residence under s. 6.34.

(am) The commission shall provide to each municipal clerk a list prepared for use at each municipal clerk's office showing the name and address of each person whose name appears on the list provided by the department of corrections under s. 301.03 (20m) as ineligible to vote on the date of the election, whose address is located in the municipality, and whose name does not appear on the registration list for that municipality. Prior to permitting an elector to register to vote under this subsection, the municipal clerk shall review the list. If the name of an elector who wishes to register to vote appears on the list, the municipal clerk shall inform the elector that the elector is ineligible to register to vote. If the elector maintains that he or she is eligible to vote in the election, the municipal clerk shall permit the elector to register to vote but shall mark the elector's registration form as "ineligible to vote per Department of Corrections." If the elector wishes to vote, the municipal clerk shall challenge the elector's ballot in the same manner as provided for inspectors who challenge ballots under s. 6.79 (2) (dm).

(b) Upon the filing of the registration form required by this section, the municipal clerk or clerk's agent under s. 6.33 (5) (b) shall enter the type of identifying document submitted by the elector as proof of residence, the name of the entity or institution that issued the identifying document, and, if the identifying document includes a number that applies only to the individual holding that document, the last 4 digits of that number on the registration form. If the number on the identifying document submitted by the elector has 6 or fewer digits, the clerk shall enter only the last 2 digits of that number. The municipal clerk or clerk's agent under s. 6.33 (5) (b) shall issue a certificate containing the name and address of the elector addressed to the inspectors of the proper ward or election district directing that the elector be permitted to cast his or her vote if the elector complies with all requirements for voting at the polling place. The certificate shall be numbered serially, prepared in duplicate and one copy preserved in the office of the municipal clerk.

(c) At the time he or she appears at the correct polling place, the elector shall deliver any certificate issued under par. (b) to the inspectors. If the elector applies for and obtains an absentee ballot, any certificate shall be annexed to and mailed with the absentee ballot to the office of the municipal clerk.

(d) The inspectors shall record the names of electors who present certificates in person or for whom certificates are presented with absentee ballots under this section on the list maintained under s. 6.56 (1). These names shall then be added to the registration list if the electors are qualified.

**History:** 1977 c. 394; 1987 a. 391; 1989 a. 192; 1999 a. 182; 2001 a. 51; 2003 a. 265; 2005 a. 451; 2007 a. 96; 2011 a. 23; 2013 a. 182; 2015 a. 118 s. 266 (10).

**6.30   How to register. (1)** IN PERSON. An elector shall apply for registration in person, except as provided under subs. (4) and (5) and s. 6.86 (3) (a) 2.

**(4)** BY MAIL. Any eligible elector may register by mail on a form prescribed by the commission and provided by each municipality. The form shall be designed to obtain the information required in s. 6.33 (1). The form shall contain a certification by the elector that all statements are true and correct. The form shall be prepostpaid for return when mailed at any point within the United States. The form shall be available in the municipal clerk's office and may be distributed by any elector of the municipality. The clerk shall mail a registration form to any elector upon written or oral request.

**(5)** BY ELECTRONIC APPLICATION. An eligible elector who holds a current and valid operator's license issued under ch. 343 or a current and valid identification card issued under s. 343.50 may register electronically in the manner prescribed by the commission. The commission shall maintain on the Internet a secure registration form that enables the elector to enter the information required under s. 6.33 (1) electronically. An elector who registers electronically under this subsection must authorize the commission to obtain from the department of transportation an electronic copy of the elector's signature, which signature shall constitute an affirmation that all information provided by the elector is correct and shall have the same effect as if the elector had signed the application personally. The commission shall include on the registration form a place for the elector to give this authorization. Upon submittal of the electronic application, the commission shall obtain from the department of transportation a copy of the electronic signature of the elector. The commission shall maintain the application on file and shall notify the municipal clerk or board of election commissioners of the municipality where the elector resides of its receipt of each completed application. The commission shall also permit any elector who has a current and valid operator's license issued to the elector under ch. 343 or a current and valid identification card issued under s. 343.50 to make changes in his or her registration at the same Internet site that is used by electors for original registration under this subsection. An elector shall attest to the correctness of any changes in the same manner as provided in this subsection for information entered on an application for original registration.

**History:** 1971 c. 249; 1975 c. 85 ss. 12, 65; 1975 c. 199, 200, 275, 422; 1977 c. 283, 394; 1983 a. 484; 1989 a. 192; 1999 a. 182; 2001 a. 51; 2003 a. 265; 2015 a. 118 s. 266 (10); 2015 a. 261.

**Cross-reference:** See also ch. EL 3, Wis. adm. code.

**6.32   Verification of certain registrations. (1)** Upon receipt of a registration form that is submitted by mail under s. 6.30 (4) or by electronic application under s. 6.30 (5), the commission or municipal clerk shall examine the form for sufficiency.

**(2)** If the form is insufficient to accomplish registration or the commission or clerk knows or has reliable information that the proposed elector is not qualified, the commission or clerk shall notify the proposed elector within 5 days, if possible, and request that the elector appear at the clerk's office or another registration location to complete a proper registration or substantiate the information presented.

**(3)** If the form is submitted later than the close of registration, the commission or clerk shall make a good faith effort to notify the elector that he or she may register at the clerk's office under s. 6.29 or at the proper polling place or other location designated under s. 6.55 (2).

**(4)** If the form is sufficient to accomplish registration and the commission or clerk has no reliable information to indicate that the proposed elector is not qualified, the commission or clerk shall enter the elector's name on the registration list and transmit a 1st class letter or postcard to the registrant, specifying the elec-

***2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)***

Add. 15

USCA Case #26-5193     Document #2180381         Filed: 06/24/2026     Page 72 of 116

tor's ward or aldermanic district, or both, if any, and polling place. The letter or postcard shall be sent within 10 days of receipt of the form. If the letter or postcard is returned, or if the commission or clerk is informed of a different address than the one specified by the elector, the commission or clerk shall change the status of the elector on the list from eligible to ineligible. The letter or postcard shall be marked in accordance with postal regulations to ensure that it will be returned to the commission or clerk if the elector does not reside at the address given on the letter or postcard.

**History:** 1975 c. 85, 199; 1977 c. 394; 1979 c. 260; 1983 a. 484; 2003 a. 265; 2005 a. 451; 2015 a. 261.

**6.325   Disqualification of electors.** No person may be disqualified as an elector unless the municipal clerk, board of election commissioners or a challenging elector under s. 6.48 demonstrates beyond a reasonable doubt that the person does not qualify as an elector or is not properly registered. If it appears that the challenged elector is registered at a residence in this state other than the one where the elector now resides, the municipal clerk or board of election commissioners shall, before permitting the elector to vote, require the elector to properly register and shall notify the municipal clerk or board of election commissioners at the former residence. The municipal clerk or board of election commissioners may require naturalized applicants to show their naturalization certificates.

**History:** 1983 a. 484 s. 37; 1985 a. 304; 2003 a. 265; 2015 a. 261.

**6.33   Registration forms; manner of completing.   (1)** The commission shall prescribe the format, size, and shape of registration forms. All nonelectronic forms shall be printed and each item of information shall be of uniform font size, as prescribed by the commission. Except as otherwise provided in this subsection, electronic forms shall contain the same information as nonelectronic forms. The municipal clerk shall supply sufficient forms to meet voter registration needs. The commission shall design the form to obtain from each elector information as to name; date; residence location; location of previous residence immediately before moving to current residence location; citizenship; date of birth; age; the number of a current and valid operator's license issued to the elector under ch. 343 or the last 4 digits of the elector's social security account number; whether the elector has resided within the ward or election district for the number of consecutive days specified in s. 6.02 (1); whether the elector has been convicted of a felony for which he or she has not been pardoned, and if so, whether the elector is incarcerated, or on parole, probation, or extended supervision; whether the elector is disqualified on any other ground from voting; and whether the elector is currently registered to vote at any other location. The commission shall include on the nonelectronic form a space for the elector's signature and on the electronic form the authorization specified under s. 6.30 (5). Below the space for the signature or authorization, respectively, the commission shall include the following statement: "Falsification of information on this form is punishable under Wisconsin law as a Class I felony." The commission shall include on the form a space to enter the name of any inspector, municipal clerk, or deputy clerk under s. 6.55 (2) who obtains the form and a space for the inspector, clerk, or deputy clerk to sign his or her name, affirming that the inspector, clerk, or deputy clerk has accepted the form. The commission shall include on the form a space for entry of the ward and aldermanic district, if any, where the elector resides and any other information required to determine the offices and referenda for which the elector is certified to vote. The commission shall also include on the form a space where the clerk may record an indication of whether the form is received by mail or by electronic application, a space where the clerk shall record an indication of the type of identifying document submitted by the elector as proof of resi-

dence under s. 6.34 or an indication that the elector's information in lieu of proof of residence was verified under s. 6.34 (2m), the name of the entity or institution that issued the identifying document, and, if the identifying document includes a number that applies only to the individual holding that document, that number. The commission shall also include on the form a space where the clerk, for any elector who possesses a valid voting identification card issued to the person under s. 6.47 (3), may record the identification serial number appearing on the voting identification card. Each county clerk shall obtain sufficient registration forms for completion by an elector who desires to register to vote at the office of the county clerk under s. 6.28 (4).

**(2)** (a) All information may be recorded by any person, except that the clerk shall record the ward and aldermanic district, if any, other geographic information under sub. (1), the indication of whether the registration is received by mail, and the type of identifying document submitted by the elector as proof of residence under s. 6.34. Except as provided in s. 6.30 (5), each elector shall sign his or her own name unless the elector is unable to sign his or her name due to physical disability. In such case, the elector may authorize another elector to sign the form on his or her behalf. If the elector so authorizes, the elector signing the form shall attest to a statement that the application is made upon request and by authorization of a named elector who is unable to sign the form due to physical disability.

(b) Except as provided in s. 6.86 (3) (a) 2., the registration form shall be signed by the registering elector before the clerk, issuing officer or election registration official. The form shall contain a certification by the registering elector that all statements are true and correct.

**(4)** When an individual's registration is changed from eligible to ineligible status, the municipal clerk or board of election commissioners shall enter the date and reason for change on the registration list.

**(5)** (a) 1. Except as provided in par. (b) and this paragraph, whenever a municipal clerk receives a valid registration or valid change of a name or address under an existing registration or changes a registration from eligible to ineligible status the municipal clerk or the clerk's designee shall promptly enter electronically on the list maintained by the commission under s. 6.36 (1) the information required under that subsection.

2. Except as provided in par. (b) and this paragraph, whenever a municipal clerk mails an absentee ballot to an elector or receives an in-person absentee ballot application or an absentee ballot the municipal clerk shall, no later than 48 hours after mailing an absentee ballot or receiving an in-person absentee ballot application or an absentee ballot, enter electronically on the list maintained by the commission under s. 6.36 (1) the information required under that subsection or submit the information to the clerk's designee who shall, no later than 24 hours after receiving the information from the clerk, enter electronically on the list maintained by the commission under s. 6.36 (1) the information required under that subsection. If a deadline under this subdivision falls on a Saturday or Sunday, the deadline is extended to the next business day.

3. Except as provided in par. (b) and this paragraph, the municipal clerk or the clerk's designee shall update any entries that change on the date of an election other than a general election within 30 days after the date of that election, and shall update any entries that change on the date of a general election within 45 days after the date of that election. The commission administrator may, upon request of a municipal clerk permit the clerk to update entries that change on the date of a general election within 60 days after that election.

4. The municipal clerk shall provide to the commission infor-

***2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)***

Add. 16

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 73 of 116
**6.33**        **THE ELECTORS**                                    **Updated 23-24 Wis. Stats.    10**

mation that is confidential under s. 6.47 (2) in such manner as the commission prescribes.

(b) The municipal clerk of any municipality may, by mutual consent, designate any other municipal clerk or any county clerk as the clerk's agent to carry out the functions of the municipal clerk under this section for that municipality. The municipal clerk shall notify the county clerk of each county in which the municipality is located and the commission of any such designation in writing. The municipal clerk may, by similar notice to the clerk's agent at least 14 days prior to the effective date of any change, discontinue the designation. If the municipal clerk designates another municipal clerk or a county clerk as his or her agent, the municipal clerk shall immediately forward all registration changes filed with the clerk and voting record information obtained by the clerk to the clerk's agent for electronic entry on the registration list.

**History:** 1971 c. 304 s. 29 (1), (2); 1971 c. 336 s. 37; 1975 c. 85 ss. 15, 16, 17, 66 (3); 1975 c. 94 s. 91; 1977 c. 378, 394, 447; 1979 c. 32; 1981 c. 44 s. 3; 1981 c. 202 s. 23; 1985 a. 304; 1987 a. 391; 1989 a. 31, 192; 1999 a. 49, 182; 2001 a. 51; 2003 a. 265; 2005 a. 451; 2007 a. 96; 2011 a. 23; 2013 a. 182; 2015 a. 118 ss. 72, 266 (10); 2015 a. 261.

**Cross-reference:** See also s. EL 3.02, Wis. adm. code.

**6.34  Proof of residence required.  (1)** In this section, "military elector" means a member of a uniformed service on active duty who, by reason of that duty, is absent from the residence where the member is otherwise qualified to vote; a member of the merchant marine, as defined in s. 6.22 (1) (a), who by reason of service in the merchant marine, is absent from the residence where the member is otherwise qualified to vote; or the spouse or dependent of any such member who, by reason of the duty or service of the member, is absent from the residence where the spouse or dependent is otherwise qualified to vote.

**(2)** Except as provided in sub. (2m), upon completion of a registration form prescribed under s. 6.33, each eligible elector who is required to register under s. 6.27, who is not a military elector or an overseas elector, shall provide an identifying document that establishes proof of residence under sub. (3). If the elector registered by mail or by electronic application, the identifying document may not be a residential lease.

**(2m)** An elector who registers by electronic application under s. 6.30 (5) is not required to provide proof of residence under sub. (2) if, at the time of registration, the elector provides the number of a current and valid operator's license issued under ch. 343, or the number of a current and valid identification card issued under s. 343.50, together with the elector's name and date of birth and the commission is able to verify the information specified under sub. (3) (b) using the system maintained under sub. (4).

**(3)** (a) An identifying document used to establish proof of an elector's residence under sub. (2) shall contain the information required under par. (b) and is limited to one of the following:

1. A current and valid operator's license issued under ch. 343.

2. A current and valid identification card issued under s. 343.50.

3. Subject to s. 66.0438, any other official identification card or license issued by a Wisconsin governmental body or unit.

4. An official identification card or license issued by an employer in the normal course of business that contains a photograph of the cardholder or license holder, but not including a business card.

5. A real property tax bill or receipt for the current year or the year preceding the date of the election.

6. Except as provided in sub. (2), a residential lease.

7. Any of the following documents without the address specified in par. (b):

a. A university, college, or technical college identification card that contains a photograph of the cardholder together with a fee payment receipt issued to the cardholder by the university, college, or technical college dated no earlier than 9 months before the date of the election at which the receipt is presented.

b. An identification card issued by a university, college, or technical college that contains a photograph of the cardholder if the university, college, or technical college that issued the card provides a certified and current list of students who reside in housing sponsored by the university, college, or technical college and who are U.S. citizens to the municipal clerk prior to the election showing the current address of the students and if the municipal clerk, election registration official, or inspector verifies that the student presenting the card is included on the list.

8. A utility bill for the period commencing not earlier than 90 days before the day registration is made.

9. A bank statement.

10. A paycheck.

11. A check or other document issued by a unit of government.

12. For an occupant of a residential care facility, as defined in s. 6.875 (1) (bm), for the purpose of registering at the facility, a contract or intake document prepared by the residential care facility that specifies that the occupant currently resides in the facility. The contract or intake document may also identify the room or unit in which the occupant resides.

13. An identification card issued by a federally recognized Indian tribe in this state.

(b) Except as provided in par. (a) 7., the identifying documents prescribed in par. (a) shall contain all of the following in order to be considered proof of residence:

1. A current and complete name, including both the given and family name.

2. A current and complete residential address, including a numbered street address, if any, and the name of a municipality.

(c) Identifying documents specified in par. (a) which are valid for use during a specified period must be valid on the day that an elector makes application for registration in order to constitute proof of residence.

**(4)** The commission shall maintain a system that electronically verifies, on an instant basis, information specified under sub. (3) (b) from the information submitted in lieu of proof of residence under sub. (2m), using the information maintained by the department of transportation pursuant to the commission's agreement with the secretary of transportation under s. 85.61 (1). If a prospective elector enters information specified under sub. (3) (b) 2. into the system that does not match such information maintained by the department of transportation, the system shall redirect the elector to the department of transportation's Internet site so that the elector may update his or her information with the department of transportation.

**History:** 2005 a. 451 ss. 40, 43, 44; 2011 a. 23; 2013 a. 182; 2015 a. 261, 374; 2017 a. 226; 2017 a. 365 s. 111; 2017 a. 369.

Under sub. (3) (a) 7. b., students who want to prove residence using an educational institution's dormitory list may do so only if the list contains citizenship information. Federal law preempts the requirement that college and university "dorm lists" include citizenship information. The federal Family Educational Rights and Privacy Act, 20 USC 1232g (FERPA), prohibits educational agencies or institutions from releasing personally identifiable information other than directory information, which does not include citizenship status. Thus, FERPA precludes the state from requiring educational agencies and institutions to include citizenship information on certified lists of students who reside in sponsored housing. Luft v. Evers, 963 F.3d 665 (2020).

2013 Wis. Act 182's requirement for documentary proof of residence and 2011 Wis. Act 23's elimination of proof by other persons' corroboration impose slight burdens on voters and do not violate the U.S. Constitution. Because sub. (3) (a) 11. authorizes proof via any document issued by a unit of government, clerks may mail a letter to a voter's address so that the letter itself suffices as proof. Also, the former Government Accountability Board issued a ruling requiring election officials to accept electronic versions of proof of residence. Wisconsin's election system is gener-

**2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)**

Add. 17

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 74 of 116

**11    Updated 23-24 Wis. Stats.**    **THE ELECTORS    6.36**

ous in permitting same-day registration at the polling place. Proof of residence helps assign voters to their proper districts and is valid for that reason alone. Luft v. Evers, 963 F.3d 665 (2020).

**6.35    Filing registration forms. (1)** Under the direction of the municipal clerk or board of election commissioners, the original registration forms shall be filed in one of the following ways, except as provided in subs. (1m) and (2):

(a) In alphabetical order of the electors' names.

(b) In alphabetical order according to street names, in numerical order on each street and in alphabetical order of the electors' names at each address on the street.

**(1m)** Original registration forms of electors who have obtained a confidential listing under s. 6.47 (2) shall be filed in alphabetical order after the forms of the other electors.

**(2)** The commission shall prescribe, by rule, the procedure and methods by which municipal clerks and boards of election commissioners shall maintain records of registrations that are entered electronically under s. 6.30 (5).

**(3)** Original registration forms shall be maintained in the office of the municipal clerk or board of election commissioners at all times.

**History:** 1971 c. 249; 1971 c. 304 s. 29 (2); 1971 c. 336; 1975 c. 85; 1977 c. 394; 1983 a. 484; 1985 a. 304; 1989 a. 192; 1999 a. 49; 2003 a. 265, 326; 2015 a. 261.

**6.36    Official registration list. (1)** (a) The commission shall compile and maintain electronically an official registration list. The list shall contain all of the following:

1. The name and address of each registered elector in the state.

2. The elector's date of birth.

3. The ward and aldermanic district of the elector, if any.

4. For each elector, a unique registration identification number assigned by the commission.

5. The number of a valid operator's license issued to the elector under ch. 343, if any, or the last 4 digits of the elector's social security account number, if any.

6. Any identification serial number issued to the elector under s. 6.47 (3).

7. The date of any election in which the elector votes.

8. An indication of whether the elector is an overseas elector, as defined in s. 6.24 (1).

9. Any information relating to the elector that appears on the current list transmitted to the commission by the department of corrections under s. 301.03 (20m).

10. An indication of any accommodation required under s. 5.25 (4) (a) to permit voting by the elector.

11. An indication of the method by which the elector's registration form was received.

12. An indication of whether the elector was required under s. 6.34 to provide proof of residence and, if so, the type of identifying document submitted as proof of residence, the name of the entity or institution that issued the identifying document, and, if the identifying document included a number that applies only to the individual holding that document, up to the last 4 digits of that number. If the number on the identifying document submitted by the elector had 6 or fewer digits, the list under this paragraph may not contain more than the last 2 digits of that number.

13. A separate column indicating the date on which an elector applied to vote by in-person absentee ballot.

14. Separate columns indicating the date on which the clerk mailed an absentee ballot to an elector and the date on which the elector returned the absentee ballot.

15. A separate column indicating the polling location associ-

ated with each elector's address and ward or aldermanic district, if any.

16. A separate column indicating the mailing address for the municipal clerk associated with each polling location identified under subd. 15.

(ae) 1. The chief election officer shall enter into a membership agreement with Electronic Registration Information Center, Inc., for the purpose of maintaining the official registration list under this section. Prior to entering into an agreement under this subdivision, the chief election officer shall ensure that the agreement satisfies all of the following conditions:

a. It safeguards the confidentiality of information or data in the registration list that may be subject to transfer under the agreement and to which access is restricted under par. (b) 1. a.

b. It prohibits the sale or distribution of the information or data in the registration list to a 3rd-party vendor and it prohibits any other action not associated with administration of or compliance with the agreement.

c. It does not affect the exemption for this state under the national voter registration act.

d. It allows the state to make contact with electors by electronic mail, whenever possible.

2. If the chief election officer enters into an agreement under subd. 1., the chief election officer shall comply with the terms of the agreement, including the transmission of information and data related to the registration of electors in this state to the Electronic Registration Information Center, Inc., for processing and sharing with other member states and governmental units.

(am) The list under par. (a) may contain such other information as may be determined by the commission to facilitate administration of elector registration requirements.

(b) 1. The list shall be open to public inspection under s. 19.35 (1) and shall be electronically accessible by any person, except that:

a. Except as provided in pars. (ae), (bm), and (bn), no person other than an employee of the commission, a county clerk, a deputy county clerk, an executive director of a county board of election commissioners, a deputy designated by the executive director, a municipal clerk, a deputy municipal clerk, an executive director of a city board of election commissioners, or a deputy designated by the executive director may view the date of birth, operator's license number, or social security account number of an elector, the address of an elector to whom an identification serial number is issued under s. 6.47 (3), or any indication of an accommodation required under s. 5.25 (4) (a) to permit voting by an elector.

b. No person other than an employee of the commission, a municipal clerk, or an election official who is authorized by a municipal clerk may make a change in the list.

2. The list shall be electronically accessible by name and shall also be accessible in alphabetical order of the electors' names for the entire state and for each county, municipality, ward, and combination of wards authorized under s. 5.15 (6) (b).

(bm) The commission or any municipal clerk or board of election commissioners may transfer any information in the registration list to which access is restricted under par. (b) 1. a. to a law enforcement agency, as defined in s. 165.77 (1) (b), to be used for law enforcement purposes.

(bn) The commission may transfer any information in the registration list to which access is restricted under par. (b) 1. a. to a subunit of the state government of another state to be used for official purposes.

(c) The list shall be designed in such a way that the municipal clerk or board of election commissioners of any municipality and

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193     Document #2180381          Filed: 06/24/2026     Page 75 of 116

**6.36**          **THE ELECTORS**                                    **Updated 23-24 Wis. Stats.   12**

any election official who is authorized by the clerk or executive director of the board of election commissioners may, by electronic transmission, add entries to or change entries on the list for any elector who resides in, or who the list identifies as residing in, that municipality and no other municipality.

(d) Upon receipt of official notification by the appropriate election administrative authority of another state, territory, or possession that an elector whose name appears on the list has registered to vote in that state, territory, or possession, the commission or the municipal clerk of the municipality where the elector formerly resided shall change the elector's registration from eligible to ineligible status.

(e) If the commission adds the name of any elector to the list, the commission shall promptly notify the municipal clerk of the municipality where the elector resides. If the commission changes the registration of any elector from eligible to ineligible status, the commission shall promptly notify the municipal clerk of the municipality where the elector resides or, if the elector has changed his or her residence from one municipality to another municipality in this state, shall promptly notify the municipal clerk of the municipality where the elector resided prior to the change. Notification shall be made in writing or by electronic transmission. If the commission changes the registration of any elector from eligible to ineligible status, the commission shall make an entry on the list giving the date of and the reason for the change.

(f) The commission shall make all reasonable efforts to ensure that the list is maintained in a manner that precludes unauthorized persons from making alterations to the list.

(2) (a) Except as provided in par. (b), each registration list prepared for use as a poll list at a polling place or for purposes of canvassing absentee ballots at an election shall contain the full name and address of each registered elector; a blank column for the entry of the serial number of the electors when they vote or the poll list number used by the municipal board of absentee ballot canvassers in canvassing absentee ballots; an indication next to the name of each elector for whom proof of residence under s. 6.34 is required; a space for entry of the type of and the name of the entity or institution that issued the identifying document submitted by the elector as proof of residence when proof of residence under s. 6.34 is required; a space for entry of the elector's signature, or if another person signed the elector's registration form for the elector by reason of the elector's physical disability, the word "exempt"; and a form of certificate bearing the certification of the commission administrator stating that the list is a true and complete registration list of the municipality or the ward or wards for which the list is prepared. The commission shall, by rule, prescribe the space and location for entry of each elector's signature on the poll list which shall provide for entry of the signature without changing the orientation of the poll list from the orientation used by the election officials.

(b) If an elector obtains a confidential listing under s. 6.47 (2), the registration list shall be prepared such that the address of the elector does not appear on copies of the list that are used at polling places.

(c) The list shall contain, next to the name of each elector, an indication of whether proof of residence under s. 6.34 is required for the elector to be permitted to vote. If proof of residence is provided, the type of identifying document submitted by the elector and the name of the entity or institution that issued the identifying document, or an indication that the information provided by the elector in lieu of proof of residence was verified under s. 6.34 (2m), shall be entered on the list in the space provided. Except as provided in s. 6.34 (2m), proof of residence is required if the elector is not a military elector or an overseas elector and the elector

registers by mail or by electronic application and has not previously voted in an election in this state.

(3) The original registration forms shall be controlling whenever discrepancies occur in entering information from the forms under s. 6.33 (5).

(4) The names and identification serial numbers of electors who have obtained a confidential listing under s. 6.47 (2) shall appear separately after the remainder of the list. These names and serial numbers shall be arranged alphabetically by last name.

(6) The commission shall establish by rule the fee for obtaining a copy of the official registration list, or a portion of the list, including access to the subscription service established under s. 5.05 (14) (b). The amount of the fee shall be set, after consultation with county and municipal election officials, at an amount estimated to cover both the cost of reproduction and the cost of maintaining the list at the state and local level. The rules shall require that revenues from fees received be shared between the state and municipalities or their designees under s. 6.33 (5) (b), and shall specify a method for such allocation.

**History:** 1971 c. 304 s. 29 (2); 1975 c. 85; 1977 c. 394 ss. 21, 22, 53; 1999 a. 49; 2003 a. 265, 327; 2005 a. 451; 2007 a. 1, 52, 96; 2011 a. 23, 75; 2013 a. 182; 2015 a. 118 ss. 73 to 75, 266 (10); 2015 a. 261; 2017 a. 366.
**Cross-reference:** See also s. EL 3.50, Wis. adm. code.

**6.45  Access to registration list. (1)** After the deadline for revision of the registration list, the municipal clerk shall make copies of the list for election use.

**(1m)** The registration list and any supplemental lists which are prepared at polling places or other registration locations under s. 6.55, shall be open to public inspection. Under the regulations prescribed by the municipal clerk, any person may copy the registration list at the office of the clerk. A registration list maintained at a polling place may be examined by any person who is observing the proceedings under s. 7.41 when such use does not interfere with the conduct of the election. This subsection does not apply to information that is confidential under s. 6.47.

**(2)** The municipal clerk shall furnish upon request to each candidate who has filed nomination papers for an office which represents at least part of the residents of the municipality one copy of the current registration list for those areas for which he or she is a candidate for a fee not to exceed the cost of reproduction. The clerk shall exclude information that is confidential under s. 6.47 (2) from copies of the list, except as authorized under s. 6.47 (8).

**History:** 1975 c. 85, 199; 1977 c. 394 s. 53; 1983 a. 484; 1989 a. 192; 1999 a. 49, 182; 2001 a. 38; 2013 a. 166.
**Cross-reference:** See also s. EL 3.50, Wis. adm. code.

**6.46  Poll lists; copying. (1)** Poll lists shall be preserved by the municipal clerk until destruction or other disposition is authorized under s. 7.23.

**(2)** Poll lists shall be open to public inspection, except as provided in s. 6.47. The municipal clerk shall furnish upon request to each candidate who has filed nomination papers for an office which represents at least part of the municipality one copy of the current poll list for those areas for which he or she is a candidate for a fee not to exceed the cost of reproduction. If a copying machine is not accessible, the clerk shall remove the lists from the office for the purposes of copying, and return them immediately thereafter. The clerk shall exclude information that is confidential under s. 6.47 (2) from copies of the list, except as authorized under s. 6.47 (8).

**History:** 1975 c. 85, 199; 1999 a. 49.
**Cross-reference:** See also s. EL 3.50, Wis. adm. code.

**6.47  Confidentiality of information relating to victims of domestic abuse, sexual assault, or stalking. (1)** In this section:

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 19

USCA Case #26-5193     Document #2180381          Filed: 06/24/2026     Page 76 of 116

(ag)  "Domestic abuse victim service provider" means an organization that is certified by the department of children and families as eligible to receive grants under s. 49.165 (2) and whose name is included on the list provided by the commission under s. 7.08 (10).

(am)  "Eligible individual" means:

1.  An individual who has been granted a protective order that is in effect.

2.  An individual who files an affidavit with the municipal clerk of the municipality where the individual resides, on a form prescribed by the commission, that is signed by a sheriff, the chief of a police department, or a district attorney or the authorized representative of a sheriff, chief, or district attorney and directed to the municipal clerk, and that verifies that a person has been charged with or convicted of an offense relating to domestic abuse, sexual assault, or stalking in which the individual was a victim and reasonably continues to be threatened by that person.

3.  An individual who resides in a shelter.

4.  An individual who submits a dated statement to the municipal clerk that includes the individual's full name, that is signed by an authorized representative of a domestic abuse victim service provider or a sexual assault victim service provider, and that indicates that the individual received services from the provider within the 24-month period ending on the date of the statement.

5.  An individual who is a participant in the program established in s. 165.68.

(b)  "Offense relating to domestic abuse, sexual assault, or stalking" means an offense specified in s. 940.22, 940.225, 940.235, 940.32, 940.60, 940.61 (1), 940.62 (2) (a), 947.013, 947.016 (1), 948.02, 948.025, 948.06, 948.085, 948.09, or 948.095 or s. 940.19, 2023 stats., s. 940.20 (1m), 2023 stats., or s. 940.201, 2023 stats.

(c)  "Protected individual" means an individual whose name and address is confidential under sub. (2).

(d)  "Protective order" means a temporary restraining order or an injunction issued under s. 813.12 or 813.125.

(dm)  "Sexual assault victim service provider" means an organization that is certified by the department of justice as eligible to receive grants under s. 165.93 (2) and whose name is included on the list provided by the commission under s. 7.08 (10).

(e)  "Shelter" means a place where at least 4 unrelated individuals reside that provides residential shelter to individuals whose personal security is or may be threatened by family members or other persons with whom the individuals have had contact.

**(2)**  Except as authorized in sub. (8), the commission, each municipal clerk, each agent designated under s. 6.33 (5) (b), and each election official shall withhold from public inspection under s. 19.35 (1) the name and address of any eligible individual whose name appears on a poll list or registration list if the individual provides the municipal clerk with a valid written request to protect the individual's confidentiality.  To be valid, a request under this subsection must be accompanied by a copy of a protective order that is in effect, an affidavit under sub. (1) (am) 2. that is dated within 30 days of the date of the request, confirmation from the department of justice that the person is a program participant, as provided under s. 165.68 (4) (c), a statement signed by the operator or an authorized agent of the operator of a shelter that is dated within 30 days of the date of the request and that indicates that the operator operates the shelter and that the individual making the request resides in the shelter, or a statement signed by an authorized representative of a domestic abuse victim service provider or a sexual assault victim service provider under sub. (1) (am) 4. that is dated within 30 days of the date of the request.  A physically disabled individual who appears personally at the office of the municipal clerk accompanied by another elector of this state may designate that elector to make a request under this subsection on his or her behalf.

**(3)**  Upon receiving a valid written request from an elector under sub. (2), the municipal clerk shall issue to the elector a voting identification card on a form prescribed by the commission that shall contain the name of the elector's municipality of residence and, in the case of a town, the county in which the town is located, the elector's name, the ward in which the elector resides, if any, and a unique identification serial number issued by the commission.  The number issued to an elector under this subsection shall not be changed for so long as the elector continues to qualify for a listing under sub. (2).

**(4)**  (a)  Except as provided in par. (b) and sub. (5), a confidential listing under sub. (2) expires on the date that a protective order expires, the date that the protected individual ceases to reside in a shelter, the date that updated information is received from a sheriff, the chief of a police department, or a district attorney or the authorized representative of a sheriff, chief, or district attorney, or at the end of the 24-month period that follows creation or renewal of the listing under sub. (2), whichever is earlier.

(b)  A confidential listing under sub. (2) that is issued to a program participant expires on the date the individual's participation in the program expires pursuant to s. 165.68 (3) (b) 4. a. or on the date the individual cancels his or her participation in the program pursuant to s. 165.68 (3) (b) 4. f. or is disenrolled from the program pursuant to s. 165.68 (3) (b) 4. e.

**(5)**  (a)  The municipal clerk shall cancel a confidential listing under sub. (2) if:

1.  The clerk receives notification from a sheriff, chief of police, or district attorney or the authorized representative of a sheriff, chief, or district attorney under sub. (10).

2.  The name of the protected individual is legally changed.

3.  The protected individual changes his or her address without notifying the municipal clerk.

4.  The municipal clerk finds that the protected individual provided false information to the clerk for the purpose of obtaining a confidential listing under sub. (2).

(b)  An individual whose confidential listing is canceled under par. (a) may file a new request and qualify under sub. (2) to obtain a renewal of the listing.

**(6)**  Upon expiration of a confidential listing on a registration list under sub. (2), the municipal clerk shall change the registration of the protected individual to ineligible status unless the individual files a new request and qualifies under sub. (2) to obtain a renewal of the listing or unless the individual applies for and qualifies to obtain a nonconfidential voter registration.  Except as authorized in sub. (8), the municipal clerk shall withhold from public inspection under s. 19.35 (1) the name and address of any individual whose registration is changed under this subsection if the individual qualified for a confidential listing at the time of that listing.

**(7)**  (a)  If the municipal clerk has notice that a confidential listing under sub. (2) is scheduled to expire, the municipal clerk shall provide 30 days' notice to the protected individual of the scheduled expiration of the listing.

(b)  If notice to a protected individual is not provided under par. (a), the municipal clerk shall provide notice to the subject individual upon changing a listed individual to ineligible status under sub. (6).

**(8)**  The municipal clerk shall provide access to a name and address under sub. (2):

(a)  To a law enforcement officer for official purposes.

***2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026.  Published and certified under s. 35.18.  Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)***

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 77 of 116

**6.47**        **THE ELECTORS**                                        **Updated 23-24 Wis. Stats.**   **14**

(b) To a state or local governmental officer pursuant to a specific law that necessitates obtaining the name or address.

(c) Pursuant to a court order citing a reason that access to the name or address should be provided.

(e) At the request of a protected individual, for purposes of permitting that individual to sign a petition under s. 59.05 (2).

**(9)** No person who obtains access to a name or address under sub. (8) may disclose the name or address to any person other than a public employee for the same purpose for which the information was obtained.

**(10)** If a sheriff, chief of a police department, or district attorney has signed or the authorized representative of a sheriff, chief, or district attorney has signed an affidavit under sub. (1) (am) 2. and the sheriff, chief, district attorney or authorized representative later obtains information that the person who was charged with an offense relating to domestic abuse, sexual assault, or stalking is no longer so charged or that the person's judgment of conviction has been vacated, and the charge or conviction was the sole basis for the affidavit, the sheriff, chief, district attorney or authorized representative shall provide written notice of that information to the municipal clerk to whom the affidavit was directed.

**History:** 1999 a. 49, 186; 2003 a. 265; 2005 a. 253, 277, 278; 2007 a. 20; 2009 a. 180; 2013 a. 362; 2015 a. 118 s. 266 (10); 2015 a. 356, 372; 2017 a. 144; 2025 a. 24 s. 93.

**6.48  Challenging registration.** **(1)** GENERAL PROCE-DURE. (a) Any registered elector of a municipality may challenge the registration of any other registered elector by submitting to the municipal clerk or executive director of the board of election commissioners in cities of more than 500,000 population an affidavit stating that the elector is not qualified to vote and the reasons therefor. The clerk or director, upon receipt of the affidavit, shall mail a notification of the challenge to the challenged elector, at his or her registered address.

(b) The challenged and challenging electors shall appear before the municipal clerk within one week of notification or arrange under sub. (2) to appear before the board of election commissioners. The challenging elector shall make an affidavit answering any questions necessary to determine the challenged elector's qualifications. Judgment rests with the municipal clerk and decisions shall be rendered as soon as heard. If the clerk cannot resolve the issue or has reservations as to the answers, the clerk may require the challenging elector to take the oath under s. 6.925. If the challenged elector appears and contests any answer of the challenging elector, the clerk may require the challenged elector to take the oath under s. 6.94 and to answer any question necessary to determine the challenged elector's qualifications. If the challenging elector appears before the municipal clerk or board of election commissioners but the challenged elector fails to appear, such clerk or board may make the decision without consulting the challenged elector. If the municipal clerk or board of election commissioners does not sustain the challenge, the challenged elector's registration remains valid.

(c) If the challenging elector fails to appear before the municipal clerk within one week or in cities of more than 500,000 population fails to appear before the board of election commissioners under sub. (2) to answer questions and take the oath under s. 6.925, such clerk or board shall cancel the challenge.

(d) If the clerk determines that the challenged elector is not qualified, the clerk shall change the challenged elector's registration from eligible to ineligible status on the registration list and notify the inspectors for the ward or election district where the elector was registered.

**(2)** SPECIAL PROCEDURE IN POPULOUS CITIES. (a) In cities of more than 500,000 population, objections may be made before the board of election commissioners which shall sit on the last Wednesday before each election from 9 a.m. to 12 a.m. and from 2 p.m. to 5 p.m. to hear objections then made or deferred under sub. (1). If all the objections cannot then be determined, the commissioners shall sit during the same hours the next day.

(b) Upon appearing in person, objectors shall be examined, under oath, by the commissioners and testimony taken. Judgment rests with the board of election commissioners and decisions shall be rendered as soon as heard. All cases are heard and decided summarily. The commissioners shall determine whether the person objected to is qualified. If they determine that a person is not qualified, the executive director of the board of election commissioners shall change the elector from eligible to ineligible status on the registration list and shall notify the proper ward officials of the change immediately.

**(3)** CHALLENGE BASED ON INCOMPETENCY. Section 6.03 (3) applies to any challenge which is made to registration based on an allegation that an elector is incapable of understanding the objective of the elective process and thereby ineligible for registration.

**(4)** DISQUALIFICATION. The municipal clerk or board of election commissioners may not disqualify an elector under this section except upon the grounds and in accordance with the procedure specified in s. 6.325.

**History:** 1971 c. 304 s. 29 (2); 1973 c. 334; 1975 c. 85, 199; 1977 c. 394; 1979 c. 110; 1983 a. 484; 1985 a. 304; 1987 a. 391; 2003 a. 265.

**6.50  Revision of registration list. (1)** No later than June 15 following each general election, the commission shall examine the registration records for each municipality and identify each elector who has not voted within the previous 4 years if qualified to do so during that entire period and shall mail a notice to the elector in substantially the following form:

"NOTICE OF SUSPENSION OF
REGISTRATION

You are hereby notified that your voter registration will be suspended, according to state law, for failure to vote within the previous 4-year period, unless you apply for continuation of your registration within 30 days. You may continue your registration by signing the statement below and returning it to the office of the municipal clerk .... (mailing address and telephone number of office of municipal clerk or board of election commissioners) by mail or in person.

APPLICATION FOR CONTINUATION
OF REGISTRATION

I hereby certify that I still reside at the address at which I am registered and apply for continuation of registration.

Signed ....

Present Address ....

If you have changed your residence within this municipality or changed your name, please contact the office of the municipal clerk .... (mailing address and telephone number of office of municipal clerk or board of election commissioners) to complete a change of name or address form.

[Office of clerk or board of election commissioners

Address

Telephone]".

**(2)** If an elector to whom a notice of suspension was mailed under sub. (1) has not applied for continuation of registration within 30 days of the date of mailing, the commission shall change the registration status of that elector from eligible to ineligible on the day that falls 30 days after the date of mailing.

**(2g)** The commission may delegate to a municipal clerk or board of election commissioners of a municipality the responsibility to change the registration status of electors when required under sub. (2).

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 21

**(2r)** As soon as practicable, but no later than August 1 following the completion of the process under subs. (1) and (2), the commission shall publish on its Internet site the following information obtained through that process:

(a) The number of notices mailed under sub. (1).

(b) The number of notices described under par. (a) that were returned to the commission as undeliverable.

(c) The number of notices described under par. (a) that were returned requesting continuation of registration.

(d) The number of notices described under par. (a) that were returned requesting cancellation of registration.

(e) The number of notices described under par. (a) that were returned with an indication that the named elector is deceased.

(f) The number of notices described under par. (a) that were not returned.

(g) The number of electors who received notices under sub. (1) and whose status changed from eligible to ineligible.

(h) Any other information requested by the legislature or that the commission considers relevant.

**(3)** Upon receipt of reliable information that a registered elector has changed his or her residence to a location outside of the municipality, the municipal clerk or board of election commissioners shall notify the elector by mailing a notice by 1st class mail to the elector's registration address stating the source of the information. All municipal departments and agencies receiving information that a registered elector has changed his or her residence shall notify the clerk or board of election commissioners. If the elector no longer resides in the municipality or fails to apply for continuation of registration within 30 days of the date the notice is mailed, the clerk or board of election commissioners shall change the elector's registration from eligible to ineligible status. Upon receipt of reliable information that a registered elector has changed his or her residence within the municipality, the municipal clerk or board of election commissioners shall change the elector's registration and mail the elector a notice of the change. This subsection does not restrict the right of an elector to challenge any registration under s. 6.325, 6.48, 6.925, 6.93, or 7.52 (5).

**(4)** The municipal clerk or board of election commissioners shall change the registration of deceased electors from eligible to ineligible status by means of checking vital statistics reports. No notice need be sent of registration changes made under this subsection.

**(5)** The registration of any elector whose address is listed at a building which has been condemned for human habitation by the municipality under s. 66.0413 (1) (j) shall be investigated by the municipal clerk or board of election commissioners. If the clerk or board of election commissioners can find no reason why the registration of such an elector should not be changed from eligible to ineligible status, the clerk or board of election commissioners shall change the elector's registration status. If the elector has left a forwarding address with the U.S. postal service, a notice of change in status shall be mailed by the clerk or board of election commissioners to the forwarding address.

**(6)** The municipal clerk, upon authorization by an elector, shall change the elector's registration from eligible to ineligible status.

**(7)** When an elector's registration is changed from eligible to ineligible status, the commission, municipal clerk, or board of election commissioners shall make an entry on the registration list, giving the date of and reason for the change.

**(8)** Any municipal governing body may direct the municipal clerk or board of election commissioners to arrange with the U.S. postal service pursuant to applicable federal regulations, to re-

ceive change of address information with respect to individuals residing within the municipality for revision of the elector registration list. If required by the U.S. postal service, the governing body may create a registration commission consisting of the municipal clerk or executive director of the board of election commissioners and 2 other electors of the municipality appointed by the clerk or executive director for the purpose of making application for address changes and processing the information received. The municipal clerk or executive director shall act as chairperson of the commission. Any authorization under this subsection shall be for a definite period or until the municipal governing body otherwise determines. The procedure shall apply uniformly to the entire municipality whenever used. The procedure shall provide for receipt of complete change of address information on an automatic basis, or not less often than once every 2 years during the 60 days preceding the close of registration for the partisan primary. If a municipality adopts the procedure for obtaining address corrections under this subsection, it need not comply with the procedure for mailing address verification cards under subs. (1) and (2).

**(10)** Any qualified elector whose registration is changed from eligible to ineligible status under this section may reregister as provided under s. 6.28 (1), 6.29 (2), or 6.55 (2), or, if the elector has a current and valid operator's license issued to the elector under ch. 343 or a current and valid identification card issued under s. 343.50, may reregister under s. 6.30 (5).

**History:** 1971 c. 242; 1971 c. 304 s. 29 (2); 1971 c. 336 s. 37; 1973 c. 164; 1975 c. 85, 199, 200; 1977 c. 394 ss. 27, 53; 1979 c. 260; 1983 a. 484; 1985 a. 304; 1987 a. 391; 1999 a. 150 s. 672; 2003 a. 265, 326; 2005 a. 451; 2011 a. 75; 2013 a. 149; 2015 a. 118 ss. 76, 77, 266 (10); 2015 a. 261.

The phrase "municipal clerk or board of election commissioners" appears in tandem all over the election statutes because that describes the duties of local election officials. While sub. (3) requires that the registration status be changed for those who move out of their municipality, it gives that responsibility to municipal election officials, not to the Wisconsin Elections Commission. The Wisconsin Elections Commission is not a "board of election commissioners" under sub. (3). State ex rel. Zignego v. Wisconsin Elections Commission, 2021 WI 32, 396 Wis. 2d 391, 957 N.W.2d 208, 19-2397.

**6.54 Failure to register; rights.** No name may be added to the registration list after the close of registration, but any person whose name is not on the registration list but who is otherwise a qualified elector is entitled to vote at the election upon compliance with s. 6.29 or 6.55.

**History:** 1985 a. 304 s. 60.

**6.55 Polling place registration; voting by certification. (2)** (a) Except where the procedure under par. (c) or (cm) is employed, any person who qualifies as an elector in the ward or election district where he or she desires to vote, but has not previously filed a registration form, or was registered at another location, may request permission to vote at the polling place for that ward or election district, or at an alternate polling place assigned under s. 5.25 (5) (b). When a proper request is made, the inspector shall require the person to execute a registration form prescribed by the commission. The registration form shall be completed in the manner provided under s. 6.33 (2) and shall contain all information required under s. 6.33 (1), together with the following certification:

"I, ...., hereby certify that, to the best of my knowledge, I am a qualified elector, having resided at .... for at least 28 consecutive days immediately preceding this election, and I have not voted at this election."

(b) Upon executing the registration form under par. (a), the elector shall provide proof of residence under s. 6.34. The signing by the elector executing the registration form shall be in the presence of the election registration official or inspector. Upon receipt of the registration form, the official or inspector shall enter both the type of identifying document submitted by the elector as proof of residence and the name of the entity or institution that

Updated 2023-24 Wis. Stats.  Published and certified under s. 35.18.  June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 79 of 116

**6.55**     **THE ELECTORS**      **Updated 23-24 Wis. Stats.**   **16**

issued the identifying document, and, if the identifying document includes a number that applies only to the individual holding that document, that number in the space provided on the form.  The official or inspector shall then print his or her name on and sign the form, indicating that the official or inspector has accepted the form.  Upon compliance with this procedure, the elector shall be permitted to cast his or her vote, if the elector complies with all other requirements for voting at the polling place.

(c) 1. As an alternative to registration at the polling place under pars. (a) and (b), the board of election commissioners, or the governing body of any municipality, may by resolution require a person who qualifies as an elector and who is not registered and desires to register on the day of an election to do so at another readily accessible location in the same building as the polling place serving the elector's residence or at an alternate polling place assigned under s. 5.25 (5) (b), instead of at the polling place serving the elector's residence.  In such case, the municipal clerk shall prominently post a notice of the registration location at the polling place.  An eligible elector who desires to register shall execute a registration form as prescribed under par. (a) and provide proof of residence as provided under s. 6.34.  The signing by the person executing the registration form shall be in the presence of the municipal clerk, deputy clerk, or election registration official.  Upon receipt of the registration form, the municipal clerk, deputy clerk, or election registration official shall enter the type of identifying document submitted by the elector as proof of residence, the name of the entity or institution that issued the identifying document, and, if the identifying document includes a number that applies only to the individual holding that document, the last 4 digits of that number in the space provided on the form.  If the number on the identifying document submitted by the elector has 6 or fewer digits, the clerk shall enter only the last 2 digits of that number.  The municipal clerk, the deputy clerk, or the election registration official shall then print his or her name and sign the form, indicating that the clerk, deputy clerk, or official has accepted the form.  Upon proper completion of registration, the municipal clerk, deputy clerk, or election registration official shall serially number the registration and give one copy to the person for presentation at the polling place serving the person's residence or an alternate polling place assigned under s. 5.25 (5) (b).

2. Upon compliance with the procedures under subd. 1., the municipal clerk or deputy clerk shall issue a certificate addressed to the inspectors of the proper polling place directing that the elector be permitted to cast his or her vote if the elector complies with all requirements for voting at the polling place.  The clerk shall enter the name and address of the elector on the face of the certificate.  The certificate shall be numbered serially and prepared in duplicate.  The municipal clerk shall preserve one copy in his or her office.

3. The elector, at the time he or she appears to vote at the polling place, shall deliver the certificate issued under subd. 2. to the inspectors.

(cm) If an elector who is not registered wishes to obtain a confidential listing under s. 6.47 (2), the elector shall register at the office of the municipal clerk of the municipality where the elector resides.  Upon completion of registration, the municipal clerk or a deputy clerk shall serially number the registration form and issue a voting identification card to the elector under s. 6.47 (3).  The elector may vote at the polling place serving his or her residence by presenting the identification card or by providing his or her name and identification serial number to the inspectors.

(cs) The commission shall provide to each municipal clerk a list prepared for use at each polling place showing the name and address of each person whose name appears on the list provided by the department of corrections under s. 301.03 (20m) as ineligible to vote on the date of the election, whose address is located in the area served by that polling place, and whose name does not appear on the poll list for that polling place.  Prior to permitting an elector to register to vote under this subsection or s. 6.86 (3) (a) 2., the inspectors or election registration officials shall review the list.  If the name of an elector who wishes to register to vote appears on the list, the inspectors or election registration officials shall inform the elector or the elector's agent that the elector is ineligible to register to vote.  If the elector or the elector's agent maintains that the elector is eligible to vote in the election, the inspectors or election registration officials shall permit the elector to register but shall mark the elector's registration form as "ineligible to vote per Department of Corrections."  If the elector wishes to vote, the inspectors shall require the elector to vote by ballot and shall challenge the ballot as provided in s. 6.79 (2) (dm).

(d) A registered elector who has changed his or her name but resides at the same address, and has not previously provided notice of the change to the municipal clerk, shall notify the inspector of the change before voting.  The inspector shall then notify the municipal clerk at the time when materials are returned under s. 6.56 (1).  If an elector has changed both a name and address, the elector shall register at the polling place or other registration location under pars. (a) and (b).

**(3)** (a) Any qualified elector in the ward or election district where the elector desires to vote whose name does not appear on the registration list but who claims to be registered to vote in the election may request permission to vote at the polling place for that ward or election district.  When the request is made, the inspector shall require the person to give his or her name and address.  If the elector is not at the polling place which serves the ward or election district where the elector resides, the inspector shall provide the elector with directions to the correct polling place.  If the elector is at the correct polling place, the elector shall complete registration as provided in sub. (2).

(b) Prior to permitting an elector to vote under this subsection, the inspectors shall review the list provided by the commission under sub. (2) (cs).  If the name of the elector appears on the list, the inspectors shall inform the elector that he or she is ineligible to vote at the election.  If the elector maintains that he or she is eligible to vote in the election, the inspectors shall permit the elector to vote, but shall require the elector to vote by ballot, and shall challenge the ballot as provided in s. 6.79 (2) (dm).

**(5)** Any person who violates this section may be punished as provided in ss. 12.13 (3) (g) and 12.60 (1) (b).

**(6)** Any of the registration duties of inspectors under sub. (2) may be carried out in the municipality by the municipal clerk.  The municipal clerk, however, may not carry out the registration duties of the inspectors under sub. (2) if the municipal clerk is a candidate on the ballot for that election day.

**History:** 1971 c. 304 s. 29 (2); 1973 c. 222; 1975 c. 85, 93, 199, 200; 1977 c. 394, 427; 1979 c. 311; 1981 c. 44 s. 3; 1981 c. 202 s. 23; 1983 a. 484; 1985 a. 304; 1987 a. 391; 1989 a. 31, 192; 1999 a. 49, 186; 2003 a. 265; 2005 a. 451; 2007 a. 96; 2011 a. 23; 2013 a. 182; 2015 a. 39; 2015 a. 118 s. 266 (10); 2015 a. 261; 2017 a. 365 s. 110.

**6.56**  **Verification of voters not appearing on list.**  **(1)** The list containing the names of persons voting under ss. 6.29 and 6.55 (2) shall be returned together with all forms and certificates to the municipal clerk.

**(3)** Upon receipt of the list under sub. (1), the municipal clerk or board of election commissioners shall make an audit of all electors registering to vote at the polling place or other registration location under s. 6.55 (2) and all electors registering by agent on election day under s. 6.86 (3) (a) 2. unless the clerk or board of election commissioners receives notice from the elections commission under sub. (7) that the elections commission will perform the audit.  The audit shall be made by 1st class postcard.

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026.  Published and certified under s. 35.18.  Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 23

Updated 2023-24 Wis. Stats.  Published and certified under s. 35.18.  June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 80 of 116

**17    Updated 23-24 Wis. Stats.**    **THE ELECTORS    6.79**

The postcard shall be marked in accordance with postal regulations to ensure that it will be returned to the clerk, board of election commissioners, or elections commission if the elector does not reside at the address given on the postcard. If any postcard is returned undelivered, or if the clerk, board of election commissioners, or elections commission is informed of a different address than the one specified by the elector which was apparently improper on the day of the election, the clerk, board of election commissioners, or elections commission shall change the status of the elector from eligible to ineligible on the registration list, mail the elector a notice of the change in status, and provide the name of the elector to the district attorney for the county where the polling place is located and the elections commission.

**(3m)** As soon as possible after all information relating to registrations after the close of registration for an election is entered on the registration list following the election under s. 6.33 (5) (a), the commission shall compare the list of new registrants whose names do not appear on the poll lists for the election because the names were added after the commission certified the poll lists for use at the election with the list containing the names transmitted to the commission by the department of corrections under s. 301.03 (20m) as of election day. If the commission finds that the name of any person whose name appears on the list transmitted under s. 301.03 (20m) has been added to the registration list, the commission shall enter on the list the information transmitted to the commission under s. 301.03 (20m) and shall notify the district attorney for the county where the polling place is located that the person appears to have voted illegally at the election.

**(4)** After each election, the municipal clerk shall perform an audit to assure that no person has been allowed to vote more than once. Whenever the municipal clerk has good reason to believe that a person has voted more than once in an election, the clerk shall send the person a 1st class letter marked in accordance with postal regulations to ensure that it will be returned to the clerk if the elector does not reside at the address given on the letter. The letter shall inform the person that all registrations relating to that person may be changed from eligible to ineligible status within 7 days unless the person contacts the office of the clerk to clarify the matter. A copy of the letter and of any subsequent information received from or about the addressee shall be sent to the district attorney for the county where the person resides and the commission.

**(6)** The municipal clerk may not disqualify an elector under this section except upon the grounds and in accordance with the procedures specified in s. 6.325.

**(7)** The commission may elect to perform the duties of municipal clerks to conduct the audits required under subs. (3) and (4) for any election on behalf of all municipalities in the state. If the commission so elects, the commission shall, no later than the date of the election for which the audits will be performed, notify the municipal clerk of each municipality that the commission will perform the audits.

**History:** 1975 c. 85, 199; 1977 c. 394; 1979 c. 260; 1983 a. 484; 1985 a. 304; 1989 a. 192; 2001 a. 51; 2003 a. 265; 2005 a. 451; 2007 a. 1; 2011 a. 23; 2015 a. 118 ss. 78, 266 (10).

**6.57    Registration list for special elections.** The municipal clerk of each municipality where a special election is held nonconcurrently with a regularly scheduled election shall obtain a copies of the current registration list from the commission for use in the special election.

**History:** 1975 c. 85 s. 30; Stats. 1975 s. 6.57; 1977 c. 394; 2003 a. 265; 2015 a. 118 s. 266 (10).

SUBCHAPTER III

VOTING

**6.76    Time off for voting. (1)** Any person entitled to vote at an election is entitled to be absent from work while the polls are open for a period not to exceed 3 successive hours to vote. The elector shall notify the affected employer before election day of the intended absence. The employer may designate the time of day for the absence.

**(2)** No penalty, other than a deduction for time lost, may be imposed upon an elector by his or her employer by reason of the absence authorized by this section.

**(3)** This section applies to all employers including the state and all political subdivisions of the state and their employees, but does not affect the employees' right to holidays existing on June 28, 1945, or established after that date.

**History:** 1977 c. 394; 1991 a. 316.

**6.77    Place for voting. (1)** An elector may vote only at the polling place for his or her residence designated by the governing body or board of election commissioners.

**(2)** Whenever territory which was formerly a part of one municipality becomes a part of another municipality, an elector of the territory shall vote in the municipality in which the territory is included on the day of the election.

**History:** 1975 c. 85; 1985 a. 304.

**6.78    Poll hours. (1m)** The polls at every election shall be open from 7 a.m. until 8 p.m.

**(4)** Any elector waiting to vote, whether within the polling booth or in the line outside the booth at the time the polls officially close, shall be permitted to vote.

**History:** 1985 a. 304; 1991 a. 316; 2005 a. 333.

**6.79    Recording electors.    (1m)** SEPARATE POLL LISTS. The municipal clerk may elect to maintain the information on the poll list manually or electronically. If the clerk elects to maintain the list electronically, an election official at each election ward shall be in charge of and shall maintain the poll list. The system employed to maintain the list electronically is subject to the approval of the commission. If the clerk elects to maintain the information manually, 2 election officials at each election ward shall be in charge of and shall maintain 2 separate poll lists.

**(2)** VOTING PROCEDURE. (a) Unless information on the poll list is entered electronically, the municipal clerk shall supply the inspectors with 2 copies of the most current official registration list or lists prepared under s. 6.36 (2) (a) for use as poll lists at the polling place. Except as provided in subs. (6), (7), and (8), each eligible elector, before receiving a serial number, shall state his or her full name and address and present to the officials proof of identification. The officials shall verify that the name on the proof of identification presented by the elector conforms to the name on the poll list or separate list and shall verify that any photograph appearing on that document reasonably resembles the elector. The officials shall then require the elector to enter his or her signature on the poll list, supplemental list, or separate list maintained under par. (c) unless the elector is exempt from the signature requirement under s. 6.36 (2) (a). The officials shall verify that the name and address stated by the elector conform to the elector's name and address on the poll list.

(am) If an elector previously signed his or her registration form or is exempt from a registration requirement and is unable, due to physical disability, to enter his or her signature at the election, the officials shall waive the signature requirement if the officials determine that the elector is unable, due to physical disability, to enter his or her signature. In this case, the officials shall enter next to the name and address of the elector on the poll, supplemental, or separate list the words "exempt by order of inspectors". If both officials do not waive the signature require-

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026.  Published and certified under s. 35.18.  Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 24

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193     Document #2180381     Filed: 06/24/2026     Page 81 of 116

**19   Updated 23-24 Wis. Stats.**                                                      **THE ELECTORS     6.84**

or the ballot provided for that purpose, or where voting machines are used, in the irregular ballot device, designating the party for which the elector desires such person to be the nominee.

(b)  After preparing his or her ballot, unless the ballot is intended for counting with automatic tabulating equipment, the elector shall fold it so its face will be concealed.

(c)  Any elector who, by accident or mistake, spoils or erroneously prepares a ballot may receive another, by returning the defective ballot, but not to exceed 3 ballots in all.

(d)  If an elector receives a ballot which is not initialed by 2 inspectors, or is defective in any other way, the elector shall return it to the inspectors.  If the initials are missing, the inspectors shall supply the missing initials.  If the ballot is defective, they shall destroy it and issue another ballot to the elector.

(e)  Upon voting his or her ballot, the elector shall publicly and in person deposit it into the ballot box or deliver it to an inspector, who shall deposit the ballot into the ballot box.

(f)  In the presidential preference primary and other partisan primary elections at polling places where ballots are distributed to electors, unless the ballots are prepared under s. 5.655 or are utilized with an electronic voting system in which all candidates appear on the same ballot, after the elector prepares his or her ballot the elector shall detach the remaining ballots, fold the ballots to be discarded and fold the completed ballot unless the ballot is intended for counting with automatic tabulating equipment. The elector shall then either personally deposit the ballots to be discarded into the separate ballot box marked "blank ballot box" and deposit the completed ballot into the ballot box indicated by the inspectors, or give the ballots to an inspector who shall deposit the ballots directly into the appropriate ballot boxes.  The inspectors shall keep the blank ballot box locked until the canvass is completed and shall dispose of the blank ballots as prescribed by the municipal clerk.

**(3)**  TIME IN BOOTH OR MACHINE.  (a)  Each elector shall be allowed a reasonable time to vote.  Unless otherwise specified for that election, a majority of the inspectors shall determine the time each elector shall have to mark the ballot, taking into consideration the size of the ballot and the number of electors in line waiting to vote.  In no case shall the time be less than one minute.  If there are electors in line waiting to vote, the time shall not exceed 5 minutes.

(b)  If an elector refuses to leave the booth or machine after being notified by one of the inspectors that the time has expired, the elector shall be removed by the inspectors.

**History:** 1977 c. 427 ss. 40, 41, 132; 1979 c. 311; 1981 c. 377, 391; 1983 a. 484 ss. 45m, 172 (3); 1985 a. 304; 1991 a. 316; 1999 a. 182.

**6.82  Assisting electors. (1)** RECEIPT OF BALLOT AT POLL ENTRANCE.  (a)  When any inspectors are informed that an eligible elector is at the entrance to the polling place who as a result of disability is unable to enter the polling place, they shall permit the elector to be assisted in marking a ballot by any individual selected by the elector, except the elector's employer or an agent of that employer or an officer or agent of a labor organization which represents the elector.  Except as authorized in s. 6.79 (6) and (7), the individual selected by the elector shall present to the inspectors proof of identification and, if the proof of identification does not constitute proof of residence under s. 6.34, shall also provide proof of residence under s. 6.34 for the assisted elector and all other information necessary for the elector to obtain a ballot under s. 6.79 (2).  The inspectors shall verify that the name on the proof of identification presented by the person assisting the elector conforms to the elector's name on the poll list or separate list, shall verify that any photograph appearing on that document reasonably resembles the elector, and shall enter both the type of identifying document submitted by the assisted elector as proof

of residence and the name of the entity or institution that issued the identifying document in the space provided on the poll list or separate list.  The inspectors shall then issue a ballot to the individual selected by the elector and shall accompany the individual to the polling place entrance where the assistance is to be given. If the ballot is a paper ballot, the assisting individual shall fold the ballot after the ballot is marked by the assisting individual.  The assisting individual shall then immediately take the ballot into the polling place and give the ballot to an inspector.  The inspector shall distinctly announce that he or she has "a ballot offered by .... (stating person's name), an elector who, as a result of disability, is unable to enter the polling place without assistance".  The inspector shall then ask, "Does anyone object to the reception of this ballot?"  If no objection is made, the inspectors shall record the elector's name under s. 6.79 and deposit the ballot in the ballot box, and shall make a notation on the poll list:  "Ballot received at poll entrance".

(b)  If objection to receiving the ballot is made by any qualified elector present, the inspectors shall receive the ballot under s. 6.95.

**(2)**  AID IN MARKING BALLOT.  (a)  If an elector declares to the presiding election official that he or she cannot read or write, or has difficulty in reading, writing or understanding English or that due to disability is unable to mark a ballot or depress a button or lever on a voting machine, the elector shall be informed by the officials that he or she may have assistance.  When assistance is requested, the elector may select any individual to assist in casting his or her vote.  The selected individual rendering assistance may not be the elector's employer or an agent of that employer or an officer or agent of a labor organization which represents the elector.  The selected individual shall certify on the back of the ballot that it was marked with his or her assistance.  Where voting machines are used, certification shall be made on the registration list.

(b)  The individual chosen shall enter the voting booth or machine with the elector and shall read the names of all candidates on the ballot for each office, and ask, "For which one do you vote?".  The ballot shall be marked or the lever or button depressed according to the elector's expressed preference.  The individual selected to assist may not disclose to anyone how the elector voted.

(c)  Intoxication shall not be regarded as a disability.

(d)  The election officials shall enter upon the poll list after the name of any elector who had assistance in voting the word "assisted".  The officials shall also record on the poll list the full name and address of the individual who renders assistance.

**(3)**  USE OF PAPER BALLOTS.  Whenever, in a municipality in which voting machines are used, an elector declares to the chief inspector that, due to physical disability, the elector is unable to depress a button or lever on a voting machine, the inspectors shall permit the elector to vote using a paper ballot and voting booth.

**(4)**  SOLICITATION PROHIBITED.  No election official or other person assisting an elector under this section or s. 5.79 may request, suggest or seek to persuade an elector to cast a vote for or against any candidate, party or question.

**History:** 1971 c. 304 s. 29 (2); 1975 c. 85, 199, 275; 1977 c. 26; 1977 c. 394 s. 53; 1979 c. 260, 311, 355; 1983 a. 484; 1985 a. 304; 1987 a. 391; 1989 a. 192; 2001 a. 16; 2003 a. 265; 2005 a. 451; 2011 a. 23; 2013 a. 182.

An elector with dyslexia may qualify for voter assistance under former sub. (2), 1971 stats.  62 Atty. Gen. 195.

SUBCHAPTER IV

VOTING ABSENTEE

**6.84  Construction. (1)** LEGISLATIVE POLICY.  The legisla-

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026.  Published and certified under s. 35.18.  Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 25

Updated 2023-24 Wis. Stats.  Published and certified under s. 35.18.  June 19, 2026.

USCA Case #26-5193     Document #2180381     Filed: 06/24/2026     Page 82 of 116

**6.84**          **THE ELECTORS**                                    **Updated 23-24 Wis. Stats.   20**

ture finds that voting is a constitutional right, the vigorous exercise of which should be strongly encouraged.  In contrast, voting by absentee ballot is a privilege exercised wholly outside the traditional safeguards of the polling place.  The legislature finds that the privilege of voting by absentee ballot must be carefully regulated to prevent the potential for fraud or abuse; to prevent overzealous solicitation of absent electors who may prefer not to participate in an election; to prevent undue influence on an absent elector to vote for or against a candidate or to cast a particular vote in a referendum; or other similar abuses.

**(2)** INTERPRETATION.  Notwithstanding s. 5.01 (1), with respect to matters relating to the absentee ballot process, ss. 6.86, 6.87 (3) to (7) and 9.01 (1) (b) 2. and 4. shall be construed as mandatory.  Ballots cast in contravention of the procedures specified in those provisions may not be counted.  Ballots counted in contravention of the procedures specified in those provisions may not be included in the certified result of any election.

**History:** 1985 a. 304; 1987 a. 391.

Sub. (1) is merely a declaration of legislative policy setting forth that absentee balloting must be carefully regulated.  Nothing in sub. (1) provides any rule of interpretation applying to the statutes that follow.  This section does nothing to alter the conclusion that drop boxes are not in contravention of the statutory procedures.  Priorities USA v. Wisconsin Elections Commission, 2024 WI 32, 412 Wis. 2d 594, 8 N.W.3d 429, 24-0164.

**6.85   Absent elector; definition.  (1)** An absent elector is any otherwise qualified elector who for any reason is unable or unwilling to appear at the polling place in his or her ward or election district.

**(2)** Any otherwise qualified elector who changes residence within this state by moving to a different ward or municipality later than 28 days prior to an election may vote an absentee ballot in the ward or municipality where he or she was qualified to vote before moving.

**(3)** An elector qualifying under this section may vote by absentee ballot under ss. 6.86 to 6.89.

**History:** 1971 c. 304 s. 29 (2); 1975 c. 85, 199; 1977 c. 394; 1979 c. 232; 1983 a. 484; 1999 a. 182; 2011 a. 23.

Discussing voter residency and absentee voting. 60 Atty. Gen. 214.

**6.855   Alternate absentee ballot site.  (1)** The governing body of a municipality may elect to designate a site other than the office of the municipal clerk or board of election commissioners as the location from which electors of the municipality may request and vote absentee ballots and to which voted absentee ballots shall be returned by electors for any election.  The designated site shall be located as near as practicable to the office of the municipal clerk or board of election commissioners and no site may be designated that affords an advantage to any political party.  An election by a governing body to designate an alternate site under this section shall be made no fewer than 14 days prior to the time that absentee ballots are available for the primary under s. 7.15 (1) (cm), if a primary is scheduled to be held, or at least 14 days prior to the time that absentee ballots are available for the election under s. 7.15 (1) (cm), if a primary is not scheduled to be held, and shall remain in effect until at least the day after the election.  If the governing body of a municipality makes an election under this section, no function related to voting and return of absentee ballots that is to be conducted at the alternate site may be conducted in the office of the municipal clerk or board of election commissioners.

**(2)** The municipal clerk or board of election commissioners shall prominently display a notice of the designation of the alternate site selected under sub. (1) in the office of the municipal clerk or board of election commissioners beginning on the date that the site is designated under sub. (1) and continuing through the period that absentee ballots are available for the election and for any primary under s. 7.15 (1) (cm).  If the municipal clerk or board of election commissioners maintains a website on the Inter-

net, the clerk or board of election commissioners shall post a notice of the designation of the alternate site selected under sub. (1) on the website during the same period that notice is displayed in the office of the clerk or board of election commissioners.

**(3)** An alternate site under sub. (1) shall be staffed by the municipal clerk or the executive director of the board of election commissioners, or employees of the clerk or the board of election commissioners.

**(4)** An alternate site under sub. (1) shall be accessible to all individuals with disabilities.

**(5)** A governing body may designate more than one alternate site under sub. (1).

**History:** 2005 a. 451; 2017 a. 365 s. 112; 2017 a. 369.

This section does not apply to ballot drop boxes.  Priorities USA v. Wisconsin Elections Commission, 2024 WI 32, 412 Wis. 2d 594, 8 N.W.3d 429, 24-0164.

**6.86   Methods for obtaining an absentee ballot.  (1)** (a) Any elector of a municipality who is registered to vote whenever required and who qualifies under ss. 6.20 and 6.85 as an absent elector may make written application to the municipal clerk of that municipality for an official ballot by one of the following methods:

1. By mail.

2. In person at the office of the municipal clerk or at an alternate site under s. 6.855, if applicable.

3. By signing a statement and filing a request to receive absentee ballots under sub. (2) or (2m) (a) or s. 6.22 (4), 6.24 (4), or 6.25 (1) (c).

4. By agent as provided in sub. (3).

5. By delivering an application to a special voting deputy under s. 6.875 (6).

6. By electronic mail or facsimile transmission as provided in par. (ac).

(ac) Any elector qualifying under par. (a) may make written application to the municipal clerk for an official ballot by means of facsimile transmission or electronic mail.  Any application under this paragraph need not contain a copy of the applicant's original signature.  An elector requesting a ballot under this paragraph shall return with the voted ballot a copy of the request bearing an original signature of the elector as provided in s. 6.87 (4).  Except as authorized in ss. 6.87 (4) (b) 2. to 5. and 6.875 (6), and notwithstanding s. 343.43 (1) (f), the elector shall transmit a copy of his or her proof of identification in the manner provided in s. 6.87 (1) unless the elector is a military elector or an overseas elector or the elector has a confidential listing under s. 6.47 (2).

(ag) An elector who is unable to write his or her name due to physical disability may authorize an application to be made by another elector on his or her behalf.  In such case, the application shall state that it is made on request and by authorization of a named elector who is unable to sign the application due to physical disability.

(ar) Except as authorized in s. 6.875 (6), the municipal clerk shall not issue an absentee ballot unless the clerk receives a written application therefor from a qualified elector of the municipality.  The clerk shall retain each absentee ballot application until destruction is authorized under s. 7.23 (1).  Except as authorized in s. 6.79 (6) and (7), if a qualified elector applies for an absentee ballot in person at the clerk's office, the clerk shall not issue the elector an absentee ballot unless the elector presents proof of identification.  The clerk shall verify that the name on the proof of identification presented by the elector conforms to the name on the elector's application and shall verify that any photograph appearing on that document reasonably resembles the elector.  The clerk shall then enter his or her initials on the certificate envelope indicating that the absentee elector presented proof of identification to the clerk.

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026.  Published and certified under s. 35.18.  Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 26

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 83 of 116

**21    Updated 23-24 Wis. Stats.**    **THE ELECTORS    6.86**

(b) Except as provided in this section, if application is made by mail, the application shall be received no later than 5 p.m. on the 5th day immediately preceding the election. If application is made in person, the application shall be made no earlier than 14 days preceding the election and no later than the Sunday preceding the election. No application may be received on a legal holiday. A municipality shall specify the hours in the notice under s. 10.01 (2) (e). The municipal clerk or an election official shall witness the certificate for any in-person absentee ballot cast. Except as provided in par. (c), if the elector is making written application for an absentee ballot at the partisan primary, the general election, the presidential preference primary, or a special election for national office, and the application indicates that the elector is a military elector, as defined in s. 6.34 (1), the application shall be received by the municipal clerk no later than 5 p.m. on election day. If the application indicates that the reason for requesting an absentee ballot is that the elector is a sequestered juror, the application shall be received no later than 5 p.m. on election day. If the application is received after 5 p.m. on the Friday immediately preceding the election, the municipal clerk or the clerk's agent shall immediately take the ballot to the court in which the elector is serving as a juror and deposit it with the judge. The judge shall recess court, as soon as convenient, and give the elector the ballot. The judge shall then witness the voting procedure as provided in s. 6.87 and shall deliver the ballot to the clerk or agent of the clerk who shall deliver it to the polling place or, in municipalities where absentee ballots are canvassed under s. 7.52, to the municipal clerk as required in s. 6.88. If application is made under sub. (2) or (2m), the application may be received no later than 5 p.m. on the Friday immediately preceding the election.

(c) If an application is made by mail by a military elector, as defined in s. 6.22 (1) (b), the application shall be received no later than 5 p.m. on the Friday immediately preceding the election.

**(2)** (a) An elector who is indefinitely confined because of age, physical illness or infirmity or is disabled for an indefinite period may by signing a statement to that effect require that an absentee ballot be sent to the elector automatically for every election. The application form and instructions shall be prescribed by the commission, and furnished upon request to any elector by each municipality. The envelope containing the absentee ballot shall be clearly marked as not forwardable. If any elector is no longer indefinitely confined, the elector shall so notify the municipal clerk.

(b) The mailing list established under this subsection shall be kept current through all possible means. If an elector fails to cast and return an absentee ballot received under this subsection, the clerk shall notify the elector by 1st class letter or postcard that his or her name will be removed from the mailing list unless the clerk receives a renewal of the application within 30 days of the notification. The clerk shall remove from the list the name of each elector who does not apply for renewal within the 30-day period. The clerk shall remove the name of any other elector from the list upon request of the elector or upon receipt of reliable information that an elector no longer qualifies for the service. The clerk shall notify the elector of such action not taken at the elector's request within 5 days, if possible.

**(2m)** (a) Except as provided in this subsection, any elector other than an elector who receives an absentee ballot under sub. (2) or s. 6.22 (4) or 6.24 (4) (c) may by written application filed with the municipal clerk of the municipality where the elector resides require that an absentee ballot be sent to the elector automatically for every election that is held within the same calendar year in which the application is filed. The application form and instructions shall be prescribed by the commission, and furnished upon request to any elector by each municipal clerk. The municipal clerk shall thereupon mail an absentee ballot to the elector for all elections that are held in the municipality during the same calendar year that the application is filed, except that the clerk shall not send an absentee ballot for an election if the elector's name appeared on the registration list in eligible status for a previous election following the date of the application but no longer appears on the list in eligible status. The municipal clerk shall ensure that any envelope containing the absentee ballot is clearly marked as not forwardable. If an elector who files an application under this subsection no longer resides at the same address that is indicated on the application form, the elector shall so notify the municipal clerk. The municipal clerk shall discontinue mailing absentee ballots to an elector under this subsection upon receipt of reliable information that the elector no longer qualifies as an elector of the municipality. In addition, the municipal clerk shall discontinue mailing absentee ballots to an elector under this subsection if the elector fails to return any absentee ballot mailed to the elector. The municipal clerk shall notify the elector of any such action not taken at the elector's request within 5 days, if possible. An elector who fails to cast an absentee ballot but who remains qualified to receive absentee ballots under this subsection may then receive absentee ballots for subsequent elections by notifying the municipal clerk that the elector wishes to continue receiving absentee ballots for subsequent elections.

(b) If a municipal clerk is notified by an elector that the elector's residence is changed to another municipality within this state, the clerk shall forward the request to the municipal clerk of that municipality and that municipal clerk shall honor the request, except as provided in this subsection.

**(3)** (a) 1. Any elector who is registered and who is hospitalized, may apply for and obtain an official ballot by agent. The agent may apply for and obtain a ballot for the hospitalized absent elector by presenting a form prescribed by the commission and containing the required information supplied by the hospitalized elector and signed by that elector, unless the elector is unable to sign due to physical disability. In this case, the elector may authorize another elector to sign on his or her behalf. Any elector signing an application on another elector's behalf shall attest to a statement that the application is made on request and by authorization of the named elector, who is unable to sign the application due to physical disability. The agent shall present this statement along with all other information required under this subdivision. Except as authorized for an elector who has a confidential listing under s. 6.47 (2) or as authorized under s. 6.87 (4) (b) 4., the agent shall present any proof of identification required under sub. (1) (ar). The form shall include a space for the municipal clerk or deputy clerk to enter his or her initials indicating that the agent presented proof of identification to the clerk on behalf of the elector.

2. If a hospitalized elector is not registered, the elector may register by agent under this subdivision at the same time that the elector applies for an official ballot by agent under subd. 1. To register the elector under this subdivision, the agent shall present a completed registration form that contains the required information supplied by the elector and the elector's signature, unless the elector is unable to sign due to physical disability. In this case, the elector may authorize another elector to sign on his or her behalf. Any elector signing a form on another elector's behalf shall attest to a statement that the application is made on request and by authorization of the named elector, who is unable to sign the form due to physical disability. The agent shall present this statement along with all other information required under this subdivision. The agent shall provide proof of the elector's residence under s. 6.34.

(b) When each properly executed form and statement required under par. (a) is presented to the municipal clerk, if the elector who proposes to vote is qualified, an absentee ballot shall be is-

***2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)***

Add. 27

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 84 of 116

**6.86**        THE ELECTORS                                    **Updated 23-24 Wis. Stats.    22**

sued and the name of such hospitalized elector shall be recorded by the clerk. An agent who is issued an absentee ballot under this section shall present documentation of his or her identity, provide his or her name and address, and attest to a statement that the ballot is received solely for the benefit of a named elector who is hospitalized, and the agent will promptly transmit the ballot to such person.

(c) An application under par. (a) 1. may be made and a registration form under par. (a) 2. may be filed in person at the office of the municipal clerk not earlier than 7 days before an election and not later than 5 p.m. on the day of the election. A list of hospitalized electors applying for ballots under par. (a) 1. shall be made by the municipal clerk and used to check that the electors vote only once, and by absentee ballot. If the elector is registering for the election after the close of registration or if the elector registered by mail and has not voted in an election in this state, the municipal clerk shall inform the agent that proof of residence under s. 6.34 is required and the elector shall enclose proof of residence under s. 6.34 in the envelope with the ballot. The clerk shall verify that the name on any required proof of identification presented by the agent conforms to the name on the elector's application. The clerk shall then enter his or her initials on the carrier envelope indicating that the agent presented proof of identification to the clerk. The agent is not required to enter a signature on the registration list. The ballot shall be sealed by the elector and returned to the municipal clerk either by mail or by personal delivery of the agent; but if the ballot is returned on the day of the election, the agent shall make personal delivery to the polling place serving the hospitalized elector's residence before the closing hour or, in municipalities where absentee ballots are canvassed under s. 7.52, to the municipal clerk no later than 8 p.m. on election day.

**(4)** If a municipality employs an electronic voting system which utilizes a ballot that is inserted into automatic tabulating equipment, the municipality may distribute ballots for utilization with the electronic voting system as absentee ballots or it may distribute paper ballots as absentee ballots.

**(5)** Whenever an elector returns a spoiled or damaged absentee ballot to the municipal clerk, or an elector's agent under sub. (3) returns a spoiled or damaged ballot to the clerk on behalf of an elector, and the clerk believes that the ballot was issued to or on behalf of the elector who is returning it, the clerk shall issue a new ballot to the elector or elector's agent, and shall destroy the spoiled or damaged ballot. Any request for a replacement ballot under this subsection must be made within the applicable time limits under subs. (1) and (3) (c).

**(6)** Except as authorized in sub. (5) and s. 6.87 (9), if an elector mails or personally delivers an absentee ballot to the municipal clerk, the municipal clerk shall not return the ballot to the elector. An elector who mails or personally delivers an absentee ballot to the municipal clerk at an election is not permitted to vote in person at the same election on election day.

**(7)** The clerk shall send or transmit an official absentee ballot no later than the deadline provided under s. 7.15 (1) (cm).

**History:** 1975 c. 85 ss. 37, 38, 65; 1975 c. 90, 199, 200, 275, 422; 1977 c. 394 ss. 14, 40, 41; 1979 c. 232, 311; 1981 c. 391; 1983 a. 183, 484; 1985 a. 304 ss. 69, 156; 1987 a. 391; 1995 a. 313; 1999 a. 182; 2001 a. 51; 2003 a. 265; 2005 a. 451; 2011 a. 23, 75, 115, 227; 2013 a. 146; 2015 a. 118 s. 266 (10); 2015 a. 209, 261; 2017 a. 369.

The sub. (1) (ar) requirement that an elector must apply for an absentee ballot is mandatory. The ballots of absentee voters who do not file written applications must not be included in certified election results. Lee v. Paulson, 2001 WI App 19, 241 Wis. 2d 38, 623 N.W.2d 577, 00-1626.

Sub. (2) (a) requires that: 1) each individual elector make the elector's own determination as to whether the elector is indefinitely confined; 2) an elector's determination may be based only upon age, physical illness, or infirmity; and 3) an elector is indefinitely confined for the elector's own age, physical illness, or infirmity, not those of another person. Jefferson v. Dane County, 2020 WI 90, 394 Wis. 2d 602, 951 N.W.2d 556, 20-0557. See also Trump v. Biden, 2020 WI 91, 394 Wis. 2d 629, 951 N.W.2d 568, 20-2038.

2011 Wis. Act 23, which created requirements that voters present photo identification in order to vote at a polling place or obtain an absentee ballot, does not violate either section 2 of the federal Voting Rights Act, 52 USC 10301, or the U.S. Constitution. Frank v. Walker, 768 F.3d 744 (2014).

The time-of-day and number-of-days restrictions for in-person absentee voting under sub. (1) (b) do not violate section 2 of the federal Voting Rights Act. There is no substantive problem with days-and-hours limitations. They leave all voters with equal opportunities to participate. Early voting is not a fundamental right in itself; it is but one aspect of a state's election system. Wisconsin's system as a whole is accommodating. So long as a state treats all voters equally, section 2 does not limit the state's control of details such as hours for early voting. Luft v. Evers, 963 F.3d 665 (2020).

The time-of-day and number-of-days restrictions for in-person absentee voting under sub. (1) (b) do not violate the 1st amendment. Because the right to vote in any manner is not absolute and the government must play an active role in structuring elections, election laws invariably impose some burden upon individual voters. Courts weigh these burdens against the state's interests by looking at the whole electoral system. In isolation, any rule reducing the number of hours available for any kind of voting seems like an unjustified burden. But electoral provisions cannot be assessed in isolation. Wisconsin's many other provisions that make it easy to vote cut in its favor. One less-convenient feature does not an unconstitutional system make. Luft v. Evers, 963 F.3d 665 (2020).

**6.865  Federal absentee ballots. (1)** In this section, "military elector" has the meaning given under s. 6.34 (1).

**(2)** A federal postcard registration and absentee ballot request form may be used to apply for an absentee ballot under s. 6.86 (1) if the form is completed in such manner that the municipal clerk or board of election commissioners with whom it is filed is able to determine that the applicant is an elector of this state and of the ward or election district where the elector seeks to vote.

**(3m)** A military elector may indicate an alternate address on his or her absentee ballot application. If the elector's ballot is returned as undeliverable prior to the deadline for receipt and return of absentee ballots under s. 6.87 (6) and the elector remains eligible to receive absentee ballots under this subsection, the municipal clerk shall immediately send or transmit an absentee ballot to the elector at the alternate address.

**(4)** If the municipal clerk or board of election commissioners rejects a request for an absentee ballot from a military elector or an overseas elector, the clerk or board of election commissioners shall promptly inform the elector of the reason for the rejection.

**History:** 1989 a. 192; 1999 a. 182; 2003 a. 265; 2005 a. 451; 2011 a. 75; 2017 a. 369.

**6.869  Uniform instructions.** The commission shall prescribe uniform instructions for municipalities to provide to absentee electors. The instructions shall include the specific means of electronic communication that an absentee elector may use to file an application for an absentee ballot and, if the absentee elector is required to register, to request a registration form or change his or her registration. The instructions shall include information concerning whether proof of identification is required to be presented or enclosed. The instructions shall also include information concerning the procedure for correcting errors in marking a ballot and obtaining a replacement for a spoiled ballot. The procedure shall, to the extent possible, respect the privacy of each elector and preserve the confidentiality of each elector's vote.

**History:** 2003 a. 265; 2011 a. 23, 75, 227; 2015 a. 118 s. 266 (10).

**6.87  Absent voting procedure. (1)** Upon proper request made within the period prescribed in s. 6.86, the municipal clerk or a deputy clerk authorized by the municipal clerk shall write on the official ballot, in the space for official endorsement, the clerk's initials and official title. Unless application is made in person under s. 6.86 (1) (ar), the absent elector is exempted from providing proof of identification under sub. (4) (b) 2. or 3., or the applicant is a military or overseas elector, the absent elector shall enclose a copy of his or her proof of identification or any authorized substitute document with his or her application. The municipal clerk shall verify that the name on the proof of identification conforms to the name on the application. The clerk shall not issue an absentee ballot to an elector who is required to enclose a

***2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)***

Add. 28

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193   Document #2180381   Filed: 06/24/2026   Page 85 of 116

**23**   **Updated 23-24 Wis. Stats.**   **THE ELECTORS**   **6.87**

copy of proof of identification or an authorized substitute document with his or her application unless the copy is enclosed and the proof is verified by the clerk.

**(2)** Except as authorized under sub. (3) (d), the municipal clerk shall place the ballot in an unsealed envelope furnished by the clerk. The envelope shall have the name, official title and post-office address of the clerk upon its face. The other side of the envelope shall have a printed certificate which shall include a space for the municipal clerk or deputy clerk to enter his or her initials indicating that if the absentee elector voted in person under s. 6.86 (1) (ar), the elector presented proof of identification to the clerk and the clerk verified the proof presented. The certificate shall also include a space for the municipal clerk or deputy clerk to enter his or her initials indicating that the elector is exempt from providing proof of identification because the individual is a military elector or an overseas elector who does not qualify as a resident of this state under s. 6.10 or is exempted from providing proof of identification under sub. (4) (b) 2. or 3. The certificate shall be in substantially the following form:

[STATE OF ....

County of ....]

or

[(name of foreign country and city or other jurisdictional unit)]

I, ...., certify subject to the penalties of s. 12.60 (1) (b), Wis. Stats., for false statements, that I am a resident of the [.... ward of the] (town) (village) of ...., or of the .... aldermanic district in the city of ...., residing at ....* in said city, the county of ...., state of Wisconsin, and am entitled to vote in the (ward) (election district) at the election to be held on ....; that I am not voting at any other location in this election; that I am unable or unwilling to appear at the polling place in the (ward) (election district) on election day or have changed my residence within the state from one ward or election district to another later than 28 days before the election. I certify that I exhibited the enclosed ballot unmarked to the witness, that I then in (his) (her) presence and in the presence of no other person marked the ballot and enclosed and sealed the same in this envelope in such a manner that no one but myself and any person rendering assistance under s. 6.87 (5), Wis. Stats., if I requested assistance, could know how I voted.

Signed ....

Identification serial number, if any: ....

The witness shall execute the following:

I, the undersigned witness, subject to the penalties of s. 12.60 (1) (b), Wis. Stats., for false statements, certify that I am an adult U.S. citizen** and that the above statements are true and the voting procedure was executed as there stated. I am not a candidate for any office on the enclosed ballot (except in the case of an incumbent municipal clerk). I did not solicit or advise the elector to vote for or against any candidate or measure.

....(Printed name)

....(Address)***

Signed ....

* — An elector who provides an identification serial number issued under s. 6.47 (3), Wis. Stats., need not provide a street address.

** — An individual who serves as a witness for a military elector or an overseas elector voting absentee, regardless of whether the elector qualifies as a resident of Wisconsin under s. 6.10, Wis. Stats., need not be a U.S. citizen but must be 18 years of age or older.

*** — If this form is executed before 2 special voting deputies under s. 6.875 (6), Wis. Stats., both deputies shall witness and sign.

**(3)** (a) Except as authorized under par. (d) and as otherwise provided in s. 6.875, the municipal clerk shall mail the absentee ballot to the elector's residence unless otherwise directed by the elector, or shall deliver it to the elector personally at the clerk's office or at an alternate site under s. 6.855. If the ballot is mailed, and the ballot qualifies for mailing free of postage under federal free postage laws, the clerk shall affix the appropriate legend required by U.S. postal regulations. Otherwise, the clerk shall pay the postage required for return when the ballot is mailed from within the United States. If the ballot is not mailed by the absentee elector from within the United States, the absentee elector shall provide return postage. If the ballot is delivered to the elector at the clerk's office, or an alternate site under s. 6.855, the ballot shall be voted at the office or alternate site and may not be removed by the elector therefrom.

(b) No elector may direct that a ballot be sent to the address of a committee registered with the ethics commission under ch. 11 unless the elector permanently or temporarily resides at that address. Upon receipt of reliable information that an address given by an elector is not eligible to receive ballots under this subsection, the municipal clerk shall refrain from mailing or transmitting ballots to that address. Whenever possible, the municipal clerk shall notify an elector if his or her ballot cannot be mailed or transmitted to the address directed by the elector.

(d) A municipal clerk shall, if the clerk is reliably informed by a military elector, as defined in s. 6.34 (1), or an overseas elector, regardless of whether the elector qualifies as a resident of this state under s. 6.10, of a facsimile transmission number or electronic mail address where the elector can receive an absentee ballot, transmit a facsimile or electronic copy of the elector's ballot to that elector in lieu of mailing under this subsection. An elector may receive an absentee ballot only if the elector is a military elector or an overseas elector and has filed a valid application for the ballot as provided in s. 6.86 (1). If the clerk transmits an absentee ballot to a military or overseas elector electronically, the clerk shall also transmit a facsimile or electronic copy of the text of the material that appears on the certificate envelope prescribed in sub. (2), together with instructions prescribed by the commission. The instructions shall require the military or overseas elector to make and subscribe to the certification as required under sub. (4) (b) and to enclose the absentee ballot in a separate envelope contained within a larger envelope, that shall include the completed certificate. The elector shall then affix sufficient postage unless the absentee ballot qualifies for mailing free of postage under federal free postage laws and shall mail the absentee ballot to the municipal clerk. Except as authorized in s. 6.97 (2), an absentee ballot received from a military or overseas elector who receives the ballot electronically shall not be counted unless it is cast in the manner prescribed in this paragraph and sub. (4) and in accordance with the instructions provided by the commission.

**(4)** (a) In this subsection, "military elector" has the meaning given in s. 6.34 (1).

(b) 1. Except as otherwise provided in s. 6.875, an elector voting absentee, other than a military elector or an overseas elector, shall make and subscribe to the certification before one witness who is an adult U.S. citizen. A military elector or an overseas elector voting absentee, regardless of whether the elector qualifies as a resident of this state under s. 6.10, shall make and subscribe to the certification before one witness who is an adult but who need not be a U.S. citizen. The absent elector, in the presence of the witness, shall mark the ballot in a manner that will not disclose how the elector's vote is cast. The elector shall then, still in the presence of the witness, fold the ballots so each is separate and so that the elector conceals the markings thereon and deposit them in the proper envelope. If a consolidated ballot under s.

***2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)***

Add. 29

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 86 of 116

**6.87    THE ELECTORS**    **Updated 23-24 Wis. Stats.    24**

5.655 is used, the elector shall fold the ballot so that the elector conceals the markings thereon and deposit the ballot in the proper envelope. If proof of residence under s. 6.34 is required and the document enclosed by the elector under this subdivision does not constitute proof of residence under s. 6.34, the elector shall also enclose proof of residence under s. 6.34 in the envelope. Except as provided in s. 6.34 (2m), proof of residence is required if the elector is not a military elector or an overseas elector and the elector registered by mail or by electronic application and has not voted in an election in this state. If the elector requested a ballot by means of facsimile transmission or electronic mail under s. 6.86 (1) (ac), the elector shall enclose in the envelope a copy of the request which bears an original signature of the elector. The elector may receive assistance under sub. (5). The return envelope shall then be sealed. The witness may not be a candidate. The envelope shall be mailed by the elector, or delivered in person, to the municipal clerk issuing the ballot or ballots. If the envelope is mailed from a location outside the United States, the elector shall affix sufficient postage unless the ballot qualifies for delivery free of postage under federal law. Failure to return an unused ballot in a primary does not invalidate the ballot on which the elector's votes are cast. Return of more than one marked ballot in a primary or return of a ballot prepared under s. 5.655 or a ballot used with an electronic voting system in a primary which is marked for candidates of more than one party invalidates all votes cast by the elector for candidates in the primary.

2. Unless subd. 3. applies, if the absentee elector has applied for and qualified to receive absentee ballots automatically under s. 6.86 (2) (a), the elector may, in lieu of providing proof of identification, submit with his or her absentee ballot a statement signed by the same individual who witnesses voting of the ballot which contains the name and address of the elector and verifies that the name and address are correct.

3. If the absentee elector has received an absentee ballot from the municipal clerk by mail for a previous election, has provided proof of identification with that ballot, and has not changed his or her name or address since providing that proof of identification, the elector is not required to provide proof of identification.

4. If the absentee elector has received a citation or notice of intent to revoke or suspend an operator's license from a law enforcement officer in any jurisdiction that is dated within 60 days of the date of the election and is required to surrender his or her operator's license or driving receipt issued to the elector under ch. 343 at the time the citation or notice is issued, the elector may enclose a copy of the citation or notice in lieu of a copy of an operator's license or driving receipt issued under ch. 343 if the elector is voting by mail, or may present an original copy of the citation or notice in lieu of an operator's license or driving receipt under ch. 343 if the elector is voting at the office of the municipal clerk.

5. Unless subd. 3. or 4. applies, if the absentee elector resides in a qualified retirement home, as defined in s. 6.875 (1) (at), or a residential care facility, as defined in s. 6.875 (1) (bm), and the municipal clerk or board of election commissioners of the municipality where the facility or home is located does not send special voting deputies to visit the facility or home at the election under s. 6.875, the elector may, in lieu of providing proof of identification, submit with his or her absentee ballot a statement signed by the same individual who witnesses voting of the ballot that contains the certification of an authorized representative of the facility or home that the elector resides in the facility or home and the facility or home is certified or registered as required by law, that contains the name and address of the elector, and that verifies that the name and address are correct.

**(5)** If the absent elector declares that he or she is unable to read, has difficulty in reading, writing or understanding English or due to disability is unable to mark his or her ballot, the elector may select any individual, except the elector's employer or an agent of that employer or an officer or agent of a labor organization which represents the elector, to assist in marking the ballot, and the assistant shall then sign his or her name to a certification on the back of the ballot, as provided under s. 5.55.

**(6)** The ballot shall be returned so it is delivered to the polling place no later than 8 p.m. on election day. Except in municipalities where absentee ballots are canvassed under s. 7.52, if the municipal clerk receives an absentee ballot on election day, the clerk shall secure the ballot and cause the ballot to be delivered to the polling place serving the elector's residence before 8 p.m. Any ballot not mailed or delivered as provided in this subsection may not be counted.

**(6d)** If a certificate is missing the address of a witness, the ballot may not be counted.

**(6m)** Except as authorized in s. 6.47 (8), the municipal clerk shall withhold from public inspection under s. 19.35 (1) the name and address of any absent elector who obtains a confidential listing under s. 6.47 (2).

**(7)** No individual who is a candidate at the election in which absentee ballots are cast may serve as a witness. Any candidate who serves as a witness shall be penalized by the discounting of a number of votes for his or her candidacy equal to the number of certificate envelopes bearing his or her signature.

**(8)** The provisions of this section which prohibit candidates from serving as a witness for absentee electors shall not apply to the municipal clerk in the performance of the clerk's official duties.

**(9)** If a municipal clerk receives an absentee ballot with an improperly completed certificate or with no certificate, the clerk may return the ballot to the elector, inside the sealed envelope when an envelope is received, together with a new envelope if necessary, whenever time permits the elector to correct the defect and return the ballot within the period authorized under sub. (6).

**History:** 1971 c. 242; 1971 c. 304 s. 29 (1), (2); 1975 c. 85; 1975 c. 93 s. 119 (2); 1975 c. 199; 1977 c. 394; 1979 c. 232, 260, 311, 355; 1983 a. 36, 484, 538; 1985 a. 304; 1991 a. 316; 1999 a. 49, 182; 2001 a. 16, 38, 109; 2003 a. 265; 2005 a. 451; 2011 a. 23, 75, 227; 2013 a. 159, 165; 2015 a. 117; 2015 a. 118 s. 266 (10); 2015 a. 261; 2017 a. 365 s. 111; 2017 a. 366, 369.

The directions in sub. (3) for mailing or personal delivery of an absentee ballot and in sub. (6) that a ballot not mailed or delivered as provided in the section should not be counted are directory and not mandatory. Lanser v. Koconis, 62 Wis. 2d 86, 214 N.W.2d 425 (1974).

Sub. (4) is directory and not mandatory, and voters printing their names constituted substantial, albeit nontechnical, compliance with the statute's requirements. Lanser v. Koconis, 62 Wis. 2d 86, 214 N.W.2d 425 (1974).

A challenge of compliance with procedures for absent voting is within the board of canvassers' jurisdiction. Absent connivance, fraud, or undue influence, substantial compliance with statutory voting procedures is sufficient. Johnson v. Hayden, 105 Wis. 2d 468, 313 N.W.2d 869 (Ct. App. 1981).

Sub. (4) (b) 1. allows the use of ballot drop boxes. Clerks may lawfully utilize secure drop boxes in an exercise of their statutorily-conferred discretion. The statute does not specify a location to which a ballot must be returned and requires only that the ballot be delivered to a location the municipal clerk, within the municipal clerk's discretion, designates. Priorities USA v. Wisconsin Elections Commission, 2024 WI 32, 412 Wis. 2d 594, 8 N.W.3d 429, 24-0164.

The word "address" in subs. (2) and (6d) in relation to an absentee ballot witness means "a place where the witness may be communicated with." The determination of whether the witness address requirement is satisfied should be measured from the viewpoint of the municipal clerk, acting reasonably in the discharge of the clerk's duties. Nothing in the record suggests that a street number, street name, and municipality are necessary components of a witness's address, so long as the address information provided by the witness is sufficient to identify a place where the witness may be communicated with. Rise, Inc. v. Wisconsin Elections Commission, 2024 WI App 48, 413 Wis. 2d 366, 11 N.W.3d 241, 24-0165.

2011 Wis. Act 23, which created requirements that voters present photo identification in order to vote at a polling place or obtain an absentee ballot, does not violate either section 2 of the federal Voting Rights Act, 52 USC 10301, or the U.S. Constitution. Frank v. Walker, 768 F.3d 744 (2014).

Sub. (3), which prohibits election officials from sending absentee ballots via email or fax to all but a few categories of voters, does not violate the U.S. Constitution. Some travelers' potential inconvenience does not permit a court to override the state's judgment that other interests predominate. Wisconsin wants to control errors arising from the fact that faxed or emailed ballots cannot be counted by machine and to protect the secrecy of the ballot. Luft v. Evers, 963 F.3d 665 (2020).

The federal Voting Rights Act is clear: disabled voters who need assistance in returning an absentee ballot are entitled to ask a person of their choosing for that assis-

***2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)***

Add. 30

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 87 of 116

tance. Wisconsin state courts have construed sub. (4) (b) 1. as prohibiting voters, including disabled voters, from receiving such assistance, so that portion of sub. (4) (b) 1. is preempted by the Act. Carey v. Wisconsin Elections Commission, 624 F. Supp. 3d 1020 (2022).

### 6.875 Absentee voting in certain residential care facilities and retirement homes.

**(1)** In this section:

(ab) "Adult family home" means a facility that is certified or licensed to operate as an adult family home under s. 50.032 or 50.033.

(ae) "Community-based residential facility" has the meaning given in s. 50.01 (1g), except that the term does not include a place where fewer than 10 adults who are not related to the operator or administrator reside.

(am) "Nursing home" means a facility occupied by 10 or more unrelated individuals for the primary purpose of obtaining full-time personal or nursing care which is necessitated by their physical or mental conditions, but does not include a hospital.

(asm) "Residential care apartment complex" means a facility that is certified or registered to operate as a residential care apartment complex under s. 50.034 (1).

(at) "Qualified retirement home" means a retirement home that qualifies under sub. (2) (c) to utilize the procedures under this section.

(b) "Relative" means a spouse or individual related within the 1st, 2nd or 3rd degree of kinship under s. 990.001 (16).

(bm) "Residential care facility" means an adult family home, community-based residential facility, nursing home, or residential care apartment complex.

(c) "Retirement home" means a facility occupied as a primary place of abode by 10 or more unrelated individuals.

(d) "Working day" has the meaning given in s. 227.01 (14).

**(2)** (a) Absentee voting in person inside residential care facilities and qualified retirement homes shall be conducted by municipalities only in the manner prescribed in this section. At any residential care facility or qualified retirement home where a municipality dispatches special voting deputies to conduct absentee voting in person under this section, the procedures prescribed in this section are the exclusive means of absentee voting in person inside that facility or home for electors who are occupants of the facility or home.

(c) The municipal clerk or board of election commissioners of any municipality where a retirement home is located may adopt the procedures under this section for absentee voting in any retirement home located in the municipality if the municipal clerk or board of election commissioners finds that a significant number of the occupants of the retirement home lack adequate transportation to the appropriate polling place, a significant number of the occupants of the retirement home may need assistance in voting, there are a significant number of the occupants of the retirement home aged 60 or over, or there are a significant number of indefinitely confined electors who are occupants of the retirement home.

**(3)** (a) An occupant of a qualified retirement home or residential care facility who qualifies as an absent elector and desires to receive an absentee ballot shall make application under s. 6.86 (1), (2), or (2m) with the municipal clerk or board of election commissioners of the municipality in which the elector is a resident. Except as provided in sub. (4) (ar), the clerk or board of election commissioners of a municipality receiving an application from an elector who is an occupant of a qualified retirement home or residential care facility located in a different municipality shall, as soon as possible, notify and send an absentee ballot for the elector to the clerk or board of election commissioners of the municipality in which the home or facility is located. Except as provided in sub. (4) (ar), the clerk or board of election commis-

sioners of a municipality receiving an application from an elector who is an occupant of a qualified retirement home or residential care facility located in the municipality but who is a resident of a different municipality shall, as soon as possible, notify and request an absentee ballot from the clerk or board of election commissioners of the municipality in which the elector is a resident. The clerk or board of election commissioners shall make a record of all absentee ballots to be sent, delivered, and voted under this section.

(b) An occupant of a retirement home may vote in person at the polling place serving his or her residence or may apply for and cast an absentee ballot at the election in the same manner as provided for other electors of the municipality where he or she resides. If a retirement home that is not a qualified retirement home is located within a municipality on the same grounds as one or more residential care facilities to which the municipal clerk or board of election commissioners of the municipality dispatches special voting deputies to conduct voting at an election, the municipal clerk or board of election commissioners shall obtain from the management of the retirement home the names and addresses of the occupants of the home. The municipal clerk or board of election commissioners shall then provide the names and addresses to the special voting deputies to verify which residents are eligible to cast their ballots with the special voting deputies.

**(4)** (a) For the purpose of absentee voting in qualified retirement homes and residential care facilities, the municipal clerk or board of election commissioners of each municipality in which one or more qualified retirement homes or residential care facilities are located shall appoint at least 2 special voting deputies for the municipality. Except as provided in par. (am), upon application under s. 6.86 (1), (2), or (2m) by one or more qualified electors who are occupants of a home or facility, the municipal clerk or board of election commissioners of the municipality in which the home or facility is located shall dispatch 2 special voting deputies to visit the home or facility for the purpose of supervising absentee voting procedure by occupants of the home or facility. The clerk or board of election commissioners shall maintain a list, available to the public upon request, of each home or facility where special voting deputies are dispatched. The list shall include the date and time the deputies intend to visit each home or facility. The 2 deputies designated to visit each qualified retirement home and residential care facility shall be affiliated with different political parties whenever deputies representing different parties are available.

(am) The municipal clerk or board of election commissioners of a municipality need not dispatch special voting deputies to visit any residential care facility unless there are at least 5 registered electors of the municipality who are occupants of the facility.

(ar) As an alternative to absentee voting inside a residential care facility or qualified retirement home, an elector who is an occupant of the facility or home may:

1. Vote in person at the polling place serving his or her residence under s. 6.79 (2) or in person at the office of the municipal clerk or board of election commissioners of the municipality where he or she resides under s. 6.86 (1) (a) 2.; or

2. If the elector maintains a residence outside the facility or home, vote by applying for and casting an absentee ballot by mail under s. 6.86 (1) (a) 1. at that residence.

(at) Except as provided in par. (ar), if a qualified elector of a municipality who is an occupant of a residential care facility or qualified retirement home in that municipality requests an absentee ballot for an election and the municipal clerk or board of election commissioners dispatches special voting deputies to that fa-

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 88 of 116

**6.875**    **THE ELECTORS**    Updated 23-24 Wis. Stats.    **26**

cility or home, the clerk or board of election commissioners shall give the absentee ballot to the special voting deputies who shall personally deliver the ballot to the elector at the time of their visit if they have not finished visiting the facility or home when the request is received.

(b) Nominations for the special voting deputy positions described in par. (a) may be submitted by the 2 recognized political parties whose candidates for governor or president received the greatest numbers of votes in the municipality at the most recent general election. The deputies shall be specially appointed to carry out the duties under par. (a) for the period specified in s. 7.30 (6) (a). The clerk or board of election commissioners may revoke an appointment at any time. No individual who is employed or retained, or within the 2 years preceding appointment has been employed or retained, at a qualified retirement home or residential care facility in the municipality, or any member of the individual's immediate family, as defined in s. 19.42 (7), may be appointed to serve as a deputy.

**(5)** Prior to entering upon his or her duties, each individual appointed to serve as a deputy under this section shall file the oath required by s. 7.30 (5). In the oath, the individual shall swear that he or she is qualified to act as a deputy under this section, that he or she has read the statutes governing absentee voting, that he or she understands the proper absentee voting procedure, that he or she understands the penalties for noncompliance with the procedure under s. 12.13, that his or her sacred obligation will be to fully and fairly implement the absentee voting law and seek to have the intent of the electors ascertained. In addition, the oath shall state that the individual realizes that any error in conducting the voting procedure may result in invalidation of an elector's vote under s. 7.51 (2) (e) and that the individual realizes that absentee voting is a privilege and not a constitutional right. The form of the oath shall be prescribed by the commission.

**(6)** (a) Special voting deputies in each municipality shall, not later than 5 p.m. on the 6th working day preceding an election, arrange one or more convenient times with the administrator of each qualified retirement home and residential care facility in the municipality that the deputies are scheduled to visit. The time may be no earlier than the 4th Monday preceding the election and no later than 5 p.m. on the Monday preceding the election. The municipal clerk shall give notice of each visit by special voting deputies to a qualified retirement home or residential care facility in the same manner that notices of public meetings are provided by presiding officers under s. 19.84 (1) (b) at least 5 working days in advance of each visit, indicating the date and time of the visit. The municipal clerk also shall post a notice at the home or facility and on the Internet indicating the date and time that absentee voting will take place at that home or facility. The notice shall be posted as soon as practicable after arranging the visit but in no case less than 5 working days before the visit. A municipal clerk whose municipality does not maintain an Internet site need not comply with the Internet posting requirement. At the designated time, 2 deputies appointed under sub. (4) shall visit the home or facility.

(b) The municipal clerk or executive director of the board of election commissioners shall issue a supply of absentee ballots to the deputies sufficient to provide for the number of valid applications for an absentee ballot received by the clerk, and a reasonable additional number of ballots. The deputies may exercise the authority granted to the chief inspector under s. 7.41 to regulate the conduct of observers. For purposes of the application of s. 7.41, the home or facility shall be treated as a polling place. The municipal clerk or executive director shall keep a careful record of all ballots issued to the deputies and shall require the deputies to return every ballot issued to them.

(c) 1. Upon their visit to the home or facility under par. (a), the deputies shall personally offer each elector who has filed a proper application for an absentee ballot the opportunity to cast his or her absentee ballot. In lieu of providing a copy of proof of identification under s. 6.87 (4) (b) 1. with his or her absentee ballot, the elector may submit with his or her ballot a statement signed by both deputies that contains the name and address of the elector and verifies that the name and address are correct. The deputies shall enclose the statement in the certificate envelope. If an elector presents proof of identification under s. 6.87 (4) (b) 1., the deputies shall make a copy of the document presented by the elector and shall enclose the copy in the certificate envelope. If an elector is present who has not filed a proper application for an absentee ballot, the 2 deputies may accept an application from the elector and shall issue a ballot to the elector if the elector is qualified, the elector presents proof of identification, whenever required, or submits a statement containing his or her name and address under this subdivision, and the application is proper. The deputies shall each witness the certification and may, upon request of the elector, assist the elector in marking the elector's ballot. The deputies shall not accept an absentee ballot submitted by an elector whose ballot was not issued to the elector by the deputies. All voting shall be conducted in the presence of the deputies. Upon request of the elector, a relative of the elector who is present in the room may assist the elector in marking the elector's ballot. No individual other than a deputy may witness the certification and no individual other than a deputy or relative of an elector may render voting assistance to the elector.

2. Upon the request of a relative of an occupant of a qualified retirement home or residential care facility, the administrator of the home or facility may notify the relative of the time or times at which special voting deputies will conduct absentee voting at the home or facility and permit the relative to be present in the room where the voting is conducted.

(d) Upon completion of the voting on each day at each residential care facility or qualified retirement home, the deputies shall seal the absentee ballot envelopes and any absentee ballot applications inside a carrier envelope and shall seal the carrier envelope and sign their names to the seal. The deputies shall place the envelope inside a ballot bag or container. As soon as possible after visiting each residential care facility or retirement home, but not later than 18 hours after the visit, the deputies shall deliver the ballot bag or container to the clerk or board of election commissioners of the municipality in which the elector casting the ballot resides.

(e) If a qualified elector is not able to cast his or her ballot on 2 separate visits by the deputies to the home or facility, the deputies shall so inform the municipal clerk or executive director of the board of election commissioners, who may then send the ballot to the elector no later than 5 p.m. on the Friday preceding the election.

**(7)** One observer from each of the 2 recognized political parties whose candidate for governor or president received the greatest number of votes in the municipality at the most recent general election may accompany the deputies to each home or facility where absentee voting will take place under this section. The observers may observe the process of absentee ballot distribution in the common areas of the home or facility. Each party wishing to have an observer present shall submit the name of the observer to the clerk or board of election commissioners no later than the close of business on the last business day prior to the visit.

**History:** 1985 a. 304; 1987 a. 391; 1989 a. 192; 1997 a. 127, 188, 237; 1999 a. 32, 182; 2001 a. 16, 109; 2005 a. 149, 451; 2007 a. 96; 2011 a. 23, 75; 2013 a. 159; 2015 a. 118 s. 266 (10).

**6.88 Voting and recording the absentee ballot. (1)** When an absentee ballot arrives at the office of the municipal

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 32

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 89 of 116

**27    Updated 23-24 Wis. Stats.**    **THE ELECTORS    6.92**

clerk, or at an alternate site under s. 6.855, if applicable, the clerk shall enclose it, unopened, in a carrier envelope which shall be securely sealed and endorsed with the name and official title of the clerk, and the words "This envelope contains the ballot of an absent elector and must be opened in the same room where votes are being cast at the polls during polling hours on election day or, in municipalities where absentee ballots are canvassed under s. 7.52, stats., at a meeting of the municipal board of absentee ballot canvassers under s. 7.52, stats." If the elector is a military elector, as defined in s. 6.34 (1), or an overseas elector, regardless of whether the elector qualifies as a resident of this state under s. 6.10, and the ballot was received by the elector by facsimile transmission or electronic mail and is accompanied by a separate certificate, the clerk shall enclose the ballot in a certificate envelope and securely append the completed certificate to the outside of the envelope before enclosing the ballot in the carrier envelope. The clerk shall keep the ballot in the clerk's office or at the alternate site, if applicable until delivered, as required in sub. (2).

**(2)** When an absentee ballot is received by the municipal clerk prior to the delivery of the official ballots to the election officials of the ward in which the elector resides or, where absentee ballots are canvassed under s. 7.52, to the municipal board of absentee ballot canvassers, the municipal clerk shall seal the ballot envelope in the carrier envelope as provided under sub. (1), and shall enclose the envelope in a package and deliver the package to the election inspectors of the proper ward or election district or, in municipalities where absentee ballots are canvassed under s. 7.52, to the municipal board of absentee ballot canvassers when it convenes under s. 7.52 (1). When the official ballots for the ward or election district have been delivered to the election inspectors before the receipt of an absentee ballot, the clerk shall immediately enclose the envelope containing the absentee ballot in a carrier envelope as provided under sub. (1) and deliver it in person to the proper election officials.

**(3)** (a) Except in municipalities where absentee ballots are canvassed under s. 7.52, at any time between the opening and closing of the polls on election day, the inspectors shall, in the same room where votes are being cast, in such a manner that members of the public can hear and see the procedures, open the carrier envelope only, and announce the name of the absent elector or the identification serial number of the absent elector if the elector has a confidential listing under s. 6.47 (2). When the inspectors find that the certification has been properly executed, the applicant is a qualified elector of the ward or election district, and the applicant has not voted in the election, they shall enter an indication on the poll list next to the applicant's name indicating an absentee ballot is cast by the elector. They shall then open the envelope containing the ballot in a manner so as not to deface or destroy the certification thereon. The inspectors shall take out the ballot without unfolding it or permitting it to be unfolded or examined. Unless the ballot is cast under s. 6.95, the inspectors shall verify that the ballot has been endorsed by the issuing clerk. If the poll list indicates that proof of residence under s. 6.34 is required and proof of residence is enclosed, the inspectors shall enter both the type of identifying document submitted by the absent elector and the name of the entity or institution that issued the identifying document on the poll list in the space provided. If the poll list indicates that proof of residence under s. 6.34 is required and no proof of residence is enclosed or the name or address on the document that is provided is not the same as the name and address shown on the poll list, the inspectors shall proceed as provided under s. 6.97 (2). The inspectors shall then deposit the ballot into the proper ballot box and enter the absent elector's name or voting number after his or her name on the poll list in the same manner as if the elector had been present and voted in person.

(b) When the inspectors find that a certification is insuffi-

cient, that the applicant is not a qualified elector in the ward or election district, that the ballot envelope is open or has been opened and resealed, that the ballot envelope contains more than one ballot of any one kind or, except in municipalities where absentee ballots are canvassed under s. 7.52, that the certificate of a military or overseas elector who received an absentee ballot by facsimile transmission or electronic mail is missing, or if proof is submitted to the inspectors that an elector voting an absentee ballot has since died, the inspectors shall not count the ballot. The inspectors shall endorse every ballot not counted on the back, "rejected (giving the reason)". The inspectors shall reinsert each rejected ballot into the certificate envelope in which it was delivered and enclose the certificate envelopes and ballots, and securely seal the ballots and envelopes in an envelope marked for rejected absentee ballots. The inspectors shall endorse the envelope, "rejected ballots" with a statement of the ward or election district and date of the election, signed by the chief inspector and one of the inspectors representing each of the 2 major political parties and returned to the municipal clerk in the same manner as official ballots voted at the election.

(c) The inspectors shall review each certificate envelope to determine whether any absentee ballot is cast by an elector whose name appears on the poll list as ineligible to vote at the election by reason of a felony conviction. If the inspectors receive an absentee ballot that has been cast by an elector whose name appears on the poll list as ineligible for that reason, the inspectors shall challenge the ballot as provided in s. 6.92 and treat the ballot in the manner provided in s. 6.95.

**History:** 1971 c. 304 s. 29 (2); 1975 c. 85, 199; 1977 c. 394 ss. 43, 53; 1979 c. 232, 260; 1983 a. 183, 484; 1987 a. 391; 1999 a. 49, 182; 2001 a. 38, 109; 2003 a. 265; 2005 a. 451; 2011 a. 23, 75, 227; 2013 a. 182; 2017 a. 369.

This section and ss. 6.80, 7.37, 7.51, and 9.01, when read together, unambiguously establish that the lack of elections inspector or municipal clerk initials on a ballot is not by itself a reason for rejecting the ballot, whether in an initial canvass or during a recount. Unendorsed ballots must be counted in the election unless there is a reason beyond the lack of an endorsement to reject them, such as when the total number of ballots exceeds the total number of electors recorded in the poll books. Section 7.51 makes evident that the only reason that a missing endorsement would result in a ballot not being counted in the election-day canvass is if it is necessary to put the unendorsed ballot aside to reconcile the number of ballots with the number of electors who are recorded as having cast ballots in the election. Gonfiantini v. Rock County Board of Canvassers, 2025 WI App 26, 416 Wis. 2d 118, 20 N.W.3d 773, 24-1233.

**6.89  Absent electors list public.**  The municipal clerk shall keep a list of all electors who make application for an absent elector's ballot and who have voted under the absent elector provisions giving the name, address and date of application. The list shall be open to public inspection.

SUBCHAPTER V

CHALLENGING ELECTORS

**Cross-reference:** See also ch. EL 9, Wis. adm. code.

**6.92  Inspector making challenge. (1)** Except as provided in sub. (2), each inspector shall challenge for cause any person offering to vote whom the inspector knows or suspects is not a qualified elector or who does not adhere to any voting requirement under this chapter. If a person is challenged as unqualified by an inspector, one of the inspectors shall administer the following oath or affirmation to the person: "You do solemnly swear (or affirm) that you will fully and truly answer all questions put to you regarding your place of residence and qualifications as an elector of this election"; and shall then ask questions which are appropriate as determined by the commission, by rule, to test the person's qualifications.

**(2)** An inspector appointed under s. 7.30 (2) (am) may not challenge any person offering to vote.

**History:** 1971 c. 304 s. 29 (2); 1971 c. 336 s. 37; 1975 c. 85 ss. 41, 42, 43, 66 (3);

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 33

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 90 of 116

1    Updated 23-24 Wis. Stats.    **ELECTION OFFICIALS; DUTIES; CANVASSING**    **7.08**

# CHAPTER 7

# ELECTION OFFICIALS; BOARDS; SELECTION AND DUTIES; CANVASSING

SUBCHAPTER I
SELECTION AND DUTIES

7.03    Compensation of election officials and trainees.
7.08    Elections commission.
7.10    County clerks.
7.11    Menominee county; town elections.
7.15    Municipal clerks.
7.20    Board of election commissioners.
7.21    Election commissioners, duties and regulations.
7.22    Municipal board of election commissioners.
7.23    Destruction of election materials.
7.24    Title to election materials.
7.25    Voting machine officials' duties.
7.30    Appointment of election officials.
7.31    Training and certification of chief inspectors.
7.315   Training of other election officials.
7.32    Change of election official numbers.

7.33    Service as an election official.
7.36    Chief inspector's duties.
7.37    Inspectors' duties.
7.38    Vacancies after nomination.
7.40    Sample ballots.
7.41    Public's right to access.

SUBCHAPTER II
CANVASS OF RETURNS AND CERTIFICATION

7.50    Elector intent.
7.51    Local board of canvassers.
7.52    Canvassing of absentee ballots.
7.53    Municipal canvass.
7.54    Contested elections.
7.60    County canvass.
7.70    State canvass.
7.75    Presidential electors meeting.
7.80    Notice of election.

**NOTE: 2005 Wis. Act 451, which made major revisions to the election laws, including to this chapter, contains an extensive prefatory note explaining the changes.**

**Cross-reference:** See definitions in s. 5.02.

## SUBCHAPTER I

## SELECTION AND DUTIES

**7.03 Compensation of election officials and trainees.**
**(1)** (a) Except as authorized under this paragraph, a reasonable daily compensation shall be paid to each inspector, voting machine custodian, automatic tabulating equipment technician, member of a board of canvassers, messenger, and tabulator who is employed and performing duties under chs. 5 to 12. Daily compensation shall also be provided to inspectors and inspector trainees for attendance at training programs conducted by the commission and municipal clerks under ss. 7.31 and 7.315. Alternatively, such election officials and trainees may be paid by the hour at a proportionate rate for each hour actually worked. Any election official or trainee may choose to volunteer his or her services by filing with the municipal clerk of the municipality in which he or she serves a written declination to accept compensation. The volunteer status of the election official or trainee remains effective until the official or trainee files a written revocation with the municipal clerk.

(b) Except as provided in par. (bm), any compensation owed shall be paid by the municipality in which the election is held, except that any compensation payable to a technician, messenger, tabulator, or member of the board of canvassers who is employed to perform services for the county shall be paid by the county and compensation payable to any messenger or tabulator who is employed to perform services for the state shall be paid by the commission.

(bm) Whenever a special election is called by a county or by a school district, a technical college district, a sewerage district, a sanitary district, or a public inland lake protection and rehabilitation district, the county or district shall pay the compensation of election officials performing duties in those municipalities, as determined under sub. (2).

(c) If a central counting location serving more than one municipality is utilized under s. 7.51 (1), the cost of compensation of election officials at the location shall be proportionately divided between the municipalities utilizing the location, except that if all municipalities within a county utilize the location, the compensation shall be paid by the county.

(d) Except as otherwise provided in par. (a), special voting deputies appointed under s. 6.875 (4) and other officials and trainees who attend training sessions under s. 7.15 (1) (e) or 7.25 (5) may also be compensated by the municipality where they serve at the option of the municipality.

**(2)** The amount of compensation of election officials, when authorized or required, shall be fixed by the appropriate county board of supervisors, municipal governing body, or municipal board of election commissioners in cities over 500,000 population. The commission shall fix the amount to be paid any person employed to perform duties for the state. If the commission employs an individual to perform duties which are the responsibility of a county or municipality, the commission shall charge the expense to the county or municipality.

**History:** 1973 c. 334 s. 57; 1977 c. 394, 427; 1979 c. 89, 260, 311, 355; 1983 a. 484; 1985 a. 304; 1987 a. 111, 391; 1993 a. 399; 2001 a. 16, 109; 2003 a. 143; 2005 a. 451; 2015 a. 118, 261.

**7.08 Elections commission.** In addition to its duties for ballot arrangement under ch. 5 and date and notice requirements under ch. 10, the commission shall:

**(1)** ELECTION FORMS, VOTING APPARATUS. (a) Prescribe all official ballot forms necessary under chs. 5 to 10 and 12 and revise the official ballot forms to harmonize with legislation and the current official status of the political parties whenever necessary. The commission shall include on each ballot form, in the space for official endorsement, markings or spaces for identifying a ballot as an overvoted ballot, a duplicate overvoted ballot, a damaged ballot, or a duplicate damaged ballot, and for writing an identifying serial number. The commission shall provide one copy of each ballot form without charge to each county and municipal clerk and board of election commissioners. The commission shall distribute or arrange for distribution of additional copies. The prescribed forms shall be substantially followed in all elections under chs. 5 to 10 and 12.

(b) Prescribe the necessary standard sample forms and ballot containers to make the canvass, returns, statements and tally sheet statements for all elections the results of which are reportable to the commission under s. 7.60 (4) (a), and all other materials as it deems necessary to conduct the elections. The sample

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 34

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 91 of 116

**7.08    ELECTION OFFICIALS; DUTIES; CANVASSING**    **Updated 23-24 Wis. Stats.    2**

forms shall contain the necessary certificates of the inspectors and canvassers with notes explaining their use and statutory basis.

(c) Prescribe forms required by ss. 6.24 (3) and (4), 6.30 (4) and (5), 6.33 (1), 6.47 (1) (am) 2. and (3), 6.55 (2), and 6.86 (2) to (3). All such forms shall contain a statement of the penalty applicable to false or fraudulent registration or voting through use of the form. Forms are not required to be furnished by the commission.

(d) Promulgate rules for the administration of the statutory requirements for voting machines and electronic voting systems and any other voting apparatus which may be introduced in this state for use at elections. Pursuant to such responsibility, the commission may obtain assistance from competent persons to check the machines, systems and apparatus and approve for use those types meeting the statutory requirements and shall establish reasonable compensation for persons performing duties under this paragraph.

**(2)** CERTIFIED LISTS. (a) As soon as possible after the closing date for filing nomination papers or after the canvass of the primary vote, but no later than the deadlines established in s. 10.06, transmit to each county clerk a certified list of all candidates on file in its office for which electors in that county may vote. The list shall designate the order of arrangement and contain each candidate's first name, middle initial or initials and last name, unless the candidate on his or her nomination papers or declaration of candidacy specifies that the middle initial be deleted, that a full middle name or former legal surname be substituted for the middle initial, that an initial be substituted for the candidate's first name or that a nickname be substituted for a first or middle name or for a first initial or middle initial or initials, but no other abbreviations or titles are permitted. The list shall also include each candidate's residence and post-office address; the office for which the person is a candidate; and, the party or principle the candidate represents, if any, in 5 words or less. Names of candidates nominated under s. 7.38 or 8.35 shall be certified by the commission upon filing of the necessary papers with it. At any time prior to an election, the commission may transmit an amended certification if a candidate dies or is determined not to qualify for ballot placement.

(b) The certified list of candidates for president and vice president nominated at a national convention by a party entitled to a partisan primary ballot or for whom electors have been nominated under s. 8.20 shall be sent as soon as possible after the closing date for filing nomination papers, but no later than the deadlines established in s. 10.06.

(d) As soon as possible after the last Tuesday in January of each year in which there is a presidential election, the commission shall transmit to each county clerk a certified list of candidates for president who have qualified to have their names appear on the presidential preference primary ballot.

**(3)** ELECTION MANUAL. Prepare and publish separate from the election laws an election manual written so as to be easily understood by the general public explaining the duties of the election officials, together with notes and references to the statutes as the commission considers advisable. The election manual shall:

(a) Be compiled by the commission.

(b) Emphasize the fact that election officials should help, not hinder, electors in exercising their voting rights.

(c) Be subject to periodic review and revision when necessary.

**(4)** ELECTION LAWS. Publish the election laws. The commission shall sell or distribute or arrange for the sale or distribution of copies of the election laws to county and municipal clerks and boards of election commissioners and members of the public.

**(5)** DISTRICT MAPS. Distribute, upon request and free of charge, to any candidate for representative in Congress, state senator, or representative to the assembly a copy of the map or maps received under s. 16.96 (3) (b) showing district boundaries.

**(6)** ENFORCEMENT OF FEDERAL VOTING SYSTEM STANDARDS. Following each general election, audit the performance of each voting system used in this state to determine the error rate of the system in counting ballots that are validly cast by electors. If the error rate exceeds the rate permitted under standards of the federal election commission in effect on October 29, 2002, the commission shall take remedial action and order remedial action to be taken by affected counties and municipalities to ensure compliance with the standards. Each county and municipality shall comply with any order received under this subsection.

**(8)** ELECTORS VOTING WITHOUT PROOF OF RESIDENCE OR IDENTIFICATION OR PURSUANT TO COURT ORDER. Prescribe a written notice to be distributed to electors who vote under s. 6.96 or 6.97 that informs an elector how to obtain information regarding whether his or her vote has been counted, and if the vote will not be counted, the reason that the vote will not be counted.

**(10)** DOMESTIC ABUSE AND SEXUAL ASSAULT SERVICE PROVIDERS. Provide to each municipal clerk, on a continuous basis, the names and addresses of organizations that are certified under s. 49.165 (4) (a) or 165.93 (4) (a) to provide services to victims of domestic abuse or sexual assault.

**(11)** COORDINATION WITH AND ASSISTANCE TO LOCAL OFFICIALS. Allocate and assign sufficient members of its staff to coordinate their activities with local election officials and maintain their availability to respond to inquiries from local election officials for each statewide election and each recount in progress.

**(12)** ASSISTANCE IN OBTAINING PROOF OF IDENTIFICATION. Engage in outreach to identify and contact groups of electors who may need assistance in obtaining or renewing a document that constitutes proof of identification for voting and provide assistance to the electors in obtaining or renewing that document.

**History:** 1971 c. 242; 1973 c. 334 ss. 6, 57; 1975 c. 85, 93, 94, 199; 1977 c. 29, 107, 394, 427; 1979 c. 89, 177, 260, 311; 1981 c. 377; 1983 a. 51, 484; 1985 a. 120, 304; 1989 a. 192; 1993 a. 140; 1995 a. 16 s. 2; 1997 a. 27; 1999 a. 49, 182; 2001 a. 16, 38, 107, 109; 2003 a. 265; 2005 a. 177, 278, 451; 2007 a. 1, 20, 96; 2009 a. 28; 2011 a. 23, 32, 45, 75, 227; 2013 a. 179, 323; 2015 a. 118 ss. 85 to 87, 266 (10); 2015 a. 261; 2017 a. 366.

In this case, the petitioners waited two weeks after the Wisconsin Elections Commission's failure to certify at least 2,000 valid signatures at its August 20, 2020, meeting before asking the court for relief. The petitioners delayed in seeking relief in a situation with very short deadlines, and under the circumstances, including the fact that the 2020 fall general election had essentially begun, it was too late to grant petitioners any form of relief that would be feasible and that would not cause confusion and undue damage to both the Wisconsin electors who wanted to vote and the other candidates in all of the various races on the general election ballot. Hawkins v. Wisconsin Elections Commission, 2020 WI 75, 393 Wis. 2d 629, 948 N.W.2d 877, 20-1488.

**7.10    County clerks. (1)** ELECTION SUPPLIES AND BALLOTS. (a) Each county clerk shall provide ballots for every election in the county for all national, state and county offices, including metropolitan sewerage commission elections under s. 200.09 (11) (am), for municipal judges elected under s. 755.01 (4) and for state and county referenda. The official and sample ballots shall be prepared in substantially the same form as those prescribed by the commission under s. 7.08 (1) (a).

(b) The county clerk shall supply sufficient election supplies for national, state and county elections to municipalities within the county. The election supplies shall be enclosed in the sealed package containing the official ballots and delivered to the municipal clerk.

(c) With county board approval any county clerk may purchase or print the official forms of nomination papers for distribution to any person at cost or free.

(d) The county clerk may receive and store any unused ballots after an election upon request of any municipal clerk of a munic-

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 35

ipality within the county, and may destroy such ballots pursuant to s. 7.23 (1) (am).

**(2)** PREPARING BALLOTS. The county clerk shall prepare copy for the official ballots immediately upon receipt of the certified list of candidates' names from the commission. Names certified by the commission shall be arranged in the order certified. The county clerk shall place the names of all candidates filed in the clerk's office or certified to the clerk by the commission on the proper ballot or ballots under the appropriate office and party titles. The county clerk shall prepare a special ballot under s. 5.60 (8) showing only the candidates in the presidential preference primary.

**(3)** TIME SCHEDULE. (a) The county clerk shall distribute the ballots to the municipal clerks no later than 48 days before each partisan primary and general election and no later than 22 days before each other primary and election, except that the clerk shall distribute the ballots under sub. (2) for the presidential preference primary no later 48 days before the presidential preference primary. Election forms prepared by the commission shall be distributed at the same time. If the commission transmits an amended certification under s. 7.08 (2) (a) or if the commission or a court orders a ballot error to be corrected under s. 5.06 (6) or 5.72 (3) after ballots have been distributed, the county clerk shall distribute corrected ballots to the municipal clerks as soon as possible.

(b) The county clerk shall distribute an adequate supply of separately wrapped official ballots to each municipal clerk so the municipal clerk may supply ballots to absent elector applicants. The remaining ballots shall be sent in separately sealed packages clearly designating the ward for which each is intended and the approximate number of ballots of each kind enclosed.

**(4)** RESOLVING NOTICE DOUBTS. When in doubt as to compliance with the statutory requirements for election notices or the correct fees to be paid for them, the county clerk may consult the commission.

**(6)** MUNICIPAL JUDGE; CERTIFIED LIST. If candidates for the office of a municipal judge who is elected under s. 755.01 (4) file nomination papers in the office of the county clerk and any municipality served by the judge prepares its own ballots for voting machines or an electronic voting system, the county clerk shall certify to the municipal clerk of that municipality the names of the candidates for judge as soon as possible after the last day for filing nomination papers and after certification by the county board of canvassers of the results of any primary election.

**(7)** VOTER EDUCATION. Each county clerk shall assist the commission in conducting educational programs under s. 5.05 (12) to inform electors about the voting process.

**(8)** FREE ELECTION INFORMATION EXCHANGE. Each county clerk shall assist the commission and municipal clerks in maintaining toll-free telephone lines and other free access systems under s. 5.05 (13) for exchange of voting information.

**(9)** TRAINING OF ELECTION OFFICIALS. Each county clerk shall assist the commission in the training of election officials under s. 5.05 (7).

**(10)** INFORMATION TO COMMISSION. Each county clerk shall provide to the commission any information requested under s. 5.05 (14).

**History:** 1971 c. 304 s. 29 (2); 1973 c. 280; 1973 c. 334 s. 57; 1977 c. 394 s. 53; 1977 c. 427; 1979 c. 221, 260, 311, 355; 1981 c. 377; 1983 a. 484; 1985 a. 89, 304; 1991 a. 316; 1999 a. 150 s. 672; 1999 a. 182; 2001 a. 107; 2003 a. 265; 2005 a. 451; 2011 a. 45, 75, 165; 2015 a. 118 s. 266 (10).

In this case, the petitioners waited two weeks after the Wisconsin Elections Commission's failure to certify at least 2,000 valid signatures at its August 20, 2020, meeting before asking the court for relief. The petitioners delayed in seeking relief in a situation with very short deadlines, and under the circumstances, including the fact that the 2020 fall general election had essentially begun, it was too late to grant petitioners any form of relief that would be feasible and that would not cause confusion and undue damage to both the Wisconsin electors who wanted to vote and the

other candidates in all of the various races on the general election ballot. Hawkins v. Wisconsin Elections Commission, 2020 WI 75, 393 Wis. 2d 629, 948 N.W.2d 877, 20-1488.

County clerks are not to interpret Wisconsin's election laws and make declarations based on those interpretations. It is the Wisconsin Elections Commission that is responsible for guidance in the administration and enforcement of Wisconsin's election laws, not the county clerks. Jefferson v. Dane County, 2020 WI 90, 394 Wis. 2d 602, 951 N.W.2d 556, 20-0557.

**7.11 Menominee county; town elections.** The clerk shall prepare a ballot distinguishing between supervisors elected at large and by ward in any county having only one town with a part of the county board members elected by wards.

**History:** 1971 c. 304 s. 29 (2); 1973 c. 334.

**7.15 Municipal clerks. (1)** SUPERVISE REGISTRATION AND ELECTIONS. Each municipal clerk has charge and supervision of elections and registration in the municipality. The clerk shall perform the following duties and any others which may be necessary to properly conduct elections or registration:

(a) Equip polling places.

(b) Provide for the purchase and maintenance of election equipment.

(c) Prepare ballots for municipal elections, and distribute ballots and provide other supplies for conducting all elections. The municipal clerk shall deliver the ballots to the polling places before the polls open.

(cm) Prepare official absentee ballots for delivery to electors requesting them, and except as provided in this paragraph, send an official absentee ballot to each elector who has requested a ballot by mail, and to each military elector, as defined in s. 6.34 (1), and overseas elector who has requested a ballot by mail, electronic mail, or facsimile transmission, no later than the 47th day before each partisan primary and general election and no later than the 21st day before each other primary and election if the request is made before that day; otherwise, the municipal clerk shall send or transmit an official absentee ballot within one business day of the time the elector's request for such a ballot is received. The clerk shall send or transmit an absentee ballot for the presidential preference primary to each military elector and overseas elector who has requested that ballot no later than the 47th day before the presidential preference primary if the request is made before that day, or, if the request is not made before that day, within one business day of the time the request is received. For purposes of this paragraph, "business day" means any day from Monday to Friday, not including a legal holiday under s. 995.20.

(d) Prepare the necessary notices and publications in connection with the conduct of elections or registrations.

(e) Train election officials in their duties, calling them together whenever advisable, advise them of changes in laws, rules and procedures affecting the performance of their duties, and administer examinations as authorized under s. 7.30 (2) (c). The training shall conform with the requirements prescribed in rules promulgated by the commission under ss. 7.31 and 7.315. The clerk shall assure that officials who serve at polling places where an electronic voting system is used are familiar with the system and competent to instruct electors in its proper use. The clerk shall inspect systematically and thoroughly the conduct of elections in the municipality so that elections are honestly, efficiently and uniformly conducted.

(f) Discharge election officials for improper conduct or willful neglect of duties.

(g) In the manner prescribed by the commission, report suspected election frauds, irregularities, or violations of which the clerk has knowledge to the district attorney for the county where the suspected activity occurs and to the commission. The commission shall annually report the information obtained under this paragraph to the legislature under s. 13.172 (2).

Updated 2023-24 Wis. Stats.  Published and certified under s. 35.18.  June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 93 of 116

**7.15    ELECTION OFFICIALS; DUTIES; CANVASSING**    Updated 23-24 Wis. Stats.    4

(h)  Review, examine and certify the sufficiency and validity of petitions and nomination papers.

(i)  Direct how and when to destroy the contents of the blank ballot boxes and unused election materials.

(j)  Send an absentee ballot automatically to each elector and send or transmit an absentee ballot to each military elector, as defined in s. 6.34 (1), and each overseas elector making an authorized request therefor in accordance with s. 6.22 (4), 6.24 (4), or 6.86 (2) or (2m).

(k)  Reassign inspectors appointed to serve at one polling place to another polling place within the municipality whenever necessary to assure adequate staffing at all polling places.  No such reassignment may have the effect of eliminating representation at a polling place by one of the political parties entitled to nominate inspectors under s. 7.30 (2) (a).

**(1m)** ATTEND TRAINING.  Each municipal clerk shall, at least once every 2 years during the period beginning on January 1 of each even-numbered year and ending on December 31 of the following year, attend a training program sponsored by the commission under ss. 7.31 and 7.315.

**(2)** MUNICIPAL ELECTION DUTIES.  (a)  In municipal elections, the municipal clerks shall perform the duties prescribed for county clerks by s. 7.10.

(b)  Cities over 500,000 population may prepare their own official and sample ballots.  Official ballots not utilized as absentee ballots shall be printed so they are ready at least 2 days before the election.

(c)  With the consent of the county clerk, municipalities may prepare their own ballots whenever voting machines or electronic voting systems are used in elections where candidates for both local offices and national, state or county offices appear on the ballot.  This paragraph does not apply to cities under par. (b).

(d)  Whenever the governing body of any municipality submits any question to a vote of the electors or whenever a proper recall petition and certificate are filed under s. 9.10, the municipal clerk shall issue a call for the election and prepare and distribute ballots as required in the authorization of submission or as provided in s. 9.10.  The date of the referendum shall be fixed by the municipal clerk or board of election commissioners unless otherwise provided by law or unless the governing body fixes a date.  The ballot for any referendum shall conform to s. 5.64 (2).  If there is already an official municipal referendum ballot for the election, the question may appear on the same ballot.

**(2m)** OPERATION OF ALTERNATE ABSENTEE BALLOT SITE.  In a municipality in which the governing body has elected to establish an alternate absentee ballot site under s. 6.855, the municipal clerk shall operate such site as though it were his or her office for absentee ballot purposes and shall ensure that such site is adequately staffed.

**(3)** BALLOT SUPPLY; SAMPLE BALLOTS.  (a)  Where voting machines are used or where electronic voting systems are employed, the municipal clerk shall provide at least 2 duplicate sample ballots for each ward in diagram form showing the board or screen inside each voting machine or the front of each ballot as it will appear in the voting machines or booths on election day.

(b)  Sample ballots and voting machine ballots shall be furnished to the officials in the ward or election district at least one day before each election.

**(4)** RECORDING ELECTORS.  Except as authorized in s. 6.33 (5) (a), within 30 days after each election, the municipal clerk shall enter on the registration list under the name of each elector of the municipality who has voted at the election an indication of the date of the election in which the elector voted.

**(5)** RECORD OF BALLOTS RECEIVED.  Each municipal clerk shall keep a record of when and in what condition the packages containing the ballots were received from the county clerk.  The municipal clerk shall deliver to the proper officials the unopened packages of ballots the day before the election.

**(6)** SUBSTITUTE BALLOTS.  (a)  The municipal clerk shall provide substitute paper ballots in substantially the form of the original ballots whenever the necessary original ballots are not delivered to the municipality, are destroyed, are lost or stolen after delivery, are not ready for distribution or the supply is exhausted during polling hours.  The municipal clerk may also provide substitute paper ballots, together with ballot boxes and voting booths, whenever a voting machine or electronic voting system is rendered inoperable by a malfunction which occurs within 24 hours of the time set for opening of the polls.  Paper ballots may be cast only in accordance with the procedures prescribed in ss. 6.80 (2) and 7.37 (4).

(b)  Upon receiving the substitute paper ballots accompanied by a statement made under oath by the municipal clerk that the ballots have been prepared and furnished by the clerk to replace the original ballots which are not available, or to substitute for a voting machine or electronic voting system which has been rendered inoperable by a malfunction which occurred within 72 hours of the time set for opening of the polls, the election officials shall use the substitute ballots in the same manner as if they had been original ballots.

**(7)** REQUEST CANVASS ASSISTANCE.  The municipal clerk may request all election officials to assist the inspectors in canvassing the votes received at the respective polling places.

**(8)** RESOLVING NOTICE DOUBTS.  When in doubt as to compliance with the statutory requirements for election notices or the correct fees to be paid for them, the municipal clerk may consult the commission.

**(9)** VOTER EDUCATION.  Each municipal clerk shall assist the commission in conducting educational programs under s. 5.05 (12) to inform electors about the voting process.

**(10)** FREE ELECTION INFORMATION EXCHANGE.  Each municipal clerk shall assist the commission in maintaining toll-free telephone lines and any other free access systems under s. 5.05 (13) for exchange of voting information.

**(11)** TRAINING OF ELECTION OFFICIALS.  Each municipal clerk shall train election officials under ss. 7.31 and 7.315.

**(12)** FREE VOTE COUNTING INFORMATION.  Each municipal clerk shall maintain a free access information system under which an elector who votes under s. 6.96 or 6.97 may ascertain current information concerning whether the elector's vote has been counted, and if the vote will not be counted, the reason that it will not be counted.

**(13)** INFORMATION TO COMMISSION.  Each municipal clerk shall provide to the commission any information requested under s. 5.05 (14).

**(14)** VOTING ACCOMMODATIONS FOR INDIVIDUALS WITH DISABILITIES.  Each municipal clerk shall make reasonable efforts to comply with requests for voting accommodations made by individuals with disabilities whenever feasible.

**(15)** PROVIDE NOTICE OF OUTSTANDING PROVISIONAL BALLOTS.  As soon as possible after the closing hour for all polling places in the municipality on election night, the municipal clerk shall post at his or her office and on the Internet at a site announced by the clerk before the polls open, and shall make available to any person upon request, a statement of the number of electors who have cast provisional ballots at the election in the municipality that cannot be counted as of that closing hour because the electors have not satisfied relevant voting requirements.

**History:** 1971 c. 304 s. 29 (2); 1973 c. 334 s. 57; 1975 c. 85 ss. 50, 65; 1975 c. 275, 422; 1977 c. 283; 1977 c. 394 s. 54; 1977 c. 427, 447; 1979 c. 260, 311; 1981

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026.  Published and certified under s. 35.18.  Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 37

Updated 2023-24 Wis. Stats.  Published and certified under s. 35.18.  June 19, 2026.

USCA Case #26-5193     Document #2180381        Filed: 06/24/2026     Page 94 of 116

**5**    **Updated 23-24 Wis. Stats.**        **ELECTION OFFICIALS; DUTIES; CANVASSING**        **7.23**

c. 391; 1983 a. 484; 1985 a. 304; 1987 a. 391; 1989 a. 192; 1991 a. 316; 1999 a. 182; 2001 a. 16; 2003 a. 265; 2005 a. 451; 2007 a. 1; 2011 a. 23, 45, 75, 115; 2013 a. 148; 2015 a. 118 ss. 88, 266 (10); 2015 a. 209, 229; 2017 a. 369; 2023 a. 54.

**7.20  Board of election commissioners. (1)** A municipal board of election commissioners shall be established in every city over 500,000 population.  A county board of election commissioners shall be established in every county over 750,000 population.

**(2)** Each board of election commissioners shall consist of 3 members, each member being chosen from lists of at least 3 names each, selected and approved by the county committee of the 2 political parties receiving the most votes for governor in the county in the case of the county board of election commissioners, and receiving the most votes for governor in the city in the case of the city board of election commissioners, in the last general election.  The county executive, for the county board of election commissioners, shall select from the list 2 persons from the majority party and one person from the next highest party in the county.  The mayor, for the city board of election commissioners, shall select from the list 2 persons from the majority party and one person from the next highest party in the city.

**(3)** The persons chosen shall be qualified electors and residents of the state and county and, for the city board of election commissioners, of the city.

**(4)** Before beginning their duties as election commissioners each appointee shall take and file the official oath.

**(5)** Each board of election commissioners shall choose its own chairperson.  An act of a majority of the board is an act of the board.

**(6)** The election commissioners shall not hold any other public office and are ineligible for any appointive or elective public office, except the office of notary public, during their term.

**(7)** The term of office shall be 4 years, and until successors have been commissioned and qualified, beginning on July 1 each year following a presidential election.  Successors shall be appointed the same way.

**History:** 1973 c. 334; 1975 c. 124; 1983 a. 484 s. 172 (1); 1993 a. 184; 2013 a. 373.

Municipal clerks are the officials primarily responsible for election administration in Wisconsin.  A "board of election commissioners" is established in Wisconsin's high population cities and counties to carry out the duties otherwise accomplished by municipal and county clerks everywhere else.  The phrase "municipal clerk or board of election commissioners" appears in tandem all over the election statutes because that describes the duties of local election officials.  State ex rel. Zignego v. Wisconsin Elections Commission, 2021 WI 32, 396 Wis. 2d 391, 957 N.W.2d 208, 19-2397.

**7.21  Election commissioners, duties and regulations. (1)** All powers and duties assigned to the municipal or county clerk or the municipal or county board of canvassers under chs. 5 to 12 shall be carried out by the municipal or county board of election commissioners or its executive director, unless specifically retained or assigned in this section or s. 7.22.

**(2)** The county clerk shall serve as executive director of the county board of election commissioners.  The clerk shall perform whatever duties the board of election commissioners assigns to him or her.  An executive director of the city board of election commissioners shall be appointed under s. 62.51.

**(3)** The board of election commissioners is authorized to employ additional clerical assistants to carry out its necessary duties.  The assistants' salaries shall be fixed by the governing body of the municipality or county.

**(4)** The board of election commissioners may procure a seal to authenticate official papers and documents.

**(5)** The city council and county board shall provide office space in the city hall and county courthouse, respectively, pay all the necessary expenses, cooperate with the board of election commissioners, provide storage space for the election equipment and supplies and assist with the moving and conducting of the elections as necessary.

**History:** 1973 c. 334; 1979 c. 89; 1983 a. 36; 1983 a. 484 s. 172 (1), (2); 1985 a. 304 ss. 81, 155; 1987 a. 382; 1999 a. 150 s. 672; 1999 a. 182; 2007 a. 1; 2013 a. 373.

**7.22  Municipal board of election commissioners. (1)** The common council shall determine the salaries of the election commissioners and shall include sufficient funds in its budget to allow the municipal board of election commissioners to fulfill its duties.

**(2)** All expenses shall be paid upon order of the municipal board of election commissioners, signed by the chairperson and executive director and countersigned by the city comptroller.  The orders, made payable to persons in whose favor issued, shall be the vouchers for the city treasurer for the payment of the orders.

**(3)** The municipal board of election commissioners shall prepare and furnish copies of all registrations, books, maps, instructions, and forms pertaining to the rules for registration and conducting elections for the use and guidance of the election officials.

**(4)** The municipal board of election commissioners shall compile and publish a biennial report, containing election statistics and returns of all primaries and elections held within their city and county.  Copies of the same shall be distributed to persons in such quantities as the municipal board of election commissioners deems proper.

**(5)** The chief of police shall station a police officer at polling places designated by the municipal board of election commissioners for each election.

**History:** 1973 c. 334; 1977 c. 51; 1983 a. 484 s. 172 (1); 1985 a. 304 s. 155; 1993 a. 184; 2001 a. 107.

**7.23  Destruction of election materials. (1)** All materials and supplies associated with an election, except as provided in sub. (2), may be destroyed according to the following schedule:

(a)  Except as provided in par. (am), unused materials after an election and the contents of the blank ballot box after a primary may be destroyed at a time and in a manner designated by the appropriate clerk.

(am)  Unused ballots may be discarded or destroyed no earlier than the day after the latest day for the filing of a petition for a recount under s. 9.01 for any office on the ballots.

(c)  Registration forms of electors whose registrations are changed to ineligible status under s. 6.50 (7) may be destroyed 4 years after the change, unless an elector becomes eligible again during that period.

(d)  Financial reports may be destroyed 6 years after the date of receipt.  Financial registration statements may be destroyed 6 years after termination of registration.

(e)  Poll lists created for any election may be destroyed 22 months after the election at which they were created.

(f)  Except as authorized in par. (g), ballots, applications for absentee ballots, registration forms, or other records and papers requisite to voting at any federal election, other than registration cards, may be destroyed after 22 months.

(g)  Detachable recording units and compartments for use with tabulating equipment for an electronic voting system may be cleared or erased 14 days after any primary and 21 days after any other election.  Before clearing or erasing the units or compartments, a municipal clerk shall transfer the data contained in the units or compartments to a disk or other recording medium which may be erased or destroyed 22 months after the election to which the data relates.  The requirement to transfer data does not apply to units or compartments for use with tabulating equipment for an electronic voting system that was approved for use prior to January 1, 2009, and that is not used in a federal election.

***2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026.  Published and certified under s. 35.18.  Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)***

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 95 of 116

**7.23**        **ELECTION OFFICIALS; DUTIES; CANVASSING**                    **Updated 23-24 Wis. Stats.    6**

(h) Except as provided in par. (f), ballots may be destroyed 30 days after any election.

(i) Official canvasses may be destroyed 10 years after the election to which they relate.

(j) Election notices, and proofs of publication and correspondence filed in connection with such notices may be destroyed one year after the date of the election to which they relate.

(k) All other materials and supplies associated with an election may be destroyed 90 days after the election.

**(2)** If a recount is pending or if the time allowed for filing a recount petition at any election or an appeal or petition for review of any recount determination or decision at an election has not expired, no materials may be destroyed until after the recount is completed and the applicable time period has expired. In addition, if there is litigation pending with respect to a recount at an election, materials may be destroyed and recording units or compartments may be cleared or erased only by order of the court in which litigation is pending. Upon petition of the attorney general or a district attorney or U.S. attorney for the affected jurisdiction, a circuit judge for the affected jurisdiction may order that specified materials not be destroyed or that specified recorders, units or compartments not be cleared or erased as otherwise authorized under this subsection until the court so permits.

**History:** 1973 c. 334; 1975 c. 85, 200; 1977 c. 394 s. 53; 1977 c. 427; 1979 c. 260 ss. 42, 94; 1979 c. 311, 328; 1983 a. 484 ss. 60 to 63, 174; 1985 a. 304 ss. 82, 143; 1987 a. 391; 2003 a. 265; 2005 a. 451; 2009 a. 397; 2011 a. 23; 2015 a. 117.

**7.24 Title to election materials.** The filing of a nomination paper, ballot application, financial report, affidavit, or other form or statement with the appropriate official or agency responsible for accepting such materials under chs. 5 to 12 irrevocably transfers the legal title to such official or agency, regardless of the sufficiency of the filing. The official or agency shall retain all election materials until destruction or other disposition is authorized under s. 7.23.

**History:** 1975 c. 93; 1979 c. 89.

**7.25 Voting machine officials' duties. (1)** The municipal clerk of each municipality in which voting machines are used is responsible for the proper ballot being placed on each machine, the sample ballots, setting, adjusting, and putting the machine in order to use in voting when delivered to the ward. For the purpose of labeling, setting, adjusting and putting the voting machines in order, one or more competent voting machine custodians may be employed.

**(2)** Under the direction of the municipal clerk, the custodian shall label or insert, set, adjust, put in order and deliver the machines with all necessary furniture and appliances to the rooms where the election will be held for each ward at least one hour before the time set for opening the polls on election day.

**(3)** In preparing a voting machine for an election according to the directions furnished, the custodian shall arrange the machine and ballot so both will meet all the requirements for voting and counting the election in the manner provided for in machine construction.

**(4)** When a voting machine is properly prepared for an election and delivered to the election ward, it shall be locked and sealed against any movement and the governing body or board of election commissioners shall provide proper protection to prevent tampering with the machines. The custodians preparing the machines shall deliver the keys for the machines to the municipal clerk or executive director of the board of election commissioners together with a written report of each machine's condition.

**(5)** Before an election each election official serving at a polling place where voting machines are used shall be instructed in their use and their duties in connection with them by the municipal clerk, who shall call as many meetings to give instructions to the election officials as are necessary. Officials and trainees may be compensated for attendance. Any person who does not understand the machines shall not be paid nor be allowed to serve.

**(6)** (a) Where voting machines are used, the election officials for each ward shall meet at their proper polling place at least 15 minutes before the time set for opening of the polls to arrange the voting machines and furniture to properly conduct the election.

(b) 1. Before opening the polls, the election officials shall do all of the following:

a. Compare the ballots on the machines with the sample ballots furnished by the municipal clerk to ensure that the names, numbers, and letters on the machine ballots and sample ballots agree.

b. Examine the seal on each machine to see that the seal has not been broken.

c. Examine the counter on each machine to see that each counter registers 000.

2. If any counter on any machine does not register 000, the counter number and the number showing on the counter shall be recorded, signed by all the election officials, and a copy shall be conspicuously posted by the inspectors at the polling place during polling hours.

(c) After the inspection under par. (b), on the forms furnished, the election officials shall certify the condition of each voting machine and its counters. Each form shall be signed by each election official. After the election, one copy of each machine's certification shall be delivered with each copy of the election returns.

**History:** 1971 c. 304 s. 29 (2); 1977 c. 427; 1979 c. 311; 1985 a. 304; 2001 a. 107; 2005 a. 149.

**7.30 Appointment of election officials. (1)** NUMBER. (a) Except as authorized under par. (b), there shall be 7 inspectors for each polling place at each election. Except as authorized in par. (b), in municipalities where voting machines are used, the municipal governing body may reduce the number of inspectors to 5. A municipal governing body may provide for the appointment of additional inspectors whenever more than one voting machine is used or wards are combined under s. 5.15 (6) (b). A municipal governing body may provide by ordinance for the selection of alternate officials or the selection of 2 or more sets of officials to work at different times on election day, and may permit the municipal clerk or board of election commissioners to establish different working hours for different officials assigned to the same polling place. Alternate officials shall also be appointed in a number sufficient to maintain adequate staffing of polling places. Except for inspectors who are appointed under par. (b) and officials who are appointed without regard to party affiliation under sub. (4) (c), additional officials shall be appointed in such a manner that the total number of officials is an odd number and the predominant party under sub. (2) is represented by one more official than the other party.

(b) Each municipality may appoint one additional inspector to serve at each polling place without regard to party affiliation who shall serve as a greeter to answer questions and to direct electors to the proper locations for registration and voting and who shall be available to substitute for other election officials who must leave the room during the voting process.

**(2)** QUALIFICATIONS AND PROCEDURE. (a) Only election officials appointed under this section or s. 6.875 may conduct an election. Except as otherwise provided in this paragraph and in ss. 7.15 (1) (k) and 7.52 (1) (b), each election official shall be a qualified elector of a county in which the municipality where the official serves is located, and each chief inspector shall be a qualified elector of the municipality in which the chief inspector

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 39

Updated 2023-24 Wis. Stats.  Published and certified under s. 35.18.  June 19, 2026.

USCA Case #26-5193     Document #2180381          Filed: 06/24/2026     Page 96 of 116

**7.50**         **ELECTION OFFICIALS; DUTIES; CANVASSING**                    **Updated 23-24 Wis. Stats.   12**

ferent candidates for the same office and counting of the mark would result in an excess number of votes cast for the office.

(d)  If an elector writes a person's name in the proper space for write-in candidates for an office, it is a vote for the person written in for the office indicated, regardless of whether the elector strikes the names appearing in the same column for the same office, or places a mark by the same or any other name for the same office, or omits placing a mark to the right of the name written in. If an elector is permitted to vote for more than one candidate for the same office in an election and casts one or more write-in votes which, when added to the votes cast for candidates whose names appear on the ballot, exceed the number of votes authorized to be cast for the office, the write-in votes shall be counted and the votes for candidates whose names appear on the ballot may not be counted, unless there are more write-in votes than votes authorized to be cast, in which case no votes may be counted for the office.

(em)  Except as otherwise provided in this paragraph, write-in votes shall only be counted if no candidates have been certified to appear on the ballot.  If a candidate has been certified to appear on the ballot, write-in votes may only be counted for a candidate that files a registration statement under s. 11.0202 (1) (a) no later than noon on the Friday immediately preceding the election.  If a candidate certified to appear on the ballot dies or withdraws before the election, all write-in votes shall be counted.  When write-in votes are counted, every vote shall be counted for the candidate for whom it was intended, if the elector's intent can be ascertained from the ballot itself.

(g)  In partisan primaries, if an elector writes in the name of an individual on a ballot other than the one on which that individual's name is shown as a candidate, the write-in vote may not be counted.

(h)  In the general election or a partisan special election, a write-in vote may not be counted for any candidate if the candidate's name appears on the official ballot, except a write-in vote cast for the same office under which the candidate's name appears if no other similar name appears on the ballot for any office.

(hm)  In a nonpartisan primary or election using voting machines if an elector is permitted to vote for more than one candidate for the same office, a write-in vote may not be counted if the vote is cast for a candidate whose name appears on the ballot for that office.

(i)  The failure by an elector to write in the name of a candidate for the office of vice president of the United States on the general election ballot does not invalidate the elector's vote for any candidate whose name is written in for the office of president of the United States.  The failure of an elector to write in the name of a candidate for the office of president of the United States on the general election ballot invalidates the elector's vote for any candidate whose name is written in for the office of vice president of the United States.  The failure of an elector to write in the name of a candidate for the office of governor or lieutenant governor on the general election ballot does not invalidate the elector's vote for any candidate whose name is written in for the office of governor or lieutenant governor alone.

(im)  If an elector votes for an independent candidate for the office of governor or lieutenant governor but does not vote for any candidate as a running mate of that candidate for the office of lieutenant governor or governor, the vote cast by the elector shall be recorded as a vote cast for both offices and shall not be cumulated with a vote cast by any other elector for the same candidate for the same office jointly with any vote cast for a running mate of that candidate.  If an elector votes for independent candidates for the offices of governor and lieutenant governor, the vote cast by the elector shall not be cumulated with a vote cast by any other

elector for one but not both of the candidates for whom the elector casts his or her vote.

(j)  If an elector writes in an individual for an office, it is a vote for that office, even if the elector writes in the name of a different office.

**History:** 1977 c. 107, 272, 427; 1979 c. 89, 311, 328; 1981 c. 377 ss. 20, 22; 1981 c. 391; 1983 a. 183; 1983 a. 484 ss. 75, 172 (3); 1985 a. 304; 1987 a. 391; 1989 a. 192, 359; 1991 a. 316; 1999 a. 6; 2001 a. 16; 2011 a. 23; 2013 a. 178; 2015 a. 37, 117.

A board of canvassers may use its discretion and make findings only when the standards of a statute do not apply.  Sub. (2) (c) minimizes a board's discretion. When there is a qualifying mark in a qualifying place on the ballot, the vote should be counted. Roth v. LaFarge School District Board of Canvassers, 2004 WI 6, 268 Wis. 2d 335, 677 N.W.2d 599, 02-0542.

**7.51  Local board of canvassers.  (1)** CANVASS PROCEDURE. Immediately after the polls close the inspectors except any inspector appointed under s. 7.30 (1) (b) shall proceed to canvass publicly all votes received at the polling place.  In any municipality where an electronic voting system is used, the municipal governing body or board of election commissioners may provide or authorize the municipal clerk or executive director of the board of election commissioners to provide for the adjournment of the canvass to one or more central counting locations for specified polling places in the manner prescribed in subch. III of ch. 5.  No central counting location may be used to count votes at a polling place where an electronic voting system is not employed.  The canvass, whether conducted at the polling place or at a central counting location, shall continue without adjournment until the canvass of all ballots cast and received on or before election day is completed and the return statement is made or, in municipalities where absentee ballots are canvassed under s. 7.52, until the canvass of all absentee ballots cast and received on or before election day is completed and the return statement for those ballots is made.  The inspectors shall not permit access to the name of any elector who has obtained a confidential listing under s. 6.47 (2) during the canvass, except as authorized in s. 6.47 (8).

**(2)** TALLYING. (a)  The inspectors shall first compare the poll lists, correcting any mistakes until the poll lists agree.  The chief inspector and the inspectors who are responsible for recording electors under s. 6.79 shall verify the correctness of the poll lists after the polls close by each signing their name thereto.  Where ballots are distributed to electors, the inspectors shall then open the ballot box and remove and count the number of ballots therein without examination except as is necessary to ascertain that each is a single ballot.  If 2 or more ballots are folded together so as to appear as a single ballot, the inspectors shall lay them aside until the count is completed; and if, after a comparison of the count and the appearance of the ballots it appears to a majority of the inspectors that the ballots folded together were voted by the same person they may not be counted but the inspectors shall mark them as to the reason for removal, set them aside and carefully preserve them.  The inspectors shall then proceed under par. (b).

(b)  When during the counting of the ballots cast at an election a majority of the inspectors find that a ballot is so defective that they cannot determine with reasonable certainty for whom it was cast, they shall so mark the ballot and preserve it.  The inspectors shall not count the vote cast on the ballot for any office for which they determine the ballot to be defective.

(c)  Whenever the number of ballots exceeds the number of voting electors as indicated on the poll list, the inspectors shall place all ballots face up to check for blank ballots.  In this paragraph, "blank ballot" means a ballot on which no votes are cast for any office or question.  The inspectors shall mark, lay aside and preserve any blank ballots.  Except in municipalities where absentee ballots are canvassed under s. 7.52, if the number of ballots still exceeds the number of voting electors, the inspectors shall place all ballots face down and proceed to check for the ini-

***2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026.  Published and certified under s. 35.18.  Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)***

Add. 40

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193     Document #2180381     Filed: 06/24/2026     Page 97 of 116

**13   Updated 23-24 Wis. Stats.**     **ELECTION OFFICIALS; DUTIES; CANVASSING**     **7.51**

tials. The inspectors shall mark, lay aside and preserve any ballot not bearing the initials of 2 inspectors or any absentee ballot not bearing the initials of the municipal clerk. During the count the inspectors shall count those ballots cast by challenged electors the same as the other ballots.

(d) The inspectors shall keep a written statement, in duplicate, of the number of ballots set aside and the number of defective ballots and challenged ballots. The statement shall contain a record of the reasons for setting aside each ballot and the reasons why each defective or challenged ballot is defective or challenged. The inspectors shall certify that the statement is correct, sign it, and attach it to the tally sheets.

(e) Except in municipalities where absentee ballots are canvassed under s. 7.52, if after any ballots have been laid aside, the number of ballots still exceeds the total number of electors recorded on the poll list, the inspectors shall separate the absentee ballots from the other ballots. If there is an excess number of absentee ballots, the inspectors shall place the absentee ballots in the ballot box and one of the inspectors shall publicly and without examination draw therefrom by chance the number of ballots equal to the excess number of absentee ballots. If there is an excess number of nonabsentee ballots, the inspectors shall place those ballots in the ballot box and one of the inspectors shall publicly and without examination draw therefrom by chance the number of ballots equal to the excess number of those ballots. All ballots so removed may not be counted but shall be specially marked as having been removed by the inspectors on original canvass due to an excess number of ballots, set aside and preserved. When the number of ballots and total shown on the poll list agree, the inspectors shall return all ballots to be counted to the ballot box and shall turn the ballot box in such manner as to thoroughly mix the ballots. The inspectors shall then open, count and record the number of votes. When the ballots are counted, the inspectors shall separate them into piles for ballots similarly voted. Objections may be made to placement of ballots in the piles at the time the separation is made.

(f) If corrected ballots are distributed under s. 5.72 (3) or 7.10 (3), only the votes cast on the corrected ballots may be counted for any office or referendum in which the original ballots differ from the corrected ballots.

(g) Immediately after the polls close, where voting machines are used, the inspectors shall open the registering or recording compartments or remove the record of the votes cast and shall canvass, record, announce and return on the tally sheets and certificates furnished. In recording the votes registered on any counter which, before the opening of the polls, did not register 000, the inspectors shall upon the return sheets subtract the number registered before the polls opened from the number registered when the polls closed. The difference between the 2 numbers is the correct vote for the candidate whose name was represented by the counter, except if the number registered on the counter when the polls closed is smaller than the number registered thereon when the polls opened, the number 1,000 shall be added to the number registered when the polls closed, before the subtraction is made.

(h) Where a voting machine is used which produces a written record of the total votes cast for each candidate or referendum, the written record shall be presumed correct without reference to the total shown on the recorder in making its original statement, unless an error in the record is clearly apparent or unless a candidate at the election, or in the canvass of a referendum an elector who voted at the referendum, requests that the machine be viewed.

**(3)** SECURING THE BALLOTS. (a) The inspectors shall place together all ballots counted by them which relate to any national, state or county office or any state, county or technical college district referendum and secure them together so that they cannot be untied or tampered with without breaking the seal. The secured ballots together with any ballots marked "Defective" shall then be secured by the chief inspector, and, if available, one other inspector whose party affiliation is different than the chief inspector's party affiliation, in the ballot container in such a manner that the container cannot be opened without breaking the seals or locks, or destroying the container. The inspectors shall place the ballots cast under s. 6.97 in a separate, securely sealed carrier envelope which is clearly marked "Section 6.97 ballots". The chief inspector and 2 other inspectors shall sign the carrier envelope. The carrier envelope shall not be placed in the ballot container. The inspectors shall then deliver the ballots to the municipal clerk in the ballot container and carrier envelope.

(b) For ballots which relate only to municipal or school district offices or referenda, the inspectors, in lieu of par. (a), after counting the ballots shall return them to the proper ballot boxes, lock the boxes, paste paper over the slots, sign their names to the paper and deliver them and the keys therefor to the municipal or school district clerk. The clerk shall retain the ballots until destruction is authorized under s. 7.23.

(c) Where voting machines are used, as soon as the count is complete and fully recorded, the inspectors shall seal, close and lock the machine, or remove the record so it cannot be voted on or tampered with. They shall then proceed to separately canvass and return any paper ballots voted under s. 5.40 (3) to (6). The inspectors shall count the challenged ballots the same as other ballots. Upon completion of the canvass, the inspectors shall return the paper ballots in a separate envelope marked "Paper Ballots". The inspectors shall place the record of write-in votes cast on the machines in an envelope marked "Write-In Votes". The inspectors shall return the paper ballots and write-in votes along with any printed voting record produced by the voting machines to the clerk under par. (a) or (b) or to the board of election commissioners. The inspectors shall place the envelopes and printed voting record in a properly sealed bag or container, indicating the ward or wards and county.

(d) Except in municipalities where absentee ballots are canvassed under s. 7.52, all absentee certificate envelopes which have been opened shall be returned by the inspectors to the municipal clerk in a securely sealed carrier envelope which is clearly marked "used absentee certificate envelopes". The envelopes shall be signed by the chief inspector and 2 other inspectors. Except when the ballots are used in a municipal or school district election only, the municipal clerk shall transmit the used envelopes to the county clerk.

**(4)** ANNOUNCE AND REPORT. (a) The tally sheets shall state the total number of votes cast for each office and for each individual receiving votes for that office, whether or not the individual's name appears on the ballot, and shall state the vote for and against each proposition voted on. Upon completion of the tally sheets, the inspectors shall immediately complete the inspectors' statement. The inspectors shall state the excess, if any, by which the number of ballots exceeds the number of electors voting as shown by the poll list and shall state the number of the last elector as shown by the poll lists. At least 3 inspectors, including the chief inspector and, unless election officials are appointed under s. 7.30 (4) (c) without regard to party affiliation, at least one inspector representing each political party, but not including any inspector appointed under s. 7.30 (1) (b), shall then certify to the correctness of the statement and tally sheets and sign their names. All other election officials assisting with the tally shall also certify to the correctness of the tally sheets. When the tally is complete, the inspectors shall publicly announce the results from the statement.

(b) The chief inspector, or one of the inspectors appointed by him or her, immediately after the votes are tabulated or counted at

***2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)***

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193 Document #2180381 Filed: 06/24/2026 Page 98 of 116

**7.51** **ELECTION OFFICIALS; DUTIES; CANVASSING** **Updated 23-24 Wis. Stats.** 14

each election, shall report the returns of the election to the municipal clerk or to the school district clerk for school district elections, except in 1st class cities. The clerk shall then make the returns public.

(c) On election night the municipalities shall report the returns, by ward or reporting unit, to the county clerk no later than 2 hours after the votes are tabulated.

**(5)** RETURNS. (a) 1. The inspectors shall make full and accurate return of the votes cast for each candidate and proposition on tally sheet forms provided by the municipal clerk for that purpose. Each tally sheet shall record the returns for each office or referendum by ward, unless combined returns are authorized in accordance with s. 5.15 (6) (b) in which case the tally sheet shall record the returns for each group of combined wards.

2. After recording the votes, the inspectors shall seal in a carrier envelope outside the ballot bag or container one tally sheet and one poll list for delivery to the county clerk, unless the election relates only to municipal or school district offices or referenda.

3. The inspectors shall also seal the inspectors' statement, inside a separate carrier envelope, and shall similarly seal in a separate carrier envelope one tally sheet and one poll list for delivery to the municipal clerk. For school district elections, except in 1st class cities, the inspectors shall seal one tally sheet and one poll list for delivery to the school district clerk.

4. The inspectors shall immediately deliver all ballots, statements, tally sheets, lists, and envelopes to the municipal clerk.

5. Upon receipt of the materials under subd. 4., the municipal clerk shall make sufficient copies of the inspectors' statement under sub. (4) (a) and seal one copy of the statement inside a carrier envelope together with the envelope containing any materials required to be delivered to the county clerk or the school district clerk. The municipal clerk shall retain the original inspectors' statement.

(b) The municipal clerk shall deliver all ballots, statements, tally sheets, lists, and envelopes relating to a school district election to the school district clerk, excluding any provisional ballots, by 4 p.m. on the day following each such election and shall deliver to the school district clerk any amended statements, tally sheets, and lists for additional provisional ballots canvassed under s. 6.97 (4) no later than 4 p.m. on the Monday after the election. The municipal clerk shall deliver to the county clerk the ballots, statements, tally sheets, lists, and envelopes for his or her municipality relating to any county, technical college district, state, or national election no later than 4 p.m. on the day following each such election or, in municipalities where absentee ballots are canvassed under s. 7.52, by 4 p.m. on the 2nd day following each such election, and shall deliver to the county clerk any additional provisional ballots canvassed under s. 6.97 (4) together with amended statements, tally sheets, lists, and envelopes no later than 4 p.m. on the Monday after the election or, notwithstanding s. 990.001 (4) (c), for a presidential election, no later than 9 a.m. on the Saturday after the election. The county clerk shall maintain office hours on that Saturday as necessary to receive such filings in a presidential election. The person delivering the returns shall be paid out of the municipal treasury. Each clerk shall retain ballots, statements, tally sheets, or envelopes received by the clerk until destruction is authorized under s. 7.23 (1).

**(6)** ELECTRONIC VOTING SYSTEMS. The procedure for canvassing of votes cast at polling places utilizing an electronic voting system in which ballots are distributed to electors shall follow the procedure for canvassing paper ballots insofar as applicable, and the procedure for canvassing of votes cast at polling places utilizing an electronic voting machine shall follow the procedure for canvassing of mechanical voting machines insofar as applicable, except as otherwise provided in ss. 5.85 to 5.89.

**History:** 1971 c. 304 s. 29 (2); 1977 c. 29; 1977 c. 394 s. 53; 1977 c. 427, 447; 1979 c. 260 ss. 36, 48; 1979 c. 311; 1981 c. 4, 391; 1983 a. 183, 442; 1983 a. 484 ss. 76, 77, 172 (3); 1983 a. 538; 1985 a. 120, 304; 1987 a. 391; 1989 a. 56, 192; 1993 a. 399; 1997 a. 127; 1999 a. 49, 182; 2001 a. 107, 109; 2003 a. 265; 2005 a. 451; 2007 a. 96; 2011 a. 75, 115; 2013 a. 180; 2015 a. 261; 2025 a. 214.

This section and ss. 6.80, 6.88, 7.37, and 9.01, when read together, unambiguously establish that the lack of elections inspector or municipal clerk initials on a ballot is not by itself a reason for rejecting the ballot, whether in an initial canvass or during a recount. Unendorsed ballots must be counted in the election unless there is a reason beyond the lack of an endorsement to reject them, such as when the total number of ballots exceeds the total number of electors recorded in the poll books. This section makes evident that the only reason that a missing endorsement would result in a ballot not being counted in the election-day canvass is if it is necessary to put the unendorsed ballot aside to reconcile the number of ballots with the number of electors who are recorded as having cast ballots in the election. Gonfiantini v. Rock County Board of Canvassers, 2025 WI App 26, 416 Wis. 2d 118, 20 N.W.3d 773, 24-1233.

Canvassing boards are governmental bodies subject to the open meetings law—including the public notice, open session, and reasonable public access requirements—when they convene for the purpose of carrying out their statutory canvassing activities, but not when they are gathered only as individual inspectors fulfilling administrative duties. The gathering of election inspectors in a polling place constitutes a meeting of the local canvassing board only after the polls close and the canvassing under this section begins. OAG 5-14.

While canvassing boards must provide the public a reasonable opportunity to meaningfully observe their meetings, they may impose reasonable limits on public access to the extent necessary to protect the effective and orderly conduct of the canvass. The same principles of reasonableness govern the public's opportunity to inspect election documents and materials at canvassing board meetings. OAG 5-14.

**7.52** **Canvassing of absentee ballots.** **(1)** (a) The governing body of any municipality may provide by ordinance that, in lieu of canvassing absentee ballots at polling places under s. 6.88, the municipal board of absentee ballot canvassers designated under s. 7.53 (2m) shall, at each election held in the municipality, canvass all absentee ballots received by the municipal clerk by 8 p.m. on election day. Prior to enacting an ordinance under this subsection, the municipal clerk or board of election commissioners of the municipality shall notify the elections commission in writing of the proposed enactment and shall consult with the elections commission concerning administration of this section. At every election held in the municipality following enactment of an ordinance under this subsection, the board of absentee ballot canvassers shall, any time after the opening of the polls and before 10 p.m. on election day, publicly convene to count the absentee ballots for the municipality. The municipal clerk shall give at least 48 hours' notice of any meeting under this subsection. Any member of the public has the same right of access to a meeting of the municipal board of absentee ballot canvassers under this subsection that the individual would have under s. 7.41 to observe the proceedings at a polling place. The board of absentee ballot canvassers may order the removal of any individual exercising the right to observe the proceedings if the individual disrupts the meeting.

(b) A municipality that adopts the canvassing procedure under this section may appoint additional inspectors under s. 7.30 (2) (a) to assist the absentee ballot board of canvassers in canvassing absentee ballots under this section. In such case, an odd number of inspectors shall be appointed, and at no time may there be less than 3 inspectors who serve. Except as authorized in s. 7.30 (4) (c), all inspectors shall be affiliated with one of the 2 recognized political parties receiving the largest numbers of votes for president, or for governor in nonpresidential general election years, in the municipality. The party whose candidate received the largest number of votes in the municipality is entitled to one more inspector than the party whose candidate received the next largest number of votes in the municipality. Each inspector so appointed shall be a qualified elector of the municipality. The inspectors who are appointed under this paragraph shall serve under the direction and supervision of the board of absentee ballot canvassers.

(c) In each municipality where absentee ballots are canvassed

***2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)***

Add. 42

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 99 of 116

**15   Updated 23-24 Wis. Stats.**    **ELECTION OFFICIALS; DUTIES; CANVASSING**    **7.52**

under this section, no later than the closing hour of the polls, the municipal clerk shall post at his or her office and on the Internet at a site announced by the clerk before the polls open, and shall make available to any person upon request, a statement of the number of absentee ballots that the clerk has mailed or transmitted to electors and that have been returned by the closing hour on election day. The posting shall not include the names or addresses of any electors.

**(2)** In counting the absentee ballots, the board of absentee ballot canvassers shall use 2 duplicate copies of a single poll list for the entire municipality prepared in accordance with s. 6.36 (2). Upon accepting each absentee ballot, the board of absentee ballot canvassers shall enter a poll list number on the poll list next to the name of the elector who voted the ballot, beginning with the number one. If the elector's name does not appear on the poll list, the board of absentee ballot canvassers shall enter the number on a separate list maintained under this subsection.

**(3)** (a) The board of absentee ballot canvassers shall first open the carrier envelope only, and, in such a manner that a member of the public, if he or she desired, could hear, announce the name of the absent elector or the identification serial number of the absent elector if the elector has a confidential listing under s. 6.47 (2). When the board of absentee ballot canvassers finds that the certification has been properly executed and the applicant is a qualified elector of the ward or election district, the board of absentee ballot canvassers shall enter an indication on the poll list next to the applicant's name indicating an absentee ballot is cast by the elector. The board of absentee ballot canvassers shall then open the envelope containing the ballot in a manner so as not to deface or destroy the certification thereon. The board of absentee ballot canvassers shall take out the ballot without unfolding it or permitting it to be unfolded or examined. Unless the ballot is cast under s. 6.95, the board of absentee ballot canvassers shall verify that the ballot has been endorsed by the issuing clerk. If the poll list indicates that proof of residence is required and no proof of residence is enclosed or the name or address on the document that is provided is not the same as the name and address shown on the poll list, the board of absentee ballot canvassers shall proceed as provided under s. 6.97 (2). The board of absentee ballot canvassers shall mark the poll list number of each elector who casts an absentee ballot on the back of the elector's ballot. The board of absentee ballot canvassers shall then deposit the ballot into the proper ballot box and enter the absent elector's name or poll list number after his or her name on the poll list.

(b) When the board of absentee ballot canvassers finds that a certification is insufficient, that the applicant is not a qualified elector in the ward or election district, that the ballot envelope is open or has been opened and resealed, that the ballot envelope contains more than one ballot of any one kind, or that the certificate of a military or overseas elector who received an absentee ballot by facsimile transmission or electronic mail is missing, or if proof is submitted to the board of absentee ballot canvassers that an elector voting an absentee ballot has since died, the board of absentee ballot canvassers shall not count the ballot. Each member of the board of absentee ballot canvassers shall endorse every ballot not counted on the back as "rejected (giving the reason)." The board of absentee ballot canvassers shall reinsert each rejected ballot into the certificate envelope in which it was delivered and enclose the certificate envelopes and ballots, and securely seal the ballots and envelopes in an envelope marked for rejected absentee ballots. The board of absentee ballot canvassers shall endorse the envelope as "rejected ballots," with a statement of the ward or election district and date of the election, and each member of the board of absentee ballot canvassers shall sign the statement. The board of absentee ballot canvassers shall

then return the envelope containing the ballots to the municipal clerk.

**(4)** (a) The board of absentee ballot canvassers shall then open the ballot box and remove and count the number of ballots therein without examination except as is necessary to ascertain that each is a single ballot. If 2 or more ballots are folded together so as to appear as a single ballot, the board of absentee ballot canvassers shall lay them aside until the count is completed; and if, after a comparison of the count and the appearance of the ballots it appears to the board of absentee ballot canvassers that the ballots folded together were voted by the same person they shall not be counted but the board of absentee ballot canvassers shall mark them as to the reason for removal, set them aside, and carefully preserve them. The board of absentee ballot canvassers shall then proceed under par. (b).

(b) When during the counting of the ballots cast at an election the board of absentee ballot canvassers finds that a ballot is so defective that it cannot determine with reasonable certainty for whom it was cast, the board of absentee ballot canvassers shall so mark the ballot and preserve it. The board of absentee ballot canvassers shall not count the vote cast on the ballot for any office for which it determines the ballot to be defective.

(c) Whenever the number of ballots exceeds the number of voting electors as indicated on the poll list, the board of absentee ballot canvassers shall place all ballots face up to check for blank ballots. In this paragraph, "blank ballot" means a ballot on which no votes are cast for any office or question. The board of absentee ballot canvassers shall mark, lay aside, and preserve any blank ballots. If the number of ballots still exceeds the number of voting electors, the board of absentee ballot canvassers shall place all ballots face down and proceed to check for the initials. The board of absentee ballot canvassers shall mark, lay aside, and preserve any ballot not bearing the initials of the municipal clerk. During the count, the board of absentee ballot canvassers shall count those ballots cast by challenged electors the same as the other ballots.

(d) The board of absentee ballot canvassers shall keep a written statement, in duplicate, of the number of ballots set aside and the number of defective ballots and challenged ballots. The statement shall contain a record of the reasons for setting aside each ballot and the reasons why each defective or challenged ballot is defective or challenged. The board of absentee ballot canvassers shall certify that the statement is correct, sign it, and attach it to the tally sheets.

(e) If, after any ballots have been set aside, the number of ballots still exceeds the total number of electors recorded on the poll list, the board of absentee ballot canvassers shall place the absentee ballots in the ballot box and one of the members shall publicly and without examination draw therefrom by chance the number of ballots equal to the excess number of ballots. All ballots so removed shall not be counted but shall be specially marked as having been removed by the board of absentee ballot canvassers on original canvass due to an excess number of ballots, set aside, and preserved. When the number of ballots and total shown on the poll list agree, the board of absentee ballot canvassers shall return all ballots to be counted to the ballot box and shall turn the ballot box in such manner as to thoroughly mix the ballots. The board of absentee ballot canvassers shall then open, count, and record the number of votes. When the ballots are counted, the board of absentee ballot canvassers shall separate them into piles for ballots similarly voted. Objections may be made to placement of ballots in the piles at the time the separation is made.

(f) If corrected ballots under s. 5.06 (6) or 5.72 (3) are distributed under s. 7.10 (3), only the votes cast on the corrected ballots may be counted for any office or referendum in which the original ballots differ from the corrected ballots.

***2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)***

Add. 43

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381         Filed: 06/24/2026    Page 100 of 116

**7.52**        **ELECTION OFFICIALS; DUTIES; CANVASSING**                **Updated 23-24 Wis. Stats.   16**

(g)  The board of absentee ballot canvassers shall place together all ballots counted by it that relate to any national, state, or county office or any state, county, or technical college district referendum and secure them together so they cannot be untied or tampered with without breaking the seal.  The secured ballots, together with any ballots marked "Defective," shall then be secured by the board of absentee ballot canvassers in the ballot container in such a manner that the container cannot be opened without breaking the seals or locks, or destroying the container.  The board of absentee ballot canvassers shall place the ballots cast under s. 6.97 in a separate, securely sealed carrier envelope which is clearly marked "Section 6.97 ballots."  Each member of the board of absentee ballot canvassers shall sign the carrier envelope.  The carrier envelope shall not be placed in the ballot container.  The board of absentee ballot canvassers shall then deliver the ballots to the municipal clerk in the ballot container and carrier envelope.

(h)  For ballots that relate only to municipal or school district offices or referenda, the board of absentee ballot canvassers, in lieu of par. (a), after counting the ballots shall return them to the proper ballot boxes, lock the boxes, paste paper over the slots, sign their names to the paper, and deliver them and the keys therefor to the municipal or school district clerk.  The clerk shall retain the ballots until destruction is authorized under s. 7.23.

(i)  All absentee certificate envelopes that have been opened shall be returned by the board of absentee ballot canvassers to the municipal clerk in a securely sealed carrier envelope that is clearly marked "used absentee certificate envelopes."  The envelopes shall be signed by each member of the board of absentee ballot canvassers.  Except when the ballots are used in a municipal or school district election only, the municipal clerk shall transmit the used envelopes to the county clerk.

**(5)** (a)  The vote of any absent elector may be challenged by any elector for cause and the board of absentee ballot canvassers shall have all the power and authority given the inspectors to hear and determine the legality of the ballot the same as if the ballot had been voted in person.

(b)  For the purpose of deciding upon ballots that are challenged for any reason, the board of absentee ballot canvassers may call before it any person whose absentee ballot is challenged if the person is available to be called.  If the person challenged refuses to answer fully any relevant questions put to him or her by the board of absentee ballot canvassers under s. 6.92, the board of absentee ballot canvassers shall reject the person's vote.  If the challenge is not withdrawn after the person offering to vote has answered the questions, one of the members of the board of absentee ballot canvassers shall administer to the person the following oath or affirmation:  "You do solemnly swear (or affirm) that: you are 18 years of age; you are a citizen of the United States; you are now and for 28 consecutive days have been a resident of this ward except under s. 6.02 (2), stats.; you have not voted at this election; you have not made any bet or wager or become directly or indirectly interested in any bet or wager depending upon the result of this election; you are not on any other ground disqualified to vote at this election."  If the person challenged refuses to take the oath or affirmation, the person's vote shall be rejected.  If the person challenged answers fully all relevant questions put to the elector by the board of absentee ballot canvassers under s. 6.92, takes the oath or affirmation, and fulfills the applicable registration requirements, and if the answers to the questions given by the person indicate that the person meets the voting qualification requirements, the person's vote shall be received.

**(6)** The board of absentee ballot canvassers shall review each certificate envelope to determine whether any absentee ballot is cast by an elector whose name appears on the poll list as ineligible to vote at the election, including ineligibility to vote by reason of a felony conviction.  If the board of absentee ballot canvassers receives an absentee ballot that has been cast by an elector whose name appears on the poll list as ineligible to vote, the inspectors shall challenge the ballot in the same manner as provided for inspectors making challenges under s. 6.92 and shall treat the ballot in the manner as provided for treatment of challenged ballots by inspectors under s. 6.95.

**(7)** The board of absentee ballot canvassers shall maintain tally sheets on forms provided by the municipal clerk, which shall state the total number of votes cast for each office and for each individual receiving votes for that office, whether or not the individual's name appears on the ballot, and shall state the vote for and against each proposition voted on.  Upon completion of the canvass of the absentee ballots, the board of absentee ballot canvassers shall immediately complete statements in duplicate.  The statements shall state the excess, if any, by which the number of ballots exceeds the number of electors voting as shown by the poll list used by the board of absentee ballot canvassers under this section and shall state the poll list number of the last elector as shown by the poll list.  Each member of the board of absentee ballot canvassers shall then certify to the correctness of the statements and tally sheets and sign their names.  All other election officials assisting with the tally shall also certify to the correctness of the tally sheets.  When the tally is complete, the board of absentee ballot canvassers shall publicly announce the results from the statements, and the records of the count are open to public inspection and copying under s. 19.35 (1).

**(8)** The board of absentee ballot canvassers shall make full and accurate return of the votes cast for each candidate and proposition on the tally sheet forms.  Each tally sheet shall record the returns for each office or referendum by ward, unless combined returns are authorized in accordance with s. 5.15 (6) (b), in which case the tally sheet shall record the returns for each group of combined wards.  After recording the votes, the board of absentee ballot canvassers shall seal in a carrier envelope outside the ballot bag or container one inspector's statement under sub. (4) (d), one tally sheet, and one poll list for delivery to the county clerk, unless the election relates only to school district offices or referenda or municipal offices or referenda.  The board of absentee ballot canvassers shall also similarly seal one statement, one tally sheet, and one poll list for delivery to the municipal clerk.

**(9)** The governing body of any municipality that has provided by ordinance enacted under sub. (1) for the canvassing of absentee ballots at all elections held in the municipality under this section may by similar action rescind that decision.  Thereafter, the absentee ballots at all elections held in the municipality shall be canvassed as provided in s. 6.88.

**History:** 2005 a. 451; 2011 a. 23, 75, 115, 227; 2015 a. 118; 2017 a. 59.

**7.53 Municipal canvass. (1)** MUNICIPALITIES WITH ONE POLLING PLACE. (a)  Where the municipality constitutes one ward or combines all wards to utilize a single polling place under s. 5.15 (6) (b), the canvass of the votes cast at the polling place shall be conducted publicly under s. 7.51 and the inspectors, other than any inspector appointed under s. 7.30 (1) (b), shall act as the municipal board of canvassers.  The inspectors shall then complete the return statement for all votes cast at the polling place.  If there are no provisional ballots that are eligible to be counted under s. 6.97 and no absentee ballots are being canvassed under s. 7.52, the inspectors may complete and sign the canvass statement and determination on election night.  In municipalities where absentee ballots are canvassed under s. 7.52, after the canvass of the absentee ballots is completed under s. 7.52, the board of absentee ballot canvassers shall reconcile the poll list of the electors who vote by absentee ballot with the corresponding poll list of the electors who vote in person to ensure that no elector is allowed to

***2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026.  Published and certified under s. 35.18.  Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)***

Add. 44

USCA Case #26-5193 Document #2180381 Filed: 06/24/2026 Page 101 of 116

cast more than one ballot. If an elector who votes in person has submitted an absentee ballot, the absentee ballot is void. Except as authorized in par. (b), if one or more electors of the municipality have cast provisional ballots that are eligible to be counted under s. 6.97, the inspectors, acting as the board of canvassers, shall reconvene no later than 9 a.m. on the Monday after the election, or no later than noon on the Friday after a presidential election, to count the valid provisional ballots and shall adjust the returns accordingly. The inspectors, acting as the board of canvassers, need not reconvene if the municipal clerk certifies that he or she has received no provisional ballots from the time that the board of canvassers completed the initial canvass and noon on the Friday after the election. Upon completion of the canvass under this paragraph and any canvass that is conducted under s. 7.52 and ascertainment of the results by the inspectors or, in municipalities where absentee ballots are canvassed under s. 7.52, by the inspectors and the board of absentee ballot canvassers, the municipal clerk shall publicly read to the inspectors or the board of absentee ballot canvassers the names of the persons voted for and the number of votes for each person for each municipal office, the names of the persons declared by the inspectors or board of absentee ballot canvassers to have won nomination or election to each municipal office, and the number of votes cast for and against each municipal referendum question.

(b) Solely for purposes of the reconvention of a board of canvassers under par. (a) for a specific election, the municipal clerk may determine to replace the members of the board of canvassers with a 3-member board of canvassers consisting of the clerk, the chief inspector, and one other inspector who shall be appointed by the clerk. If the municipal clerk is a candidate at the election being canvassed or is unable to serve, the other 2 members shall appoint a qualified elector of the municipality to serve in place of the clerk. If one of the other members is unable to serve, the municipal clerk shall appoint a qualified elector of the municipality to serve in place of that member. The person or persons making any appointment under this paragraph shall do so by letter which shall be signed by the person or persons, dated, and filed in the office of the municipal clerk. Upon the appointment and qualification of all members, the reconstituted board of canvassers shall then reconvene and carry out its responsibilities under par. (a).

**(2)** MUNICIPALITIES WITH 2 OR MORE WARDS. (a) 1. Except as provided in par. (c), the municipal board of canvassers for municipal elections in each municipality utilizing more than one polling place shall be composed of the municipal clerk and 2 other qualified electors of the municipality appointed by the clerk. The members of the board of canvassers shall serve for 2-year terms commencing on January 1 of each even-numbered year, except that any member who is appointed to fill a permanent vacancy shall serve for the unexpired term of the original appointee.

2. If the municipal clerk's office is vacant or if the clerk cannot perform his or her duties, the mayor, president or board chairperson of the municipality shall designate another qualified elector of the municipality to serve in lieu of the clerk for that election.

3. If the clerk is a candidate at an election being canvassed, the clerk may perform his or her duties on the board of canvassers only if the clerk does not have an opponent whose name appears on the ballot, or in the case of a recount, if the office the clerk is seeking is not a subject of the recount. If the clerk is a candidate at the election being canvassed and has an opponent whose name appears on the ballot or if the office the clerk is seeking is a subject of a recount, the mayor, president or board chairperson of the municipality shall designate another qualified elector of the municipality to serve in lieu of the elector for that election.

4. If any other member of the board of canvassers is a candi-

date at the election being canvassed, the clerk shall appoint another qualified elector of the municipality to temporarily fill the vacancy.

(c) In cities of more than 500,000 population, the board of election commissioners shall act as the board of canvassers.

(cm) If one or more temporary vacancies on the municipal board of canvassers reduces the number of members to less than 3, the municipal clerk shall appoint a member to fill each vacancy, except in cities of more than 500,000 population. In cities of more than 500,000 population, the executive director of the board of election commissioners shall serve as a member of the board of canvassers to fill a temporary vacancy on that board.

(d) In municipalities with one polling place, the canvass shall be conducted under sub. (1) publicly on election night. In other municipalities, the municipal board of canvassers shall publicly canvass the returns of every election. The canvass shall begin no earlier than the time that the municipal board of canvassers receives the returns from all polling places in the municipality on election night and no later than 9 a.m. on the Monday after the election, except that, for a presidential election, the canvass shall begin no later than noon on the Friday after the election. After any canvass of the absentee ballots is completed under s. 7.52, the board of canvassers shall reconcile the poll list of the electors who vote by absentee ballot with the corresponding poll list of the electors who vote in person to ensure that no elector is allowed to cast more than one ballot. If an elector who votes in person has submitted an absentee ballot, the absentee ballot is void. At the spring election, the board of canvassers shall publicly declare the results on or before the 3rd Tuesday in April. The board of canvassers shall prepare a statement showing the results of each election for any municipal office and each municipal referendum. After each primary for municipal offices, the board of canvassers shall prepare a statement certifying the names of those persons who have won nomination to office. After each other election for a municipal office and each municipal referendum, the board of canvassers shall prepare a determination showing the names of the persons who are elected to each municipal office and the results of each municipal referendum. The board of canvassers shall file each statement and determination in the office of the municipal clerk or board of election commissioners.

**(2m)** BOARD OF ABSENTEE BALLOT CANVASSERS. (a) If a municipality elects to count absentee ballots in the manner provided for in s. 7.52, the municipality shall establish a board of absentee ballot canvassers as provided in par. (b).

(b) Except as provided in par. (c), the municipal board of absentee ballot canvassers shall be composed of the municipal clerk, or a qualified elector of the municipality designated by the clerk, and 2 other qualified electors of the municipality appointed by the clerk. The members of the board of absentee ballot canvassers shall serve for 2-year terms commencing on January 1 of each even-numbered year, except that any member who is appointed to fill a permanent vacancy shall serve for the unexpired term of the original appointee. If the municipal clerk's office is vacant or if the clerk and the clerk's designee cannot perform his or her duties, the mayor, president, or board chairperson of the municipality shall designate another qualified elector of the municipality to serve in lieu of the clerk for that election. If the clerk is a candidate at an election being canvassed, the clerk or the clerk's designee may perform the clerk's duties on the board of absentee ballot canvassers only if the clerk does not have an opponent whose name appears on the ballot. If the clerk is a candidate at the election being canvassed by the board of absentee ballot canvassers and has an opponent whose name appears on the ballot, the mayor, president, or board chairperson of the municipality shall designate another qualified elector of the municipality to serve in lieu of the clerk and his or her designee for that

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 102 of 116

**7.53**    **ELECTION OFFICIALS; DUTIES; CANVASSING**    Updated 23-24 Wis. Stats.   **18**

election. If any other member of the board of absentee ballot canvassers is a candidate at the election being canvassed, the clerk shall appoint another qualified elector of the municipality to temporarily fill the vacancy.

(c) Nothing in this subsection precludes a municipal clerk from appointing individuals to the board of absentee ballot canvassers who are simultaneously serving on any other board of canvassers.

**(3)** SCHOOL DISTRICT ELECTIONS. (a) In a common, union high or unified school district, the school district clerk shall appoint 2 qualified electors of the school district prior to the date of the election being canvassed who shall, with the school district clerk, constitute the school district board of canvassers. If the school district clerk is a candidate at the election being canvassed, the other 2 members of the board of canvassers shall designate a 3rd member to serve in lieu of the clerk for that election. The school district clerk shall appoint a member to fill any other temporary vacancy on the board of canvassers. The canvass shall begin no later than 9 a.m. on the Tuesday after the election, and shall continue, without adjournment, until completed. The board of canvassers may return defective returns to the municipal board of canvassers in the manner provided in s. 7.60 (3). If the board of canvassers meets before 4 p.m. on the Monday after the election and thereafter receives amended statements, tally sheets, and lists from a municipal clerk for provisional ballots that are eligible to be counted under s. 6.97 (4), the board of canvassers shall reconvene no later than 9 a.m. on the Tuesday after the election and shall adjust the returns accordingly. No later than 4 p.m. on the Tuesday after the election, the board of canvassers shall complete the canvass and shall prepare a written statement showing the numbers of votes cast for each person for each office and for and against each question and shall prepare a determination showing the names of the persons who are elected to the school board and the results of any school district referendum. Following each primary election, the board of canvassers shall prepare a statement certifying the names of the persons who have won nomination to the school board. Each statement and determination shall be attested by each of the canvassers. The board of canvassers shall file each statement and determination in the school district office. The school district clerk shall certify nominations after each primary and issue certificates of election to persons who are elected to the school board after each election in the manner provided in sub. (4).

(b) In a 1st class city school district, the municipal board of canvassers or election commissioners shall determine the results of school district elections and referenda and shall file a written statement and determination of the results for each election and referendum in the office of the city clerk or board of election commissioners. The board of election commissioners or city clerk shall certify nominations after each primary and issue certificates of election to persons who are elected to the board of school directors after each election in the manner provided in sub. (4).

**(4)** CERTIFICATE OF ELECTION. As soon as the deadline for filing a petition for a recount has passed, the municipal clerk shall issue promptly a certificate of election to each person elected to any municipal office, except that the municipal clerk need not wait until expiration of the time allowed to file a petition for a recount if there is no aggrieved party, as defined in s. 9.01 (1) (a) 5. When a valid petition for a recount is filed, the municipal clerk shall not issue the certificate of election for the office in question until the recount has been completed and the time allowed for filing an appeal has passed, or if appealed until the appeal is decided.

**(5)** LIVE BROADCASTS. If a municipality or county or the commission broadcasts canvassing proceedings live in any elec-

tion, including by live stream on the Internet, the municipality, county, or commission shall record the broadcast. The municipal clerk, county clerk, or commission shall retain the recording for the period specified in s. 7.23 (1) (f), unless, in good faith, the municipal clerk, county clerk, or commission is unable to retain the recording because the recording is maintained on an Internet video streaming service that goes out of business or is otherwise removed from the Internet, if the service has been in operation for at least 10 years and has at least 1,000,000 account holders at the time the municipal clerk, county clerk, or commission posts the recording to the service.

**History:** 1971 c. 304 s. 29 (2); 1977 c. 290, 427, 447; 1979 c. 260; 1981 c. 314; 1983 a. 183, 484; 1985 a. 225; 1985 a. 304 ss. 93, 155; 1987 a. 391; 1989 a. 192; 1995 a. 16 s. 2; 1999 a. 182; 2005 a. 451; 2007 a. 96; 2011 a. 115; 2015 a. 37, 229, 261; 2019 a. 182; 2023 a. 53; 2025 a. 214.

The canvassing activities conducted at the municipal level pursuant to this section and by school district canvassing boards constitute meetings of governmental bodies and are subject to the requirements of the open meetings law. OAG 5-14.

While canvassing boards must provide the public a reasonable opportunity to meaningfully observe their meetings, they may impose reasonable limits on public access to the extent necessary to protect the effective and orderly conduct of the canvass. The same principles of reasonableness govern the public's opportunity to inspect election documents and materials at canvassing board meetings. OAG 5-14.

**7.54 Contested elections.** In all contested election cases, the contesting parties have the right to have the ballots opened and to have all errors of the inspectors, either in counting or refusing to count any ballot, corrected by the board of canvassers or court deciding the contest. The ballots and related materials may be opened only in open session of the board of canvassers or in open court and in the presence of the official having custody of them.

**History:** 1983 a. 484.

This section does not apply when an appeal of the result of a recount by the board of canvassers under s. 9.01 is before an appellate court. Sewell v. Racine Unified School District Board of Canvassers, 2022 WI 18, 401 Wis. 2d 58, 972 N.W.2d 155, 20-1271.

**7.60 County canvass. (1)** KEEP OFFICE OPEN. On election night the county clerk shall keep the clerk's office open to receive reports from the ward inspectors and shall post all returns. On election night the clerk shall post all returns, by ward or reporting unit, on an Internet site maintained by the county no later than 2 hours after receiving the returns.

**(2)** COUNTY BOARD OF CANVASSERS. The county clerk and 2 qualified electors of the county appointed by the clerk constitute the county board of canvassers. The members of the board of canvassers shall serve for 2-year terms commencing on January 1 of each even-numbered year, except that any member who is appointed to fill a permanent vacancy shall serve for the unexpired term of the original appointee. One member of the board of canvassers shall belong to a political party other than the clerk's. The county clerk shall designate a deputy clerk who shall perform the clerk's duties as a member of the board of canvassers in the event that the county clerk's office is vacant, or the clerk cannot perform his or her duties. If the county clerk and designated deputy clerk are both unable to perform their duties, the county executive or, if there is no county executive, the chairperson of the county board of supervisors shall designate another qualified elector of the county to perform the clerk's duties. If a member other than the clerk cannot perform his or her duties, the clerk shall appoint another member to serve. Except as otherwise provided in this subsection, no person may serve on the county board of canvassers if the person is a candidate for an office to be canvassed by that board. If the clerk is a candidate at an election being canvassed, the clerk may perform his or her duties on the board only if the clerk has no opponent whose name appears on the ballot, or, in the case of a recount, if the office the clerk is seeking is not a subject of the recount. If lists of candidates for the county board of canvassers are submitted to the county clerk by political party county committees, the lists shall consist of at

***2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)***

Add. 46

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 103 of 116

**19**   **Updated 23-24 Wis. Stats.**    **ELECTION OFFICIALS; DUTIES; CANVASSING**    **7.60**

least 3 names and the clerk shall choose the board members from the lists. Where there is a county board of election commissioners, it shall serve as the board of canvassers. If the county board of election commissioners serves as the board of canvassers, the executive director of the county board of election commissioners shall serve as a member of the board of canvassers to fill a temporary vacancy on that board.

**(3)** CANVASSING. Not later than 9 a.m. on the Tuesday after each election the county board of canvassers shall open and publicly examine the returns, except that, for a presidential election, the board of canvassers shall open and publicly examine the returns not later than noon on the Saturday after the election. If returns have not been received from any election district or ward in the county, the district attorney of the county shall immediately initiate an enforcement action under s. 5.07 to obtain the returns in the circuit court for that county or before the circuit judge appointed under s. 9.01 (6) (b) to hear recount appeals in the presidential election. If, on examination, any of the returns received are so informal or defective that the board cannot intelligently canvass them, they shall dispatch a messenger to deliver the returns back to the municipal board of canvassers with written specifications of the informalities or defects and command them to immediately complete the returns or remedy the defects in the manner required and deliver them to the messenger. Every messenger shall safely keep all returns, show them to no one but the municipal clerk and board of canvassers and deliver them to the county clerk with all possible dispatch. To acquire the necessary full returns and remedy any informalities or defects the county board of canvassers may adjourn not longer than one day at a time nor more than 2 days in all, except that, for a presidential election, the board of canvassers may adjourn only to the extent permitted by the commission.

**(4)** STATEMENTS AND DETERMINATIONS. (a) The board of canvassers shall make separate duplicate statements showing the numbers of votes cast for the offices of president and vice president; state officials; U.S. senators and representatives in congress; state legislators; justice; court of appeals judge; circuit judges; district attorneys; and metropolitan sewerage commissioners, if the commissioners are elected under s. 200.09 (11) (am). If a municipal judge elected under s. 755.01 (4) serves a municipality that is located partially within the county and candidates for that judgeship file nomination papers in another county, the board of canvassers shall prepare a duplicate statement showing the numbers of votes cast for that judgeship in that county for transmittal to the other county. For partisan candidates, the statements shall include the political party or principle designation, if any, next to the name of each candidate. The board of canvassers shall also prepare a statement showing the results of any county, technical college district, or statewide referendum. Each statement shall state the total number of votes cast in the county for each office; the names of all persons for whom the votes were cast, as returned; the number of votes cast for each person; and the number of votes cast for and against any question submitted at a referendum. The board of canvassers shall use one copy of each duplicate statement to report to the elections commission, technical college district board, or board of canvassers of any other county and shall file the other statement in the office of the county clerk or board of election commissioners.

(b) The board of canvassers shall then prepare a written determination, in duplicate where necessary, giving the names of the persons elected to any county office and to any municipal judgeship if the judge is elected under s. 755.01 (4) and candidates for that judgeship file nomination papers in that county. The board of canvassers shall likewise prepare a written determination showing the results of any county referendum. Following any primary election, the board of canvassers shall prepare a statement certifying the names of all persons who have won nomination to any

county office or any municipal judgeship, if the judge is elected under s. 755.01 (4) and candidates for that judgeship file nomination papers in that county. The board of canvassers shall file all statements and determinations in the office of the county clerk or board of election commissioners.

(c) In preparing the statements and determinations, the board of canvassers shall carefully review the tally sheets and inspectors' statement. The board of canvassers may omit the names of individuals whose names do not appear on the ballot and who receive a comparatively small number of votes. The board of canvassers shall designate votes received by such individuals as scattering votes. The board of canvassers shall append to each statement and determination a tabulation of the votes cast at each election district, ward or combination of wards authorized under s. 5.15 (6) (b) in the county for each office and each individual, whether the votes are canvassed or not, as well as the total canvassed votes cast for each individual and each office, except where scattering votes are designated. If any votes are rejected, the board of canvassers shall specify the reasons therefor.

(d) Each statement and determination issued under pars. (a) and (b) shall be certified as correct and attested to by each canvasser's signature.

**(5)** REPORTING. (a) Immediately following the canvass, the county clerk shall deliver or transmit to the elections commission a certified copy of each statement of the county board of canvassers for president and vice president, state officials, senators and representatives in congress, state legislators, justice, court of appeals judge, circuit judge, district attorney, and metropolitan sewerage commissioners, if the commissioners are elected under s. 200.09 (11) (am). The statement shall record the returns for each office or referendum by ward, unless combined returns are authorized under s. 5.15 (6) (b) in which case the statement shall record the returns for each group of combined wards. Following primaries the county clerk shall enclose on forms prescribed by the elections commission the names, party or principle designation, if any, and number of votes received by each candidate recorded in the same manner. The county clerk shall deliver or transmit the certified statement to the elections commission no later than 9 days after each primary except the partisan primary, no later than 10 days after the partisan primary and any other election except the general election, and no later than 14 days after the general election except a presidential election. The county clerk shall deliver or transmit the certified statement to the elections commission no later than 7 days after a presidential election. The board of canvassers shall deliver or transmit a certified copy of each statement for any technical college district referendum to the secretary of the technical college district board.

(b) If the board of canvassers becomes aware of a material mistake in the canvass of an election for state or national office or a statewide or technical college district referendum prior to the close of business on the day the elections commission receives returns from the last county board of canvassers with respect to that canvass, the board of canvassers may petition the elections commission to reopen and correct the canvass. The elections commission shall direct the canvass to be reopened and corrected if it determines that the public interest so requires. If the elections commission directs the canvass to be reopened, the board of canvassers shall reconvene and transmit a certified corrected copy of the canvass statement to the elections commission or secretary of the technical college district board.

**(6)** CERTIFICATE OF ELECTION. Immediately after expiration of the time allowed to file a petition for a recount the county clerk shall issue a certificate of election to each person who is elected to any county office, except that the county clerk need not wait until expiration of the time allowed to file a petition for a recount if there is no aggrieved party, as defined in s. 9.01 (1) (a) 5. The

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 47

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381         Filed: 06/24/2026    Page 104 of 116

**7.60**         **ELECTION OFFICIALS; DUTIES; CANVASSING**              **Updated 23-24 Wis. Stats.   20**

certificate notice shall state the amount of the required official bond, if any. When a petition for a recount is filed, the county clerk shall not issue the certificate of election for the office in question until the recount has been completed and the time allowed for filing an appeal has passed, or if appealed until the appeal is decided.

**(7)** OFFICIAL CANVASS RECORD. After the certificates of election have been prepared under sub. (6), the county clerk shall retain one copy of the official canvass for county offices and referenda in his or her office for public inspection.

**History:** 1971 c. 304 s. 29 (2); 1973 c. 334 ss. 14, 57; 1975 c. 93, 199; 1977 c. 187, 427, 449; 1979 c. 221, 260, 355; 1981 c. 4; 1983 a. 442, 484, 538; 1985 a. 89, 304, 332; 1987 a. 391; 1989 a. 31; 1991 a. 316; 1993 a. 399; 1999 a. 150 s. 672; 1999 a. 182; 2001 a. 107, 109; 2005 a. 451; 2007 a. 1; 2011 a. 75, 115; 2015 a. 118, 229, 261; 2019 a. 182; 2025 a. 214.

The canvassing activities conducted by county canvassing boards are meetings of governmental bodies subject to the requirements of the open meetings law. While canvassing boards must provide the public a reasonable opportunity to meaningfully observe their meetings, they may impose reasonable limits on public access to the extent necessary to protect the effective and orderly conduct of the canvass. The same principles of reasonableness govern the public's opportunity to inspect election documents and materials at canvassing board meetings. OAG 5-14.

**7.70 State canvass. (1)** RECORDING AND PRESERVING RETURNS. (a) Upon receipt of the certified statements from the county clerks, the commission shall record the election results by counties and file and carefully preserve the statements.

(b) If any county clerk fails or neglects to forward any statements, the commission chairperson or the chairperson's designee may require the clerk to do so immediately, and if the statements are not received by the 8th day after a primary, by the 8th day after a presidential election, or by the 11th day after any other election, the commission chairperson or the chairperson's designee shall immediately notify the county clerk, in writing, that failure to immediately forward the statements constitutes a violation of law that will result in an immediate enforcement action under s. 5.05 (1) (d). If the commission does not receive the statements within one day after such written notice is delivered to the county clerk, the commission shall immediately initiate an enforcement action under s. 5.05 (1) (d) to obtain the statements in the circuit court for that county or before the circuit judge appointed under s. 9.01 (6) (b) to hear recount appeals in the presidential election. Whenever it appears upon the face of any statement that an error has been made in reporting or computing, the commission may return it to the county clerk for correction. The county clerk shall make the necessary corrections and return the statement to the commission no later than 3 days after the county clerk receives the statement from the commission for correction.

**(3)** CANVASSING. (a) Except for a presidential election, the chairperson of the commission or a designee of the chairperson appointed by the chairperson to canvass a specific election shall publicly canvass the returns and make his or her certifications and determinations on or before the 2nd Tuesday following a spring primary; the 15th day of May following a spring election; the 3rd Wednesday following a partisan primary; the first day of December following a general election; the 2nd Thursday following a special primary; or within 18 days after any special election.

(b) The commission chairperson or the chairperson's designee shall examine the certified statements of the county boards of canvassers. If it appears that any material mistake has been made in the computation of votes, or any county board of canvassers failed to canvass the votes or omitted votes from any ward or election district in the county, the commission chairperson or the chairperson's designee may dispatch a messenger to the county clerk with written instructions to certify the facts concerning the mistake or the reason why the votes were not canvassed. A clerk to whom such instructions are delivered shall immediately make a true and full answer, sign it, affix the county seal and deliver it to the messenger. The messenger shall deliver it with all possible dispatch to the commission.

(c) Except for a presidential election, the chairperson of the commission or the chairperson's designee shall conclude the state canvass within 10 days after its commencement.

(cm) For a presidential election, the chairperson of the commission or the chairperson's designee shall conclude the state canvass and make his or her certifications and determinations no later than 21 days after the date of the presidential election.

(d) When the certified statements and returns are received, the chairperson of the commission or the chairperson's designee shall proceed to examine and make a statement of the total number of votes cast at any election for the offices involved in the election for president and vice president; a statement for each of the offices of governor, lieutenant governor, if a primary, and a joint statement for the offices of governor and lieutenant governor, if a general election; a statement for each of the offices of secretary of state, state treasurer, attorney general, and state superintendent; for U.S. senator; representative in congress for each congressional district; the state legislature; justice; court of appeals judge; circuit judge; district attorney; metropolitan sewerage commission, if the commissioners are elected under s. 200.09 (11) (am); and for any referenda questions submitted by the legislature.

(e) The chairperson of the commission or the chairperson's designee shall make a special statement to the commission as soon as possible after the canvass of the general election certifying the name of each political party which receives at least one percent of the vote cast in such election for any statewide office.

(f) The statements shall show the persons' names receiving votes, and any referenda questions; the whole number of votes given to each; and an individual listing by the districts or counties in which they were given. The names of persons not regularly nominated who received only a comparatively small number of votes may be omitted and their votes designated as scattering votes.

(g) Following each primary election, the chairperson of the commission or the chairperson's designee shall prepare a statement certifying the results of the primary, which shall indicate the names of the persons who have won nomination to any state or national office. Following each other election, the chairperson of the commission or the chairperson's designee shall prepare a statement certifying the results of the election and shall attach to the statement a certificate of determination which shall indicate the names of persons who have been elected to any state or national office. The chairperson of the commission or the chairperson's designee shall likewise prepare a statement and certificate for any statewide referendum. The chairperson of the commission or the chairperson's designee shall deliver each statement and determination to the commission.

(h) Whenever a referendum question submitted to a vote of the people is approved, the commission shall record it and the secretary of state shall have the record bound in the volume containing the original enrolled laws passed at the next succeeding session of the legislature and have the record published with the laws thereof. Whenever a constitutional amendment or other statewide validating or ratifying referendum question which is approved by the people does not expressly state the date of effectiveness, it shall become effective at the time the chairperson of the commission or the chairperson's designee certifies that the amendment or referendum question is approved.

(i) The commission chairperson or the chairperson's designee shall canvass only regular returns made by the county board of canvassers and shall not count or canvass any additional or supplemental returns or statements made by the county board or any other board or person. The commission chairperson or the chairperson's designee shall not count or canvass any statement or return which has been made by the county board of canvassers at

***2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)***

Add. 48

USCA Case #26-5193     Document #2180381          Filed: 06/24/2026     Page 105 of 116

# CHAPTER 9

## POST-ELECTION ACTIONS; DIRECT LEGISLATION

9.01    Recount.
9.10    Recall.

9.20    Direct legislation.

---

**NOTE: 2005 Wis. Act 451, which made major revisions to the election laws, including to this chapter, contains an extensive prefatory note explaining the changes.**

**Cross-reference:** See definitions in s. 5.02.

**9.01   Recount. (1)** PETITION; FEES; GENERAL PROCEDURES. (a) 1.  Any candidate voted for at any election who is an aggrieved party, as determined under subd. 5., or any elector who voted upon any referendum question at any election may petition for a recount.  The petitioner shall file a verified petition or petitions with the proper clerk or body under par. (ar) not earlier than the time of completion of the canvass following canvassing of any valid provisional ballots under s. 6.97 (4) and, except as provided in this subdivision, not later than 5 p.m. on the 3rd business day following the last meeting day of the municipal or county board of canvassers determining the election for that office or on that referendum question following canvassing of all valid provisional ballots or, if more than one board of canvassers makes the determination, not later than 5 p.m. on the 3rd business day following the last meeting day of the last board of canvassers which makes a determination following canvassing of all valid provisional ballots.  If the commission chairperson or chairperson's designee makes the determination for the office or the referendum question, the petitioner shall file the petition not earlier than the last meeting day of the last county board of canvassers to make a statement in the election or referendum following canvassing of all valid provisional ballots and not later than 5 p.m. on the 3rd business day following the day on which the commission receives the last statement from a county board of canvassers for the election or referendum following canvassing of all valid provisional ballots.  With regard to an election for president, the petitioner shall file the petition not later than 5 p.m. on the first business day following the day on which the commission receives the last statement from a county board of canvassers for the election following canvassing of all valid provisional ballots.

2.  Each verified petition under subd. 1. shall state all of the following:

a.  That at the election the petitioner was a candidate for the office in question or that the petitioner voted on the referendum question in issue.

b.  That the petitioner is informed and believes that a mistake or fraud has been committed in a specified ward or municipality in the counting and return of the votes cast for the office or upon the question or that another specified defect, irregularity, or illegality occurred in the conduct of the election.

c.  If the petitioner is a candidate voted for at the election for which the petitioner seeks a recount, that the petitioner is an aggrieved party.

3.  The petition under subd. 1. shall specify each ward, or each municipality where no wards exist, in which a recount is desired.  If a recount is requested for all wards within a jurisdiction, each ward need not be specified.

4.  The petition under subd. 1. may be amended to include information discovered as a result of the investigation of the board of canvassers or the commission chairperson or chairperson's designee after the filing of the petition if the petitioner moves to amend the petition as soon as possible after the petitioner discovers, or reasonably should have discovered, the information that is the subject of the amendment and if the petitioner was unable to include the information in the original petition.

5.  In this paragraph, "aggrieved party" means any of the following:

a.  For an election at which 4,000 or fewer votes are cast for the office that the candidate seeks, a candidate who trails the leading candidate, as defined under par. (ag) 5., by no more than 40 votes, as determined under par. (ag) 5.

b.  For an election at which more than 4,000 votes are cast for the office that the candidate seeks, a candidate who trails the leading candidate, as defined under par. (ag) 5., by no more than 1 percent of the total votes cast for that office, as determined under par. (ag) 5.

(ad)  Upon receiving a petition for a recount, the clerk or body receiving the petition shall reasonably estimate any fee due under par. (ag) 2.  The clerk or body shall provide the petitioner promptly with the total due or estimate.

(ag) 1.  If the difference between the votes cast for the leading candidate and those cast for the petitioner or the difference between the affirmative and negative votes cast upon any referendum question is less than 10 if 4,000 or fewer votes are cast or not more than 0.25 percent of the total votes cast for the office or on the question if more than 4,000 votes are cast following canvassing of all valid provisional and absentee ballots, the petitioner is not required to pay a fee.

2.  If subd. 1 does not apply to the difference between the votes cast for the leading candidate and those cast for the petitioner or the difference between the affirmative and negative votes cast upon any referendum question following canvassing of all valid provisional and absentee ballots, the petitioner shall pay a fee equal to the actual cost of performing the recount in each ward for which the petition requests a recount, or in each municipality for which the petition requests a recount where no wards exist, plus the actual cost incurred by the commission to provide services for performing the recount.

3.  All fees estimated under par. (ad) shall be prepaid in cash or another form of payment which is acceptable to the officer to whom they are paid.  No petition for which a fee is required is valid unless the proper calculated or estimated fee is paid at the time of filing.

3m.  The petitioner shall pay any balance owing toward the fee due under subd. 2. within 45 days after the clerk or body receiving the petition provides the petitioner with a written statement of the amount due.  If the petitioner has overpaid the fee due under subd. 2., the clerk or body receiving the petition shall refund the amount overpaid within 45 days after the board of canvassers makes its determination in the recount.  If, as a result of the recount, the petitioner is the leading candidate, or the majority of votes cast on the referendum changes from affirmative to negative or from negative to affirmative, the clerk or body receiving the petition shall refund the amount paid within 45 days after the board of canvassers makes its determination in the recount.  For purposes of this subdivision, a petitioner has not overpaid the fees due under subd. 2., and is therefore not entitled to a refund under this subdivision, if the recount results in a difference in the votes cast that is below the threshold for paying the fee under subd. 2.

---

***2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026.  Published and certified under s. 35.18.  Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)***

Add. 49

Updated 2023-24 Wis. Stats.  Published and certified under s. 35.18.  June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 106 of 116

**9.01**    **POST-ELECTION ACTIONS; DIRECT LEGISLATION**    **Updated 23-24 Wis. Stats.**    **2**

4. The commission shall deposit all moneys received by it into the account under s. 20.510 (1) (g), and shall pay the fees required for each recount to the county clerks of the counties in which the recount is to be held and shall retain the amount necessary to pay for the actual cost incurred by the commission to provide services for performing the recount. The county clerk shall deposit fees received by him or her with the county treasurer. The municipal clerk shall deposit fees received by him or her with the municipal treasurer.

5. In this paragraph, the "leading candidate" includes every individual whose vote total at the time of the filing of the recount petition would entitle the individual to election or nomination to office. In an election in which more than one office of the same type is to be filled from the same territory, the number and percentage of votes cast under this paragraph shall be determined by first dividing the total number of votes cast for the office by the number of offices being filled at the election from the same territory.

(am) A person who files a petition under par. (a) may withdraw the petition. If the petitioner withdraws a petition before any board of canvassers that canvassed the original election begins its recount, the clerk or body shall refund any fee paid under par. (ag).

(ar) 1. In the event of a recount for any office, the petition shall be filed with the clerk or body with whom nomination papers are filed for that office.

2. In the event of a recount for a referendum, the petition shall be filed with the clerk of the jurisdiction in which the referendum is called, and, in the case of the state, with the commission.

3. Except in the event of a recount for a presidential election as provided in subd. 4., whenever a clerk receives a valid petition and any payment under par. (ag) 3., the clerk shall thereupon notify the proper board of canvassers. Whenever the commission receives a valid petition and any payment under par. (ag) 3., the commission shall promptly by certified mail or other expeditious means order the proper county boards of canvassers to commence the recount. County boards of canvassers shall convene no later than 9 a.m. on the 3rd day after receipt of an order and may adjourn for not more than one day at a time until the recount is completed in the county, except that the commission may permit extension of the time for adjournment. Returns from a recount ordered by the commission shall be transmitted to the office of the commission as soon as possible, but in no case later than 13 days from the date of the order of the commission directing the recount. The commission chairperson or the chairperson's designee may not make a determination in any election if a recount is pending before any county board of canvassers in that election. The commission chairperson or the chairperson's designee need not recount actual ballots, but shall verify the returns of the county boards of canvassers in making his or her determinations.

4. Whenever the commission receives a valid petition and any payment under par. (ag) 3. in a presidential election, the commission shall immediately, on the same day on which the commission receives the petition and payment, order the proper county boards of canvassers to commence the recount. The commission shall send the order by secure electronic means. County boards of canvassers shall convene no later than 9 a.m. on the 3rd day after the receipt of an order and may not adjourn until the recount is completed in the county, except to the extent permitted by the commission. Returns from a recount ordered by the commission under this subdivision shall be transmitted to the office of the commission as soon as possible but in no case later than 9 days after the date of the order under this subdivision directing the recount. The commission chairperson or the chairperson's designee may not make a determination in the presidential elec-

tion if a recount of the presidential election is pending before any county board of canvassers for that election, except that, as provided in s. 7.70 (5) (b) 2., nothing in this subdivision shall prevent the commission chairperson or the chairperson's designee from making a determination in the presidential election or preparing a certificate of ascertainment of appointment of electors, nor prevent the governor from issuing a certificate of ascertainment of appointment of electors, by the 6th day before the date on which the presidential electors are to convene under s. 7.75 (1), as required under s. 7.70 (5) (b) 1. and 3 USC 5 (a) (1). The commission chairperson or the chairperson's designee need not recount actual ballots but shall verify the returns of the county boards of canvassers in making his or her determination.

(b) Except as provided under par. (ar) 3., the proper board of canvassers shall reconvene no earlier than 9 a.m. on the day following delivery of notice to all candidates under sub. (2) and no later than 9 a.m. on the day following the last day for filing of a petition. The board of canvassers shall then proceed to recount the ballots in the wards or municipalities specified and to review the allegations of fact contained in the petition or petitions. The recount shall proceed for each ward or municipality as follows:

1. The board of canvassers shall first compare the poll lists and determine the number of voting electors.

2. The board of canvassers shall then examine the absentee ballot envelopes. Any defective absentee ballot envelopes shall be laid aside, properly marked and carefully preserved. The number of voters shall be reduced by the number of ballot envelopes set aside under this subdivision. An absentee ballot envelope is defective only if it is not witnessed or if it is not signed by the voter or if the certificate accompanying an absentee ballot that the voter received by facsimile transmission or electronic mail is missing.

3. The board of canvassers shall then examine the container or bag containing the ballots to be certain it has not been tampered with, opened, or opened and resealed. Any irregularities or possible tampering with the container or bag shall be noted.

4. a. When the container or bag has been checked, it shall be opened and the contents removed. The board of canvassers shall, without examination other than what is necessary to determine that each is a single ballot, count the number of ballots in the container or bag, excluding ballots removed under s. 7.51 (2) (e).

b. The board of canvassers shall then, for each opened absentee ballot envelope that was laid aside as defective under subd. 2., without inspection, randomly draw one absentee ballot from the container or bag. In differentiating absentee ballots from other ballots, the board of canvassers shall presume that a ballot initialed only by the municipal clerk, the executive director of the board of election commissioners, or a deputy clerk or secretary is an absentee ballot. If there are more defective absentee ballot envelopes than there are probable absentee ballots, all of the probable absentee ballots shall be removed from the container or bag. Additional ballots shall be removed only if the number of remaining ballots still exceeds the number of voting electors recorded under subd. 1., reduced by the number of defective envelopes set aside under subd. 2. All ballots removed shall not be counted, but shall be marked as to the reason for their removal, set aside and carefully preserved.

c. If, after completing the steps set forth in subd. 4. b., the number of ballots still exceeds the number of voters, the board of canvassers shall place all ballots face up to check for blank ballots. Any blank ballots shall be so marked, set aside and carefully preserved.

d. If, after completing the steps set forth in subd. 4. c., the number of ballots still exceeds the number of voters reduced by the number of defective envelopes set aside under subd. 2., the board of canvassers shall place all ballots face down to check the

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 107 of 116

**3    Updated 23-24 Wis. Stats.**    **POST-ELECTION ACTIONS; DIRECT LEGISLATION**    **9.01**

initials. Any ballot not properly initialed by 2 inspectors or any absentee ballot not properly initialed by the municipal clerk, the executive director of the board of election commissioners, or a deputy clerk or secretary shall be temporarily set aside and the board of canvassers shall, without inspection, randomly draw from these ballots as many as are necessary to reduce the number of ballots to equal the number of voters. Any ballots removed for lack of initials shall not be counted but shall be marked, set aside and carefully preserved.

e. If, after completing the steps set forth in subd. 4. d., the number of ballots still exceeds the number of voters reduced by the number of defective envelopes set aside under subd. 2., the remaining ballots shall be returned to the container or bag and the board of canvassers shall draw a number of ballots equal to the excess number of ballots by chance and without inspection from the container or bag. These ballots shall not be counted but shall be marked as having been removed by the canvassers on recount due to an excess number of ballots, set aside and carefully preserved.

5. When the number of ballots and voters agree, or after noting that the number of voters exceeds the number of ballots, the board of canvassers shall return all ballots to be counted to the ballot box and shall turn the ballot box in such manner as to thoroughly mix the ballots. The recount shall then begin.

5m. Except as otherwise provided in this section, the recount shall be conducted in accordance with s. 7.51.

6. In recounting the votes cast on a voting machine in which the record of the votes cast is contained in the machine, the board of canvassers shall make a record of the number of the seal, if any, the number of the protective counter or other device, if one is provided, and shall open the recording compartment of the machine, and without unlocking the machine against voting, shall recount the votes thereon. If the machine is an electronic voting machine utilizing a detachable record of votes cast, the record shall be retabulated under s. 5.90.

7. When a machine is recounted, the board of canvassers shall proceed to inspect and examine the machine showing the votes cast for each office or referendum specified in the petition, and shall make a record of the votes for that office or referendum as shown on that voting machine, which they shall certify as correct, in the presence of at least one witness.

8. If upon the recount it is found that the original canvass of the returns has been correctly made from a voting machine and that a discrepancy still remains unaccounted for, the board of canvassers shall publicly unlock the voting and counting mechanism of the machine, and shall proceed to examine and test the machine to determine the cause of the discrepancy in returns from the machine. A similar test shall be performed for electronic voting machines to ascertain whether there is any malfunction in the machine. After the completion of the examination and test, the board of canvassers shall prepare a statement giving the results of the examination and test. The statement shall be witnessed by at least one witness.

8m. Where a voting machine or electronic voting system is used, and an error in the vote total as shown on the machine or record of votes cast is clearly apparent, the board of canvassers may change the vote total as shown by the machine or system and certify or use a different total to certify a different result than is indicated by the machine or system if there is evidence of a specific malfunction in the machine or system, if the malfunction could reasonably have caused the error, and if clear and convincing evidence exists which indicates the exact actual total number of votes cast. The burden of demonstrating that a vote total shown on a machine or record of votes cast is incorrect rests with the party seeking to change the recorded result on the basis of clear and convincing evidence.

8s. If an electronic voting system is used in which ballots are distributed to electors, and the board of canvassers makes a determination of elector intent under s. 7.50, the board of canvassers shall add to the result generated by the automatic tabulating equipment any votes counted by the board of canvassers in making its determination.

9. If upon the recount it appears that the original canvass of the returns by the election officials was incorrect, the statements and determinations of the board of canvassers shall be corrected accordingly.

10. Recounts at polling places utilizing an electronic voting system in which ballots are distributed to electors shall be performed in accordance with the procedure for recounting paper ballots insofar as applicable, except as provided in s. 5.90. Recounts at polling places utilizing electronic voting machines shall be performed in accordance with the procedure for recounting votes cast on mechanical voting machines, insofar as applicable, except as provided in s. 5.90.

11. All steps of the recount shall be performed publicly. Except as provided in subd. 12., all materials and ballots may be viewed and identified by the candidates, the person demanding the recount and their authorized representatives and counsel, but only members of the board of canvassers and tabulators assisting them may touch any of the materials or ballots. The candidates, the person demanding the recount and their authorized representatives and counsel may object to the counting of any ballot. Any errors shall be corrected.

12. Except as authorized in s. 6.47 (8), the board of canvassers shall not permit access to the name of any elector who has obtained a confidential listing under s. 6.47 (2) during the recanvass.

**(2)** NOTICE TO CANDIDATES. When the recount concerns an election for an office, the clerk or body with whom the petition is filed shall promptly prepare a copy of the petition for delivery to each opposing candidate for the same office whose name appears on the ballot. In a recount proceeding for a partisan primary, the clerk or body shall prepare a copy of the petition for delivery to each opposing candidate for the same party nomination for the same office, to each opposing candidate for the party nomination of each other party for the same office and to each independent candidate qualifying to have his or her name placed on the ballot for the succeeding election. A candidate or agent designated by a candidate may personally accept delivery of a copy of the petition. Upon such delivery, the clerk or body shall require the candidate or agent to sign a receipt therefor. If a candidate or agent does not personally accept delivery, the clerk or body shall then promptly deliver the copies of the petition to the sheriff, who shall promptly deliver the copies of the petition to each candidate at the address given on the candidate's nomination papers, without fee, in the manner provided for service of a summons in civil actions.

**(3)** REPRESENTATION AND OBSERVATION. The petitioner, all opposing candidates and interested persons shall be entitled to be present in person and by counsel to observe the proceedings.

**(4)** RIGHT TO COMPLETE RECOUNT. (a) Whenever a recount petition for part of the wards within a jurisdiction or district, or for part of the municipalities within a district where there are no wards, is filed under this section, the opposing candidate, or any voter or other interested party including a municipality if on a referendum question, may similarly file a petition for recount in any or all of the remaining wards or municipalities in the jurisdiction or district. The petition shall be filed not later than 5 p.m. 2 days after the board of canvassers completes the first recount. The

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Updated 2023-24 Wis. Stats.  Published and certified under s. 35.18.  June 19, 2026.

USCA Case #26-5193     Document #2180381          Filed: 06/24/2026     Page 108 of 116

**9.01          POST-ELECTION ACTIONS; DIRECT LEGISLATION          Updated 23-24 Wis. Stats.     4**

proper board of canvassers shall reconvene at 9 a.m. on the next business day following the filing of the petition and proceed to recount the ballots in all wards or municipalities specified and to otherwise review the allegations of fact contained in the petition. Any errors shall be corrected.

(b)  Notwithstanding par. (a), whenever a recount petition for a presidential election for part of the wards or municipalities in the state is filed under this section, any opposing candidate in the presidential election whose name appeared on the ballot may similarly file a petition for recount in any or all of the remaining wards or municipalities in the state.  The petition shall be filed not later than 5 p.m. on the day after the original petition is filed under sub. (1).  The proper board of canvassers shall reconvene at 9 a.m. on the 2nd day following the filing of the petition and proceed to recount the ballots in all wards or municipalities specified and to otherwise review the allegations of fact contained in the petition.  Any errors shall be corrected.  Returns from a recount under this paragraph shall be transmitted to the office of the commission as soon as possible but in no case later than 9 days after the date of the original order directing the recount under sub. (1) (ar) 4.

(5)  OATHS; MINUTES; WITNESS FEES; TABULATORS; TIMING; PUBLICATION.  (a)  The board of canvassers or the commission chairperson or the chairperson's designee shall keep complete minutes of all proceedings before the board of canvassers or the chairperson or designee.  The minutes shall include a record of objections and offers of evidence.  If the board of canvassers or the commission chairperson or the chairperson's designee receives exhibits from any party, the board of canvassers or the chairperson or designee shall number and preserve the exhibits.  The board of canvassers or the chairperson or chairperson's designee shall make specific findings of fact with respect to any irregularity raised in the petition or discovered during the recount.  Any member of the board of canvassers or the chairperson or chairperson's designee may administer oaths, certify official acts, and issue subpoenas for purposes of this section.  Witness fees shall be paid by the county.  In the case of proceedings before the commission chairperson or chairperson's designee, witness fees shall be paid by the commission.

(b)  The board of canvassers conducting a recount may select and employ tabulators to assist it in its duties.  Tabulators shall perform their duties under the direction of the board of canvassers.  Only the members of the board of canvassers are competent to make any determination as to the validity of any vote tabulated.  Compensation of tabulators shall be determined under s. 7.03.

(bm)  Upon the completion of its proceedings, a board of canvassers shall deliver to the commission one copy of the minutes of the proceedings kept under par. (a).  In addition, in the case of a recount of an election for state or national office, for each candidate whose name appears on the ballot for that office under the name of a political party, the board of canvassers shall deliver one copy of the minutes to the chief officer, if any, who is named in any registration statement filed under s. 11.0302 by the state committee of that political party, and in the case of a recount of an election for county office, for each candidate whose name appears on the ballot for that office under the name of a political party, the board of canvassers shall deliver one copy of the minutes to the chief officer, if any, who is named in any registration statement filed under s. 11.0302 by the county committee of that political party.

(c)  If the recount is made by a municipal or county board of canvassers and the result is required to be reported to a county board of canvassers or to the commission chairperson or the chairperson's designee, the board of canvassers making the initial recount shall immediately certify the results to the county board

of canvassers or to the commission chairperson or designee.  If a county board of canvassers receives such results, it shall then convene not later than 9 a.m. on the next business day following receipt to examine the returns and determine the results.  If the commission chairperson or the chairperson's designee receives such results, the chairperson or designee shall publicly examine the returns and determine the results not later than 9 a.m. on the 3rd business day following receipt, but if that day is earlier than the latest day permitted for that election under s. 7.70 (3) (a), the commission chairperson or designee may examine the returns and determine the results not later than the day specified in s. 7.70 (3) (a).

(d)  Whenever publication of an original determination is required, the county or municipal clerk shall publish the recount determination in the same manner.

(6)  APPEAL TO CIRCUIT COURT.  (a)  Except as provided in par. (am), within 5 business days after completion of the recount determination by the board of canvassers in all counties concerned, or within 5 business days after completion of the recount determination by the commission chairperson or the chairperson's designee whenever a determination is made by the chairperson or designee, any candidate, or any elector when for a referendum, aggrieved by the recount may appeal to circuit court.  The appeal shall commence by serving a written notice of appeal on the other candidates and persons who filed a written notice of appearance before each board of canvassers whose decision is appealed, or in the case of a statewide recount, before the commission chairperson or the chairperson's designee.  The appellant shall also serve notice on the commission if the commission chairperson or the chairperson's designee is responsible for determining the election.  The appellant shall serve the notice by certified mail or in person.  The appellant shall file the notice with the clerk of circuit court together with an undertaking and surety in the amount approved by the court, conditioned upon the payment of all costs assessed against the appellant.

(am)  For a presidential election, within one business day after the completion of the recount determination by the commission chairperson or the chairperson's designee whenever a determination is made by the chairperson or designee, any candidate aggrieved by the recount may appeal to circuit court.  The appeal shall commence by serving a written notice of appeal on the other candidates who filed a written notice of appearance before each board of canvassers whose decision is appealed or, in the case of a statewide recount, before the commission chairperson or the chairperson's designee.  The appellant shall also serve notice on the commission if the commission chairperson or the chairperson's designee is responsible for determining the election.  The appellant shall serve the notice by certified mail or in person.  The appellant shall file the notice with the clerk of circuit court together with an undertaking and surety in the amount approved by the court, conditioned upon the payment of all costs assessed against the appellant.

(b)  If an appeal is filed from a recount determination in an election which is held in more than one judicial circuit, the chief judge of the judicial administrative district in which the election is held shall consolidate all appeals relating to that election and appoint a circuit judge, who shall be a reserve judge if available, to hear the appeal.  If the election is held in more than one judicial administrative district, the chief justice of the supreme court shall make the appointment.  In any year in which there is a presidential election, the chief justice of the supreme court shall, on the first Monday in November, appoint a circuit judge, who shall be a reserve judge if available, to hear any appeals under this section related to the presidential election, except as provided under sub. (9) (am).

(7)  COURT PROCEDURES.  (a)  1.  The court with whom an ap-

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026.  Published and certified under s. 35.18.  Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 52

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 109 of 116

**5** **Updated 23-24 Wis. Stats.** POST-ELECTION ACTIONS; DIRECT LEGISLATION **9.01**

peal is filed shall forthwith issue an order directing each affected county, municipal clerk, or board, and the commission, to transmit immediately all ballots, papers and records affecting the appeal to the clerk of court or to impound and secure such ballots, papers and records, or both. The order shall be served upon each affected county, municipal clerk, or board, the commission, and all other candidates and persons who filed a written notice of appearance before any board of canvassers involved in the recount.

2. Notwithstanding subd. 1., in a presidential election, the court with whom an appeal is filed shall forthwith issue an order directing each affected county, municipal clerk, or board, and the commission, to immediately secure and maintain in a safe and secure location all ballots, papers, and records affecting the appeal for the duration of any recount and recount appeal under this section in the presidential election. The order shall be served upon each affected county, municipal clerk, or board, the commission, and all other candidates and persons who filed a written notice of appearance before any board of canvassers involved in the recount.

(b) The appeal shall be heard by a judge without a jury. Promptly following the filing of an appeal, the court shall hold a scheduling conference for the purpose of adopting procedures that will permit the court to determine the matter as expeditiously as possible. For an appeal regarding a presidential election, the court shall determine the matter no later than 7 days after the day on which the appeal is filed. Within the time ordered by the court, the appellant shall file a complaint enumerating with specificity every alleged irregularity, defect, mistake or fraud committed during the recount. The appellant shall file a copy of the complaint with each person who is entitled to receive a copy of the order under par. (a). Within the time ordered by the court, the other parties to the appeal shall file an answer. Within the time ordered by the court, the parties to the appeal shall provide the court with any other information ordered by the court. At the time and place ordered by the court, the matter shall be summarily heard and determined and costs shall be taxed as in other civil actions. Those provisions of chs. 801 to 806 which are inconsistent with a prompt and expeditious hearing do not apply to appeals under this section.

**(8)** SCOPE OF REVIEW. (a) Unless the court finds a ground for setting aside or modifying the determination of the board of canvassers or the commission chairperson or chairperson's designee, it shall affirm the determination.

(b) The court shall separately treat disputed issues of procedure, interpretations of law, and findings of fact.

(c) The court may not receive evidence not offered to the board of canvassers or the commission chairperson or the chairperson's designee except for evidence that was unavailable to a party exercising due diligence at the time of the recount or newly discovered evidence that could not with due diligence have been obtained during the recount, and except that the court may receive evidence not offered at an earlier time because a party was not represented by counsel in all or part of a recount proceeding. A party who fails to object or fails to offer evidence of a defect or irregularity during the recount waives the right to object or offer evidence before the court except in the case of evidence that was unavailable to a party exercising due diligence at the time of the recount or newly discovered evidence that could not with due diligence have been obtained during the recount or evidence received by the court due to unavailability of counsel during the recount.

(d) The court shall set aside or modify the determination of the board of canvassers or the commission chairperson or the chairperson's designee if it finds that the board of canvassers or the chairperson or chairperson's designee has erroneously interpreted a provision of law and a correct interpretation compels a

particular action. If the determination depends on any fact found by the board of canvassers or the commission chairperson or the chairperson's designee, the court may not substitute its judgment for that of the board of canvassers or the chairperson or designee as to the weight of the evidence on any disputed finding of fact. The court shall set aside the determination if it finds that the determination depends on any finding of fact that is not supported by substantial evidence.

**(9)** APPEAL TO COURT OF APPEALS. (a) Except as provided in par. (am), within 30 days after entry of the order of the circuit court, a party aggrieved by the order may appeal to the court of appeals.

(am) With regard to a presidential election, no later than one day after entry of the order of the circuit court, a party aggrieved by the order may appeal directly to the supreme court. The exclusive judicial remedy for review of any decision or order of the circuit court with regard to a recount in a presidential election shall be by appeal to the supreme court.

(b) If an appeal is filed in respect to an election which is held in more than one court of appeals district, the chief justice of the supreme court shall consolidate all appeals relating to that election and designate one district to hear the appeal, except that if an appeal is filed in respect to an election for statewide office or a statewide referendum, the appeal shall be heard by the 4th district court of appeals.

(c) The court of appeals shall give precedence to the appeal over other matters not accorded similar precedence by law.

(cm) With regard to an appeal under par. (am), the supreme court shall make a determination of the issues on appeal as soon as possible. If the supreme court issues an order no later than the day before the date on which the presidential electors are to convene under s. 7.75 (1) that requires the governor to issue a superseding certificate of ascertainment of appointment of electors under s. 7.70 (5) (b) consistent with the certified results of the recount, the governor shall issue that superseding certificate by 9 a.m. on the date on which the presidential electors are to convene under s. 7.75 (1). If the supreme court does not issue an order by the day before the date on which the presidential electors are to convene under s. 7.75 (1) requiring the governor to issue a superseding certificate of ascertainment of appointment of electors, the governor's certificate originally issued pursuant to s. 7.70 (5) (b) is conclusive with respect to the determination of this state's presidential electors for purposes of the meeting of presidential electors under s. 7.75.

**(9m)** RECOUNT DELAYS IN PRESIDENTIAL ELECTIONS. (a) If a recount in a presidential election is not completed and certified before 3 p.m. on the 6th day before the date on which the presidential electors are to convene under s. 7.75 (1), the certificate of ascertainment of appointment of electors issued by the governor under s. 7.70 (5) (b) shall reflect the certified statement of the election results recorded under s. 7.70 (5) (b).

(b) If a recount in a presidential election is not completed before 3 p.m. on the 6th day before the date on which the presidential electors are to convene under s. 7.75 (1), but is completed by the 2nd day before the date on which the presidential electors are to convene under s. 7.75 (1), and the recount determination of the commission chairperson or the chairperson's designee alters the winners of the presidential election as reflected on the certificate of ascertainment of appointment of electors issued by the governor under s. 7.70 (5) (b), any candidate for president or vice president of the United States aggrieved by the recount may appeal directly to the supreme court by filing a petition for original action under s. 809.70. The appeal shall be filed no later than 24 hours after the commission chairperson or the chairperson's designee enters his or her determination and shall enumerate with specificity every alleged irregularity, defect, mistake, or fraud commit-

***2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)***

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 110 of 116

**9.01**       **POST-ELECTION ACTIONS; DIRECT LEGISLATION**       **Updated 23-24 Wis. Stats.    6**

ted during the recount. The appeal shall commence by serving a written notice of appeal on the other candidates who filed a written notice of appearance before the commission chairperson or the chairperson's designee. The appellant shall also serve notice on the commission. The appellant shall serve the notice by certified mail or in person. The appellant shall file with the clerk of the supreme court the notice, together with an undertaking and surety in the amount approved by the supreme court, conditioned upon the payment of all costs assessed against the appellant.

(c) An aggrieved candidate filing an appeal under par. (b) shall request an expedited hearing and that the supreme court issue any order granting relief no later than the day before the date on which the presidential electors are to convene under s. 7.75 (1). The supreme court may refer issues of fact to the circuit judge appointed under sub. (6) (b) to hear recount appeals in the presidential election, subject to sub. (8) (c).

(d) If the supreme court issues an order in an appeal filed under par. (b) no later than 4 p.m. on the day before the date on which the presidential electors are to convene under s. 7.75 (1) that requires the governor to issue a superseding certificate of ascertainment of appointment of electors, the governor shall issue the superseding certificate of ascertainment no later than the day before the date on which the presidential electors are to convene under s. 7.75 (1).

(e) If a recount in a presidential election is completed by the 2nd day before the date on which the presidential electors are to convene under s. 7.75 (1), and the determination of that recount, as made by the commission chairperson or chairperson's designee, alters the winners of the presidential election as reflected on the certificate of ascertainment of appointment of electors issued by the governor under s. 7.70 (5) (b), and the supreme court does not issue an order under par. (d) that requires the governor to issue a superseding certificate of ascertainment, the governor shall issue a superseding certificate of ascertainment of appointment of electors that reflects the determination of the recount by 9 a.m. on the date on which the presidential electors are to convene under s. 7.75 (1).

(f) This subsection constitutes the exclusive judicial remedy for review of any recount that is not completed and certified before 3 p.m. on the 6th day before the date on which the presidential electors are to convene under s. 7.75 (1).

**(10)** STANDARD FORMS AND METHODS. The commission shall prescribe standard forms and procedures for the making of recounts under this section. The procedures prescribed by the commission shall require the boards of canvassers in recounts involving more than one board of canvassers to consult with the commission staff prior to beginning any recount in order to ensure that uniform procedures are used, to the extent practicable, in such recounts.

**(11)** EXCLUSIVE REMEDY. This section constitutes the exclusive judicial remedy for testing the right to hold an elective office as the result of an alleged irregularity, defect or mistake committed during the voting or canvassing process.

**History:** 1971 c. 251; 1971 c. 304 s. 29 (2); 1971 c. 336; 1973 c. 313; 1973 c. 334 ss. 23 to 26, 57; 1975 c. 41, 422; 1977 c. 394 s. 53; 1977 c. 427; 1979 c. 200; 1979 c. 260 ss. 66 to 68, 93; 1979 c. 311, 355; 1983 a. 183; 1983 a. 484 s. 172 (3); 1983 a. 538; 1985 a. 304; 1987 a. 391; 1989 a. 192; 1993 a. 213; 1997 a. 27; 1999 a. 49, 182; 2001 a. 16; 2003 a. 265, 321; 2005 a. 149, 451; 2007 a. 1, 96; 2011 a. 75, 115; 2015 a. 36, 117; 2015 a. 118 ss. 107 to 119, 266 (10); 2015 a. 261; 2017 a. 120, 366; 2025 a. 214.

**Cross-reference:** See also s. EL 6.04, Wis. adm. code.

A challenge of compliance with procedures for absent voting is within the board of canvassers' jurisdiction. Absent connivance, fraud, or undue influence, substantial compliance with statutory voting procedures is sufficient. Johnson v. Hayden, 105 Wis. 2d 468, 313 N.W.2d 869 (Ct. App. 1981).

Sub. (8) does not require the party against whom the board of canvassers rules to object to the board's determination to preserve the issue for judicial review. Clifford v. School District, 143 Wis. 2d 581, 421 N.W.2d 852 (Ct. App. 1988).

Post-election eligibility challenges are properly brought under this section. Logerquist v. Board of Canvassers, 150 Wis. 2d 907, 442 N.W.2d 551 (Ct. App. 1989).

The recount statute does not violate due process or equal protection and does not deny the electorate the right to have the winning candidate hold office. Discussing the relationship of recount and quo warranto actions. State ex rel. Shroble v. Prusener, 185 Wis. 2d 102, 517 N.W.2d 169 (1994).

When the board of canvassers' actions in a recount reflected proper application of the statutes, the reviewing court's finding that the board had another option available to it was immaterial. De Broux v. Board of Canvassers, 206 Wis. 2d 321, 557 N.W.2d 423 (Ct. App. 1996), 96-1287.

This section is the exclusive remedy for any claimed election fraud or irregularity. Generally, to successfully challenge an election, the challenger must show the probability of an altered outcome in the absence of the challenged irregularity. Carlson v. Oconto County Board of Canvassers, 2001 WI App 20, 240 Wis. 2d 438, 623 N.W.2d 195, 00-1788.

A party's failure to timely file an appeal under sub. (6) does not preclude the party from later intervening in another's appeal. To appeal under sub. (6) requires a party to be aggrieved. A party advocating a position that prevailed is not aggrieved. Roth v. LaFarge School District Board of Canvassers, 2001 WI App 221, 247 Wis. 2d 708, 634 N.W.2d 882, 01-0160.

The sub. (6) (a) requirement that a vote-recount appeal to the circuit court be served on the other candidates is fundamental. That a candidate who was not served knew about the appeal and sought and was permitted to intervene in an appeal of a recount was immaterial to the validity of that appeal. The command that "other candidates" be served with the appeal is mandatory rather than directory. Logic v. City of South Milwaukee Board of Canvassers, 2004 WI App 219, 277 Wis. 2d 421, 689 N.W.2d 692, 04-1642.

This section and ss. 6.80, 6.88, 7.37, and 7.51, when read together, unambiguously establish that the lack of elections inspector or municipal clerk initials on a ballot is not by itself a reason for rejecting the ballot, whether in an initial canvass or during a recount. Unendorsed ballots must be counted in the election unless there is a reason beyond the lack of an endorsement to reject them, such as when the total number of ballots exceeds the total number of electors recorded in the poll books. Section 7.51 makes evident that the only reason that a missing endorsement would result in a ballot not being counted in the election-day canvass is if it is necessary to put the unendorsed ballot aside to reconcile the number of ballots with the number of electors who are recorded as having cast ballots in the election. Gonfiantini v. Rock County Board of Canvassers, 2025 WI App 26, 416 Wis. 2d 118, 20 N.W.3d 773, 24-1233.

**9.10   Recall.   (1)** RIGHT TO RECALL; PETITION SIGNATURES. (a) The qualified electors of the state, of any county, city, village, or town, of any congressional, legislative, judicial, town sanitary, or school district, or of any prosecutorial unit may petition for the recall of any incumbent elective official by filing a petition with the same official or agency with whom nomination papers or declarations of candidacy for the office are filed demanding the recall of the officeholder.

(b) Except as provided in par. (c), a petition for recall of an officer shall be signed by electors equal to at least 25 percent of the vote cast for the office of governor at the last election within the same district or territory as that of the officeholder being recalled.

(c) If no statistics are available to calculate the required number of signatures on a petition for recall of an officer, the number of signatures shall be determined as follows:

1. The area of the district in square miles shall be divided by the area of the municipality in square miles in which it lies.

2. The vote for governor at the last general election in the municipality within which the district lies shall be multiplied by 25 percent of the quotient determined under subd. 1. to determine the required number of signatures.

3. If a district is in more than one municipality, the method of determination under subds. 1. and 2. shall be used for each part of the district which constitutes only a fractional part of any area for which election statistics are kept.

(d) The official or agency with whom declarations of candidacy are filed for each office shall determine and certify to any interested person the number of signatures required on a recall petition for that office.

**(2)** PETITION REQUIREMENTS. (a) Every recall petition shall have on the face at the top in bold print the words "RECALL PETITION". Other requirements as to preparation and form of the petition shall be governed by s. 8.40.

(b) A recall petition for a city, village, town, town sanitary district, or school district office shall contain a statement of a reason for the recall which is related to the official responsibilities of the official for whom removal is sought.

***2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)***

Add. 54

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

USCA Case #26-5193   Document #2180381   Filed: 06/24/2026   Page 111 of 116

**35  Updated 23-24 Wis. Stats.**   STRUCTURE OF THE EXECUTIVE BRANCH   **15.61**

tions, the United Women Veterans, Inc., the Wisconsin Vietnam Veterans, Inc., and the Military Order of the Purple Heart.

2. One representative of the American Red Cross.

3. One representative of the Wisconsin county veterans service officers.

4. One representative of the Wisconsin chapter of the Paralyzed Veterans of America.

5. One representative of the Wisconsin Council of the Military Officers Association of America.

6. One representative of The Retired Enlisted Association.

7. One representative of the Wisconsin American GI Forum.

(am) For a 3-year term, a veteran services coordinator who is employed at a technical college in this state and who is popularly selected by other technical college veteran services coordinators in this state.

(ar) For a 3-year term, a veteran services coordinator who is employed at a University of Wisconsin System institution, as defined in s. 36.05 (9), and who is popularly selected by other University of Wisconsin System institution veteran services coordinators.

(at) For a 3-year term, a veteran services coordinator who is employed at a college or university that is a member of the Wisconsin Association of Independent Colleges and Universities and who is selected by the president of the Wisconsin Association of Independent Colleges and Universities or his or her designee.

**History:** 1973 c. 90, 333; 1975 c. 316; 1981 c. 237; 1983 a. 437; 1987 a. 243; 1987 a. 403 s. 255; 1989 a. 31, 36, 359; 1995 a. 120; 2001 a. 21; 2005 a. 22; 2007 a. 25; 2009 a. 49, 298; 2023 a. 70.

SUBCHAPTER III

INDEPENDENT AGENCIES

**15.57  Educational communications board; creation.** There is created an educational communications board consisting of:

**(1)** The secretary of administration, the state superintendent of public instruction, the president of the University of Wisconsin System and the director of the technical college system board, or their designees.

**(2)** Two public members appointed for 4-year terms.

**(3)** One representative of public schools and one representative of private schools or of tribal schools, as defined in s. 115.001 (15m), appointed for 4-year terms.

**(4)** One majority and one minority party senator and one majority and one minority party representative to the assembly, appointed as are the members of standing committees in their respective houses.

**(5)** One member appointed by the board of regents of the University of Wisconsin System for a 4-year term.

**(6g)** The president of the Wisconsin Public Radio Association.

**(6m)** One member with a demonstrated interest in public television who resides within the coverage area of an education television channel subject to s. 39.11 (3).

**(7)** One member appointed by the technical college system board for a 4-year term.

**History:** 1971 c. 100 s. 4; Stats. 1971 s. 15.57; 1977 c. 325; 1983 a. 27; 1985 a. 29; 1991 a. 39; 1993 a. 399; 1995 a. 27; 1997 a. 27; 2009 a. 302.

**15.61  Elections commission; creation. (1)** (a) There is created an elections commission consisting of the following members who shall serve for 5-year terms:

1. One member appointed by the senate majority leader.

2. One member appointed by the senate minority leader.

3. One member appointed by the speaker of the assembly.

4. One member appointed by the assembly minority leader.

5. Two members who formerly served as county or municipal clerks and who are nominated by the governor, and with the advice and consent of a majority of the members of the senate confirmed. The legislative leadership of the 2 major political parties that received the largest number of votes for president shall prepare a list of 3 individuals such that each major political party has prepared one list. The governor shall choose one nominee from each list.

6. For each political party, other than the 2 major political parties, qualifying for a separate ballot under s. 5.62 (1) (b) or (2) whose candidate for governor received at least 10 percent of the vote in the most recent gubernatorial election, one member, nominated by the governor from a list of 3 individuals selected by the chief officer of that political party, and with the advice and consent of a majority of the members of the senate confirmed.

(b) 1. The elections commission shall be under the direction and supervision of an administrator, who shall be appointed by a majority of the members of the commission, with the advice and consent of the senate, to serve for a 4-year term expiring on July 1 of the odd-numbered year. Until the senate has confirmed an appointment made under this subdivision, the elections commission shall be under the direction and supervision of an interim administrator selected by a majority of the members of the commission. If a vacancy occurs in the administrator position, the commission shall appoint a new administrator, and submit the appointment for senate confirmation, no later than 45 days after the date of the vacancy. If the commission has not appointed a new administrator at the end of the 45-day period, the joint committee on legislative organization shall appoint an interim administrator to serve until a new administrator has been confirmed by the senate but for a term of no longer than one year. If the administrator position remains vacant at the end of the one-year period, the process for filling the vacancy described in this subdivision is repeated until the vacancy is filled.

2. The administrator may be removed by the affirmative vote of a majority of all members of the commission voting at a meeting of the commission called for that purpose.

**(1m)** Members appointed with the advice and consent of the senate may serve prior to senate confirmation.

**(2)** No member of the commission may hold another office or position that is a state public office or a local public office, as defined in s. 19.42, except the office of circuit judge or court of appeals judge under s. 753.075.

**(3)** No member, while serving on the commission, may become a candidate, as defined in s. 11.0101 (1), for state office or local office, as defined in s. 5.02.

**(4)** No member may be a lobbyist, as defined in s. 13.62 (11), except that a member may serve as a circuit judge or court of appeals judge under s. 753.075.

**(5)** (a) 1. Except as provided in subd. 2., if a vacancy occurs for a member appointed under sub. (1) (a) 1. to 4., the individual responsible for making the appointment shall appoint a new member no later than 45 days after the date of the vacancy.

2. If the political party affiliation of the individual responsible for filling a vacancy under this paragraph is not the same as the political party affiliation of the individual who made the initial appointment, the legislative leader of the political party that made the initial appointment shall fill the vacancy.

(b) If a vacancy occurs for a member appointed under sub. (1) (a) 5. or 6., a new member shall be selected, nominated, and submitted to the senate for confirmation no later than 45 days after the date of the vacancy.

**History:** 2015 a. 118 ss. 155, 158, 160, 162, 167, 169 to 171; 2017 a. 365, 366.

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 55

Updated 2023-24 Wis. Stats. Published and certified under s. 35.18. June 19, 2026.

**USCA Case #26-5193     Document #2180381          Filed: 06/24/2026     Page 112 of 116**

**15.61          STRUCTURE OF THE EXECUTIVE BRANCH                          Updated 23-24 Wis. Stats.    36**

Sub. (1) (b) 1. imposes a duty on the Wisconsin Elections Commission (WEC) to appoint a new administrator only if a vacancy occurs in the administrator position. WEC does not have a duty to appoint a new administrator simply because the current administrator's term has ended. In this case, the administrator's term expired, but WEC did not appoint a replacement. Thus, the administrator was lawfully holding over, and there was no "vacancy" in the administrator position. Although WEC could appoint a new administrator, it did not need to do so. Wisconsin Elections Commission v. LeMahieu, 2025 WI 4, 414 Wis. 2d 571, 16 N.W.3d 469, 24-0351.

**15.62  Ethics commission; creation. (1)** (a)  There is created an ethics commission consisting of the following members who shall serve for 5-year terms:

1.  One member appointed by the senate majority leader.

2.  One member appointed by the senate minority leader.

3.  One member appointed by the speaker of the assembly.

4.  One member appointed by the assembly minority leader.

5.  Two individuals who formerly served as judges for a court of record in this state, who were elected to the positions in which they served, and who are nominated by the governor, and with the advice and consent of a majority of the members of the senate confirmed.  The legislative leadership of the 2 major political parties that received the largest number of votes for president shall prepare a list of 3 individuals such that each major political party has prepared one list.  The governor shall choose one nominee from each list.

6.  For each political party, other than the 2 major political parties, qualifying for a separate ballot under s. 5.62 (1) (b) or (2) whose candidate for governor received at least 10 percent of the vote in the most recent gubernatorial election, one member, nominated by the governor from a list of 3 individuals selected by the chief officer of that political party, and with the advice and consent of a majority of the members of the senate confirmed.

(b)  1.  The ethics commission shall be under the direction and supervision of an administrator, who shall be appointed by a majority of the members of the commission, with the advice and consent of the senate, to serve for a 4-year term expiring on July 1 of the odd-numbered year.  Until the senate has confirmed an appointment made under this subdivision, the ethics commission shall be under the direction and supervision of an interim administrator selected by a majority of the members of the commission.  If a vacancy occurs in the administrator position, the commission shall appoint a new administrator, and submit the appointment for senate confirmation, no later than 45 days after the date of the vacancy.  If the commission has not appointed a new administrator at the end of the 45-day period, the joint committee on legislative organization shall appoint an interim administrator to serve until a new administrator has been confirmed by the senate but for a term of no longer than one year.  If the administrator position remains vacant at the end of the one-year period, the process for filling the vacancy described in this subdivision is repeated until the vacancy is filled.

2.  The administrator may be removed by the affirmative vote of a majority of all members of the commission voting at a meeting of the commission called for that purpose.

**(1m)**  Members appointed with the advice and consent of the senate may serve prior to senate confirmation.

**(2)**  No member of the commission may hold another office or position that is a state public office or a local public office, as defined in s. 19.42, except the office of circuit judge or court of appeals judge under s. 753.075.

**(3)**  No member, while serving on the commission, may become a candidate, as defined in s. 11.0101 (1), for state office or local office, as defined in s. 5.02.

**(4)**  No member may be a lobbyist, as defined in s. 13.62 (11), or an employee of a principal, as defined in s. 13.62 (12), except that a member may serve as a circuit judge or court of appeals judge under s. 753.075.

**(5)**  (a)  1.  Except as provided in subd. 2., if a vacancy occurs for a member appointed under sub. (1) (a) 1. to 4., the individual responsible for making the appointment shall appoint a new member no later than 45 days after the date of the vacancy.

2.  If the political party affiliation of the individual responsible for filling a vacancy under this paragraph is not the same as the political party affiliation of the individual who made the initial appointment, the legislative leader of the political party that made the initial appointment shall fill the vacancy.

(b)  If a vacancy occurs for a member appointed under sub. (1) (a) 5. or 6., a new member shall be selected, nominated, and submitted to the senate for confirmation no later than 45 days after the date of the vacancy.

**History:** 2015 a. 118 ss. 165, 172; 2017 a. 366.

**15.67  Higher educational aids board; creation.  (1)** There is created a higher educational aids board consisting of the state superintendent of public instruction and the following members appointed for 3-year terms, except that the members specified under pars. (a) 5. and 6. and (b) 3. shall be appointed for 2-year terms:

(a)  To represent public institutions of higher education, all of the following:

1.  One member of the board of regents of the University of Wisconsin System.

2.  One member of the technical college system board.

3.  One financial aids administrator within the University of Wisconsin System.

4.  One financial aids administrator within the technical college system.

5.  One undergraduate student enrolled at least half-time and in good academic standing at an institution within the University of Wisconsin System who is at least 18 years old and a resident of this state.

6.  One student enrolled at least half-time and in good academic standing at a technical college who is at least 18 years old and a resident of this state.

(b)  To represent private, nonprofit institutions of higher education, all of the following:

1.  One member of a board of trustees of an independent college or university in this state.

2.  One financial aids administrator of a private nonprofit institution of higher education located in this state.

3.  One undergraduate student enrolled at least half-time and in good academic standing at a private, nonprofit institution of higher education located in this state who is at least 18 years old and a resident of this state.

(c)  One member to represent the general public.

**(2)**  If a student member under sub. (1) loses the status upon which the appointment was based, he or she shall cease to be a member of the higher educational aids board upon appointment to the higher educational aids board of a qualified successor.

**History:** 1997 a. 27, 237.

**15.675  Same; attached board. (1)** DISTANCE LEARNING AUTHORIZATION BOARD.  There is created a distance learning authorization board, for higher education, that is attached to the higher educational aids board under s. 15.03 and that consists of all of the following members:

(a)  The president of the University of Wisconsin System or his or her designee.

(b)  The president of the technical college system as appointed under s. 38.04 (2) or his or her designee.

(c)  The president of the Wisconsin Association of Independent Colleges and Universities or his or her designee.

***2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026.  Published and certified under s. 35.18.  Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)***

Add. 56

USCA Case #26-5193    Document #2180381    Filed: 06/24/2026    Page 113 of 116

local governmental unit, an advisory opinion regarding the propriety of any matter to which the person is or may become a party. Any appointing officer, with the consent of a prospective appointee, may request of a county or municipal ethics board, or, in the absence of a county or municipal ethics board, a county corporation counsel or attorney for a local governmental unit an advisory opinion regarding the propriety of any matter to which the prospective appointee is or may become a party. The county or municipal ethics board or the county corporation counsel or attorney shall review a request for an advisory opinion and may advise the person making the request. Advisory opinions and requests therefor shall be in writing. It is prima facie evidence of intent to comply with this section or any ordinance enacted under this section when a person refers a matter to a county or municipal ethics board or a county corporation counsel or attorney for a local governmental unit and abides by the advisory opinion, if the material facts are as stated in the opinion request. A county or municipal ethics board may authorize a county corporation counsel or attorney to act in its stead in instances where delay is of substantial inconvenience or detriment to the requesting party. Except as provided in par. (b), neither a county corporation counsel or attorney for a local governmental unit nor a member or agent of a county or municipal ethics board may make public the identity of an individual requesting an advisory opinion or of individuals or organizations mentioned in the opinion.

(b) A county or municipal ethics board, county corporation counsel or attorney for a local governmental unit replying to a request for an advisory opinion may make the opinion public with the consent of the individual requesting the advisory opinion or the organization or governmental body on whose behalf it is requested and may make public a summary of an advisory opinion issued under this subsection after making sufficient alterations in the summary to prevent disclosing the identities of individuals involved in the opinion. A person who makes or purports to make public the substance of or any portion of an advisory opinion requested by or on behalf of the person waives the confidentiality of the request for an advisory opinion and of any records obtained or prepared by the county or municipal ethics board, the county corporation counsel or the attorney for the local governmental unit in connection with the request for an advisory opinion.

**(6)** Any county corporation counsel, attorney for a local governmental unit or statewide association of local governmental units may request the commission to issue an opinion concerning the interpretation of this section. The commission shall review such a request and may advise the person making the request.

**(7)** (a) Any person who violates sub. (1) may be required to forfeit not more than $1,000 for each violation, and, if the court determines that the accused has violated sub. (1) (br), the court may, in addition, order the accused to forfeit an amount equal to the amount or value of any political contribution, service, or other thing of value that was wrongfully obtained.

(b) Any person who violates sub. (1) may be required to forfeit not more than $1,000 for each violation, and, if the court determines that a local public official has violated sub. (1) (br) and no political contribution, service or other thing of value was obtained, the court may, in addition, order the accused to forfeit an amount equal to the maximum contribution authorized under s. 11.1101 (1) for the office held or sought by the official, whichever amount is greater.

**(8)** (a) Subsection (1) shall be enforced in the name and on behalf of the state by action of the district attorney of any county wherein a violation may occur, upon the verified complaint of any person.

(b) In addition and supplementary to the remedy provided in sub. (7), the district attorney may commence an action, separately or in conjunction with an action brought to obtain the remedy provided in sub. (7), to obtain such other legal or equitable relief, including but not limited to mandamus, injunction or declaratory judgment, as may be appropriate under the circumstances.

(c) If the district attorney fails to commence an action to enforce sub. (1) (a), (b), or (c) to (g) within 20 days after receiving a verified complaint or if the district attorney refuses to commence such an action, the person making the complaint may petition the attorney general to act upon the complaint. The attorney general may then bring an action under par. (a) or (b), or both.

(cm) No complaint alleging a violation of sub. (1) (br) may be filed during the period beginning 120 days before a general or spring election, or during the period commencing on the date of the order of a special election under s. 8.50, and ending on the date of that election, against a candidate who files a declaration of candidacy to have his or her name appear on the ballot at that election.

(cn) If the district attorney for the county in which a violation of sub. (1) (br) is alleged to occur receives a verified complaint alleging a violation of sub. (1) (br), the district attorney shall, within 30 days after receipt of the complaint, either commence an investigation of the allegations contained in the complaint or dismiss the complaint. If the district attorney dismisses the complaint, with or without investigation, the district attorney shall notify the complainant in writing. Upon receiving notification of the dismissal, the complainant may then file the complaint with the attorney general or the district attorney for a county that is adjacent to the county in which the violation is alleged to occur. The attorney general or district attorney may then investigate the allegations contained in the complaint and commence a prosecution.

(d) If the district attorney prevails in such an action, the court shall award any forfeiture recovered together with reasonable costs to the county wherein the violation occurs. If the attorney general prevails in such an action, the court shall award any forfeiture recovered together with reasonable costs to the state.

**History:** 1979 c. 120; 1981 c. 149; 1981 c. 335 s. 26; 1983 a. 166 s. 16; 1991 a. 39, 269; 1995 a. 56, 227; 1999 a. 167; 2001 a. 109; 2003 a. 39; 2007 a. 1; 2015 a. 117; 2015 a. 118 ss. 204, 266 (10); 2017 a. 112; 2021 a. 267.

Rezoning property from residential to commercial requires a village board to amend or modify a village ordinance. Thus, a village board trustee who participates in rezoning proceedings is exempted from the prohibitions in sub. (1) (c) by the exception outlined in sub. (1) (d). Miller v. Zoning Board of Appeals, 2022 WI App 51, 404 Wis. 2d 539, 980 N.W.2d 295, 21-1764.
Affirmed on other grounds. 2023 WI 46, 407 Wis. 2d 678, 991 N.W.2d 380, 21-1764.

## SUBCHAPTER IV

## PERSONAL INFORMATION PRACTICES

**19.62   Definitions.** In this subchapter:

**(1)** "Authority" has the meaning specified in s. 19.32 (1).

**(2)** "Internet protocol address" means an identifier for a computer or device on a transmission control protocol-Internet protocol network.

**(3)** "Matching program" means the computerized comparison of information in one records series to information in another records series for use by an authority or a federal agency to establish or verify an individual's eligibility for any right, privilege or benefit or to recoup payments or delinquent debts under programs of an authority or federal agency.

**(5)** "Personally identifiable information" means information that can be associated with a particular individual through one or more identifiers or other information or circumstances.

**(6)** "Record" has the meaning specified in s. 19.32 (2).

**(7)** "Records series" means records that are arranged under a manual or automated filing system, or are kept together as a unit,

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026. Published and certified under s. 35.18. Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 57

Updated 2023-24 Wis. Stats.  Published and certified under s. 35.18.  June 19, 2026.

USCA Case #26-5193    Document #2180381        Filed: 06/24/2026    Page 114 of 116

**19.62**    **GENERAL DUTIES OF PUBLIC OFFICIALS**        **Updated 23-24 Wis. Stats.    34**

because they relate to a particular subject, result from the same activity or have a particular form.

**(8)** "State authority" means an authority that is a state elected official, agency, board, commission, committee, council, department or public body corporate and politic created by constitution, statute, rule or order; a state governmental or quasi-governmental corporation; the supreme court or court of appeals; or the assembly or senate.

**History:** 1991 a. 39; 1993 a. 215; 1995 a. 27; 1997 a. 79; 2001 a. 16; 2007 a. 20.

**19.65   Rules of conduct; employee training; and security.**  An authority shall do all of the following:

**(1)** Develop rules of conduct for its employees who are involved in collecting, maintaining, using, providing access to, sharing or archiving personally identifiable information.

**(2)** Ensure that the persons identified in sub. (1) know their duties and responsibilities relating to protecting personal privacy, including applicable state and federal laws.

**History:** 1991 a. 39.

**19.67   Data collection. (1)** COLLECTION FROM DATA SUBJECT OR VERIFICATION.  An authority that maintains personally identifiable information that may result in an adverse determination about any individual's rights, benefits or privileges shall, to the greatest extent practicable, do at least one of the following:

(a)  Collect the information directly from the individual.

(b)  Verify the information, if collected from another person.

**History:** 1991 a. 39.

**19.68   Collection of personally identifiable information from Internet users.**  No state authority that maintains an Internet site may use that site to obtain personally identifiable information from any person who visits that site without the consent of the person from whom the information is obtained.  This section does not apply to acquisition of Internet protocol addresses.

**History:** 2001 a. 16.

**19.69   Computer matching.   (1)** MATCHING SPECIFICATION.  A state authority may not use or allow the use of personally identifiable information maintained by the state authority in a match under a matching program, or provide personally identifiable information for use in a match under a matching program, unless the state authority has specified in writing all of the following for the matching program:

(a)  The purpose and legal authority for the matching program.

(b)  The justification for the program and the anticipated results, including an estimate of any savings.

(c)  A description of the information that will be matched.

**(2)** COPY TO PUBLIC RECORDS BOARD.  A state authority that prepares a written specification of a matching program under sub. (1) shall provide to the public records board a copy of the specification and any subsequent revision of the specification within 30 days after the state authority prepares the specification or the revision.

**(3)** NOTICE OF ADVERSE ACTION.  (a)  Except as provided under par. (b), a state authority may not take an adverse action against an individual as a result of information produced by a matching program until after the state authority has notified the individual, in writing, of the proposed action.

(b)  A state authority may grant an exception to par. (a) if it finds that the information in the records series is sufficiently reliable.

**(4)** NONAPPLICABILITY.  This section does not apply to any matching program established between the secretary of transportation and the commissioner of the federal social security ad-

ministration pursuant to an agreement specified under s. 85.61 (2).

**History:** 1991 a. 39, 269; 1995 a. 27; 2003 a. 265.

**19.70   Rights of data subject to challenge; authority corrections. (1)**  Except as provided under sub. (2), an individual or person authorized by the individual may challenge the accuracy of a record containing personally identifiable information pertaining to the individual that is maintained by an authority if the individual is authorized to inspect the record under s. 19.35 (1) (a) or (am) and the individual notifies the authority, in writing, of the challenge.  After receiving the notice, the authority shall do one of the following:

(a)  Concur with the challenge and correct the information.

(b)  Deny the challenge, notify the individual or person authorized by the individual of the denial and allow the individual or person authorized by the individual to file a concise statement setting forth the reasons for the individual's disagreement with the disputed portion of the record.  A state authority that denies a challenge shall also notify the individual or person authorized by the individual of the reasons for the denial.

**(2)** This section does not apply to any of the following records:

(a)  Any record transferred to an archival depository under s. 16.61 (13).

(b)  Any record pertaining to an individual if a specific state statute or federal law governs challenges to the accuracy of the record.

**History:** 1991 a. 269 ss. 27d, 27e, 35am, 37am, 39am; 2013 a. 171 s. 16; Stats. 2013 s. 19.70.

**19.71   Sale of names or addresses.**  An authority may not sell or rent a record containing an individual's name or address of residence, unless specifically authorized by state law.  The collection of fees under s. 19.35 (3) is not a sale or rental under this section.

**History:** 1991 a. 39.

**19.77   Summary of case law and attorney general opinions.**  Annually, the attorney general shall summarize case law and attorney general opinions relating to due process and other legal issues involving the collection, maintenance, use, provision of access to, sharing or archiving of personally identifiable information by authorities.  The attorney general shall provide the summary, at no charge, to interested persons.

**History:** 1991 a. 39.

**19.80   Penalties.   (2)** EMPLOYEE DISCIPLINE.  Any person employed by an authority who violates this subchapter may be discharged or suspended without pay.

**(3)** PENALTIES.  (a)  Any person who willfully collects, discloses or maintains personally identifiable information in violation of federal or state law may be required to forfeit not more than $500 for each violation.

(b)  Any person who willfully requests or obtains personally identifiable information from an authority under false pretenses may be required to forfeit not more than $500 for each violation.

**History:** 1991 a. 39, 269.

SUBCHAPTER V

OPEN MEETINGS OF GOVERNMENTAL BODIES

**19.81   Declaration of policy. (1)**  In recognition of the fact that a representative government of the American type is dependent upon an informed electorate, it is declared to be the policy of this state that the public is entitled to the fullest and most com-

*2023-24 Wisconsin Statutes updated through 2025 Wis. Act 247 and through all Supreme Court Orders and Controlled Substances Board Orders filed before and in effect on June 19, 2026.  Published and certified under s. 35.18.  Changes effective after June 19, 2026, are designated by NOTES. (Published 6-19-26)*

Add. 58

Published under s. 35.93, Wis. Stats., by the Legislative Reference Bureau.

# Chapter EL 9

## CHALLENGES AT A POLLING PLACE

EL 9.01    Inspector making challenge.
EL 9.02    Elector making challenge in person.
EL 9.03    Voting procedure for challenged electors.
EL 9.04    Challenging the absent elector.
EL 9.05    Recording the challenge.
EL 9.06    Review by a board of canvassers.

**Note:** Chapter ElBd 9 was renumbered chapter GAB 9 under s. 13.92 (4) (b) 1., Stats., and corrections made under s. 13.92 (4) (b) 7., Stats., Register April 2008 No. 628. Chapter GAB 9 was renumbered Chapter EL 9 under s. 13.92 (4) (b) 1., Stats., Register June 2016 No. 726.

**EL 9.01  Inspector making challenge.** Any inspector may challenge for cause any person offering to vote whom the inspector knows or suspects is not a qualified elector. An inspector has cause to challenge a person as being unqualified to vote if the challenging inspector knows or suspects that any one of the following criteria apply to the person being challenged: 1) the person is not a citizen of the United States; 2) the person is not at least 18 years of age; 3) the person has not resided in the election district for at least 10 days; 4) the person has a felony conviction and has not been restored to civil rights; 5) the person has been adjudicated incompetent; 6) the person has voted previously in the same election. If a person is challenged as unqualified by an inspector, the following procedure shall be followed:

**(1)** One of the inspectors shall administer the following oath or affirmation of veracity to the person: "You do solemnly swear (or affirm) that you will fully and truly answer all questions put to you regarding your place of residence and qualifications as an elector of this election."

**(2)** The inspector shall then ask only those of the following questions which are appropriate to test the person's qualifications based on the cause for the challenge:

(a)  Are you a United States citizen?

(b)  Are you at least 18 years of age?

(c)  For at least the 10 days before this election, have you resided in, or been a resident of, the ward or election district from which you seek to vote?

(d)  Are you currently disqualified from voting for any of the following reasons:

1. A felony conviction for which you are still serving probation or are on parole or extended supervision?

2. A judge's ruling that you are incapable of voting?

3. Having made a bet or wager on this election?

4. Having voted previously in this election?

**(3)** If the challenge is withdrawn by the inspector, the challenge procedure shall be halted, but a written record of the procedural steps taken, up to the withdrawal, shall be preserved in accordance with s. EL 9.05.

**(4)** If the challenge is not withdrawn by the inspector after the person offering to vote has answered the questions asked under sub. (2), one of the inspectors, before issuing the ballot, shall administer to the challenged elector the following oath or affirmation of eligibility: "You do solemnly swear (or affirm) that: you are 18 years of age; you are a citizen of the United States; you are now and for 10 days have been a resident of this ward except under s. 6.02 (2), Stats.; you have not voted at this election; you have not made any bet or wager or become directly or indirectly interested in any bet or wager depending upon the result of this elec-

tion; you are not on any other ground disqualified to vote at this election."

**(5)** If the person challenged refuses to take the oath or affirmation of eligibility under sub. (4), the inspectors shall not issue a ballot to the person challenged.

**(6)** If the person challenged refuses to answer fully any relevant questions put to him or her by the inspector under sub. (2), or the answers to the questions given by the person indicate that the person does not meet the voting qualification requirements of ss. 6.02 and 6.03, Stats., the inspectors shall not issue a ballot to the person challenged.

**(7)** If the person challenged answers fully all relevant questions put to the elector by the inspector under sub. (2), takes the oath or affirmation of eligibility under sub. (4), fulfills the registration requirements, where applicable, and the answers to the questions given by the person indicate that the person meets the voting qualification requirements of ss. 6.02 and 6.03, Stats., the challenged elector shall be issued a ballot and the voting procedure under s. EL 9.03 shall be followed.

**History:** CR 02-071: cr. Register September 2002 No. 561 eff. 10-1-02; correction in (3), (7) made under s. 13.92 (4) (b) 7., Stats., Register June 2016 No. 726.

**EL 9.02  Elector making challenge in person.** Any elector may challenge for cause any person offering to vote whom the elector knows or suspects is not a qualified elector. Any elector who abuses the right to challenge under s. 6.925, Stats., may be subject  to sanctions available to inspectors under s. 7.41 (3), Stats. An elector has cause to challenge a person as being unqualified to vote if the challenging elector knows or suspects that any one of the following criteria apply to the person being challenged: 1) the person is not a citizen of the United States; 2) the person is not at least 18 years of age; 3) the person has not resided in the election district for at least 10 days; 4) the person has a felony conviction and has not been restored to civil rights; 5) the person has been adjudicated incompetent; 6) the person has voted previously in the same election. If a person is challenged as unqualified by an elector, the following procedure shall be followed:

**(1)** One of the inspectors shall administer the following oath or affirmation of veracity to the challenging elector: "You do solemnly swear (or affirm) that you will fully and truly answer all questions put to you regarding the challenged person's place of residence and qualifications as an elector of this election."

**(2)** The inspector shall ask the challenger if he or she is an elector and then ask only  those of the following questions which are appropriate to determine the qualifications of the challenged elector:

(a)  Why do you believe that the challenged elector is not a United States citizen?

(b)  Why do you believe that the challenged elector is not at least 18 years of age?

(c)  Why do you believe that the challenged elector has not, for at least the 10 days before this election, resided in, or been a resi-

**Published under s. 35.93, Stats. Updated on the first day of each month. Entire code is always current. The Register date on each page is the date the chapter was last  published.**

Register November 2024 No. 827

dent of, the ward or election district from which he or she seeks to vote?

(d) For which of the following reasons, and why, do you believe the challenged elector is currently disqualified from voting:

1. A felony conviction for which the challenged elector is still serving probation or is on parole or extended supervision?

2. A judge's ruling that he or she is incapable of voting?

3. Having made a bet or wager on this election?

4. Having voted previously in this election?

**(3)** One of the inspectors shall then administer the oath or affirmation of veracity to the challenged elector under sub. (1) and ask the challenged elector only the questions under s. EL 9.01 (2) which are appropriate to test the elector's qualifications based on the cause for the challenge.

**(4)** One of the inspectors shall then ask the challenging elector if he or she withdraws the challenge. If the challenge is withdrawn by the challenging elector, the challenge procedure shall be halted, but a written record of the procedure up to the withdrawal shall be preserved in accordance with s. EL 9.05.

**(5)** If the challenge is not withdrawn after the person offering to vote has answered the questions under s. EL 9.01 (2), one of the inspectors, before issuing the ballot, shall administer to the challenged elector the following oath or affirmation of eligibility: "You do solemnly swear (or affirm) that: you are 18 years of age; you are a citizen of the United States; you are now and for 10 days have been a resident of this ward except under s. 6.02 (2), Stats., you have not voted at this election; you have not made any bet or wager or become directly or indirectly interested in any bet or wager depending upon the result of this election; you are not on any other ground disqualified to vote at this election."

**(6)** If the person challenged refuses to take the oath or affirmation of eligibility under sub. (5), the inspectors shall not issue a ballot to the person challenged.

**(7)** If the person challenged refuses to answer fully any relevant questions put to him or her by the inspector under sub. (2), or the answers to the questions given by the person indicate that the person does not meet the voting qualification requirements of ss. 6.02 and 6.03, Stats., the inspectors shall not issue a ballot to the person challenged.

**(8)** If the person challenged answers fully all relevant questions put to the elector by the inspector under s. EL 9.01 (2), takes the oath or affirmation of eligibility under sub. (5), fulfills the registration requirements, where applicable, and the answers to the questions given by the person indicate that the person meets the voting qualification requirements of ss. 6.02 and 6.03, Stats., the challenged elector shall be issued a ballot and the voting procedure under s. EL 9.03 shall be followed.

**History:** CR 02-071: cr. Register September 2002 No. 561 eff. 10-1-02; correction in (3) to (5), (8) made under s. 13.92 (4) (b) 7., Stats., Register June 2016 No. 726.

**EL 9.03 Voting procedure for challenged electors.** Whenever the inspectors under ss. 6.92 to 6.94, Stats., determine to receive the vote of a person who has been challenged, they shall give the elector a ballot. Before giving the elector the ballot,

the inspectors shall write on the back of the ballot the serial number of the challenged person corresponding to the number kept at the election on the registration or poll list, or other list maintained under s. 6.79, Stats. If lever or direct record voting machines are used in the municipality where the person is voting, the person's vote may be received only upon an absentee ballot furnished by the municipal clerk which shall have the corresponding serial number from the registration or poll list or other list maintained under s. 6.79, Stats., written on the back of the ballot before the ballot is deposited. The inspectors shall indicate on the voter list the reason for the challenge. The challenged ballots shall be counted under s. 5.85 or 7.51 (2) (c), Stats.

**History:** CR 02-071: cr. Register September 2002 No. 561 eff. 10-1-02.

**EL 9.04 Challenging the absent elector.** The vote of any absent elector may be challenged for cause by an inspector or by an elector and the inspectors shall have all the power and authority given them under ss. EL 9.01 and 9.02 to hear and determine the legality of the ballot the same as if the ballot had been voted in person. One of the inspectors shall administer the following oath or affirmation of veracity to the elector challenging the absentee elector's ballot: "You do solemnly swear (or affirm) that you will fully and truly answer all questions put to you regarding the challenged person's place of residence and qualifications as an elector of this election"; and shall ask the challenger if he or she is an elector and then shall ask only those questions provided in s. EL 9.01 (2) which are appropriate to test the qualifications of the challenged elector.

**History:** CR 02-071: cr. Register September 2002 No. 561 eff. 10-1-02; correction made under s. 13.92 (4) (b) 7., Stats., Register June 2016 No. 726.

**EL 9.05 Recording the challenge.** The inspectors shall make a written record of all challenges at the polling place, whether or not a ballot is issued to the challenged elector. The written record shall contain the name and address of the challenger; the name, address and serial number of the challenged elector; the cause for the challenge; the questions asked of the elector and the elector's responses to those questions. The written record also shall contain the questions asked of the challenger; the challenger's responses to those questions and whether or not the challenge was withdrawn. The record shall note whether or not the challenged elector took the oath or affirmation of eligibility.

**History:** CR 02-071: cr. Register September 2002 No. 561 eff. 10-1-02.

**EL 9.06 Review by a board of canvassers.** The municipal board of canvassers may decide any challenge when making its canvass under s. 7.53, Stats. If the returns are reported under s. 7.60, Stats., a challenge may be reviewed by the county board of canvassers. If the returns are reported under s. 7.70, Stats., a challenge may be reviewed by the chairperson of the board or the chairperson's designee. The decision of any board of canvassers or of the chairperson or chairperson's designee may be appealed under s. 9.01, Stats. The standard for disqualification specified in s. 6.325, Stats., shall be used to determine the validity of challenged ballots.

**History:** CR 02-071: cr. Register September 2002 No. 561 eff. 10-1-02.

*Published under s. 35.93, Stats. Updated on the first day of each month. Entire code is always current. The Register date on each page is the date the chapter was last published.*

Register November 2024 No. 827